ACCEPTED
07-14-00014-CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
3/26/2015 11:02:26 PM
Vivian Long, Clerk

*Case No. 07-14-00014-CV*

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
3/26/2015 11:02:26 PM
VIVIAN LONG
CLERK

In The Court of Appeals
For The Seventh Court of Appeals District
Amarillo, Texas

REBECCA TERRELL

CHANDRASHEKHAR THANEDAR,

*Plaintiffs-Appellants,*

v.

PAMPA INDEPENDENT SCHOOL DISTRICT,

*Defendant-Appellee*

On Appeal From the 223rd District Court, Gray County, Texas
Trial Court Cause No. 35621

**APPELLANTS' BRIEF**

Rebecca Terrell
Chandrashekhar Thanedar
6503 Dancing Ct.
San Antonio, Texas 78244
(956) 445-3107
rterrell152@gmail.com
*Appellants*

Oral Argument Requested

# IDENTITY OF PARTIES AND COUNSEL

**Appellants:**                         Rebecca Terrell and Chandrashekhar Thanedar

**Counsel for Appellants:**       Trial and Appellate Counsel
Rebecca Terrell
Chandrashekhar Thanedar
Representing themselves
(956) 445-3107

**Appellee:**                           Pampa Independent School District

**Counsel for Appellee:**         Trial and Appellate Counsel
W. Wade Arnold
State Bar No. 00783561
Andrea Slater Gulley
Underwood, Wilson, Berry, Stein & Johnson, P.C.
P. O. Box 9158
Amarillo, TX  79105-9158
(806) 379-0364 Telephone
(806) 349-9474 Fax

i

# TABLE OF CONTENTS

Identity of Parties and Counsel…………………………………………….....i

Table of Contents…………………………………………………………......ii

Index of Authorities……………………………………………………..iv

Statement of the Case……………………………………………...…ix

Statement Regarding Oral Argument……………………………………..xii

Issues Presented……………………………………………………xiii

Statement of Facts……………………………………………………1

Summary of the Argument……………………………………………..15

Argument………………………………………………………18

1.    Trial court's failure to hold trial on 7 distinct causes of action violates
      TOMA and appellants' absolute Constitutional rights……………………..18

2.    Plaintiffs are entitled to Summary Judgment on 7 distinct causes of
      action and Declaratory Relief under §551.142(a)………………………..21

3.    Plaintiffs are entitled to exclusion of evidence of SchoolCenter,
      BoardBook, or are entitled to continuance……………………………….26

4.    Plaintiffs are entitled to judgment in their favor or their motions for new
      trial, to modify judgment, and for reconsideration should be granted……..30

5.    PISD's good faith claim is a fraud on the citizens and tax payers and
      courts requiring sanctions……………………………………………..45

6.    Denial of plaintiffs' evidence led to rendition of incorrect judgment……...46

7.    Attorney fee award to PISD is invalid and is not reasonable.  PISD
      Forfeited and waived attorney fees when it refused to testify…………...47

ii

8. Judge Lopez was disqualified from conducting trial…………………...…..55

9. Voidance and Special Damages……………………………………………....59

Conclusion……………………………………………………………………...........60

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .……61

Certificate of Compliance…………………………………………………….............63

Certificate of Service……………………………………………………...............64

Appendix………………………………………………………..………Attached

# INDEX OF AUTHORITIES

**Cases:**

*Acker v. Texas Water Commission,*
        790 S.W.2d 299 (Tex. 1990)……………………………………………..16-17, 23

*Advantage Physical Therapy, Inc. v. Cruse,*
        165 S.W. 3d 21, 24 (Tex.App.--Houston [14th Dist.], 2005)……………...29

*Arthur Andersen & Co. v. Perry Equip. Corp.,*
        945 S.W.2d 812, 818 (Tex. 1997)…………………………………………….54

*Austin Transportation Study Policy*
        *Advisory Committee v. Sierra Club,*
        843 S.W.2d 683 (Tex. App.--Austin 1992)………………………………...25

*B E & K Construction v. NLRB,*
        536 U.S.516 (2002)…………………………………………………….20, 51

*Besing v. Moffitt,*
        882 S.W.2d 79, 81-82 (Tex. App.-Amarillo,1994)………………………...15

*Bill Johnson's Restaurants, Inc. v. NLRB,*
        461 U.S.731 (1983)…………………………………………………...51

*Boothe v. Hausler,*
        766 S.W.2d 788, 789 (Tex. 1989)………………………………..27-29, 31

*Buckholts Indep. Sch. Dist. V. Glaser,*
        632 S.W.2d 146, 148 (Tex. 1982)…………………………………………….55

*City of Bells v. Greater Texoma Uti!. Auth.,*
        744 S.W.2d 636,640 (Tex. App.--Dallas 1987)…………………...………59

*City of Garland v. Dallas Morning News,*
        22 S.W.3d 351, 356 (Tex. 2000)…………………………………...……49

*City of Laredo v. Monsanto,*
        414 S.W.3d 731 (Tex. 2013)…………………………………………....54

*City of San Antonio v. Fourth Court of Appeals,*
    820 S.W. 2d 762,765 (Tex. 1991)…………………………………………….17

*Dow Chem. Co. v. Francis,*
    46 S.W.3d 237, 242 (Tex. 2001)……………………………………………...16

*El Apple v. Olivas,*
    370 S.W.3d 757 (Tex. 2012)……………………………………………..49, 54

*Elam v. State,*
    841 S.W.2d 937, 939 (Tex. App.--Austin 1992)………………………….....58

*Ferris v. Texas Board Chiropractic Examiners,*
    808 S.W.2d 514, 519 (Tex. App.--Austin 1991)………………….......25, 59

*Garza v. Alviar,*
    395 S.W.2d 821, 823 (Tex.1965)………………………………………………16

*Haddix v. American Zurich Ins. Co.,*
    253 S.W.3d 339,345(Tex. App.--Eastland 2008)…………………………….15

*Hawkins v. Ehler,*
    100 S.W.3d 534, 539 (Tex. App.--Fort Worth 2003)…………………...16, 49

*Horton v. Horton,*
    965 S.W.2d 78, 85 (Tex. App.--Fort Worth 1998)…………………………15

*IKB Indus. v. Pro-Line Corp.,*
    938 S.W.2d 440, 442 (Tex. 1997)……………………………………………15

*Jackson v. Van Winkle,*
    660 S.W.2d 807, 809-10 (Tex. 1983)………………………………………38

*Kindred v. Con/Chem, Inc.,*
    650 S.W.2d 61, 63 (Tex. 1983)………………….……………………...35-37

*Kirkpatrick v. Memorial Hosp.,*
    862 S.W.2d 762, 775 (Tex.App.--Dallas 1993)……………………………38

*Lovely v. State,*
    894 S.W.2d 99,103 (Tex. App.--Beaumont 1995)…………………………58

*Marin v. State,*
    851 S.W.2d 275, 279-280,
    Tex. Court of Criminal Appeals, En Banc (1993)……………………….19

*McClenan v. State,*
    661 S.W.2d 108, 109 (Tex. Crim. App. 1983)……………………………..58

*McElwee v.McElwee,*
    911 S.W.2d 182, 185-87 (Tex. App.--Houston [1st Dist.] 1995)…………..55

*Point Isabel ISD v. Hinojosa,*
    797 S.W.2d 176 (Tex.App-Corpus Christ 1990)……………..……………59

*Randall's Food Mkts., Inc. v. Johnson,*
    891 S.W.2d 640, 644 (Tex. 1995)…………………………….…..………..24

*Smith County v. Thornton,*
    726 S.W.2d 2 (Tex. 1986) …………………………………………………17

*Stafford v. State,*
    948 S.W.2d 921, 924 (Tex. App.--Texarkana 1997)………………..……..58

*Tony Gullo Motors v. Chapa,*
    212 S.W.3d 299, 310-311 (Tex. 2006)………………………..……………48

*Valdez v. Valdez,*
    930 S.W.2d 725, 732-33 (Tex. App.--Houston [1st Dist.] 1996)…………..50

*Vickery v. Commission for Lawyer Discipline,*
    5 S.W.3d 241, 255-56 (Tex. App.--Houston [14th Dist.])………………....15

*Wells v. Hutchinson,*
    499 F.Supp. 174, 198 (E.D. Tex. 1980)…………………………………….60

**Constitutional Provisions, Statutes, and Rules:**

Texas Civil Practice and Remedies Code (CPRC)

38.001…………………………………………………………………………..50

38.004……………………………………………………………...…….………50

Texas Educ. Code §21.103……………………………………..…………13

Texas Rules of Appellate Procedure (TRAP) Rules 33.1(d)………………....…15

Texas Rules of Civil Procedure (TRCP) Rules

18(b)(a)………………………………………………………………...…..55

166a………………………………………...…………………………..…..19

166a(c)…………………………………………………………………24

193.5……………………………………………………...………….26-28

193.6……………………………………………………………26-29, 31

215(5)…………………………………………………………….27-28

245…………………………………………………………………….…9

296…………………………………………………………………...…15

297……………………………………………………………………...…15

301…………………………………………………………………...…19

Texas Rules of Evidence

402……………………………………………………………………..…32-33

602……………………………………………………………………..…32-33

802……………………………………………………………………..…32-33

Texas Open Meetings Act, Tex. Gov't Code Ch. 551

551.041………………………………………………………….…….9-10, 14, 18, 21-22, 48

551.043……………………………………………………...9-10, 14, 18, 23, 43, 47-48

551.043(b)(1)………………………………………………………….….…17

551.043(b)(3)………………………………………………………….….…17

551.045(d)………………………………………………9, 11, 14, 18, 22, 48

551.051…………………………………………………….9, 14, 18, 20-21, 48

551.056……………………………………………………………………….18, 45-46

551.056(b)….………………………………..1-2, 4, 8, 13, 28, 32, 34-35, 39, 42-45, 50, 56

551.056(d)…………………………………7, 14, 17, 19, 26, 29, 31, 33, 35, 40-45, 56

551.074………………………………………………………………..……18, 48

551.074(b)…………………………………………………….9, 11, 14, 18, 22-23, 46

551.101…………………………………………………...9, 11, 14, 18, 22, 46-48

551.101(2)………………………………………………………………………22

551.141……………………………………………………………….17, 24-25

551.142…………………………………………………………………..48-49

551.142(a)…………………………………………………….9, 14, 18-20, 48

551.142(b)……………………………………………………...12, 48, 50, 52

Texas Public Information Act Tex. Gov't Code Ch. 552…………………………….3

**STATEMENT OF THE CASE**

*Nature of the case*: This lawsuit is brought pursuant to Texas Open Meetings Act (TOMA), Texas Government Code, Chapter 551 and was filed on 5/29/2009. Rebecca Terrell and Chandrashekhar Thanedar (appellants, plaintiffs, or Terrell) sued Pampa Independent School District (PISD) to void PISD's actions taken in violation of Sections 551.041, 551.043, 551.045, 551.051, 551.056(b) and (d), 551.074, and 551.101 for 22 Meetings from August 13, 2008 to May 19, 2009 and to seek mandamus, declaratory relief, and permanent injunction under Sec. 551.142(a) among other relief against PISD. (Appendices 5 and 6).[1,2]

*Trial Court:* 223rd District Court, Gray County, Texas, Hon. Abe Lopez, assigned Judge. Previously presided by Judges Lee Waters and Phil Vanderpool.

*Course of Proceedings*: A summary judgment granted to PISD by Judge Lee Waters on 5/14/2010 was reversed by this Court and the case was remanded to trial court. Appendix19. Judge Waters retired during the pendency of the appeal.

---

[1] Clerk's record and reporter's record for this the **second appeal** are denoted as "CR" and "RR" respectively, followed by page number(s). Supplemental clerk and reporter records are identified by the order in which they were filed.

Plaintiffs' exhibits for final trial on 10/9/2013 are denoted as "PX" followed by the exhibit number. The final trial transcript found in reporter's record volume 2 filed on 3/24/14 is referred to as "Trial Transcript" followed by page numbers.

Please note trial exhibit PX1 (original) was filed on 10/8/14 along with supplemental reporter's record. PX13 and PX15 were filed by the reporter on 10/9/14.

[2] The clerk's record on appeal from the **First Appeal** (**007-10-00212-CV**) is already on file with the Court and is denoted by "CR" followed by notation First Appeal. Plaintiffs request that the clerk's record on file in First Appeal be considered in this appeal.

The new presiding judge of the 223rd court Judge Phil Vanderpool recused himself upon motion to recuse filed by appellants on September 26, 2012. Retired Judge Abe Lopez was assigned to the case on October 15, 2012. A trial was conducted in this case on October 9, 2013 on the issue of PISD's violation of TOMA §551.056(b) only with respect to 11 meetings from January 15, 2009 to May 19, 2009, but not for 11 meetings from 8/2008 to 12/2008. Judge Lopez refused to conduct a trial on all other causes of action arising out of PISD's distinct violations of TOMA sections 551.041, 551.043, 551.045, 551.051, 551.074, and 551.101 in this case. PISD's counsel refused to testify or provide evidence of attorney fees at the trial. The final judgment for PISD was signed by Judge Lopez on October 25, 2013 and he awarded PISD $30,000 in attorney fees and costs by reviewing the file. See Appendix20. Judge Lopez made Findings of Fact (FOF) and Conclusions of Law (COL) upon request by appellants. Appendix21. Appellants timely filed motion for new trial (Appendix1), motion to modify judgment (Appendix2), motion for reconsideration(Appendix3), and request for amended FOF and COL (Appendix4). Trial court took no action on them. On September 26, 2014, Judge Lopez held a hearing on lost or destroyed trial exhibits as ordered by the appeals court.

*Proceedings in the Court of Appeals*: Appellants filed their first appeal on May 24, 2010 in the Seventh Court of Appeals, Amarillo. Trial court's judgment

was reversed and remanded. Appendix19. A mandamus petition by appellants for post remand discovery and hearing on motions was denied by this Court in September 2013.

On January 17, 2014, appellants filed their second appeal in this case. Appellants filed an amended notice of appeal in this case. Appendix18. On July 18, 2014, the Court abated the appeal and remanded the case to determine whether certain trial exhibits were lost or destroyed and to determine the fault for the destruction or loss. Trial court filed Findings of Fact and Conclusions of Law stating the exhibits were lost or destroyed, by no fault of appellants. See 2nd supplemental clerk's record. Duplicates of lost or destroyed exhibits were filed with the appeals court by visiting court reporter in October 2014.

*Proceedings before 9th Administrative Judicial Region*: Appellants filed a motion to disqualify and recuse Judge Abe Lopez from sitting in the hearing ordered by the court of appeals, which was denied by the 9th regional administrative Judge Kelly Moore in September 2014.

# STATEMENT REGARDING ORAL ARGUMENT

This is the second appeal in this case in the last 6 years. This case has been strung along for years of intentional inaction and obstruction. Appellants believe oral argument would be of benefit to the Court at this stage to clarify these facts and legal arguments.

An oral argument in the first appeal in this case was denied. An oral argument then, would have made it abundantly clear to the Court that PISD neither had the intention, evidence, nor argument concerning whether "printing" notices changed the electronic properties of the PDF documents in question – a matter on which this court remanded the case.

As our brief makes clear, this case involves several matters of first impression in the history of TOMA jurisprudence e.g. document properties of website internet notices concerning §551.056(b) and issues concerning §551.056(d). Appellants' pro se status should not be a hindrance.

# ISSUES PRESENTED

1.  Trial court's failure to hold trial on seven distinct causes of action violates TOMA and appellants' absolute constitutional rights.

2.  TOMA requires Exact and Literal compliance with its provisions; Further, good faith defense under §551.056(d) requires clear and convincing standard.

3.  Trial court erred in refusing to void PISD's actions and meetings in violation of TOMA. Terrell is entitled to voidance of her termination action done in 3/26/2009 meeting and entitled to mandamus ordering reinstatement of Terrell to her previous position as a teacher and to back wages and benefits

4.  All PISD actions taken in meetings held in violation of TOMA's notice provisions are voidable and plaintiffs are entitled to their voidance. Plaintiffs are entitled to judgment in their favor on all causes of action.

5.  Plaintiffs have proven their good faith under TOMA §551.142.

6.  Trial court erred in ruling that front door is bulletin board within the meaning of §551.051 under TOMA. PISD's posting of board meeting notices on the front door violates TOMA.

7.  Trial court erred in refusing to void PISD's actions for failure to comply for 9 months with internet posting requirement of §551.056(b).

8.  Trial court erred in refusing to deny PISD's claim of "Good Faith" exception under §551.056(d) for 11 Meetings for five months in 2009. PISD's good faith claim is a fraud on citizens and courts requiring sanctions.

9.  PISD's meeting notices with incomplete description of Place violate notice provisions of TOMA and such meetings and actions therein must be voided.

10. §551.045(d) requires a designated or authorized person to sign and post board meeting notices; alternatively, this violation is a disputed material fact.

11. Trial court erroneously refused to void Terrell's termination action in 3/26/09 Board meeting in violation of TOMA; whether or not Terrell had individual notice and her attendance at the meeting are irrelevant.

12. The trial court erred in denying requested relief when undisputed evidence shows PISD illegally closed the 3/26/2009 meeting to public and violated §551.074(b) by deliberating Terrell's employment contract outside of meeting.

13. Trial court erred in denying plaintiffs' second motion for summary judgment, MSJ, and motions for new trial or grant continuance, to modify judgment, for reconsideration, and denying request for amended and additional findings of fact and conclusions of law. Further, trial court erred when it denied hearing on the newly discovered evidence. Trial court erred when it denied post-remand discovery and denied plaintiffs' certain trial exhibits, such denial causing rendition of incorrect judgment.

14. Terrell is the substantially prevailing party and should be awarded litigation costs, fees, and special damages.

15. This Court should award Terrell special damages and impose sanctions on PISD due to PISD's systematic and conscious violations of TOMA and to ensure voluntary and willing compliance with TOMA by government bodies.

16. Award of attorney fees of $30,000 to PISD is invalid and unreasonable, further PISD forfeited and waived attorney fees.

17. Assigned trial judge Lopez was disqualified from conducting trial in this case.

18. Plaintiffs are interested persons under TOMA

19. Evidence concerning SchoolCenter, BoardBook, and Lee Carter must be excluded, or continuance granted. Further, bare assertions, hearsay and irrelevant evidence must be barred. Trial court erred in considering such evidence.

20. PISD's missing link issue is irrelevant because PISD untimely created internet notices in May 2009; and copying or transferring the link onto new website was not a technical problem and was not beyond the control of PISD for 5 months

21. Plaintiffs are entitled to summary judgment on 7 distinct causes of action, and declaratory relief under section 551.142(a).

TO THE HONORABLE SEVENTH COURT OF APPEALS:

This appeal raises important issues for this Court and Texas citizens. This Court will decide whether Texas Open Meetings Act still is worth the exact and literal compliance standard citizens and taxpayers of Texas demanded a long time ago. Citizens will decide whether they should and can rely on TOMA and can take its promise of sunshine law seriously and will courts even rule on the violations. Will citizens be heard against government bodies and their lawyers? Texas Open Meetings Act may yet prove to be a sunshine law.

## I. STATEMENT OF FACTS

The following facts are admitted, undisputed, or supported by record.

**Undisputed facts concerning untimely "created dates" of PISD's website internet notices for 22 Meetings**

1. PISD did not contest at trial that the internet notices of 22 Board meetings beginning August 13, 2008 to January 2009 (22 Meetings) were untimely created in May 2009 and were posted on PISD's internet website on May 19, 2009. This Court acknowledged the untimely creation of TOMA notices in its opinion in the First Appeal. Appendices 7, 19, 14; PX1.

2. PISD did not present timely created website internet notices for 22 Meetings with document properties that showed that the website internet notices were created 72 hours before the start of each of the 22 Meetings in question as required by §551.056(b).

1

3. PISD's evidence of "missing link" to website notices is irrelevant because PISD created website internet notices untimely after said meetings had already taken place. Appendix7, PX1. Appendix19-Opinion Pgs.5-6.

4. Appellants reported violations of §551.056(b) to PISD on May 15, 2009. PISD admitted plaintiffs' report caused the problem to be corrected. Appendix11-Interrogatory 7.

5. PISD represented to this Court that printing said notices "changed" the created dates of notices. This caused this Court to remand the case. Appendix 19. PISD did not produce evidence at trial that the untimely "created" dates of the PDF notices of meetings in question were the dates when "PISD printed the notices for delivery to plaintiffs." Appendix19. Linder denied having any knowledge, stating it was just speculation. Transcript pg.199. PISD did not present evidence at the trial showing that printing internet notices for delivery to plaintiffs caused created dates of notices to change. No internet notices were ever printed for delivery to plaintiffs.

**Undisputed facts about BoardBook**:

6. BoardBook is not a computer program that can be owned. Yearly subscription fee or renewal license fee must be paid every year for using its subscription services. If renewal fees are not paid every year, use of BoardBook is terminated. Appendix22. PISD did not purchase a BoardBook program in 2007 or

at any other time or made any license fee payment to BoardBook. PISD does not have a purchase order for or contract with, or paid any consideration to BoardBook for its service from 8/13/2008 to 5/19/2009. PISD did not supplement, amend responses to written discovery concerning purchase orders and payments to BoardBook. Appendices8-11. Further PISD refused and failed to provide documents concerning payments to BoardBook to the Texas Attorney General under a Texas Public Information Act, Gov't Code Ch.552 Request by plaintiffs. CR388 (First Appeal).

7. PISD did not have BoardBook service from 8/13/2008 to 5/19/2009. PISD did not execute contract or pay license fees or renewal fees to BoardBook for 1/2009 to 5/19/2009. Appendix22. PISD admits documents evidencing payment to BoardBook do not exist. Appendix11 (PISD's Response to Request for Production15). The draft subscription agreement with BoardBook for 2007 is not signed by BoardBook. Appendix22. Further it is undisputed that PISD does not claim good faith exception for any period in 2007 or 2008. BoardBook program does not post notices of meetings on PISD's website for public viewing. Appendix10-Interrogatory18.

8. PISD is solely responsible for notices appearing or not appearing on BoardBook or compliance with TOMA. Appendix22. Notices of meetings are posted on BoardBook website in PDF (Adobe) format. BoardBook terminates

3

agreement in 30 days if money is not received when due. BoardBook does not store or archive notices 30 days after termination. Appendix22.

9. Jameson was aware of the link to notices not being on the new website. Appendix16. Jameson did not think link to BoardBook was necessary and needed to go on the new website. In a maintenance update the link was dropped by Jameson on 1/15/2009. Appendix11-Interrogatory5. On 5/19/2009, Jameson added the link to notices when she found out that the link to notices was required. Appendix16. PISD's new website was up and running during 1/15/2009 to 5/19/2009. Appendix 16.

10. PISD's internet notices did not appear on BoardBook's website without a link to them on PISD website. PISD's notices were not available for public viewing on Yahoo or Google search.

11. PISD did not timely post notices of meetings on its own website for 22 Meetings.

12. Linder did not post copies of internet notices of meetings on PISD's website. BoardBook did not and does not place or post meeting notices on PISD's website at any time. PISD admits that its internet notices were not posted on its or BoardBook's website for 11 meetings from 1/15/2009 to 5/19/2009 in violation of §551.056(b). Appendix11-Interrogatories5,7.

13.   PISD did not know or provide the exact dates when its old website was discontinued and the new website went live and when the link to BoardBook was discontinued.  BoardBook is an agent of PISD (Appendix22).

14.   Linder had no training, education, or expertise in technology or software.  PISD presented no exhibits, documentary evidence, or witnesses from BoardBook or SchoolCenter at trial.

**Undisputed facts about Third Party Contractor SchoolCenter**:

15.  SchoolCenter worked for PISD and is PISD's agent.  No person from SchoolCenter testified concerning the claim that SchoolCenter failed to transfer link, services assigned to and performed by SchoolCenter, and the dates of service.  PISD did not present a contract, proof of payment for service, vouchers, purchase orders, consideration for contract, or any documentary evidence at trial concerning SchoolCenter that defines the services it provided for PISD. SchoolCenter is a webhosting service and not a webmaster for PISD.

16.   PISD did not disclose the identity of SchoolCenter and its role in response to written discovery from plaintiffs and further did not timely supplement, amend, or correct its response to written discovery.  SchoolCenter's identity and role was not disclosed until the trial in this case.  In the First Appeal in this case, PISD did not disclose to the 7th Court of Appeals the existence, identity, and central role of SchoolCenter in this lawsuit.

17. SchoolCenter's failure to transfer link did not force or require PISD to create untimely internet notices in BoardBook weeks and months after the 22 meetings took place as noted by this Court. Appendix19. SchoolCenter had no role in PISD's creation of new untimely internet notices in the month of May 2009 for 22 meetings which were posted on 5/19/2009. See Appendices 7, 14; PX1.

18. PISD and Jameson dropped the hyperlink to internet notices on BoardBook and did not ask SchoolCenter to establish it. Jameson admitted that the link was not there on the old website at the time it was being converted to a new website. Transcript pg.144. She did not think the link was necessary on the new website. Appendix16. Transcript pg.144. SchoolCenter had direct access to PISD's old website and transferred links that were on the old website onto the new website. Transcript pg.135. Jameson established the link to BoardBook on 5/19/2009. Appendix16. PISD untimely created notices for the 22 meetings in May 2009. Appendix19; PX1. PISD did not have a purchase order, did not have a contract with or make any payment to SchoolCenter for its service to build a new format or transition hyperlinks to a new website. Hyperlinked notices did not exist on old website, and SchoolCenter was not responsible for transferring the link to BoardBook. SchoolCenter's role was irrelevant to PISD's good faith defense.

19. Jameson has no expertise in website operations. Transcript pages 132. Lee Carter operated PISD's website (Transcript page 116, 132) through January

2009 when he was PISD's webmaster using Adobe Go Live software. Appendix 1. PISD admitted that the internet notice of 1/15/2009 board meeting did not appear on its or BoardBook's website for public viewing. The link to website notices was dropped from PISD's website before 1/15/2009 board meeting. PISD claims good faith defense for 11 meetings from 1/2009 to 5/19/2009. Appendix11-Interrogatories 5, 7.

20. Linder did not communicate, direct, interact with, nor manage SchoolCenter concerning link to notices. Linder did not know the identity of SchoolCenter and did not have personal knowledge of its role in this lawsuit. Transcript page 191.

21. It is undisputed that PISD did not verify that its internet notices actually appeared for 72 hours before each of the 22 Meetings on its website directly or through a link. Transcript 176-178. PISD further failed to verify whether or not the link to internet notices was in fact transferred to its new website for 11 meetings for 5 months from 1/15/2009 to 5/19/2009. Transcript 176-178.

22. To put a link to notices on the website is not difficult. Transcript pg.150. Failure to verify whether such link was removed and not reestablished is not difficult and is not a technical problem. Transcript Page150. Further, verification that the link to internet notices actually was transferred onto PISD's

7

new website is not beyond the control of PISD for 5 months from 1/15/2009 to 5/19/2009. PISD does not meet requirements of §551.056(d).

23. PISD did not verify even once whether the internet notices of meetings were actually appearing and visible to public for viewing on its website for 11 meetings in question from 1/15/2009 to May 19, 2009. Transcript pg.178. PISD's website was up and running properly during entirety of this time. No communication occurred between Jameson and Linder concerning TOMA notices of board meetings appearing on its website from January 2009 until after Thanedar informed Linder on 5/15/2009 that internet notices did not appear on PISD's website. Appendix11-Interrogatory7; Appendix16.

24. PISD admits that internet website notices required under TOMA §551.056(b) did not "appear" in the prescribed time of 72 hours on PISD's website for 11 meetings from 1/15/2009 to 5/19/2009. Appendices 8, 11 (Interrogatory7).

25. The internet notice that PISD posted on its website for 3/26/2009 board meeting in which Terrell's termination action took place was untimely created on May 8, 2009 and untimely posted to PISD's website on 5/19/2009. Appendix 14. At trial, PISD did not present an internet website notice that was timely created 72 hours before the 3/26/2009 board meeting.

8

26. PISD presented no evidence at trial 1) when a "link" to internet notices actually existed on its website and the date on which it was dropped, and that 2) SchoolCenter was responsible for transferring said link to a new website.

27. PISD managed and maintained its website on and before 1/15/2009. PISD managed its website 72 hours before the 1/15/2009 board meeting. The internet notice for 1/15/2009 meeting did not appear on PISD's website because PISD and Jameson dropped the link in a maintenance update. Appendix11-Interrogatory5,7. There was no link on the old PISD website for SchoolCenter to transfer to the new website. SchoolCenter was not involved in dropping the link. PISD's new website went live in February 2009.

**Facts regarding plaintiffs' causes of action:**

28. Terrell sued PISD on 5/29/2009 on eight distinct causes of action arising out of PISD's violations of TOMA and seeks to void her termination and for reinstatement and back wages among other relief. Appendices5,6. PISD's first amended answer had no certificate of service and was not served on plaintiffs. CR282-284.

29. Trial Judge Lopez did not try plaintiffs' distinct claims under sections 551.041, 551.043, 551.051, 551.045(d), 551.74(b), 551.101, 551.142(a) ("7 Causes"). Further, Judge Lopez did not rule on said claims, nor ruled on declaratory, mandamus, or injunctive relief, and did not make Findings of Fact and

9

Conclusions of Law on 7 Causes. Appendix21. Physical posting of notices for 3/26/2009 meeting and other 21 meetings was not the subject of trial. PISD did not comply with any of Gov't Code Chapter 551's notice provisions for 22 board meetings in question. PISD was not the substantially prevailing party under TOMA.

30. Plaintiffs did not announce ready and requested continuance of the trial date due to the death of Thanedar's mother. Transcript pg.6. Trial court failed to rule on admissibility of PX1, and denied PX13 (Audio Tapes-CDs), PX12, PX14, PX19, PX21, and PX25. Trial court did not provide a reasonable notice or 45-day notice (TRCP 245) for the trial in this case on remand from the appeals court. Plaintiffs' filings were not voluminous either in trial court or appeals court. Further they were neither unreasonable nor improper. PISD did not respond to plaintiffs' filings and no attorney fees were incurred by PISD on them. Trial court held no hearings on plaintiffs' motions or filings.

**Undisputed facts in plaintiffs' claim under §551.051 (Bulletin Board)**

31. PISD admits that it posted board meeting notices on the front door of its administrative building for the time period in question from 8/13/2008 to 5/19/2009 (22 Meetings). Public citizens were required to stand outside the central office building to read the public meeting notices. PISD does not dispute that there was an unused glass enclosed bulletin board inside its administrative office

10

building in the lobby area during 22 Meetings and that PISD relocated a glass enclosed bulletin board outside its administrative office building on 6/5/2009. Appendix9 (Admissions 5,7,8).

**Undisputed facts in plaintiffs' claim under §551.041 (Place)**

32.  PISD admits that for both paper and internet notices it did not specify or include the name of the city.  Appendix9 (Admission15).  PISD's notices merely state "Pampa High School" or "Pampa Junior High School" without the address. See CR70-71, CR75, CR89-90, CR129-130, CR147-148, CR156, CR167-168, CR170 (First Appeal).  PISD service boundaries defined by Texas Education Agency cover portions of Gray and Roberts Counties.

**Undisputed facts in plaintiffs' claim under §551.043 (72 Hours)**

33.  The physical notice for 3/26/2009 meeting was not posted for 72 hours in a bulletin board inside the central administrative office.  CR60-66(Second Appeal).

The physical notice for 5/19/2009 meeting was not posted for 72 hours in a bulletin board.  CR60-66(Second Appeal). Linder confirmed to plaintiff Thanedar that there was an error in posting this notice because the meeting date changed to 5/19/2009 and that Linder posted a corrected notice for a board meeting on 5/19/09 on the front door on 5/18/2009 because of the change.  CR60-66(Second Appeal).

**Undisputed facts in plaintiffs' claim under §551.101 (closed meeting)**

11

34. The presiding officer of the Board did not identify the section or sections under TOMA that authorized closing of the 3/26/2009 board meeting to public. See PX14; PX13 (Audio CDs); Appendix9(Admission14).

**Undisputed facts in plaintiffs' claim under §551.074(b) (deliberations)**

35. The audio recording of the closed meeting on 3/26/2009 shows discussion among Superintendent Haenisch and Board members on Terrell's termination. Terrell had specifically requested the action be deliberated in open meeting per §551.074(b). PX13 (Audio CDs)(Tape 2 at Counter 43:45).

**Undisputed facts in plaintiffs' claim under §551.045(d) (designated person)**

36. PISD's Board did not designate or authorize Karen Linder to sign meeting notices or post board meeting notices on the Board's behalf. CR609, CR832; CR821-823 (First Appeal). Appendix10 (Req. for Production 28). Linder signed and posted board meeting notices without authorization from the Board of Trustees. Board retained authority with respect to calling, signing, and posting notices of board meetings. CR821-823; CR832; CR834-836(FirstAppeal).

**Undisputed facts about attorney fees**

37. PISD counsel refused and failed to testify at trial on PISD's attorney fees concerning the amount and its reasonableness. PISD made no valid application for attorney fees under §551.142(b) at trial. Trial court asked PISD's attorney Mr. Arnold whether he wanted to testify and present evidence concerning

12

PISD's request for attorney fees. PISD's counsel refused to do so, instead asked trial Judge Lopez to take notice of the file. Transcript page 238. PISD did not present evidence concerning existence of PISD's attorney fees, hours, hourly rate, tasks performed and by whom, difficulty level, and reasonableness of court's award of attorney fees of $30,000.

**Undisputed facts about Bad Faith**

38. At trial, PISD presented no evidence of plaintiffs' bad faith in bringing the lawsuit. PISD's actions did not have reasonable basis under TOMA. TOMA requires reasonable attorney fees to be proven at trial, and does not permit judicial notice of file. PISD did not present factual evidence of voluminous pleadings and motions in district court or appellate court or time spent by PISD defending against them or the suit. Appellants were meritorious and prevailed in the first appeal with Seventh COA awarding costs to appellants. Appendix19. Judge Lopez does not have power to grant appellate attorney fees.

**Undisputed facts about Plaintiffs' Good Faith**

39. Plaintiffs presented evidence of their good faith at trial. PISD admits that plaintiffs' report to PISD of non-appearance of website notices was the sole reason why PISD fixed its non-compliance with §551.056(b) for 11 meetings after 5 month long of non-compliance. Appendix11-Interrogatory7.

13

**Plaintiffs' employment, Standing, Back-Wages**

40.  Appellants are citizens and taxpayers of Texas for more than 15 years (4 years in Pampa beginning 2008), and are interested persons under TOMA and pay sales taxes and other taxes that fund PISD and other school districts in Texas. PX15, PX21; Appendices5,6. TOMA does not require plaintiffs to reside within PISD's boundaries. PISD, a school district created by the State of Texas, is a government body subject to TOMA. Terrell was a first year beginning teacher at Pampa High School and taught U.S. History, World History, and World Geography. Terrell's probationary contract (PX6) does not automatically expire by its own terms under the Education Code. The Education Code §21.103 requires that a probationary contract must be terminated in 45 days before the last day of instruction or the contract automatically renews. Terrell's probationary contract was terminated by PISD in a Board meeting on 3/26/2009. Terrell was not given and did not have actual notice of termination of contract, nor was Terrell's contract placed on the notice/agenda of the 3/26/2009 meeting. The legal notice of 3/26/2009 board meeting required under TOMA was not in a bulletin board or on a front door for 72 hours prior to said meeting. Terrell's termination was not placed on the agenda of the meeting.

14

41.    Document properties of a PDF document show various aspects of the electronic document viz. when it was created (created date), when it was last modified (modified date).  Plaintiff Thanedar testified as an expert witness at trial in this case.  Transcript pgs.75-86.

## II.  SUMMARY OF THE ARGUMENT

The trial on 10/9/2013 made mockery of Texas Open Meetings Act (TOMA).   Plaintiffs' seven distinct causes of action under TOMA sections 551.041, 551.043, 551.051, 551.45(d), 551.74(b), 551.101 and 551.142(a) were not tried or ruled on.  Trial judge Abe Lopez blamed this Court for it.  Plaintiffs' are absolutely entitled under law and Texas and U.S. Constitutions to declaratory rulings, mandamus, and injunctive relief on the above claims.   Judge Lopez was disqualified to hold trial. PISD produced no legal evidence concerning its claim of good faith under §551.056(d).  Further forgetting to transfer or verifying transfer of a link is not a technical problem and never beyond the control of PISD, a government body, especially over 5 months.   PISD lied to this Court about "created dates" of internet notices and the "link."

PISD is solely responsible for compliance with TOMA.   Any outside vendors are agents of PISD.  PISD showed intentional ignorance concerning the untimely internet notices posted after 5 months, got caught, and made things up.  PISD's good faith claim is a fraud on Texas citizens and courts.   Attorney fee

15

award to PISD is unlawful and unreasonable. Each cause of action by plaintiffs is dispositive of the whole case requiring reversal of trial court's judgment and entitling plaintiffs judgment in her favor. This Court should reverse trial court's judgment and render judgment for plaintiffs and grant their prayer.

### III. STANDARD OF REVIEW

A case is "tried" when a court holds an evidentiary hearing on a cause of action upon conflicting evidence. *Besing v. Moffitt*, 882 S.W.2d 79,81-82 (Tex. App.-Amarillo,1994, no writ); *Haddix*, *infra* at 345. In cases tried without a jury, findings of fact delineate facts that support the judgment and the legal reasoning underlying the judgment. In such cases, findings of fact and conclusions of law are mandatory under TRCP Rule 296 and 297.

On appeal, findings of fact are reviewed for sufficiency of the evidence and conclusions of law are reviewed de novo. *Haddix v. American Zurich Ins. Co.*, 253 S.W.3d 339,345(Tex. App.—Eastland 2008, no pet.); *IKB Indus. v. Pro-Line Corp.*,938 S.W.2d 440,442 (Tex. 1997).

A request for additional findings is similar to an objection. *Vickery v. Commission for Lawyer Discipline*, 5 S.W.3d 241, 255-56 (Tex. App.—Houston [14th Dist.], pet. denied). Thus a request for additional findings of fact has significance unrelated to the trial court actually filing additional findings of fact. A challenge to the sufficiency of the evidence in a bench trial can be raised for the

16

first time in appellant's brief. There is no need to file a post-judgment motion raising it. TEX. R. APP. 33.1(d).

A no evidence point is sustained if the record discloses the following: (1) there is complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla of evidence; or (4) the evidence conclusively established the opposite of a vital fact. See *Hawkins v. Ehler,* 100 S.W.3d 534, 539 (Tex. App.--Fort Worth 2003, no pet.); *Horton v. Horton,* 965 S.W.2d 78, 85 (Tex. App.--Fort Worth 1998, no pet.).

An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

When reviewing a factual sufficiency challenge, the appellate court considers all the evidence and determines whether the evidence supporting a finding is so weak as to be clearly wrong and unjust or whether the evidence is so against the great weight and preponderance of the evidence to be clearly wrong and manifestly unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). Appellate court is required to consider all of the evidence in the case in making this determination. *Hawkins, Id.*

**Exact and Literal Compliance Required under TOMA**:

TOMA's provisions are mandatory. *Acker, Infra; Smith County, Infra.* TOMA violations are not trivial or *de minimis*. The Texas Supreme Court has required Exact and Literal Compliance by governmental bodies, especially, with respect to the notice provisions of TOMA. *Acker v. Texas Water Commission,* 790 S.W.2d 299 (Tex. 1990) ("The explicit command of the statute is for openness at every stage of the deliberations. Accordingly, **we have demanded exact and literal compliance with the terms of this statute**.[citing] *Smith County v. Thornton,* 726 S.W.2d 2, 3 (Tex. 1986)"); *City of San Antonio v. Fourth Court of Appeals,* 820 S.W.2d 762 (Tex. 1991). Thus, "substantial compliance" is not valid law in Texas. A governmental body's actions taken in violation of TOMA are voidable. §551.141. TOMA is not a scheme to provide due process to individuals. It is not a legislative scheme for service of process; it has no due process implications. *Acker, Id.; City of San Antonio, Id.*

**Burden of Proof**: Plain language of TOMA makes it clear that the burden of proof of "good faith" under §551.056(d) is on the government body and that it must be "continuous" for each meeting. §551.056(d); §551.043 (b)(1) and (b)(3).

## IV. ARGUMENT

Appellants repeat preceding paragraphs as if set forth verbatim herein.

**1. Trial court's failure to hold trial on 7 distinct causes of action violates TOMA and appellants' absolute Constitutional rights**

By a slight of hand, the trial court rigged this case and denied trial on plaintiffs' distinct causes of action under TOMA Sections 551.041, 551.043, 551.045, 551.051, 551.074, 551.101, and 551.142(a)(7 Causes).[3] Appendices 5,6, Transcript pages 11-12. Judge Lopez had an independent duty to try and rule on said causes of action under TOMA and the Texas and U.S. Constitutions, but failed to do so. Plaintiffs' absolute constitutional rights of due process in this matter cannot be denied or waived, and plaintiffs did not waive their constitutional rights. *Marin v. State*, 851 S.W.2d 275, 279-280, Tex. Court of Criminal Appeals, En Banc (1993).

---

[3] PISD's Board held a total of **22 meetings** from 8/13/08 to 5/19/09. Violations of TOMA provisions at Issue in this case:

- **§551.051**: PISD violated §551.051 by failing to post notices of 22 Meetings in a specifically designated place - Bulletin Board in its Central Administrative Office.

- **§551.056**: PISD violated §551.056 by failing to concurrently post internet notices of 22 Meetings on its website for prescribed time and manner.

- **§551.043**: PISD violated §551.043 by failing to post notices of 22 Meetings at a physical location for prescribed time (72 hours) and manner.

- **§551.041**: PISD violated §551.041 by failing to specify "place" in its notices of 22 Meetings.

- **§551.101 and §551.074(b)**: PISD violated §551.101 by failing to legally close the 3/26/09 Board meeting and violated §551.074(b) by deliberating on Terrell's termination in closed meeting.

- **§551.045(d)**: PISD violated §551.045(d) because PISD's notices of 22 Meetings were signed on behalf of the Board and posted by a person (Linder) not so designated nor authorized by Board of Trustees.

- **§551.142(a):** Declaratory, injunctive, and mandamus relief on all plaintiffs' claims.

19

Further, plaintiffs filed timely objections and motions and brought trial court's failure to try 7 Causes to its attention. Appendices1,2,3,4. Judge Lopez's general observations and comments are not rulings. Further, the trial court failed to make findings of fact and conclusions of law regarding 7 Causes and did not rule on plaintiffs' request for amended or additional findings of Fact and conclusions of law in this regard. Appendix4.

The trial court stated that the appeals court remanded the case to hold trial only in the matter of §551.056(d). Transcript Pgs.11-12. This is plainly false and an abdication of Judge Lopez's independent duty to rule. The appeals court did not rule on or limit the causes of action on which trial could be held. Appendix19. Trial court was required to hold trial on all of them and specifically rule on them. Texas Rules of Civil Procedure require that the trial court's judgment shall conform to pleadings. TRCP 301. TOMA §551.142(a) entitles plaintiffs to declaratory ruling and relief on every one of plaintiffs' 7 untried causes of action. Plaintiffs objected and asked the Judge Lopez to grant new trial on 7 causes of action. Appendices 1,2,3,4. Trial court was required under TRCP 166a to either grant plaintiffs' second summary judgment motion on said 7 Causes or try them and rule on each one of them.

The Court's failure and refusal to try the 7 Causes violates plaintiffs' constitutional rights under Texas Constitution Article 1 Sections 3, 13, 19, and 27,

and the 14th Amendment to the U. S. Constitution and is clear misconduct on Judge Lopez's part.

In the words of Justice Sandra Day O'Connor "this right to petition is one of the most precious of the liberties safeguarded by the Bill of Rights." *BE&K Construction, Infra.* Appellants' are absolutely entitled to trial on every single one of their 7 untried remaining causes of action under TOMA and have all of their complaints redressed and ruled on. Plaintiffs request that this Court uphold this right and vacate final judgment and grant new trial on all causes of action.

**2. Plaintiffs are entitled to Summary Judgment on 7 distinct causes of action and Declaratory Relief under §551.142(a)**

Plaintiffs are entitled to declaratory, injunctive, mandamus relief under TOMA whether or not any other relief is granted and whether or not PISD's actions in violation of TOMA are voided.

**A. Plaintiffs are entitled to declaration that PISD violated TOMA §551.051.**

PISD admits that it posted TOMA notices on the front door for 22 Meetings when there was an unused bulletin board <u>inside</u> the building. Statement of Fact (SOF) 31. §551.051 mandates the location for notices. Here it is clear common sense that "front door" is not "bulletin board" <u>inside</u> the building under §551.051.

This violation is particularly offensive and vile as it forces the "undesirable" citizens to stand outside the entrance of the building in rain, snow, cold, hot weather and in poor lighting conditions and humiliate themselves standing in the

21

way of the incoming and outgoing traffic. This is abuse of citizens. These notices on the front door cannot be read from inside and certainly are neither safe, nor convenient, thus do not meet the requirements of "convenient," "accessible" "inside the building" and "bulletin board" and under §551.051 under Exact and Literal compliance standard. Forcing citizens to stand outside the building to read notices is an unwelcome mat to poor citizens and minorities all around the "Carver Center" to prevent them from entering the building. Only PISD would have the gall in this day and age to engage in this insensitive divisive tactic against its own taxpaying citizens. Why should or would taxpayers stand outside the building that they paid for to read TOMA notices? What is next - notices on windows, plants, and restroom doors? This Court should prevent this abomination of §551.051 and declare that notices on front doors violate §551.051.

**B. Plaintiffs are entitled to declaration that PISD violated §551.041 when PISD failed to give notice of "place."**

PISD admits the facts in SOF32. PISD failed to notify the reader of the "place" under §551.041 for 22 meetings under the exact and literal compliance standard. PISD forced citizens to guess about "place" with details missing from notice e.g. street address, location, and other details. Thus plaintiffs are entitled to the declaration that PISD violated §551.041.

**C. Plaintiffs are entitled to declaration by the court that PISD violated §551.045(d).**

PISD admits that Board never authorized nor designated Karen Linder under TOMA to sign notices of meetings on behalf of the Board. SOF36. The language of §551.045(d) is clear that it applies to all notices not just emergency notices and it requires an authorized or designated person to post notices of meetings. §551.045(d). Thus plaintiffs are entitled to declaration that PISD violated §551.045(d).

**D. Plaintiffs are entitled to declaration that PISD violated TOMA §551.101 by improperly closing its March 26, 2009 meeting and further violated 551.074(b)**

It is not disputed that defendant's president, Mr. Charles Smith did not identify the section or sections of TOMA that authorized closing the 3/26/09 board meeting to the public under TOMA before closing the meeting. SOF34. PISD thus did not comply with the §551.101(2). Therefore, plaintiffs are entitled to declaration that PISD unlawfully closed meeting on March 26, 2009 in violation of §551.101. Plaintiffs are entitled to all legal and equitable relief and that 3/26/09 closed meeting and actions taken in it be declared unlawful and contents of the closed meeting be made public and allowed to be freely copied and distributed. PISD deliberated on Terrell's contract termination in the closed meeting on 3/26/09 when Terrell had specifically requested the action be deliberated in open meeting per §551.074(b). SOF35. Plaintiffs are entitled to the declaration that PISD violated §551.074(b).

**E. Plaintiffs are entitled to declaration by the court that PISD violated §551.043 concerning the 3/26/09 and 5/19/09 Board Meetings**

Plaintiffs' rely on SOF33. It is undisputed that the notice of 3/26/09 Board meeting was not seen posted in the bulletin board in PISD's Central Office nor on its front door at 5 P.M. and after 6 P.M. on 3/23/09 i.e. notice was posted less than the prescribed 72 hours in violation of §551.043.[4] PISD's (Linder) vague claims and surmise do not specifically dispute plaintiffs' sworn assertions e.g. a revised notice for 3/26/2009 meeting was taped to the front door of central office building on 3/24/09, less than 72 hours before the start of the meeting.

Similarly, the notice for 5/19/09 meeting was posted for less than 72 hours because the meeting date changed from 5/8/09 to 5/19/2009 causing the revised notice to be reposted. Because PISD posted (paper) notices of 3/26/09 and 5/19/09 Board meetings for less than the prescribed 72 hours, PISD violated §551.043.

**TOMA violations Are Distinct:** The statutory language of TOMA is clear that the above notice provisions are distinct, and failure to comply with any one of the notice provisions renders the action(s) in violation of TOMA and thus voidable. §551.141.

---

[4] Whether or not Plaintiffs knew or attended the meeting (SOF40) is irrelevant. TOMA is not scheme for process of service and has no due process implications. *Acker, Id.*

**No developed record**:   Because there was no trial on 7 Causes, no trial record exists, thus Plaintiffs rely on the facts and arguments in their Second No-evidence and Traditional Summary Judgment motion herein.  Appendix12.

A party moving for summary judgment must show that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); TRCP 166a(c).  Here. The facts are undisputed in the untried 7 Causes.  Thus based on the exact and literal compliance standard, plaintiffs are entitled to summary judgment in their favor.

## F.  The sky is <u>not</u> falling if illegal actions are voided

PISD has repeatedly tried scare tactics by using the bogeyman of voidance. All actions in violation of TOMA must be voided given PISD's defiance, conscious indifference, obstruction of discovery, and systematic longstanding violations of TOMA's notice requirements.  PISD can ratify the voided actions in a legally held board meeting under TOMA.  So far PISD has refused to ratify its actions as was properly done in *ATSPAC v. Sierra Club*, 843 S.W.2d 683 (Tex. App.--Austin 1992), preferring instead to scare the courts.

## G.  Terrell is entitled to back wages and voidance of her illegal termination:

Terrell was not terminated in a legally convened meeting under TOMA, thus the termination action is voidable. §551.141. Given PISD's outrageous misconduct

and systematic violations of TOMA, and Terrell's termination action should be voided. Voidance of Terrell's termination in 3/26/2009 meeting means Terrell lawfully continues to be an employee and is owed back wages. Courts have upheld voidance of action involving employment termination, reinstatement upon voidance, and granting back wages and benefits. See *Ferris v. Texas Board Chiropractic Examiners*, 808 S.W.2d 514, 519 (Tex.App—Austin 1991) (ordering back wages and benefits of $26,000 until the time Ms. Ferris was terminated in a legally convened meeting under TOMA). Like *Ferris*, Terrell continues to be lawfully employed by defendant. Back wages and benefits are thus due Terrell, currently at about $262,000 for 5 years until Terrell is terminated lawfully in a subsequent legally held meeting under TOMA. *Ferris, Id.* Further Terrell's illegal termination cannot be ratified retroactively because Education Code requires a 45 day notice to Terrell before the last day of instruction (10 days for 2012-2013 and after), failing which Terrell's contract is automatically renewed and becomes, as here, a continuing contract after 3 years. See Education Code§21.103.

**3. Plaintiffs are entitled to exclusion of evidence on SchoolCenter, BoardBook, or are entitled to continuance**

**Exclusion of Evidence**: TRCP 193.5 mandates that a party must amend or supplement the party's response to written discovery when the part learns that its response was incomplete or incorrect when made, or is no longer complete and correct. TRCP 193.5(a). The party must amend, correct or supplement written

discovery concerning identification of persons with knowledge of relevant facts and any other information sought by the written discovery reasonably promptly. Less than 30 days before trial is not reasonably promptly. TRCP 193.5(b). A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, TRCP 193.6.

**Evidence concerning SchoolCenter must be excluded**: PISD concealed the identity and the central role of the third party vendor, SchoolCenter, in PISD's §551.056(d) defense until the trial and disclosed the information during the trial on 10/9/2013. In its discovery responses PISD represented that only Jameson and Linder had knowledge of the "link" problem and Jameson caused the link to be severed in a maintenance update. Appendix11. In a flip flop, PISD identifies a new culprit, SchoolCenter, and blames it for not transferring the link. PISD failed to identify, provide information on SchoolCenter in the written discovery, and further failed to amend, supplement, or correct written discovery concerning SchoolCenter. Appendices 8,9,10,11. SOF16. Plaintiffs' are entitled to exclude any information concerning SchoolCenter from evidence under TRCP 193.6 because PISD failed to comply with TRCP 193.5. *Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex. 1989). Any information given by Jameson or other witnesses

27

concerning SchoolCenter must be excluded. Trial court erred in denying plaintiffs' motions to exclude in this regard. Transcript pgs 214-220.

PISD lied to this Court throughout the First Appeal process in its briefs by concealing the identity of SchoolCenter and its alleged central role in this case causing obstruction of justice. Now after 6 years, there are more lies. All information concerning SchoolCenter must be excluded from evidence as a sanction on PISD for failure to comply with TRCP 193.5. *Boothe v. Hausler*, *Id.* The sanction for failure to comply with this rule is exclusion of the evidence affected by the violation. TRCP 215(5); TRCP 193.6; PISD failed to establish before the trial court that good cause existed for allowing SchoolCenter related evidence. *Boothe* v. *Hausler*, at 789.

At trial, PISD claimed to have purchased BoardBook program, paid license fees and renewal fees to BoardBook for its service to post website notices since 2007. But during discovery process PISD refused and failed to provide full and complete discovery and produce documents concerning payment of license fees and renewal fees to BoardBook. PISD refused and failed to supplement answers to written discovery in this regard. SOF6. All evidence concerning existence of BoardBook service should have been excluded and struck from evidence at trial. See TRCP 215(5).; TRCP 193.6; *Boothe v. Hausler* at 789. The Court erred when it refused and failed to do so in response to motions from plaintiffs. CR111.

28

PISD concealed the above information from plaintiffs and the Attorney General of Texas, obstructing justice. SOF6. Plaintiffs were severely compromised in their ability to show that non-compliance with §551.056(b) was actually due to the fact PISD did not have BoardBook service during 8/13/2008 to 5/2009 or that PISD actually obtained it in May 2009 when and untimely created and posted prior meeting notices to conceal violation of §551.056(b).  Texas law is clear - without proof of payment of consideration, PISD did not have a contract with BoardBook or SchoolCenter.  *Advantage Physical Therapy, Inc. v. Cruse,* 165 S.W. 3d 21, 24 (Tex.App.--Houston [14th Dist.], 2005 no pet.) (without consideration, there is no contract).

For violation of TRCP 193.5, information concerning existence of BoardBook service in this case must be excluded from evidence.  TRCP 193.6; See *Boothe v. Hausler* at 789.

Similarly, because PISD concealed the identity of SchoolCenter until the trial and SchoolCenter's alleged failure in transporting "link" to PISD website notices, plaintiffs were severely harmed and compromised in examining evidence and questioning witnesses, and would have subpoenaed SchoolCenter at trial for testimony had PISD timely supplemented and amended written discovery.

In both instances, the issues were dispositive and not cumulative because they related to the controlling and central issue of PISD's good faith under

29

§551.056(d) and why the link to website notices was missing for at least 5 months in 2009. *Boothe v. Hausler*, at 789. The trial court should have excluded evidence concerning SchoolCenter and BoardBook, alternatively should have granted continuance of the trial as requested by plaintiffs to conduct further discovery. TRCP 193.6(c). Transcript pgs,214-220.

**4. Plaintiffs are entitled to judgment in their favor or their motions for new trial, to modify judgment, and for reconsideration should be granted**

**A. PISD lied to this Court that printing changes "created dates" of internet notices in the first appeal**

PISD lied to this Court in the first appeal that "created date" means the date the "particular notice was printed for delivery to appellants." Appendix19. Based on this misrepresentation, this Court remanded this case. It has been six long years of lies from PISD. In the trial of this case, PISD admitted that the above contention was not true, but "oops" it was only a speculation.

"*I was just trying to give some reasons why that might have happened.*" Linder testimony, Transcript pg, 201.

Such misconduct mocks this Court, TOMA, and the discovery process. Nothing PISD says after this can be credible in the slightest. PISD must be sanctioned for this lie and judgment entered for plaintiffs.

**B. PISD lied to this Court again about SchoolCenter and concealed SchoolCenter's identity and central role in the first appeal**

30

PISD lied to this Court again when it concealed the identity and the role of SchoolCenter, a vendor, from this Court in its brief in the First Appeal. In the brief before this Court, PISD blamed Jameson. See PISD's brief in the First Appeal (07-10-00212-CV). Appendix11-Interrogatory5. But now PISD blames SchoolCenter for losing the "link." Even a soap opera cannot be this phony and ridiculous. Both Jameson and SchoolCenter are agents of PISD. It has been six long years of lies from PISD. PISD must be sanctioned for this concealment and lie from this Court and judgment entered for plaintiffs.

**C.     SchoolCenter, BoardBook evidence must be excluded, PISD's good faith defense thus fails**

Plaintiffs rely on and repeat Argument 3 as if fully set forth herein. As explained above, evidence and information concerning SchoolCenter and BoardBook must be excluded and barred from evidence because PISD failed to timely amend, supplement, or correct written discovery concerning them. TRCP 193.6; *Boothe, Id*. At trial, PISD flip-flopped and blamed SchoolCenter for the missing link to notices. However both SchoolCenter and BoardBook being vendors employed by PISD are PISD's agents. The only evidence presented for PISD's good faith claim related to SchoolCenter's role. Because all evidence or information concerning SchoolCenter must be excluded, PISD's good faith claim must be rejected. Similarly, any portion of good faith claim that relies on BoardBook and Lee Carter must also fail because such information or evidence

must be excluded and is barred. TRCP 193.6, *Boothe, Id.* PISD's good faith defense under §551.056(d) fails.

**D.      Hearsay and Irrelevant evidence of Linder and Jameson must be barred**

PISD has the burden to prove good faith under §551.056(d). Texas Rules of Evidence (TRE) bars evidence that is irrelevant and is not personal knowledge of the witness. TRE 402, 602, 802. Linder and Jameson's testimony on good faith defense under §551.056(d) was complete hearsay. PISD presented no documentary evidence concerning SchoolCenter, BoardBook, called no expert witnesses in support of its claim of good faith either on document properties e.g. "created dates" of internet notices or the missing link issue. No one from SchoolCenter or BoardBook testified in support of PISD's good faith.

Linder made it clear that she has no personal knowledge regarding the claim of missing link. Transcript pg.191. Further, her entire testimony about good faith defense was nothing more than her general opinions and beliefs concerning her work in BoardBook software which is irrelevant under TOMA because §551.056(b) or any other section of TOMA does not require work in BoardBook. TOMA requires concurrent internet notices to be posted on government body's website. §551.056(b). Linder admitted that she never clicked on the link on PISD's website to verify that internet notices appeared for public viewing (Transcript pgs. 176-178) and does not know anything about created dates or

Adobe PDF, she does not even know the name of SchoolCenter. Thus Linder's entire testimony concerning her bare assertions about her "work" in BoardBook must be struck and excluded from evidence as irrelevant, hearsay, and hearsay within hearsay. TRE 402, 602, 802. Jameson's testimony about what SchoolCenter did or did not do concerning the link is classic hearsay. TRE 402, 602, 802. Transcript pgs.126-157; Appendix15. Her testimony was a sham and a cover-up to shield her when she removed the link because she thought it was not needed. Appendix16. She could not even recall the name of the person she supposedly worked with on the new website project that supposed to have transferred PISD's "thousands" of links. Transcript pg.133. Jameson admitted she has no knowledge or expertise in website operations. Transcript pg.129. Under TRE, her testimony is full of bare assertions on what SchoolCenter did or did not do, or failed to do is classic hearsay, lacks personal knowledge, thus must be struck and excluded from evidence. Her testimony concerning what Lee Carter, the webmaster, did or did not do must also be struck as hearsay and excluded. TRE 402, 602, 802.

At best, Linder and Jameson's testimonies about BoardBook and SchoolCenter's role are bare assertions, too weak, no more than speculation, surmise, hearsay and less than a scintilla of evidence, therefore are not legal evidence concerning good faith. *Kindred, infra* at 63. Linder and Jameson's bare

33

assertions often contradicting overwhelming evidence to the contrary[5] are not legal evidence. *Kindred, infra* at 63 and further they do not meet clear and convincing standard this government entity, PISD, must meet to establish its good faith under §551.056(d).

Evidence by Linder, Jameson, and Haenisch on good faith was bare assertions, hearsay, incompetent, speculative, and immaterial as to whether PISD exercised good faith concerning its non-compliance with §551.056(b). Thus the evidence they presented was no more than scintilla, surmise, and speculation which is not legal evidence.

> *When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence at all.*

> *Kindred v. Con/Chem, Inc*. 650 S.W.2d 61,63 (Tex. 1983).

Karen Linder's testimony was a sham because she admitted that her sworn answers to plaintiffs' interrogatories were nothing but speculation and she did not have knowledge about technical matters in question. PISD's Linder falsely represented to the appeals court that printing PDF notices changed the created dates of website notices. Appendix19. PISD now states at trial that it was just speculation on their part. SOF5. Karen Linder's assertion that she "worked in

---

[5] Jameson admits that she thought the link was not needed on the new website. Appendix16. She removed the link in a maintenance update. Appendix11-Interrogatories 5,7.

BoardBook" on her computer was no more than bare opinion as PISD presented no evidence that it actually had BoardBook service during the period in question i.e. 1/2009 to 5/18/2009 or at any time from 8/13/2008 to 5/19/2009.

Thus Linder's and Jameson's testimonies on good faith issue are no legal evidence and must be disregarded as no material fact question was raised or answered by their testimonies and because the Court was barred by rules of law or evidence from giving weight to the only evidence they offered (hearsay, bare opinion, and speculation) to prove a vital fact of good faith under TOMA. *Kindred, Id*. PISD's good faith claim must fail.

**E. Plaintiffs were entitled to hearing on newly discovered evidence**

Trial court erred in denying a hearing on newly discovered evidence and motion for new trial. Plaintiffs demonstrate the existence of factors[6] in *Jackson* and *Kirkpatrick* for grant of new trial in this regard. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809-10 (Tex. 1983); *Kirkpatrick v. Memorial Hosp.*, 862 S.W.2d 762, 775 (Tex.App.-Dallas 1993, writ denied). The weight and importance of the newly discovered evidence here and its bearing with respect to evidence received at trial

---

[6] The factors are: (i) the evidence came to light since the time of trial or so late in the trial that it was impossible to present the evidence before the trial closed; (ii) it was not because of a lack of due diligence that the information did not come sooner; (iii) the new evidence is not merely cumulative to that already given and does not tend only to impeach the adversary's testimony; and (iv) the evidence is so material that it would probably produce a different result if the court granted a new trial. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809-10 (Tex. 1983).

is conclusive and is so material that it will probably produce a different result in this case:

1. PISD did not have good faith because it removed the link from its website itself before the creation of new website by SchoolCenter and SchoolCenter had no role to play in the removal or reestablishing the link. SOF18.

2. PISD's Jameson's testimony at trial was misleading and false. The newly discovered evidence would show that PISD was aware of the removal of link and willfully violated §551.056(b).

The appendices 2 through 5 to motion for new trial (Appendix 1) are PISD's website archive pages and view source information of PISD's website as of the dates noted i.e. 1/26/2009 and 2/5/2009. View source pages identify the software that generated PISD's website pages viz. "Adobe GoLive" software for the OLD website and "SchoolCenter" version 8.0 used for the NEW website.

The newly discovered evidence shows that

a. PISD concealed the fact that the link to internet notices did not exist on the OLD website which was managed by PISD itself. The appendices 2 and 3 of Motion for new trial (Appendix 1) show that PISD managed its website itself through January 26, 2009. PISD has admitted that the TOMA internet notice did not appear on its website for its January 15, 2009 meeting because the link was removed. The missing link problem started with the January 15, 2009 meeting

36

notice when PISD managed the website. There was no link to be transferred to the new website which went live after 1/26/2009.

b. PISD's OLD website was managed by its webmaster Lee Carter at least through January 26, 2009. Motion for new trial's appendix 2 (bottom left corner) and appendix 3 (page 2 of the appendix) clearly identify Lee Carter as PISD's webmaster and show that Lee Carter as an employee had PISD's business email address. PISD used Adobe GoLive software at least up to January 26, 2009 and maintained its own website **well after** the time it admitted that January 15, 2009 meeting notice did not appear on its website because link was removed when PISD managed its website itself. The newly discovered evidence shows that SchoolCenter was not at "fault" as falsely alleged by PISD because as admitted by PISD the link did not exist on its website on or before 1/15/2009 causing non-appearance of the internet notice for 1/15/2009 board meeting. PISD removed the link in 1/2009 because it thought it was not "necessary." Appendix 16.

c. Thus it is obvious PISD's Suzie Jameson fabricated a story and gave false testimony (Appendix 1) blaming SchoolCenter when PISD itself removed the link in January 2009 or before, on its own watch, before the new website was allegedly created by SchoolCenter in February 2009 (Motion for New trial -appendices 4-5). The problem of admitted non-compliance on January 15, 2009 existed before SchoolCenter allegedly created the new website which was in February 2009.

d.  PISD concealed Lee Carter's (PISD's Technology Director) role in maintaining and generating PISD's website during the time period it claims good faith under §551.056(d).  Lee Carter's name was not disclosed during the discovery process in violation of discovery rules as a person who had knowledge or any role in this concerning this lawsuit.  Appendices 8-11.  Lee Carter's name appears as webmaster on PISD's website on January 26, 2009 well after PISD admitted that January 15, 2009 meeting notice did not appear on its website due to alleged link problem. Motion for new trial-appendices 2-3.

PISD failed to timely disclose and supplement, amend, or correct its responses to written discovery, concerning the identity and role of SchoolCenter and Lee Carter until the trial, the above evidence could not be obtained before trial and is not cumulative.  SchoolCenter and Lee Carter's roles are material in PISD's good faith defense in §551.056(d).  .

Plaintiff Thanedar testified as expert in technology matters pertinent to this lawsuit.  The above evidence however is obvious to an average person.  Plaintiffs affirm that "Adobe GoLive" was a software product of Adobe Systems Inc. and is an HTML editor used to maintain and manage websites by its customers.  The word "Generator" in appendix 3 of motion for new trial means what it says i.e. PISD generated its website using Adobe GoLive.

Refusal to receive newly discovered evidence and refusal to grant new trial would be manifest abuse of discretion and permanent loss of plaintiffs' substantive rights. A new trial is thus required under law on the good faith claim by PISD and an evidentiary hearing was required by trial court to receive evidence in the above matters which will affirm that PISD's good faith claim was made in bad faith and is a fraud. This Court should grant new trial in this case.

**F. Missing link to notices is irrelevant because internet notices for 22 Meetings were untimely created in May 2009 for posting on website weeks and months after meetings took place**

The "missing link" to internet notices is a smokescreen and is not relevant. The undisputed fact is that PISD untimely created internet notices in May 2009, weeks and months after the 22 Meetings took place and then posted them untimely on its website all at once on 5/19/2009. Created date of an Adobe PDF document means what it says i.e. the date when the PDF document was created. Transcript pgs.75-86. This is not disputed by PISD. PISD did not produce timely created internet notices for 22 Meetings at trial, there is no evidence that they were timely created. Whether or not the link was missing, PISD never timely created internet notices for each of the 22 Meetings 72 hours before each meeting started. Because PISD did not create timely internet notices and untimely posted them, PISD's good faith claim fails.

Because PISD did not care to check for <u>each meeting notice</u> whether its notices actually appeared on its website or not, it does not show good faith under §551.056(d) and its good faith claim must be rejected.

**G. PISD did not care or attempt to check if the internet notices actually appeared on its website for public viewing for each of the 22 Meetings in 72 hours before each meeting**

TOMA requires that the internet notices must be concurrently posted on the Government body's website 72 hours before the start of a meeting. §551.056(b). The evidence is undisputed that PISD did not attempt to or care to check that internet notices were actually appearing on its website and were available for public viewing for any of the 22 Meetings in question. Transcript pgs. 176-178. An average person would exercise such care to comply with law. A government body should be held to even higher standard. PISD fails even the lower average person standard. Thus PISD did not make a good faith attempt under 551.056(d)[7] to verify its compliance with §551.056(b). If PISD had done so, it would have immediately known and found out that notices were not appearing on its website and PISD would have presumably fixed its non-compliance with TOMA.

---

[7] TOMA §551.056(d) provides that:

"The validity of a posted notice of a meeting or an agenda by a governmental body or economic development corporation subject to this section that made a good faith attempt to comply with the requirements of this section that is due to a technical problem beyond the control of the governmental body or economic development corporation."

The language of TOMA is plain and clear that <u>compliance with TOMA must be done in the prescribed 72 hours before a meetings starts and must be continuous. §551.043</u>. This requires that a government body <u>must check for each meeting that the internet notice actually appears</u> on its website for public viewing. PISD's intentional ignorance defeated the purpose of TOMA's prescribed 72 hour-requirement. §551.043; §551.056(b).

**PISD's intentional ignorance and conscious indifference** is not good faith because it did not even once attempt or care to verify that notices actually appeared on its website from 1/2009 to 5/19/2009 in compliance with §551.056(b). It must be noted that for meeting notices from 1/2009 to 5/19/2009 for which PISD claims good faith, there is no evidence that its website was not up and was not working normally. Haenisch testified the new website had no disruptions. Transcript pg.117. Thousands of other links were working perfectly. Transcript pg.135. PISD showed intentional ignorance and cover-up to hide its violations of §551.056(b).

If this Court does not reverse trial court's judgment, every government body intentionally or not, will "ignore" to exercise sufficient care to comply with TOMA for months or years and still claim good faith and will be granted exception under §551.056(d), making a laughing stock out of Texas Open Meetings Act.

**H. "Oops we forgot," mistake, negligence, or incompetence is not a technical problem**

There is no evidence or insufficient evidence that forgetting to transfer a link to new website is a "technical"[8] problem. §551.056(d). Here, PISD claims that SchoolCenter made a mistake and did not transfer the link to notices to new website. Transcript pg.149-150. Jameson testified that the problem was that of a "missing link." Transcript pg.149. Even if true, forgetting or making a mistake is not a technical problem. There is no evidence that there was anything wrong with the link itself. PISD presented no evidence that mistake is a technical problem. To the contrary, Jameson herself testified that **adding** a link on the new website is not difficult. Transcript pg.150. Jameson further testified the problem with the link was just a "plain and simple oversight." Jameson refused to even call the oversight a "technical" problem even when prodded by plaintiffs. Transcript pg.150. Thus oversight, negligence or "Oops we forgot" is not a technical problem under TOMA.

**I. "Oops we forgot" to transfer a link is not "beyond the control" of PISD**

---

[8] Collins English Dictionary – Complete and Unabridged, HarperCollins Publishers, 2003 **defines "technical"** as 1) of, relating to, or specializing in industrial, practical, or mechanical arts and applied sciences.

Even if forgetting to copy or transfer link is a technical problem, there is no evidence or insufficient evidence that transferring a link to new website was "beyond the control" of PISD for 5 long months from 1/2009 to 5/19/2009. §551.056(d). Jameson testified that failure to transfer the link in question was a "plain and simple oversight" and that it was not difficult. Transcript pgs.149-150.

Earthquake, snow, rain, hacking and virus attacks are beyond the control of a government body while these events last. Forgetting to verify mandatory compliance with TOMA for 5 months is most certainly not "beyond the control" of a school district. To suggest otherwise is an insult and fraud on citizens and taxpayers of Texas. There is conclusive overwhelming evidence that the link problem in question would have been fixed had PISD checked its new website just once in 5 months as to whether legally required internet notices were actually appearing on its new website, but PISD did not do so. SOF21 and 23. All PISD needed to do was to get off the chair and check that the link was transferred and further check that the legal meeting notices were actually appearing on its website for public viewing. PISD has admitted that it never showed interest and due care to comply with §551.056(b). SOF21, 23, Transcript pg.146. PISD's missing link was neither a technical problem nor beyond its control. PISD's good faith defense fails.

Here, PISD decided it was not going to comply with TOMA 551.056(b), but got caught. There is overwhelming evidence that PISD showed conscious indifference at best, or bad faith and fraudulent misconduct concerning its legal duty to comply with TOMA Sec. 551.056(b).

**Jameson's sham testimony**

Jameson gave false testimony concerning SchoolCenter at trial to avoid blame on herself. PISD had admitted that Jameson performed duties with respect to "establishing BoardBook link" on PISD's new website and not SchoolCenter. Appendix 16. Jameson's May 19, 2009 E mail to Linder (Appendix 16) clearly states (Emphasis provided):

> I apologize for not having that link on the site. **I have added it on the School Board page**. There were lots of things that were on the old site that **I did not realize needed to go on the new one**.

It is abundantly clear from the above email that PISD and Jameson knew about the "link" but did not think it was "<u>needed</u>" on the new website. In written discovery PISD blamed Jameson for "severing" the link in a "maintenance update." Appendix11-Interrogatories 5, 7. Jameson's new testimony at trial is diametrically contradictory with PISD's written discover. Both are not credible. As a result, Jameson dropped the "link" to BoardBook on PISD's new website in January 2009. This can only be described as a mistake, error or negligence, or lack of due care and diligence, or properly as willful disregard for compliance with

TOMA for 5 months. There was no "severance" of the link, no "maintenance update" that "severed" the link, or "inadvertent" mistake here as <u>Jameson clearly knew about the link and PISD and Jameson decided it was not needed on the new website and therefore Jameson did not establish it on the new website</u>. Appendix16. As a matter of law, negligence or lack of due care and diligence by a person is not a "technical" problem as the word technical is commonly understood, and certainly not "beyond the control" of PISD. All PISD had to do was to check its own website to verify that Board meeting notices were "appearing" on its website, as a reasonable person would have done. PISD failed to exercise this reasonable care for 5 months and at least 11 Meetings. PISD fails reasonable care standard, which is never beyond PISD's control.

**5. PISD's good faith claim is a fraud on the citizens and tax payers and courts requiring sanctions**

PISD has obstructed discovery from the beginning concerning BoardBook and SchoolCenter. PISD lied to the Texas Attorney General and to this Court and simply refused to provide documents concerning BoardBook and SchoolCenter to plaintiffs calling them "beyond the scope of TRCP." SOF They knew they could get away with it. SOF6.

The alleged problem of "link" was only fixed when plaintiff Thanedar reported nonappearance of notices on 5/15/2009 to PISD in good faith. Appendix 11-Interrogatory 7. Without plaintiffs' report in good faith, PISD could have

continued for several more months, or years, or even indefinitely without complying with Sec. 551.056.

**Post-remand discovery**

Trial court erred in denying post-remand discovery on good faith. Post-remand discovery was consistent with the opinion and mandate of this Court. This is especially important for TOMA because post-remand discovery would have discovered that PISD's contention that printing changes "created dates" of PDF documents was a fraud on this Court and citizens. Denying post-remand discovery only shielded PISD and its obstruction of justice.

6. **Denial of plaintiffs' evidence led to rendition of incorrect judgment**: The Court failed to rule on admissibility of plaintiffs' exhibit PX1 in the one day trial excluding it from evidence. PX1 contains 22 board meeting website notices at issue in this lawsuit and their electronic document properties on Compact Disc. Plaintiffs rely on facts and argument in Argument 8 below regarding PX1. There was no objection by defendant. This exhibit was admitted and authenticated by Judge Waters before and was reviewed by this Court in the first appeal and the untimely "created dates" were central in determining PISD's good faith. The CD in question is in the record and the record thereon has been reviewed on appeal by the appeals court. The Court clearly abused its discretion when it refused to rule on admissibility of PX1 and thereby ignored the electronic properties of internet

notices leading to incorrect judgment. As PX1 and its electronic properties are central to violation of TOMA Sec. 551.056 and all other causes of action in plaintiffs' live pleadings. Denial of PX1 caused rendition of incorrect judgment as the untimely created dates of internet notices would have shown that PISD created the internet notices weeks after the 22 meetings took place and untimely posted them on 5/19/2009. This would show that PISD's missing link good faith defense was a fraud because the internet notices were not even created concurrently and timely. Trial court erred in not ruling on PX1. It should have been admitted.

Further, trial court erred in denying admission of PX13 which is audio tapes of 3/26/2009 meeting that shows violation of 551.101, and 551.074(b) which are causes of action in this lawsuit and directly relevant, resulting in court's failing to rule on the above claims. PX13 should have been admitted.

Trial court erred in denying admission of PX12(notices of meetings) which concerned violation of 551.043, PX14 (excerpt of transcript 3/26/2009 meeting), concerned violation of 551.101, PX19(back pay benefits) and PX25(salary schedules) concerned claim of back pay and special damages, and PX21(sales tax receipts) concerned the issue of standing), all central and relevant to TOMA issues. Denial of this evidence resulted in rendition of incorrect judgment on these issues. The above exhibits should have been admitted into evidence.

Trial court's judgment should be reversed and judgment entered for plaintiffs. Minimally, plaintiffs' motions for new trial, to modify judgment, for reconsideration, and the request for amended and additional FOF and COL should be granted on all causes of action.

**7.    Attorney fee award to PISD is invalid and is not reasonable. PISD forfeited and waived attorney fees when it refused to testify**

The trial court committed clear error in granting $30,000 in attorney fees to PISD by taking "judicial notice of the file" under TOMA. Appendices20, 21.

Texas law has not allowed recovery of attorney fees unless allowed by statute or contract. "Absent a contract or statute, trial courts do not have inherent authority to require a losing party to pay the prevailing party's fees." *Tony Gullo Motors v. Chapa,* 212 S.W.3d 299, 310-311 (Tex. 2006). Nothing in TOMA or its pertinent case authority authorizes or empowers any court to take judicial notice of attorney fees and to award them without receiving evidence with respect to the attorney fees and their reasonableness. TOMA §551.142.

Plaintiffs challenge both the imposition and award of the attorney fees to PISD on the grounds that 1) PISD is not the substantially prevailing party, 2) the award of attorney fees is neither legally valid, nor proper, unjust, nor justified in this case, and 3) the attorney fee award is not reasonable, manifestly too large and further, PISD forfeited and waived any attorney fees by refusing to testify.

48

**PISD is not the substantially prevailing party**:  PISD is not the substantially prevailing party under TOMA§551.142(b) and cannot be awarded attorney fees.  This is because trial court shockingly refused and failed to try 7 Causes out of eight independent and distinct causes of action or main issues under TOMA sections 551.041, 551.043, 551.045(d), 551.051, 551.074, 551.101, and 551.142(a) and further failed to rule and make finding of fact or conclusions of law with respect to each of the above 7 above causes of action. Appendices 20,21.[9] Thus PISD did not prevail on 7 out 8 separate and distinct causes of action or main issues and is not a substantially prevailing party. *Hawkins v. Ehler, Infra* at 544.

**Award of attorney fees to PISD is invalid and unreasonable**

Under TOMA only reasonable attorney fees can be granted if certain conditions are met. §551.142(2).  The reasonableness of attorneys' fees is question of fact that must be proven at the trial. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 367 (Tex. 2000). Thus PISD was required to testify concerning its attorney fees.

**PISD forfeited and waived attorney fees by refusing to testify and prove them**

PISD refused and failed to testify on its attorney fees and refused and failed to prove them at trial even after Judge Lopez prompted PISD's counsel to do so.

---

[9] Plaintiffs objected to this misconduct and brought this to trial court's attention during trial and in motions.  Appendices1,2,3,4.  With 7 out of 8 causes of action never taken to trial and never decided, Judge Lopez's judgment is not final judgment in spite of the words used in it.  Because this was a deliberate conduct on Judge Lopez's part, no implied findings can be made or presumed here.  Appellants ask this Court to rule on all causes of action in this appeal.

Transcript Page 238. Thus there is no valid application for attorney fees here. Further, it must be concluded that PISD forfeited and waived any claim to attorney fees by refusing and failing to prove and testify on its attorney fees. Thus there is no evidence or insufficient evidence in the record for the Court to award attorney fees to PISD of any amount. Court's award of $30,000 has no basis in law under TOMA or evidence because there is no evidence or insufficient evidence of tasks completed, hours worked, level of difficulty, identity of attorneys, reasonable hourly rates of attorneys on the case and other necessary information on which attorney fees must be based on. See *El Apple v. Olivas, Infra.*

**No "Judicial Notice of file" for attorney fees under TOMA**: The plain and clear language of §551.142(b) does not permit trial judge to impose attorney fees by taking "judicial notice." It is clearly ascertainable that the award of attorney fees in this case does not arise under Texas Civil Practice and Remedies Code (CPRC) §38.001, thus this Court does not have power to take judicial notice of attorney fees under CPRC§38.004. See *Valdez v. Valdez*, 930 S.W.2d 725, 732-33 (Tex. App.--Houston [1st Dist.] 1996, no writ) (holding §38.004 only applies to claims under §38.001).

**Plaintiffs have proven their good faith in this case:**

Attorney fees award here is legally improper because plaintiffs have undisputedly proven their good faith at the trial as their report of the violation of

Sec. 551.056(b) was the <u>only reason</u> said violation was finally corrected by PISD after 5 months of <u>admitted</u>[10] non-compliance with TOMA from 1/2009 to 5/19/2009.  Appendix11 (Interrogatory7).  Further plaintiffs prevailed on first appeal in this case, this Court reversing trial court's judgment and remanding the case which proves conclusively that this lawsuit was in fact brought in good faith.  See §551.142(b).  PISD did not claim nor produced any evidence or insufficient evidence of bad faith on appellants' part at trial.

**"Voluminous filings" is not bad faith and Plaintiffs cannot be penalized by imposing attorney fees for them**

As explained in this brief**,** There is no factual evidence or legal basis whatsoever for Judge Lopez's erroneous FOF20 and COL4. Appellants do not show bad faith because of "voluminous" filings. Even assuming filings are voluminous, appellants cannot be penalized for them as there is no evidence that any filing was improper or unreasonable.  Further, this argument is bogus and irrational because there is no evidence whatsoever that PISD ever incurred attorney fees due to filing responses, and Judge Lopez never held hearings and never ruled on them.  There is no cost or harm here to PISD.

Appellants have constitutional right to sue in court and file motions which is an aspect of the First Amendment right to petition the Government for redress of

---

[10] The document properties of PISD's website notices prove that internet notices for 11 notices from 8/2008 to 12/2008 were also created in May 2009 and posted for public viewing on 5/19/2009 after plaintiffs brought the non-compliance with 551.056(b) to PISD's attention.

grievances. Justice Sandra Day O'Connor has noted "**this right to petition is one of the most precious of the liberties safeguarded by the Bill of Rights**." Justice O'Connor further observed that the First Amendment petition clause says nothing about success in petitioning. Thus there is absolutely nothing wrong in filing motions and requesting relief that Judge Lopez rule on such motions. Thus appellants cannot be penalized for filing motions, voluminous or not, in this lawsuit to redress grievances. See *BE&K Construction v. NLRB*, 536 U.S.516 (2002); *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S.731 (1983). Thus, "filings", even if "voluminous," are not "bad faith" under TOMA and plaintiffs cannot be punished with attorney fees for them.

Further Judge Lopez sitting by assignment has no personal knowledge of all of the proceedings in this case, being the third judge in this case after Judge Waters and Judge Vanderpool.

**PISD does not meet prerequisites for attorney fees**: PISD never claimed the element of bad faith on plaintiffs' part which is a prerequisite for attorney fees under TOMA §551.142(b), and further, notably, never presented any evidence at the trial on the issue. PISD did not plead for attorney fees in its original answer-its amended answer must be struck because it lacks a certificate of service and was not served on plaintiffs. See CR285 which is not a certificate of service for the amended answer but a duplicate of CR281(response to previous motion). Because

PISD failed to claim bad faith and failed to present evidence on it, failed to plead for attorney fees, it waived attorney fees and the issue of bad faith, thus cannot recover attorney fees under §551.142(b) in this case. Nothing under law or TOMA jurisprudence gives trial court the authority or power to advocate for PISD which failed to meet prerequisites to attorney fees. The award to PISD must be vacated and denied.

**Attorney fees for appellate filings must be vacated and denied**: Judge Lopez apparently granted attorney fees because plaintiffs made voluminous appellate filings-though he failed to segregate the amount. Appendices20,21. The trial court has no power whatsoever to impose attorney fees for any proceedings or filings in the appellate courts, with or without evidence being received. In fact, plaintiffs prevailed in the first appeal and this Court ordered that defendant pay costs to Terrell for the appeal. Thus no attorney fees are due to PISD in the first appeal. PISD made no argument nor presented any evidence concerning this issue at trial and did not testify about its time and attorney fees incurred in this regard. Thus there is no basis in law or fact for an award of attorney fees for plaintiffs' filings in appeals court.

**Has TOMA's "Sunshine" gone away?**

Further plaintiffs do not have the ability to pay any attorney fees, thus award is not reasonable under TOMA's lofty purpose of "sunshine law." TOMA was

heralded as the "Sunshine Law" to protect Texas citizens after the shockingly corrupt scandals of Sharpstown. The deliberate arbitrary award indicates that Judge Lopez wielded TOMA as a sword to silence appellants and any future citizens that dare to question a government body. This will have a chilling effect on citizens and taxpayers who report violations of TOMA and seek redress.

**Statutory attorney fees are not a "Bonanza"**

Chief Justice Nathan Hecht has made it clear that an award of statutory attorney fees, as here, is not a "Bonanza," but its amount and reasonableness is a question of fact and must be proven by a party at trial on factors such as reasonable rate, contract, billing records, fees paid by client, tasks performed, and hours worked. See *El Apple v. Olivas,* 370 S.W.3d 757 (Tex. 2012**)** citing the eight-factor test in *Arthur Andersen **&** Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818 (Tex. 1997)**;** *City of Laredo v. Monsanto,* 414 S.W.3d 731 (Tex. 2013). Here, the arbitrary and capricious award of statutory attorney fees of $30,000 to PISD by Judge Lopez without absolutely any substantiation as to the reasonableness is so grossly in defiance of the overwhelming weight of law and the Texas Supreme Court opinions that its only purpose was to intimidate pro se plaintiffs, obstruct, and prevent these pro se citizens from appealing this case and airing PISD's dirty laundry.

**Violation of constitutional right of due process**: An attorney fees award based on no evidence or insufficient evidence of existence and reasonableness of attorney fees viz. identity of attorneys, hours worked, tasks performed, quality and difficulty of work, hourly rate and other factors laid out by the Supreme Court in *El Apple* violates plaintiffs' constitutional rights of due process and equal protection under Texas Constitution and 14th Amendment to the Unites States Constitution. The award is arbitrary, capricious, manifestly too large and unreasonable imposition of attorney fees that has no support in law.

The judgment and the award of attorney fees of $30,000 and costs should be vacated and denied.

## 8. Judge Lopez was disqualified from conducting trial

Disqualification[11] can be raised at any time and for the first time on appeal, as here, and even in a motion for rehearing. See *Buckholts Indep. Sch. Dist. V. Glaser*, 632 S.W.2d 146, 148 (Tex. 1982).

Judge Lopez was disqualified from sitting in this case and was disqualified from conducting the final trial on 10/9/2013. The standard of review for the Court in this matter is de novo. *See McElwee v.McElwee*, 911 S.W.2d 182, 185-87 (Tex. App.--Houston [1st Dist.]1995, writ denied).

---

[11] The original source for disqualification in Texas is the constitution. Article V, Section 11 enumerates the circumstances in which a judge is disqualified from sitting in a case. TEX. CONST. art. V, § 11. The grounds have essentially been restated in TRCP 18(b)(a).

**Judge Lopez conducted a meaningless trial on 10/9/2013 and rigged it in favor of defendant:**

Judge Lopez repeatedly failed to rule on trial exhibit PX1 during the trial inspite of numerous requests by plaintiffs in the one day trial. Transcript pages34, 37, 44, 74, and 204. Defendant never made an objection to PX1. Judge Lopez's misconduct in failing to rule on PX1 has caused serious and permanent harm to plaintiffs in this case. This was an exhibit which was reviewed by the 7th court of appeals in the first appeal and formed the basis of the opinion and the reason for remand in the first appeal by the court of appeals.[12] Appendix19. Thus PX1 was a critical exhibit at the trial and should have been admitted by trial court. Judge Lopez's failure to rule on admissibility of PX1 was deliberate and a gross disregard of his judicial duty resulting in a deliberate damage done to plaintiffs' case and obstruction of appeal.

The outcome was that the trial was a charade and was infected with chaos and confusion, and plaintiffs were prevented from properly and effectively presenting their case at trial concerning the deliberate violations of electronic website internet notices of PISD's meeting notices and concerning untimeliness of website notices of 22 Meetings under TOMA §551.056(b) and PISD's lack of good faith under TOMA Sec. 551.056(d).

---

[12] This Court has confirmed that PISD indeed was untimely in creating and posting internet notices in violation of TOMA §551.056(b) for 22 meetings in 2008-2009. These 22 electronic notices and their electronic properties are contained in PX1. Appendix19.

PX1 was the cornerstone and basis of not only proving the untimeliness of the website notices but proving that PISD's claim of good faith defense was fraudulent because the internet notices of 22 notices were created in May 2009 and posted to website for public viewing on 5/19/2005 after plaintiffs informed PISD of its non-compliance with §551.056(b). Judge Lopez's refusal to even rule on admissibility of trial exhibit PX1 was purposeful, calculated, and inexcusable abdication of duty that derailed the entire case of plaintiffs. Further his refusal to rule on PX1 damaged appellants' case as they were prevented and unable to present their case properly without the critical exhibit PX1 which was central to the trial in showing that PISD did not have a good faith defense and that such defense was fraudulent i.e. the create dates of the internet notices on PX1 showed that the notices were created untimely in violation of TOMA weeks after the meetings in question took place.

**Failure to conduct trial or rule on 7 Causes**: Plaintiffs rely on Argument 1 which is set forth verbatim herein. Judge Lopez deliberately improperly failed to try plaintiffs' 7 Causes of action under TOMA and abdicated his independent duty to try and rule on 7 Causes. Such misconduct brings disrepute to justice system and violated plaintiffs' absolute due process constitutional rights. Neither the district court nor the appeals court has the power to order that plaintiffs' causes of action cannot be tried.

57

**What kind of judge returns evidence filed in the court?**

Trial court conducted an evidentiary hearing ordered by this Court on lost or destroyed exhibits on 9/26/2014 to determine fault in the matter. Plaintiffs submitted documentary evidence to Judge Lopez in the hearing.[13] However, Judge Lopez ordered court reporter to return the evidence to plaintiffs after receiving it in open court. The visiting court reporter mailed the evidence to plaintiffs. Appendix17.

What kind of judge returns evidence presented in an evidentiary hearing ordered by this Court? But Judge Lopez did. Such misconduct shows that Judge Lopez lacks judicial temperament, carried animus and bias against plaintiffs, and advocated for defendant, and was unfit to preside at the trial in this case. His conduct and its severity were not known until after trial on 10/9/2013.

**Bias that denies due process** In *McClenan v. State*, 661 S.W.2d 108, 109 (Tex. Crim. App. 1983) the Court of Criminal Appeals held that in criminal cases bias might be grounds for legal disqualification if that bias was "shown to be of such a nature and to such an extent as to deny a defendant due process of law."

Due process is recognized in civil as well as the criminal context. Following *McClenan* ruling in 1983, various Texas appeals courts have recognized *McClenan*

---

[13] Curiously, Judge Lopez took possession of all trial exhibits (Transcript page 56) and exhibits PX1, PX32, PX19, PX20, and PX25 were lost or destroyed and had to be replaced through another remand and hearing in this case.

and applied the "bias that denies due process" as bias that materially implicates "personal interest," therefore meeting constitutional grounds for disqualification under Texas Constitution. See *Elam v. State*, 841 S.W.2d 937, 939 (Tex. App.--Austin 1992, no pet.) (recognizing *McClenan*); *Lovely v. State*, 894 S.W.2d 99,103 (Tex. App. --Beaumont 1995, pet. ref'd) (same); *Stafford v. State*, 948 S.W.2d 921, 924 (Tex. App.--Texarkana 1997, pet. ref'd) (same).

Thus when a judge's bias is of such nature and extent that it denies a party due process of law, as here, the judge must be disqualified under Texas constitutional grounds.

Here, Judge Lopez's bias and conduct was unprecedented and shocking as he deliberately set out to harm pro se plaintiffs and conduct a sham trial. Such conduct lowers citizens' regard and confidence in the integrity of judges and the justice system. The due process violations outlined in this motion require Judge Lopez's disqualification from the trial on 10/9/2013.

Judge Lopez was not neutral, but was advocate for PISD and casting himself in adversarial role against plaintiffs causing damage to plaintiffs' case –depriving them of causes of action and in ensuring their loss at trial. Judge Lopez was disqualified from conducting trial in this case.

**9. Voidance and Special damages:**

59

PISD's actions in 22 Meetings held in violation of TOMA should be voided. Courts have repeatedly voided actions in violation of TOMA. *Ferris v. Texas Board of Chiropractic Examiners, Supra; City of Bells v. Greater Texoma Uti!. Auth.,* 744 S.W.2d 636,640 (Tex. App.-Dallas 1987, no writ); *Point Isabel ISD v. Hinojosa,* 797 S.W.2d 176 (Tex.App-Corpus Christ 1990, writ denied). PISD's willful defiance, misconduct, and a systematic pattern and practice of TOMA violations require that special damages and sanctions be imposed on PISD.

Courts have imposed special damages, as requested here, for conscious indifference and failure to comply with the Open Meetings Act, as in this case on defendant's part. *See Wells v. Hutchinson,* 499 F.Supp. 174, 198 (E.D. Tex. 1980). Special damages in the amount to be determined by the Court should be granted to plaintiffs. Plaintiffs will produce details of hours and money spent at Court's direction in this regard.

## V. CONCLUSION

A famous U.S. President once asked his opponents "do you think we are stupid?" Citizens ask the same question to PISD. Defendant expects these pro se citizens will be long gone and forgotten. Defendant is mistaken. Appellants think Texas citizens and tax payers will be interested in this case and will insist that their government bodies function in exact and literal compliance with TOMA and that their complaints will be heard.

60

This court should not let citizens stand outside a school building in humiliation just to read meeting notices in rain, snow, heat, and in poor lighting. This Court should enforce exact and literal compliance standard or declare it dead.

The sky will not fall if PISD ratifies its actions in violation of Open Meetings Act inspite of what PISD claims. This Court should reverse trial court's judgment and enter judgment for plaintiffs on all causes of action.

## VI. PRAYER

For the foregoing reasons, appellants Rebecca Terrell and Chandrashekhar Thanedar respectfully request that the Court

REVERSE the trial court's judgment in total, vacate the award of attorney fees and costs to PISD and further deny attorney fees and costs to PISD; and

RENDER judgment for appellants; and GRANT declaratory and injunctive relief on all claims of violation of TOMA whether or not any other relief is granted; DECLARE the 22 Meetings and the actions taken in these meetings void; and DECLARE the March 26, 2009 board meeting and the action taken in this meeting non renewing and terminating Terrell's employment contract void; and ISSUE mandamus to reinstate Terrell as a teacher with full back pay and duties, pay, benefits, and privileges appurtenant thereto and prohibit PISD from preventing Terrell from resuming her duties as teacher at Pampa Independent School District; and GRANT appellants' second no-evidence and traditional

61

motion for summary judgment on all causes of action; and DECLARE the closed meeting of March 26, 2009 and any actions taken in it void, and grant the relief of making the certified agenda and/or tape recording of this closed meeting fully available to public inspection and copying and make its contents public; and ISSUE a permanent injunction against appellee PISD to prevent future violations of TOMA; and IMPOSE appropriate sanctions on defendant PISD; and DECLARE that appellants have substantially prevailed in the lawsuit; and AWARD appellants costs of litigation, attorney fees, damages, special damages including opportunity cost of appellants' time and effort, in an amount to be determined by the Court; and that Judge Lopez was disqualified from sitting in the case and from conducting final trial on 10/9/2013.

Minimally, this Court should REVERSE the trial court's judgment in total, and REMAND for a new trial on all causes of action to a different judge, ORDER discovery on remand on all causes of action with specific instructions to make SchoolCenter, BoardBook, and any other vendors or persons involved in this matter, PISD current or former employees, and related personnel to this lawsuit available for deposition at PISD's expense, and further discovery as deemed necessary by plaintiffs at PISD's expense, and vacate and deny the award of attorney fees and costs in the amount of $30,000 to PISD granted by the district court, and further DECLARE that appellants and indeed all Texas citizens are

interested persons in PISD and all public school districts under TOMA.  In doing so, appellants would further ask that the Court AWARD appellants the costs of this appeal and costs incurred in the district court.

Appellants request the Court GRANT declaratory and injunctive relief in all causes of action whether or not any other relief is granted.  Appellants further pray for all other and further relief to which they may justly be entitled to receive.

<div align="center">

Respectfully submitted,

/s/ Rebecca Terrell
_____

Rebecca Terrell

/s/ Chandrashekhar Thanedar
_____

Chandrashekhar Thanedar
Appellants

</div>

<div align="center">Certificate of Compliance</div>

I certify that the foregoing brief complies with Tex. R. App. P. 9.4 and the word count of the brief is 14,699 words exclusive of the exempted portions in Tex. R. App. P. 9.4 as counted by the MS Word program used to prepare the brief.

<div align="center">

/s/ Rebecca Terrell
_____

Rebecca Terrell

</div>

<u>Certificate of Service</u>

Pursuant to Tex. R. App. P. 9.5, I certify that a true and correct copy of the foregoing Appellants' Brief has been e-served via the Court's EFSP upon the lead counsel on March 26, 2015 as follows:

W. Wade Arnold
State Bar No. 00783561
Underwood Law Firm
P. O. Box 9158
Amarillo, TX  79105-9158
(806) 379-0364 Telephone
(806) 349-9474 Fax
Counsel for Appellee PISD

/s/ Rebecca Terrell
_____

Rebecca Terrell
Chandrashekhar Thanedar

# <u>APPENDIX</u>

1. Motion for New Trial

2. Motion for Modify Judgment

3. Motion for Reconsideration

4. Request for Additional or Amended FOF and COL

5. Plaintiffs' Original Petition

6. Plaintiffs' Second and First Supplemental Petitions

7. Created Dates of PISD's Untimely Posted Internet Notices (PX2)

8. Defendant's Answers to Plaintiffs' Interrogatories (PX8)

9. Defendant's Responses to Plaintiffs' Requests for Admissions (PX9)

10. Defendant's Answers to Plaintiffs' Second Set of Interrogatories, Requests for Admissions and Request for Production (PX10)

11. Defendant's Supplemental Answers to Plaintiffs' First Interrogatories, Requests for Production, and Requests for Admission (PX11)

12. Plaintiffs' Second No-Evidence and Traditional Motion for Summary Judgment

13. Notices for 3/26/09 meeting - physical and internet notices (PX3, PX5)

14. Notice for 3/26/09 meeting-document properties of the internet notice (PX4)

15. Suzie Jameson testimony - excerpts

16. Suzie Jameson e-mail (PX32)

17. Letter returning evidence on Judge Lopez's Order

18. Amended Notice of Appeal

19. 7th Court of Appeals Opinion in the First Appeal

20. Judge Lopez - 223rd Court Final Judgment

21. Judge Lopez - Findings of Fact and Conclusions of Law

22. BoardBook Draft Agreement (PX31)

23. Texas Open Meetings Act, Gov't Code Ch. 551 - selected provisions

# Appendix 1

## Motion for New Trial

CAUSE NO. 35621

| | | |
|---|---|---|
| REBECCA TERRELL and CHANDRASHEKHAR THANEDAR | § § § | IN THE 223<sup>RD</sup> DISTRICT COURT |
| *Plaintiffs,* | § § § | |
| v. | § § | IN AND FOR |
| PAMPA INDEPENDENT SCHOOL DISTRICT, | § § § | |
| *Defendant* | § § § | GRAY COUNTY, TEXAS |



**MOTION FOR NEW TRIAL**

TO THE HONORABLE JUDGE ABE LOPEZ:

Plaintiffs hereby file their Motion for New Trial pursuant to Rules 320-324, and Rule 329b of Texas Rules of Civil Procedure, and would respectfully show the Court as follows:

1. Plaintiffs rely on the following Appendices which are adopted and incorporated by reference as if set forth verbatim herein.

**Appendix 1**  Suzie Jameson testimony. **Attached**
**Appendix 2**  OLD website archive page on January 26, 2009. **Attached**
**Appendix 3**  View source of OLD website archive page on January 26, 2009 **Attached**
**Appendix 4**  NEW website archive page on February 5, 2009. **Attached**
**Appendix 5**  View source of NEW website archive page on February 5, 2009.**Attached**
**Appendix 6**  Plaintiffs' Affidavit. **Attached**.

Plaintiffs' trial exhibits are denoted as PX followed by the exhibit number.

2. On October 9, 2013, the Court held trial only on plaintiffs' cause of action in Texas Open Meetings Act (TOMA), Texas Gov't Code §551.056 (b) and (d) and declined to hold trial on other six causes of action in TOMA Sections 551.041, 551.043, 551.045, 551.051, 551.074, 551.101. See original petition and two supplemental petitions filed in this case. The Court signed judgment on 10/25/2013 and awarded costs and attorney fees of $30,000 by taking

judicial notice of the file. PISD refused to testify at the trial on its attorney fees, but asked the Court to take judicial notice of attorney fees.

3. For the first time at trial, in violation of discovery rules, PISD disclosed that a "third party vendor" was involved in transferring the link to its website notices on BoardBook. In addition, for the first time at trial, in violation of discovery rules, PISD disclosed the identity of the third party vendor – "SchoolCenter" which created a "new website" for PISD allegedly in January 2009 and allegedly failed to transfer said link to the new website causing non-appearance of website notices from January 15, 2009 meeting to May 19, 2009 meeting. See Appendix 1; PX 8-11.

Appendices 2 through 5 are PISD's website archive pages and view source information of PISD's website as of the dates noted i.e. 1/26/2009 and 2/5/2009, in the archive and view source pages. View source pages state software that generated PISD's website pages viz. "Adobe GoLive" software for the OLD website and "SchoolCenter" version 8.0 used for the NEW website. The newly discovered evidence clearly shows that PISD purposefully gave false and misleading testimony at trial and in its answers to interrogatories and responses to other discovery requests. PX 8-11; Appendix 1.

PISD concealed and falsified the dispositive facts that:

a. Said link in question did not exist on the OLD website which was managed by PISD itself through January 26, 2009. PISD has admitted that the TOMA internet notice did not appear on its website for its January 15, 2009 meeting because the link was removed. See PX 8-11; Appendix 2, 3.

b. PISD's OLD website was managed by its webmaster Lee Carter at least through January 26, 2009. Appendix 2 (bottom left corner) and Appendix 3 (page 2 of the appendix)

clearly identify Lee Carter as PISD's webmaster and show that Lee Carter as an employee or contractor had PISD's business email address. PISD used Adobe GoLive software at least up to January 26, 2009 and maintained its own website **well after** the time it admitted that January 15, 2009 meeting notice did not appear on its website because link was removed when PISD managed its website itself. The newly discovered evidence shows that SchoolCenter was not at "fault" as falsely alleged by PISD because as admitted by PISD the link did not exist on its website on or before 1/15/2009 causing non-appearance of the internet notice for 1/15/2009 board meeting.

c. Thus it is obvious PISD's Suzie Jameson fabricated a story and gave false testimony (Appendix 1) blaming SchoolCenter when PISD itself removed the link in January 2009 or before, on its own watch, before the new website was allegedly generated by SchoolCenter in February 2009 (Appendices 4-5).

d. PISD concealed Lee Carter's (PISD's Technology Director) role in maintaining and generating PISD's website during the time period it claims good faith under 551.056(d). Lee Carter's name was not disclosed during the discovery process in violation of discovery rules as a person who had knowledge or any role in this concerning this lawsuit. PX 8-11. Lee Carter's name appears as webmaster on PISD's website on January 26, 2009 well after PISD admitted that January 15, 2009 meeting notice did not appear on its website due to alleged link problem. Appendices 2-3.

The above newly discovered evidence is not cumulative and it could not be obtained before as the existence and identity of the "third party vendor" was concealed before, not disclosed until during the trial on 10/9/2013. Lee Carter's identity as a webmaster and Technology Director was also not disclosed until during the trial itself which is material on the

issue of good faith under Sec. 551.056(d). The newly discovered evidence clearly shows PISD managed its website when the 1/15/2009 meeting notice did not appear on its website as admitted by PISD. Obviously, SchoolCenter could not transfer to the new website what did not exist on the OLD website that PISD maintained itself with Lee Carter as its webmaster. The newly discovered evidence is material and dispositive, and is fatal to PISD's good faith claim. Because PISD failed to supplement its interrogatory answers and failed to provide correct and complete answers to interrogatories and other discovery (PX 8-11), plaintiffs were not able to obtain the above evidence before trial.

Plaintiff Thanedar testified as expert in technology matters pertinent to this lawsuit. The above evidence however is obvious to an average person. Plaintiffs affirm that "Adobe GoLive" was a software product of Adobe Systems Inc. and is an HTML editor used to maintain and manage websites by its customers. The word "Generator" in Appendix 3 means what it says i.e. PISD generated its website using Adobe GoLive. Appendix 3. The newly discovered evidence shows "SchoolCenter" was not responsible for NOT transferring or transporting said link to internet notices as alleged by PISD at trial because PISD's website did not have the link in January as admitted by PISD. Plaintiffs demonstrate the existence of factors[1] in *Jackson* and *Kirkpatrick* for grant of new trial. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809-10 (Tex. 1983); *Kirkpatrick v. Memorial Hosp.*, 862 S.W.2d 762, 775 (Tex.App.-Dallas 1993, writ denied). The weight and importance of the newly discovered evidence and its bearing with respect to evidence

---

[1] The factors are: (i) the evidence came to light since the time of trial or so late in the trial that it was impossible to present the evidence before the trial closed; (ii) it was not because of a lack of due diligence that the information did not come sooner; (iii) the new evidence is not merely cumulative to that already given and does not tend only to impeach the adversary's testimony; and (iv) the evidence is so material that it would probably produce a different result if the court granted a new trial. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809-10 (Tex. 1983).

received at trial is conclusive and is so material that it will probably produce a different result in this case i.e. PISD did not have good faith because it removed the link from its website itself before the creation of new website by SchoolCenter - PISD's Jameson's testimony at trial and its responses to discovery which were admitted into evidence being false, fabricated, and misleading. Refusal to receive newly discovered evidence and refusal to grant new trial would be manifest abuse of discretion and permanent loss of plaintiffs' substantive rights. A new trial is thus required under law on the good faith claim by PISD and an evidentiary hearing should be conducted by this Court to receive evidence in the above matters which will affirm that PISD's good faith claim was made in bad faith and is a fraud. Plaintiffs request an evidentiary hearing for the Court to receive evidence in this case on the newly discovered evidence above. The Court should grant new trial.

4. The Court clearly erred in granting $30,000 in attorney fees to PISD by taking "judicial notice of the file" as asked by PISD. Texas law has not allowed recovery of attorney fees unless allowed by statute or contract. "Absent a contract or statute, trial courts do not have inherent authority to require a losing party to pay the prevailing party's fees." *Tony Gullo Motors v. Chapa,* 212 S.W.3d 299, 310-311 (Tex. 2006). Nothing in TOMA or its pertinent case authority authorizes or empowers the Court to take judicial notice of attorney fees and to award them without receiving evidence. See TOMA Sec. 551.142.[2] Plaintiffs challenge the imposition

---

[2] TOMA Section 551.142 provides as follows:

(a) An interested person, including a member of the news media, may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body.

(b) The court may assess costs of litigation and reasonable attorney fees incurred by a plaintiff or defendant who substantially prevails in an action under Subsection (a). In exercising its discretion, the court shall consider whether the action was brought in good faith and whether the conduct of the governmental body had a reasonable basis in law.

of attorney fees as legally improper and further challenge the reasonableness of attorney fees awarded to PISD. The reasonableness of attorneys' fees is question of fact that must be proven at the trial. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 367 (Tex. 2000). Thus PISD was required to testify concerning its attorney fees. PISD refused and failed to testify on its attorney fees and refused and failed to prove them. Thus PISD forfeited and waived any claim to attorney fees. Because PISD refused and failed to prove and testify on its attorney fees, there is no evidence or insufficient evidence in the record for the Court to award attorney fees to PISD. Court's award of $30,000 has no basis in law or evidence because there is no evidence or insufficient evidence of tasks completed, hours worked, level of difficulty, identity of attorneys, reasonable hourly rates of attorneys on the case and other necessary information on which attorney fees must be based on and can be determined. Further in this regard, plaintiffs rely on and adopt and incorporate paragraph 2 of their Motion to Modify Judgment (which is filed contemporaneously) by reference as if set forth verbatim herein.

It is clearly ascertainable that the award of attorney fees in this case does not arise under Texas Civil Practice and Remedies Code (CPRC) section 38.001, thus this Court does not have power to take judicial notice of attorney fees under Tex. Civ. Prac. & Rem. Code § 38.004. See *Valdez v. Valdez*, 930 S.W.2d 725, 732-33 (Tex. App.--Houston [1st Dist.] 1996, no writ) (holding section 38.004 only applies to claims under section 38.001). Attorney fees award here is legally improper because plaintiffs have undisputedly proven their good faith at the trial as their report of the violation of Sec. 551.056(b) was the only reason said violation was finally corrected by PISD after 5 months of non-compliance with TOMA from 1/2009 to 5/19/2009. PX 8-11. Further this court sitting by assignment has no personal knowledge of all of the proceedings in this case, being the third judge in this case after Judge Waters and Judge

Vanderpool. Further plaintiffs do not have the ability to pay attorney fees, thus award is not reasonable. PISD did not plead in its original or the amended answer the required prerequisites to attorney fees as required by TOMA Sec. 551.142. PISD's first amended answer is defective as it does not contain a proper certificate of service under TRCP and PISD failed to answer plaintiffs' second supplemental petition.

This Court has no authority or power under TOMA and no inherent authority or power to impose attorney fees for any proceedings or filing in the appellate courts, with or without evidence being received. Defendant has provided no statutory support or case authority for it. Further there is no evidence or insufficient evidence of filings by plaintiffs in the appellate court on which to base attorney fees award on by this Court. Defendant made no argument concerning its attorney fees for appellate filings by plaintiffs. There is no evidence or insufficient evidence that PISD made any responses to plaintiffs' appellate filings and that they were accepted by appeals court. In fact, defendant's responses have been rejected by appeals court. In addition, plaintiffs prevailed on appeal in this case and the case was remanded back to trial court. Court's finding that plaintiffs made voluminous filings is legally immaterial, arbitrary, and capricious because plaintiffs prevailed on appeal and defendant's responses were found defective by appeals court. Thus there is no basis in law or fact for an award of attorney fees for plaintiffs' filings in appeals court. Further appeals court failed to segregate appeals court's portion of the attorney fees from trial court portion of the award and attorney fees before remand and after remand. Since, plaintiffs prevailed on appeal and were awarded costs by appeals court, no attorney fees and costs for proceedings before remand can be or should be awarded to PISD.

The attempt by PISD for attorney fees is a bald attempt to intimidate plaintiffs in not filing an appeal of this Court's judgment. Such an attempt is an outrageous affront to the purpose

of open government under TOMA and will have chilling effect on citizens and taxpayers who report violations of TOMA and seek redress. PISD has refused to testify and prove its attorney fees before this Court (or appeals court), this Court failed to receive evidence concerning attorney fees, thus PISD waived and forfeited attorney fees.

It is clearly ascertainable that PISD did not respond to plaintiffs' motions or letters whether or not they were "voluminous," thus there is no evidence that PISD ever incurred attorney fees or insufficient evidence that PISD ever incurred attorney fees and to what extent with respect to PISD's complaints about plaintiffs filings. Further, plaintiffs cannot be penalized or sanctioned for filing lawsuits or for their filings whether or not they were voluminous as they a have constitutional right to seek redress of their grievances. The plain fact is there is no evidence or insufficient evidence of PISD spending any time on plaintiffs' "filings" in this Court or in appeals court.

An attorney fees award based on no evidence of existence and reasonableness of attorney fees viz. identity of attorneys, hours worked, tasks performed, quality and difficulty of work, hourly rate and other factors; or insufficient evidence of existence viz. identity of attorneys, hours worked, tasks performed, quality and difficulty of work, hourly rate and other factors violates plaintiffs' constitutional rights of due process and equal protection under Texas Constitution and 14th Amendment to the Unites States Constitution as such arbitrary and capricious and manifestly too large and unreasonable imposition of attorney fees has no support in law or case authority. Therefore imposition of attorney fees without legal support under TOMA and without receiving evidence is not only a clear abuse of discretion but is abusive to Texas citizens and taxpayers such as plaintiffs. This Court should vacate its judgment and order new trial. PISD did not offer argument at trial or in its pleadings about whether plaintiffs

brought this suit in good faith or being a prevailing party, or whether its actions had a reasonable basis in law on all causes of action brought by plaintiffs. See Sec. 551.142. PISD failed to plead prerequisites to attorney fees in its amended answer. Sec. 551.142. PISD's first amended answer is defective as it does not have proper certificate of service under TRCP. Plaintiffs adopt and incorporate by reference their response to defendant's first amended answer and plaintiffs' special exceptions and affirmative defense to defendant's request for attorney fees and costs (which are on file) as if set forth verbatim herein.

As explained before, there is clear undisputed evidence of good faith on the part of plaintiffs in this case, thus imposition of costs is improper and unreasonable. See TOMA Sec. 551.142. PX 8-11. The judgment and award of attorney fees of $30,000 and costs should be vacated and denied and new trial ordered. PISD offered no evidence of lack of good faith on the part of plaintiffs and did not even offer an argument on it. Thus there is no evidence or insufficient evidence of lack of good faith or bad faith in the record on the part of plaintiffs.

5. The Court erred when it **denied trial** on plaintiffs' remaining six (6) distinct causes of action under TOMA Sections 551.041, 551.043, 551.045, 551.051, 551.074, 551.101.[3] See plaintiffs' original petition and the two supplements on file.

---

[3] PISD's Board of Trustees (Board) held 11 meetings **each** in 2008 and 2009 from 8/13/08 to 5/19/09. **Violations of TOMA provisions at Issue in this case:**

- **§551.051**: PISD violated §551.051 by failing to post notices of 3/26/09 board meeting and 22 Meetings in a specifically designated place - Bulletin Board in its Central Administrative Office (Central Office) as required by TOMA.

- **§551.056**: PISD violated §551.056 by failing to concurrently post internet notices of 3/26/09 board meeting and 22 Meetings on its website for prescribed time and manner.

- **§551.043**: PISD violated §551.043 by failing to post notices of 3/26/09 board meeting and 22 Meetings at a physical location for prescribed time (72 hours) and manner.

- **§551.041**: PISD violated §551.041 by failing to specify "place" (Pampa, Texas) in its notices (internet and paper notices) of 3/26/09 board meeting and 22 Meetings.

The Court stated that the appeals court remanded the case to hold trial only in the cause of action in Sec. 551.056(b) and (d). This is plainly incorrect. The appeals court did not state the causes of action on which trial should be held. See the Opinion and Mandate of the appeals court on file in this case. The appeals court did not rule on said 6 causes of action in its opinion and this Court was required to hold trial on them and specifically rule on them. The Texas Rules of Civil Procedure require that the Court rule on all causes of action and the judgment conform to pleadings. The record of trial is clear - plaintiffs did not agree to forego their right to trial on said 6 causes of action. The Court has failed to make findings of fact and conclusions of law regarding said 6 causes of action. TOMA Sec. 551.142(a) entitles plaintiffs to ruling and relief on their said 6 causes of action. Plaintiffs refer to and rely on the facts, arguments, and authorities presented and relief requested in regards to said 6 causes of action in plaintiffs' second no-evidence and traditional motion for summary judgment (filed in this case on 10/31/2012) as if set forth verbatim herein. If the Court is of the opinion that material fact question remains as to any of the said 6 causes of action, the Court was required to try them, alternatively, if the Court believes no material fact question remains, the Court is required to rule on said six causes of action. The Texas Supreme Court has demanded Exact and Literal Compliance with TOMA. *See Acker v. Texas Water Commission*, 790 S.W.2d 299 (Tex. 1990). ("The explicit command of the statute is for openness at every stage of the deliberations. Accordingly, we have demanded exact and literal compliance with the terms of this statute." [citing] *Smith County v. Thornton*, 726 S.W.2d 2, 3 (Tex. 1986); *City of San Antonio v. Fourth*

---

- **§551.101 and §551.074(b):** PISD violated §551.101 by failing to legally close the 3/26/09 Board meeting and violated §551.074(b) by deliberating on Terrell's termination in closed meeting.

- **§551.045(d):** PISD violated §551.045(d) because PISD's notices (website and physical location) of 3/26/09 board meeting and 22 Meetings were signed on behalf of the Board and posted by a person (Karen Linder) not so designated nor authorized by PISD's Board of Trustees (Board).

*Court of Appeals,* 820 S.W.2d 762 (Tex. 1991)). Thus, "substantial compliance" under TOMA, whether done in good faith or not, is no longer sufficient nor valid law in Texas. This Court should apply the Exact and Literal Standard to all causes of action in this TOMA lawsuit.

The Court's failure to rule or try the remaining six causes of action violates plaintiffs' constitutional rights under Texas Constitution Article 1 Sections 3, 13, 19, and 27, and the 14th Amendment to the U. S. Constitution. Plaintiffs request that judgment be vacated and new trial be granted on all causes of action.

6. The Court erred in denying plaintiffs' motions to exclude evidence concerning any person or third party vendor's role or involvement about which full discovery was not provided or role and involvement not disclosed during the discovery process to plaintiffs in this case including SchoolCenter and BoardBook. The Court erred in denying plaintiffs' motion to strike and exclude Jameson's testimony regarding SchoolCenter as PISD had concealed and failed to disclose its identity and role during discovery process. PISD further failed to supplement discovery concerning the identity and role of SchoolCenter concerning its good faith defense under Sec. 551.056(d).

For the first time at trial, PISD asserted that a third party vendor, SchoolCenter, made the mistake of not transporting the link to BoardBook to a new website. PISD engaged in trial by ambush in this regard by concealing 1) that a third party vendor was involved in creating a new website, 2) that this vendor SchoolCenter was responsible for the error of dropping the link to internet notices on BoardBook. PISD during discovery process represented that only Jameson and Linder had knowledge of the link problem and did not disclose that any other person or vendor was involved in either creating the new website or transporting the link to the new website. See PX 8-11; Appendix 1.

At trial, PISD admitted that it had a contract with SchoolCenter, but did not disclose its existence and the role of SchoolCenter during discovery process and failed to supplement discovery. PX 8-11. PISD divulged the identity and its claim that SchoolCenter played a central role in its non-compliance with Sec. 551.056(b) for 5 months from 1/15/2009 meeting to 5/19/2009 meeting by not transporting the link to PISD's website notices on BoardBook. PISD disclosed the identity of SchoolCenter and its role for the first time in Jameson's testimony at trial on 10/9/2013. Because PISD concealed the identity of SchoolCenter and its alleged crucial role in PISD's non-compliance with TOMA during discovery process, the Court should have excluded and struck Jameson's testimony relating to any and all evidence relating to SchoolCenter as a sanction on PISD. *Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex. 1989). Parties have an affirmative duty to supplement answers to discovery requests if an answer is no longer true and complete. TRCP 193.1, 193.5 PISD intentionally misled plaintiffs by concealing SchoolCenter's identity and role until during the trial committing trial by ambush on plaintiffs. The sanction for failure to comply with this rule is exclusion of the evidence affected by the violation. Tex. R. Civ. P. 215(5).; TRCP 193.6; See *Boothe v. Hausler* at 789. PISD failed to establish before the trial court that good cause existed for allowing SchoolCenter related evidence. *Boothe* v. *Hausler*, at 789.

At trial, PISD claimed to have paid license fees and renewal fees to BoardBook for its service to post website notices since 2007. But during discovery process PISD refused and failed to provide full and complete discovery and produce documents concerning payment of license fees and renewal fees to BoardBook. PX 8-11. PISD refused and failed to supplement answers to interrogatories, to requests for admission, and produce documents concerning license fees and renewal fees. Thus as explained above, all evidence concerning existence of BoardBook service

should have been excluded and struck from evidence at trial. See Tex. R. Civ. P. 215(5).; TRCP 193.6; See *Boothe v. Hausler* at 789. The Court erred when it refused and failed to do so in response to motions from plaintiffs. See notice of pending motions which is on file.

Because PISD failed to comply with discovery rules and concealed and obstructed justice, plaintiffs were severely compromised in their ability to show that non-compliance with 551.056(b) for 5 months was actually due to the fact PISD did not have BoardBook service during that time period and that PISD obtained it in May 2009 and retroactively posted meeting notices to its websites to conceal its non-compliance with TOMA. Similarly, because PISD concealed the identity of SchoolCenter until the trial and SchoolCenter's alleged failure in transporting "link" to PISD website notices, plaintiffs were severely compromised in this regard. In both instances, the testimony and the issues were dispositive and not cumulative because they related to the controlling and central issue of PISD's good faith under Sec. 551.056(d) and why the link to website notices was missing for 5 months in 2009. *Boothe v. Hausler*, at 789. The Court should have excluded evidence concerning SchoolCenter and BoardBook, alternatively should have granted continuance of the trial as requested by plaintiffs to conduct further discovery. TRCP 193.6(c).

7. Plaintiff moves for new trial in this case on all causes of action as there is overwhelming evidence against the Court's judgment or no evidence to support it, alternatively, insufficient evidence to support the Court's judgment in this case. Further, the record discloses the following: (1) there is complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla of evidence; or (4) the evidence conclusively established the opposite of a vital fact. See *Hawkins v. Ehler*, 100 S.W.3d

534, 539 (Tex. App.--Fort Worth 2003, no pet.); *Horton v. Horton,* 965 S.W.2d 78, 85 (Tex. App.--Fort Worth 1998, no pet.).

PISD has admitted that website internet notices of its 11 board meetings did not appear on its website from 1/2009 to 5/19/2009. It is clear from the plain language of TOMA Sec. 551.056(d) that PISD has the burden of proof to prove good faith under Sec. 551.056(d) as to why its non-compliance with Sec. 551.056(b) was in good faith for 5 long months from 1/2009 to 5/19/2009.

Karen Linder and Barry Haenisch in their testimonies engaged in surmise, speculation and had no personal knowledge concerning a "third party vendor" who they did not want to or could not identify. Their testimony thus was bare opinion, hearsay, incompetent, speculative, and immaterial as to whether PISD exercised good faith concerning its non-compliance with Sec. 551.056(b). Thus the evidence they presented was no more than scintilla, surmise, and speculation which is not legal evidence. "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence at all," *Kindred v. Con/Chem, Inc.* 650 S.W.2d 61,63 (Tex. 1983). Karen Linder's testimony was a sham because she admitted that her sworn answers to plaintiffs' interrogatories were nothing but speculation and she did not have knowledge about technical matters in question.[4] PX 8-11. Karen Linder's assertion that she "worked in BoardBook" on her computer was no more than bare opinion as PISD presented no evidence that it actually had BoardBook service during the period in question i.e. 1/2009 to 5/18/2009 or at any time from 8/13/2008 to 5/19/2009. Thus their testimonies must be

---

[4] PISD falsely represented to the appeals court that printing PDF notices, opening, closing PDF notices by themselves changed the create and modify dates of website notices. Based on this fraudulent misrepresentation, appeals court remanded the case to determine the facts. PISD now states at trial that it was just speculation on their part. This is plain obstruction of justice.

disregarded as no material fact question was raised or answered by their testimonies and because the Court was barred by rules of law or evidence from giving weight to the only evidence they offered (hearsay, bare opinion, and speculation) to prove a vital fact of good faith under TOMA.

As previously explained above, Suzie Jameson's testimony concerning SchoolCenter must be excluded and struck from evidence as a sanction for violation of discovery rules. Even otherwise, Jameson's testimony concerning SchoolCenter was no more than bare opinion and hearsay, surmise, speculation, thus does not constitute legal evidence and must be disregarded under rules of evidence. *Kindred* at 63. PISD presented no competent evidence (e.g. contract, payment of license fee, renewal fee, executed contract, check register, service correspondence, etc.) that it actually had SchoolCenter as vendor providing any kind of service. PISD and Jameson concealed the identity of SchoolCenter and its role in transporting the link in question to a "new website" allegedly managed by SchoolCenter. There is no evidence or insufficient evidence that any third party vendor including SchoolCenter was a vendor for PISD and such vendor including SchoolCenter provided any kind of service to PISD including creation of new website or transporting the link in question. PISD chose to obstruct justice instead of complying with the discovery rules, it should not be rewarded for it.

Further as explained in paragraph 3 above, the newly discovered evidence clearly shows that PISD generated its own website through 1/26/2009 and PISD has already admitted that its January 15, 2009 board meeting's website notice did not appear on its website due to alleged link being removed. Thus it is clear from PISD's own admission and newly discovered evidence that the link problem already existed on PISD's old website which it generated itself by using Adobe GoLive program by its own employee Lee Carter - webmaster and technology director. Appendices 2-5. The problem of admitted non-compliance on January 15, 2009 existed before

SchoolCenter allegedly created the new website which was in February 2009. Jameson's testimony blaming SchoolCenter for not transferring the link was false and fraudulent as the link did not exist on PISD's website in January 2009 when PISD and Lee Carter its webmaster managed its own website – hence there was no link to transfer. PISD falsified evidence at trial. Thus an evidentiary hearing is warranted in this matter to receive evidence in this case. A new trial should be granted on all causes of action. There is no evidence, alternatively insufficient evidence that SchoolCenter caused loss of link as alleged by PISD or that SchoolCenter was responsible for not transferring the link in February 2009. This is because the newly discovered evidence shows that the link did not exist on PISD's website in January 2009 when PISD managed the website. It is clear that the link was removed by PISD itself as it was not "necessary" as alleged by Jameson. PX 32; Appendix 1. At best, SchoolCenter's role is no more than speculation, surmise which is not legal evidence in this case. See *Kindred* at 63. As explained above, evidence at trial concerning SchoolCenter must be excluded. Further, evidence at trial concerning existence of BoardBook service during 1/2009 to 5/19/2009 must also be excluded. This Court should set aside its judgment including award of attorney fees and costs, order new trial and further permit discovery concerning PISD's newly disclosed existence of a third party vendor, SchoolCenter, who allegedly made the error of not transporting the "link" to the legally required internet notices. Plaintiffs are entitled to discovery concerning SchoolCenter because its existence and its role was never disclosed before the trial.

8. Furthermore, there is no evidence or insufficient evidence that PISD's non-compliance with TOMA Sec. 551.056(b) was in good faith. On the contrary, there is overwhelming

evidence that its non-compliance was not in good faith. PISD has the burden of proof, but PISD failed to meet its burden under TOMA Sec. 551.056(d).[5]

a. There is no evidence or insufficient evidence that PISD made a good faith attempt to post internet notices to comply with Sec. 551.056(b) for 11 meetings from 1/15/2009 to 5/19/2009. PISD and its staff never checked its website for each of the 11 meetings to see whether their each alleged attempt, if any, resulted in website notices actually appearing on its website. PISD (Haenisch, Linder and Jameson testimonies) admitted that it did not verify compliance during said time period. See for example, Appendix 1. There is overwhelming evidence in the record that PISD did not exercise due diligence and care for any of the meetings that took place from January 15, 2009 to 5/19/2009 because no one at PISD ever verified whether or not TOMA notices actually appeared on PISD's website. If PISD had done so, it would have immediately known and found out that notices were not appearing on its website and PISD would have presumably fixed its non-compliance with TOMA. PISD never checked its own website for compliance during January 2009 to 5/19/2009 for TOMA compliance with Sec. 551.056(b) until plaintiffs informed them of the no-appearance. This is admitted by PISD. PX 8-11. An average person with normal or average standard of care and due diligence would have checked or verified PISD's website to ensure that the required legal notices actually appeared on the new website when it was created in February 2009. In fact an average person with exercising standard care would have verified appearance of legal notices on its website for every board meeting since January 15, 2009 through 5/19/2009 (the period for which PISD admitted TOMA

---

[5] TOMA §551.056(d) provides that:
"The validity of a posted notice of a meeting or an agenda by a governmental body or economic development corporation subject to this section that made a good faith attempt to comply with the requirements of this section that is due to a technical problem beyond the control of the governmental body or economic development corporation."

notices did not appear on its website and for which it claims good faith). The trial testimonies of Haenisch, Linder, and Jameson are clear that not one of them or any one else at PISD checked even once that TOMA legal notices actually appeared on PISD's website especially after creating new website. Thus PISD did not exercise due diligence or care for 5 months in question and therefore its good faith defense fails and must be rejected. If this Court does not reverse its judgment, every government body intentionally or not, will "fail" to exercise sufficient care to comply with TOMA for months or years and still claim good faith and will be granted exception under Sec. 551.056(d), making a laughing stock out of Texas Open Meetings Act.

b. There is no evidence or insufficient evidence that PISD's website contained the alleged link to website notices <u>BEFORE</u> SchoolCenter allegedly created a new website in February 2009. Appendix 4-5. There is no evidence or insufficient evidence that negligence or incompetence on PISD's part concerning not transferring or transporting a link is a "technical problem." See Sec. 551.056(d). "Oops we forgot" is not a technical problem under TOMA.

c. There is no evidence or insufficient evidence that transferring a link to an alleged new website was "beyond the control" of PISD for 5 long months from 1/2009 to 5/19/2009. See Sec. 551.056(d). Jameson testified that failure to transfer the link in question was an "oversight" and negligence. Appendix 1. There is overwhelming evidence that the link problem in question would have been fixed had PISD checked its "new" website just once in 5 months as to whether legally required internet notices were actually appearing on its website. There is overwhelming evidence that PISD showed conscious indifference at best or bad faith and fraudulent misconduct concerning its legal duty to comply with TOMA Sec. 551.056(b).

The problem of link was only fixed when plaintiff Thanedar reported nonappearance of notices on 5/15/2009 to PISD in good faith. PX 8-11. Without plaintiffs' report in good faith,

PISD could have continued for several more months or even indefinitely without complying with Sec. 551.056.

This government body presumes that the Court would take no action on its blatant misconduct and concealment of evidence and Texas citizens will never find out about its bad faith. PISD is mistaken. This Court should not condone such conduct.

9. The Court erred in denying plaintiffs' motions for continuance of trial. Plaintiffs adopt and incorporate by reference their application for continuance of final trial only but not of pending motions (filed on or about 10/4/2013) and plaintiffs' expedited motion to reset trial date of October 9, 2013 (filed on or about 9/20/12013) as if set forth verbatim herein. Thus continuance was proper and this Court should grant this motion for new trial.

Further continuance of the trial was proper due to the death of plaintiff Thanedar's mother (Terrell's mother in law) and Thanedar's travel to India during the month of September 2013 leaving on 9/6/2013 and returning on 9/25/2013 less than two weeks before the trial. Due to death in the family, plaintiffs were thus not prepared physically or emotionally for the trial on 10/9/2013. Further, as explained before, crucial dispositive evidence concerning existence, identity, and role of third party vendor SchoolCenter was introduced during trial in violation of discovery rules. Thus continuance was proper in this case. TRCP 193.6(c).

10. The Court erred when it stated during trial that it will rule on admissibility of PX1 (22 board meeting website notices at issue in this lawsuit and their electronic document properties on Compact Disc) at a later time but failed to do so during the length of 1 day trial on 10/9/2013. Plaintiffs reminded and urged the Court to make a ruling however the Court failed to do so thereby impliedly denying Admission of PX1. Plaintiff however made offer of proof, further stating that the CD in question was relevant in determining compliance with TOMA Sec.

551.056 for the 22 meetings in question and the electronic properties on the CD were authenticated by Judge Waters. PISD did not make a specific valid objection. The CD in question is in the record and the record thereon has been reviewed on appeal by the appeals court. The Court clearly abused its discretion when it refused to rule on admissibility of PX1 As PX1 is central to violation of TOMA Sec. 551.056 and all other causes of action in plaintiffs' live pleadings. PX2 which is the summary of PX1 was admitted in the record. There are other errors in admission of plaintiffs' trial exhibits e.g. PX32 which was actually admitted but does not appear as admitted exhibit in record, thus the error should be corrected. The Court further erred in not admitting plaintiffs Exhibit number 23 (concerning violation of Sec. 551.051), Exhibit number 25 (salary schedules - back pay and benefits), Exhibit 26 (disclosures to plaintiffs), Exhibit 27 (violation of Sec. 551.041 – requirement of Place) as these relate to plaintiffs' causes of action the Court refused to try or hear. Given the weight and importance of these matters represented by the not-admitted exhibits above, led to incorrect judgment in this case. Further refusing to admit PX1 and ignoring electronic properties of notices contained therein which is at the center of violation of Sec.551.056 led to rendition of incorrect judgment. Thus, the Court should grant new trial on all causes of action.

11. The Court erred in denying post-remand discovery including motions to compel discovery. Plaintiffs have repeatedly made arguments before the Court that post-remand discovery is consistent with the opinion and mandate of the appeals Court.[6] Plaintiffs refer and

---

[6] This case was remanded by the 7th Court of Appeals for the sole reason to determine whether there is evidence for PISD's "good faith" claim under Texas Open Meetings Act (TOMA) with respect to the untimeliness of its website notices posted on BoardBook and whether the "create dates" of its website notices changed due to "printing." See 7th Court of Appeals Opinion (pages 5-6) and Mandate on file; and Texas Gov't Code §551.056 (b) and (d). On remand, defendant has repeatedly refused to supplement its answers to interrogatories or other discovery requests. See PX 22 (letter requesting supplementation from PISD).

rely on arguments made in the following motions which are adopted and incorporated by reference as if set forth verbatim herein: Second no-evidence and traditional motion for summary Judgment, Motion to Reset Trial, Application for Continuance, Plaintiffs' Motion for Ruling on Post-Remand Discovery, to Exclude, for Inferences, to Compel discovery from defendant, and For Sanctions Filed on 6/5/12, Motion to Vacate Court Order and for Oral Depositions and Additional Discovery Filed on 11/16/2012. As explained before, without post-remand discovery, plaintiffs' ability to present their claims at trial was severely compromised causing permanent loss of their substantial rights. In addition, Texas citizens and taxpayers are entitled to know whether PISD's good faith defense under TOMA 551.056(d) was a fraud on them and on the appeals court and this Court. Post-remand discovery would have determined that question properly and would have advanced the cause of open government. This Court should not close its eyes to the important purpose of Open Government under TOMA.

12. The Court erred in ruling for defendant PISD on the grounds that

a) Non-compliance with TOMA Sec. 551.056(b) was excused because legally required website notices "appeared on Google" or were "available on Google," for public and

b) Terrell attended the 3/26/20009 board meeting, spoke at the board meeting and was aware of the proposed termination of her contract.

Both grounds Court cited in ruling for PISD are completely irrelevant as a matter of law and must be disregarded and have no legal support whatsoever either statutorily in TOMA or in case law. TOMA mandates that the internet website notices for a government body's board meetings must appear concurrently on the government body's website. See TOMA 551.056(b). There is no legal support for the proposition that the website notices can appear "on Google" and meet the requirements of Sec. 551.056(b) or (d). PISD's website notices appearing "on Google,"

even if true, is legally irrelevant in meeting the good faith exception under Sec. 551.056(d). Testimony by Jameson in this regard is hearsay and speculation and must be disregarded.

Similarly, the case law is clearly established – Texas Open Meetings Act is not a scheme to provide due process to individuals. The Open Meetings Act is not a legislative scheme for service of process; it has no due process implications. Rather, its purpose is to provide "openness at every stage of [a governmental body's] deliberations." *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 300 (Tex.1990). *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762 (Tex.1991). Thus it is legally irrelevant whether or not plaintiffs Terrell and Thanedar knew about the 3/26/2009 board meeting and whether they attended the meeting or not. The Court should not make new law in this regard.

Concerning findings of fact made by the Court, there is either no evidence or insufficient evidence to support them or they are not legally relevant or material. For example, there is no evidence or insufficient evidence that PISD ever paid license fee or renewal fee for service to BoardBook or SchoolCenter as PISD refused and failed to produce such information in response to discovery requests by plaintiffs. To the contrary, BoardBook draft contract (PX31) clearly states that unless license fee is paid or purchase order provided, the contract would not be effective. See PX31. PISD provided no such evidence at trial. As explained before, PISD's bare opinion at trial in this regard is not legal evidence. See *Kindred, Id.* At trial, PISD's testimony concerning SchoolCenter was purposefully misleading, evasive, and obstructive hence must be deemed not credible.

Concerning conclusions of law made by the Court there is simply no evidence in support or insufficient evidence in support of them. For example, there is no evidence or insufficient evidence that internet notices independently appeared on either BoardBook website or on

Google. In addition, such evidence even if established would be legally irrelevant as there is no statutory support nor case authority in support for such proposition. The Court's finding of fact and conclusion of law that an unnamed third party vendor was at "fault" is legally invalid as the Court does not even identify the name of the vendor, certainly because there is no evidence or insufficient evidence as shown above that said link even existed on PISD's OLD website before the alleged unnamed third party vendor generated the new website. Plaintiffs refer to paragraph 3 above and repeat it herein. There is no evidence or insufficient evidence for Court's finding and conclusion that new website was created in January 2009. There is conclusive evidence because of PISD's admission in this case that said link did not exist on PISD's old website in January 2009 when 1/15/2009 board meeting notice did not appear on PISD's website in violation of Sec. 551.056(b). There is no evidence or insufficient evidence that a third party vendor was at fault for not transferring said link to the new website and there is conclusive or sufficient or overwhelming evidence that PISD removed the link itself because it believed it was not "necessary." See PX 32.

For the above reasons, the trial on 10/9/2013 was tarnished by new allegations of facts introduced for the first time in 4 1/2 years in violation of discovery rules, gross hearsay in violation of evidence rules presented and admitted as evidence over plaintiffs' objections, defendant's unseemly defamatory tactics against plaintiffs by introducing irrelevant matters into evidence in violation of rules of evidence to create bias in the record and before this judge, all of which resulted in trial by ambush and in miscarriage of justice. The trial was neither fair nor impartial. Thus the judgment should be set aside and new trial ordered on all causes of action in the interest of justice and good cause.

## Prayer

FOR THE FOREGOING REASONS, and in the interest of justice, fairness, and good cause, plaintiffs respectfully request that the Court vacate the judgment and vacate the award of attorney fees and costs entered in this case, set this motion for hearing, conduct an evidentiary hearing on newly discovered evidence, grant this motion, and grant new trial on all causes of action. Plaintiffs further request that Court grant all other and further relief, at law or in equity, to which they may justly be entitled to receive.

Respectfully submitted,

Rebecca Terrell

Chandrashekhar Thanedar, Plaintiffs
6503 Dancing Ct. San Antonio, Texas 78244
(956) 445-3107; (512) 271-6840 Fax
rterrell152@gmail.com

## CERTIFICATE OF SERVICE

The undersigned certify that a true and correct copy of the foregoing document was served upon the following by USPS Priority Mail on November 21, 2013 to W. Wade Arnold, Andrea Gulley, Underwood Law Firm, P. O. Box 9158, Amarillo, Texas 79105-9158. Phone: 806.376.5613, Fax 806.379-0316, Attorneys for PISD.

Rebecca Terrell
Chandrashekhar Thanedar

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUME
TRIAL COURT CAUSE NO. 35,621

REBECCA TERRELL and ) IN THE 223rd DISTRICT
CHANDRASHEKHAR THANEDAR, )
                              )
            Plaintiffs,       )
VS.                           ) COURT, IN AND FOR
                              )
PAMPA INDEPENDENT SCHOOL      )
DISTRICT,                     )
            Defendants.       ) GRAY COUNTY, TEXAS

*****************************************************************

EXCERPT TESTIMONY OF SUZIE JAMESON

*****************************************************************

On the 9th day of October, 2013, the following proceedings came on to be heard in the above-entitled and numbered cause before the HONORABLE Abe Lopez, Judge presiding by assignment, held in Pampa, Texas, Gray County, Texas:

Proceedings reported by computerized stenotype machine; reporter's record produced by computer-assisted transcription.

KAREN MORRIS, TEXAS CSR #334
Official Court Reporter - 223rd District Court
Gray County Courthouse
Room 302
Amarillo, Texas 79066

---

APPEARANCES

MS. REBECCA TERRELL and
MR. CHANDRASHEKHAR THANEDAR
6503 DANCING COURT
SAN ANTONIO, TEXAS   78244

PRO SE PLAINTIFFS.

    -AND-
MR. WADE ARNOLD and
MS. ANDREA GULLEY
UNDERWOOD LAW FIRM
P.O. BOX 9158
AMARILLO, TEXAS   79105-9158
(806) 379-0364

ATTORNEYS FOR DEFENDANT.

Appendix 1

CHRONOLOGICAL INDEX

October 9, 2013                                          PAGE

Appearances........................................ 2
Called for hearing................................. 5

WITNESSES:

SUZIE JAMESON

        Direct Examination by Mr. Thanedar...... 5

End of requested excerpt........................... 33
Court Reporter's Certificate....................... 34

EXHIBIT INDEX

EXHIBIT NO.    IDENTIFICATION          OFFERED    ADMITTED

NONE OFFERED OR ADMITTED IN THIS VOLUME.

EXCERPT PROCEEDINGS:

October 9, 2013

(All sides present, in open court:)

THE COURT: Who's your next witness, Mr. Thanedar?

MR. THANEDAR: Yes. We would like to call Ms. Jameson, please.

MR. ARNOLD: Suzie Jameson.

THE COURT: Just over here, Ms. Jameson. You may be seated.

THE WITNESS: Thank you. Yes, sir.

SUZIE JAMESON,

having been first duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. THANEDAR:

Q. Ms. Jameson, good afternoon.

What is your current position with Pampa Independent School District?

A. My current position, I am the director of instructional technology.

Q. How long have you been in that position?

A. Since June 1st.

Q. June the 1st of this year?

A. Yes, sir.

Q. And before that, what was your position?

A. I was the director of technology.

Q. Would that also include director of instruction and technology?

A. Yes, sir.

Q. Was this a demotion for you?

A. No, sir.

Q. How long were you director of technology at Pampa ISD?

A. Five years and two months.

Q. So it would be from about 2008 to 2013?

A. Yes, sir. From April of 2008 until May 31st of 2013.

Q. And as director of technology, did you ever post website notices on Pampa ISD's website?

A. Yes, sir.

Q. How long was it? Meaning, for how long a period of time did you do that?

A. The entire time I was director of technology the website was my responsibility.

Q. Did you -- well, my question was: Did you personally post website notices to the website?

A. I posted a lot of things to the website.

Q. Not -- I'm sorry. I was talking about notices of board meetings to Pampa ISD's website?

A. Yes, sir, I did.

Q. Okay. So how long was it, from 2008 through what period of time?

A. During the whole time I was responsible for the website, and then there were a couple of times in the past year that the Boardbook website would be down, and I would post the meeting notices directly to the news and event portion of the Pampa ISD's website.

Q. So when was that, is my question.

A. I'm not -- I'm not sure exactly the dates, but I -- I know that we had an occasion -- I believe it was in April of this current year that that Boardbook website was going to be down for maintenance, and so I posted that notice.

Q. In 2008, did you prepare the notices? By notices I really mean the board meeting notices, not the other notices.

A. No, sir, I did not.

Q. Did you, in 2009, prepare any board meeting notices?

A. No, sir, I did not.

Q. Did Ms. Linder ever come to you and say post this website notice on the website?

A. No, sir.

Q. What kind of technology education do you have?

A. I have a degree in management information

systems, and a master's degree in educational technology.

Q. Does that include website management?

A. No. I've never had a class on website management.

Q. All ready. Now, were you ever involved in -- in Boardbook -- Boardbook service in any way?

A. No, sir.

Q. And you are familiar when I say Boardbook what that product is?

A. Yes, sir. I have been on that site and looked at board notices and minutes from board meetings, but I have never actually logged on. It is a public site.

Q. You mean, you have not logged -- you have not logged into Boardbook -- logged in information as a PISD user. Correct? Is that what you're saying?

A. That's correct. I do not have a log in. I have only been on the public portion on that site.

Q. Like -- like -- like people would click on meeting notices --

A. Yes.

Q. -- and see --

A. Yes.

Q. -- meeting notices on Boardbook website. Correct?

A. Yes, sir.

Q. Did you have any Boardbook training at all?

A. No, sir.

Q. Did you -- do you know how the Pampa ISD's website notices were posted on to -- on to either Pampa ISD's website or Boardbook's website for a public viewing? Do you have understanding of that process?

A. I have understanding based on what I have been told. I do not have personal knowledge of that.

Q. And you have not really -- and you testified that you haven't really been involved in that process. Correct?

A. I'm sorry. What?

Q. And you have testified that you haven't personally been involved in that process?

A. That's correct.

Q. Do you know -- you have any information concerning a link between Pampa ISD's website and the Boardbook website?

A. Yes, sir.

Q. Did you say you worked for Boardbook before?

A. No, sir.

Q. Okay. Can you describe to me what that link looked like? Was it a program? What was it exactly?

A. That link is a hyperlink on the Pampa ISD's

website that says -- I don't know -- board meetings or board information. I'm not sure what it says, but when a person clicks on it, it takes them to the Boardbook website which is a public site, and allows them to look at prior meetings and upcoming meetings, and the notifications for those.

Q. Was the -- was that click that you do on, was it meeting information by any change?

A. I'm sorry?

Q. Meeting information?

A. Upcoming meetings. Notice of the meetings, yes.

Q. And were you responsible for maintaining that link?

A. Yes.

Q. And what did you do as a person who maintains that link?

A. Currently?

Q. Oh, no. I'm talking about in the time period of 2008, 2009, if you recall.

A. In 2008, when I took over as technology director?

Q. In June? About that time.

A. April --

Q. April?

A. -- is when I took over. We began the process of finding a company that could maintain our website, because my predecessor was very skilled in creating and maintaining websites, and spent a lot of time doing that. I do not have the skills that he had.

Q. And what was the name of that company?

A. We -- we went through a formal bid process, and we finally settled on a company called SchoolCenter.

Q. SchoolCenter? Is that a company located in -- in which city?

A. I am not sure which city the -- the company is located in. They -- they submitted a formal bid, along with many other companies.

Q. What -- what was the time period that they were hired?

A. (No verbal response.)

Q. What was the time period they were hired in?

A. I believe, if I recall correctly, they were hired around July 1st of 2008. And we went through a series of meetings and planning with a -- what we called a go-by date of January of 2009 for the new website.

Q. Do you recall the name of the -- name or names of people that you dealt with at SchoolCenter?

A. The sales person that I dealt with at that time, her name was Angela and I don't recall her last

name.

Q. It was -- it was a sales person you said?

A. I believe so, yes.

Q. And who was the technology person at SchoolCenter?

A. I don't know.

Q. But you -- but you were the liaison with SchoolCenter?

A. Pardon me?

Q. You were the liaison with the SchoolCenter?

A. Yes, I was.

Q. You don't recall the name of the techno- -- technology person that created a new website for you?

A. They have a team of programmers, and I don't recall the names of those.

Q. Do you recall the name of any person that you talked to, like -- like a technologist or technologist basis? Any person?

A. No, I don't.

Q. Now, that team consisted of how many people?

A. I don't know. I've never had a face-to-face meeting with them.

Q. Oh. You talked to them over the phone?

A. Yes, sir.

Q. How many -- was it like a conference call with

them?

A. I don't remember exactly. I -- most of my conversations were with Angela.

Q. But she's not a technology person. Correct?

A. She's not a programmer.

Q. Now, for SchoolCenter -- correct me if I'm wrong, was interested with the responsibility of changing the website of Pampa ISD. Correct?

A. Yes.

Q. Did you submit to them specifications of data, how to change the system from old to new, that type of technical details as the technology director? Did you pass on that information to them?

A. They specialize in websites for school districts all over the country, so we provided them with the content from our previous website, the articles that we had already posted, the -- all of the data, and they went through that information and created the new site.

Q. They never came to Pampa ISD to have meetings with you?

A. No, they did not.

Q. So you submitted them information over -- over e-mails?

A. Yes, sir.

Q. Okay. How many links does Pampa ISD have with

respect to the variety of different websites that are accessed through the Pampa ISD's website?

A. Thousands.

Q. Did you give them a list?

A. Did I give them a list?

Q. Yes.

A. No. They had access to the previous website.

Q. So they downloaded -- apparently, they -- they worked with the access to your system, collected the information and created a new website. Right?

A. Yes.

Q. Okay. Did you -- you said they created a new website in January of 2009?

A. Yes.

Q. What time -- do you recall any date in particular?

A. I don't recall the date.

Q. And this was a brand new website. Right?

A. Yes, sir.

Q. Was -- was the website -- was cleared -- was there an automated process of validating data conversion?

A. I'm sorry. What?

Q. Was there a process of convert- -- of validating data conversion from the old website to the

new website? Do you know?

A. Yes. There was -- there was some data validation process. The different campuses looked at their -- their sites, and made sure that their documents and the principal's message and that type of thing was posted correctly.

Q. And you are aware of a data validation process where the conversion checks with the old data and creates an error report if there's any, for example, errors?

A. That is true in a data base conversion type situation; however, we're not talking about that kind of conversion. We're talking about more of a literal text conversion. Taking the text from one website, and most of the time using something as -- similar to a copy and paste, where you copy it and then paste it into the body of another web page, so there would not be any type of data validation where reports could be generated in that matter.

Q. Just copied text from the old website to the new website is what you're saying?

A. Basically, yes.

Q. Now, did you personally do any -- any work yourself to check the new website whether it was working well or not working well, as the technology director?

A. I coordinated the work among the campuses and the departments making -- they were supposed to make sure that their data was there correctly.

Q. Did you work with Karen Linder the -- on anything that she was doing?

A. No, I did not.

Q. Were you aware that there was a link to the board meeting notices?

A. No, I was not --

THE COURT: I'm sorry. I didn't hear -- I didn't get the question.

MR. THANEDAR: I'm sorry.

Q. (BY MR. THANEDAR) Were you aware that there was a link on the old website that -- that provided board meeting notices for public viewing?

A. No, I was not.

Q. You were not aware that the old website had a link to board meeting notices?

A. No.

Q. Did Karen Linder tell you there was a link? Did she ever say that there was a link on the old website that took a public person -- a public citizen to Boardbook website for viewing of the meeting notices?

A. When it was brought to her attention that the link was was no longer on the -- or was not on the new

website, then she contacted me.

Q. And that was the first time you were aware that there was in existence a link of any kind on the old website. Correct?

A. Of that type, yes, sir.

Q. You have really no personal knowledge of that link, do you, the link of -- link that connects a -- a public citizen to a board meeting notice for Pampa ISD?

A. I do now.

Q. But not at that time?

A. Not at that time.

Q. I understand. I'm only talking about the time period.

A. No, sir.

Q. Now, when did Karen Linder contact you that there was a problem with web notices not showing up?

A. I am not positive of the date. I know that -- I believe you brought it to Karen's attention that the notices were not posted on the website, and she called -- she contacted me to let me know that there was an issue there.

Q. What did she say?

A. I don't recall.

Q. Did you have a telephone conversation with her concerning the technology problem, or how did you deal

with it?

A. I don't recall what type of conversation Karen and I had, but when it was brought to my attention we rectified the situation.

Q. You contacted the SchoolCenter. Correct?

A. Yes.

Q. And did you send them an e-mail of some sort?

A. I don't recall if I sent them an e-mail. Probably just to give them the link -- that would be easier than a telephone conversation, to provide the direct link, but I don't recall exactly how I -- how I let them know.

Q. So the people who actually fixed the problem were the SchoolCenter. Correct?

A. Yes, sir.

Q. It was not you?

A. Right.

Q. You did not have any personal knowledge about how to fix the school link, do you?

I'm sorry. You did not have personal knowledge of how to fix the link onto the new website, do you -- did you?

A. I know how to fix the link. I do now.

Q. Right. Yeah. I understand. I'm not talking about now, I'm just saying at that time you did not

know --

A. Right.

Q. -- how to fix that problem. Correct?

A. Right.

Q. Do you know who you talked to at SchoolCenter, in fixing that link?

A. No, I do not. I don't recall if I e-mailed or called. And I don't -- if I sent an e-mail, I sent it to Angela; but I don't recall exactly what that communication was.

Q. I have an e-mail here from you marked PX-32 that I would like to show you, Ms. Jameson.

MR. ARNOLD: May I see it?

MR. THANEDAR: Yes. I'm sorry.

MR. ARNOLD: Okay.

Q. (BY MR. THANEDAR) Are you familiar with this e-mail that you sent Karen Linder?

A. Now that you hand it to me, yes.

Q. Now -- and this is an e-mail that you sent as an e-mail response to Ms. Linder; isn't that correct?

A. It appears so. It looks like she -- she e-mailed me and I responded.

Q. Okay. Now, can you read, Ms. Jameson, the small paragraph that starts with the star --

A. Uh-huh.

Q. -- for the Court, please?

A. (Reading) Also, I apologize for not having the link on the site. I've added it to the school board's page. There were lots of things on -- that were on the old site that I didn't realize needed to go on the new one.

Q. Now, earlier you testified that you did not know anything about the link, did you?

A. Pardon me?

Q. Earlier you testified, Ms. Jameson, that it was not you that fixed the link; isn't that correct?

A. That's what I said.

Q. Now, that doesn't -- you didn't -- you don't say that here, do you, in this e-mail?

A. Well, when -- when I say I have fixed it --

Q. It wasn't you that fixed it, did you (sic)?

A. I don't -- no. No, it was not, but I made sure it got fixed. So I took responsibility for making sure that it was done.

Q. But the words here you used were, I fixed -- I'm sorry. The words you used were, I have added it on the school board page. You did not say, I got somebody else to do it. You said I have added it on the school board page. You didn't really add it yourself, did you?

A. No, sir.

Q. Now, would you tell me when you said here in this e-mail, there were lots of things that were on the old site that I did not realize needed to go on the new one. You are really referring to the link to the board meeting notices, aren't you --

A. I'm --

Q. -- as one item?

A. As one item, yes.

Q. Can you tell me what are the lots of things that you're referring to that were on the old site that you did not realize needed to go on the next one -- on the new one?

A. Can I tell you what they are?

Q. Yeah. Can you give me some examples that did not get transferred to the new website?

A. I don't recall exactly what they are.

Q. But there were lots -- lots of such links, based on your e-mail. Correct?

A. That's what the e-mail says, yes, sir.

Q. What was the explanation that SchoolCenter gives you why the link was not transferred?

A. I don't recall.

Q. And you don't recall the team or the name of the person that you talked to there?

A. No, sir.

Q. Do you know how they fixed it, in technology terms?

A. Yes, sir. When you put a link on a website, you put text in whatever you want the link to say. You know, board postings, or board agenda, or whatever it says, and then you create a hyperlink, using hypertext transfer protocol to point that particular bit of text to the other website that actually contains the document or the information.

So we did not create the document or the information there on our page, we created a convenient way to jump to that information that was already created somewhere on the Internet.

Q. But what you're describing is something you didn't do yourself, did you?

A. That's correct. I did not.

Q. You really have no personal knowledge or experience in doing that, do you?

A. I have experience doing that --

Q. But not --

A. -- I did not do it for this site.

Q. -- not the matter that we're talking about here?

A. That's correct.

Q. In your e-mail you say, Ms. Jameson, that I did

not realize needed to go on the new one. Why did you think that there was no need for this particular link to go onto the new one?

A. I didn't specifically think there wasn't a need for the link. I did not realize it was one of the things that had gotten left off.

Q. Well, I was just asking you, if you recall. Why did you think it was not needed on the new website, by your own e-mail here? Had -- was -- if you -- if you have a reason for it?

MR. ARNOLD: Objection, Your Honor. She just testified that's not what she meant by that. She meant that these things were left off, not that they were not needed. That was her testimony.

Q. (BY MR. THANEDAR) Well, I'm not sure -- well, you can -- you can testify exactly what you mean by, I did not realize needed to go on the new one. And how did you come to that understanding?

A. I'm sorry. I don't understand your question.

Q. My question is: On what basis did you think that the link to the school district's meeting notices was not needed?

A. I didn't think that the link to the meeting notices was not needed. I did not realize that it was not there and was needed on the new site.

Q. Well, didn't you -- didn't you just state that there were thousands of links on your website?

A. Yes. There are thousands of links on our website.

Q. And how would you know something was needed or was not needed if, in deed, it was not needed?

A. I -- I don't suppose I would know for certain if one of those links was needed or not needed. My wording here to me says that I did not realize it was left off and was needed or necessary for the new site.

Q. And that understanding of yours was based on what information, that links would not be needed?

If they existed before, what would be the basis for these links not being needed --

A. I didn't --

Q. -- on the new one?

A. I didn't mean that those links were not needed, I meant they were left off and I did not realize that they were left off and they are necessary.

Q. Well, Ms. Jameson, that's not what you said here, if I could just read to you.

MR. ARNOLD: Your Honor, I'm going to object as argumentative, and asked and answered. The witness has answered this three or four times now.

MR. THANEDAR: Well --

367

THE COURT: Sustained.

Q. (BY MR. THANEDAR) Do you recall, Ms. Jameson, that you tried -- whether you wrote any other e-mails to Karen Linder about this problem?

A. I don't recall.

Q. Did you talk to her?

A. I don't recall.

Q. Did Mr. Haenisch talk to you about this problem?

A. I don't recall that either.

Q. You didn't call him and inform him in any way that there was a problem regarded fit -- through SchoolCenter?

A. No, sir. Not that I recall.

Q. Do you know how long a period -- a period of time that the website notices did not appear?

A. I don't know how long. I know that it was rectified by May 19th, 2009, based on this e-mail.

Q. Did Ms. Linder -- did you tell Ms. Linder how you got it fixed?

In other words, did you tell her -- did Ms. Linder know about the third party vender, SchoolCenter?

A. I don't know if Ms. Linder knew about the third party vender, SchoolCenter, or not. That was a contract that the district entered into, and the superintendent

signed the contract.

Q. Ms. Linder is the superintendent's secretary. Correct?

A. That's correct.

Q. And she's in charge of posting notices for the board meetings. Is that correct?

A. Yes, sir.

Q. Did she ever tell you that this particular link needs to be transferred over to the new website in the form of an e-mail; a telephone conversation?

A. Only the one that's on this piece of paper, the May 15th.

Q. So she sent you an e-mail after, I, meaning Mr. Thanedar, talked to Ms. Linder about the problem. Correct?

A. That's correct.

Q. You had no communication with her that you recall from January, 2009 to let's say the middle of May 19th, 2009. Correct?

A. Regarding this issue, no.

Q. Correct. I'm merely talking about just this issue.

Who else at Pampa ISD knew about SchoolCenter -- what SchoolCenter was doing?

A. The business office. The business manager,

Danny Seabourn. He was on the contract and the choosing of SchoolCenter. Other people in the technology department.

Q. At that time, though, Carol Fields was the director of finance, wasn't she? That was not Danny Seabourn, was it?

A. You're right. That was Carol Fields. She had knowledge of it.

Q. What was the title of Danny Seabourn, at that time? I'm talking about 2008. Let's say the first quarter of 2009.

A. I'm not sure what his title was at that time.

Q. What is Danny Seabourn's title now, today?

A. He is chief financial officer for Pampa Independent School District.

Q. How long has he been in that position, do you know?

A. I'm not sure exactly.

Q. But he was involved in choosing SchoolCenter as -- in what capacity?

MR. ARNOLD: Objection; relevance, Your Honor.

THE COURT: Sustained.

Q. (BY MR. THANEDAR) In what capacity was Carol Fields involved in choosing SchoolCenter, or

working with them?

MR. ARNOLD: Objection; relevance, Your Honor.

THE COURT: Sustained.

MR. THANEDAR: Well, the relevance, Your Honor, is the fact that Carol Fields was the director of finance, and she would have to pay SchoolCenter, and that was -- you know, if you know. That was the basis for asking the question.

THE COURT: You don't have to answer the question. I've sustained the objection.

Q. MR. THANEDAR: All right.

Q. (BY MR. THANEDAR) Ms. Jameson, has this problem occurred again at Pampa ISD?

A. What problem would that be?

Q. The link being severed.

A. No, sir.

Q. Would you call this problem, a link being severed or not -- what -- what kind of description would you give this problem?

A. It was a missing link.

Q. A missing link. And this is a problem with the vendor not transferring that link. Correct?

A. That's correct.

Q. Was it your understanding that this was a --

this was a problem that was -- was it your understanding that this was a problem of just negligence? What type of problem would you call it, as a technology person?

A.  It was an oversight.

Q.  It was an oversight, plain and simple oversight.  Correct?

A.  Pardon me?

Q.  It was a plain and simple oversight.  Correct?

A.  That's correct.

Q.  As a technology person you would call that.

Now, the fact of putting the old link on the new one, what kind of technical difficulty is that?

A.  When they put the link --

Q.  Well, no.  I mean, in terms of just copying the old link onto the new website, from a scale from one to ten, how would you rate it?  If you're a technology expert or a knowledgeable person, how would you rate the difficulty level?

A.  It's not difficult.

Q.  It's -- it's just simple negligence, you would say?

A.  It was an oversight.

Q.  Would negligence be a good word for it?

MR. ARNOLD:  Asked and answered, Your Honor.  Objection.

THE COURT:  Sustained.

Q.  (BY MR. THANEDAR)  Did you ever write an investigative report on this issue?

A.  Pardon me?

Q.  Did you write any investigative report on this issue?

A.  No, sir, I did not.

Q.  Did anybody ask you about it?

A.  Other than this communication right here, no, sir.

Q.  No one at Pampa ISD was interested in asking you why were the board meeting notices not posted for five months?

A.  I would like to point out that the board meeting notices are posted.  They are published on the Boardbook website.  And if a person goes to any search engine, such as Yahoo or Google, and looks for those they could have found them.  We did not have anyone point out to us that the link was missing, even though it was not brought to our attention until May 19th.

Q.  Except myself.  Correct?

A.  Right.

Q.  Mr. Thanedar.

How do you know before January of 2009, or do you, that Pampa Independent School District's website

notices actually appeared on the website of Boardbook, or do you know, personally, that they did?

A. I had access to the old server, which housed the old --

Q. Well, I'm only talking about at that time. I'm not --

MR. ARNOLD: Your Honor, I'm going to ask that she be allowed to finish her answer, first.

MR. THANEDAR: Well, I'm just kind of --

Q. (BY MR. THANEDAR) I knew what the issue was that you're -- you may be referring to what you know now. I'm just asking --

A. No, I'm not referring to what I know now. I'm telling you how I knew --

Q. Okay.

A. -- they were there.

Q. Fine.

THE COURT: Go ahead and answer the question.

A. When -- when it was brought to my attention in May, I had access to the old data from the old website, and I went into that old website and found the link on the old website, and was able to give that data, URL, the uniform resource locator, the link to SchoolCenter, so that they could put that link on the new site.

Q. (BY MR. THANEDAR) Well -- well, my question really was, how do you know at that time, meaning before January, 2009, that they were actually there?

I -- I understand that you said after the problem occurred you went back and saw it, but did you personally ever check by clicking on meeting information tab that you were actually -- were able to view the meeting notices before January, 2009 on the Boardbook website?

A. No, sir. I never clicked that link. I never had cause to do so.

Q. Right. That -- that was my question. I mean, the reason for explaining was that I was not asking you whether you went back and saw the problem, why it was closed -- at that time, before January, 2009, you had never really personally clicked on the meeting information tab. Correct?

A. No. But the fact that the link worked --

Q. Well --

A. -- says that it was always active.

Q. -- all I was saying was -- I was just asking your personal knowledge of -- of that situation.

Did SchoolCenter ever explain to you why this problem occurred, state any reason for it?

A. No, sir.

Q. Did you ask?

A. No, sir.

MR. THANEDAR: That's all I have. I pass the witness.

MR. ARNOLD: No questions, Your Honor.

(End of requested excerpt transcript.)

THE STATE OF TEXAS.)

COUNTY OF GRAY     )

I, KAREN MORRIS, CSR, Official Court Reporter in and for the 223rd District Court of Gray County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $ _____ and was paid/will be paid by the PLAINTIFFS.

WITNESS MY HAND AND SEAL of office, this the 14th day of November, 2013.

//: Karen Morris
KAREN MORRIS, Texas CSR 334
Expiration Date: 12/31/14
Official Court Reporter
223rd District Court
Gray County, Texas
P.O. Box 2160
Pampa, Texas   79066



Appendix 2

```
<!DOCTYPE html PUBLIC "-//W3C//DTD XHTML 1.0 Transitional//EN"
"http://www.w3.org/TR/xhtml1/DTD/xhtml1-transitional.dtd">

<html xmlns="http://www.w3.org/1999/xhtml">

        <head>


<!-- Start Wayback Rewrite JS Include -->
<script type="text/javascript" src="/static/js/jwplayer/jwplayer.js" ></script>
<script type="text/javascript" src="/static/js/video-embed-rewriter.js"></script>
<script type="text/javascript">
function initYTVideo(id)
{
        _wmVideos_.init("/web/", id);
}
</script>
<!-- End Wayback Rewrite JS Include -->

                <meta http-equiv="content-type" content="text/html;charset=utf-8"
/>
                <meta name="generator" content="Adobe GoLive" />
                <title>Welcome To Pampa ISD</title>
                <link
href="/web/20090126011100cs_/http://www.pampaisd.net/css/agl-styles.css"
rel="stylesheet" type="text/css" media="all" />
                <link
href="/web/20090126011100cs_/http://www.pampaisd.net/Styles/DesignBoxes.css"
rel="stylesheet" type="text/css" media="all" />
                <style type="text/css" media="screen"><!--
#menulayer { text-align: left; height: 100px; width: 745px; visibility: visible;
margin-right: auto; margin-left: auto; padding-left: 2px; }
.td { color: #060; font-size: 12px; }
h1 { color: #c00; font-size: 26px; font-weight: bold; margin: 0.67em 0; }
#menuwrapper { height: 100px; width: 100%; left: 2px; top: 0; z-index: 1000;
position: absolute; visibility: visible; }
.ds1 /*agl rulekind: base;*/ { font-size: 16px; }
.ds8 /*agl rulekind: base;*/ { font-family: Arial; }
.ds10 /*agl rulekind: base;*/ { font-size: 18px; }
.ds13 /*agl rulekind: base;*/ { font-size: 14px; font-family: Arial; }
--></style>
                <csactionitem name="c09c84ed0"></csactionitem>
                <csactionitem name="c09cb7ea1"></csactionitem>
                <link
href="/web/20090126011100im_/http://www.pampaisd.net/ImagesNew/favicon.ico"
rel="shortcut icon"
csoptsettings="AQAAABh42mNgYNC4WbfGPDM5P4eBgYHjPxAAaRsAX8IISg==" 
livesrc="PhotoShop/District/favicon.psd" />
                <meta name="keywords" content="Pampa, schools, Pampa High School,
Texas, Pampa ISD, football, basketball, PHS, PHS Alumni" />
                <csactions>
                        <csaction name="c09c84ed0" class="Fix Layer Position"
type="onload" val0="menuwrapper" val1="true" val2="&quot;s&quot;"></csaction>
                        <csaction name="c09cb7ea1" class="ShowHide" type="onload"
val0="menuwrapper" val1="1"></csaction>
                </csactions>
                <csscriptdict import="import">
```

*Appendix 3*

```
</a><font size="-2"><strong>© 2008 Pampa Independent School District<br />

321 W. Albert Pampa, TX 79065<br />

Phone: (806) 669-4700 Fax: (806) 665-0506</strong></font>

<div align="center">

<center>

<form method="GET" action="/web/20090126011100/http://www.google.com/custom">

<table bgcolor="#FFFF99" cellspacing="0" border="0">

<tr valign="top">

<td valign="top">

<div align="left">

<a href="/web/20090126011100/http://www.google.com/search" target="_blank"><img
src="/web/20090126011100im_/http://www.google.com/logos/Logo_40wht.gif"
border="0" alt="Google" align="middle" /></a></div>

</td>

<td>

<div align="left">

<input type="text" name="q" size="31" maxlength="255" value="" /> <input
type="submit" name="sa" value="Google Search" /> <input type="hidden" name="cof"
value="S:http://www.pampaisd.net;VLC:purple;AH:left;BGC:ffff99;LC:blue;T:006600;A
WFID:33b1b5f9ad94ed69;" /> <input type="hidden" name="domains"
value="www.pampaisd.net" /><br />

<input type="radio" name="sitesearch" value="www.pampaisd.net" checked="checked"
/> Search The Pampa ISD Web Site</div>

</td>

</tr>

</table>

</form>

</center>

<br />

<a href="mailto:lee.carter@pampaisd.net">Web Master<br />

<br />

</a>
```



INTERNET ARCHIVE
WayBackMachine

http://www.pampaisd.net/education/district/district.php?sectionid=1

Go

13 captures
5 Feb 09 - 22 Jul 12

JAN   MAR   Close ✕

5

2008   2010   Help ?

321 W. Albert | Pampa, TX 79065 | Phone: 806-669-4700 | Fax 806-665-0506

## Pampa Independent School District

**Pampa ISD**
Pampa ISD Event Calendar
District Contact Directory
Campus Contact Information
▼ Schools
▼ Parent Connection
▼ District Information
▼ Pampa ISD Staff
What's New
Department Information
▼ Department Directory

# District Mission and Vision

**Mission Statement**
Pampa Independent School District is commited to educating each student for the changing needs of the 21st century.

**Vision Statement**
Pampa ISD is committed to build a solid foundation for each learner through a highly rigorous curriculum which promotes:

- Academic Excellence
- Self Confidence
- Self Respect / Respect for Others
- Individual, creative thinking and problem solving
- Tolerance
- Integrity
- Character
- Collaborative Skills
- Life-long Learning
- Self-discipline

The staff is committed to the success of each of the diverse learners in the Pampa Independent School District.  Staff will plan and deliver highly engaging academic lessons/activities and

Appendix 4

```
<!DOCTYPE html PUBLIC "-//W3C//DTD XHTML 1.0 Transitional//EN"
"http://www.w3.org/TR/xhtml1/DTD/xhtml1-transitional.dtd">
<html xmlns="http://www.w3.org/1999/xhtml" xml:lang="en" lang="en" dir="ltr">
        <head>


<!-- Start Wayback Rewrite JS Include -->
<script type="text/javascript" src="/static/js/iwplayer/iwplayer.js" ></script>
<script type="text/javascript" src="/static/js/video-embed-rewriter.js"></script>
<script type="text/javascript">
function initYTVideo(id)
{
        _wmVideos_.init("/web/", id);
}
</script>
<!-- End Wayback Rewrite JS Include -->

                <link rel="icon"
href="/web/20090205061020/http://www.pampaisd.net/favicon.ico" type="image/ico"
/>
                <link rel="shortcut icon"
href="/web/20090205061020im_/http://www.pampaisd.net/favicon.ico"
type="image/ico" />
                <meta http-equiv="PICS-Label" content='(PICS-1.1
"http://www.classify.org/safesurf/" labels generic true ratings (SS~~000 1))' />
                <meta http-equiv="Cache-Control" content="no-cache, no-store" />
                <meta http-equiv="Pragma" content="no-cache" />
                <meta http-equiv="Expires" content="-1" />
                <meta http-equiv="Content-Type" content="text/html; charset=utf-
8" />
                <meta http-equiv="imagetoolbar" content="no" />
                <meta http-equiv="Last-Modified" content="Tue, 03 Feb 2009
09:34:39  Central" />
                <meta name="Keywords" content="Pampa" />
                <meta name="Description" content="Pampa ISD Home Page" />
                <meta name="Generator" content="SchoolCenter Version 8 -
www.schoolcenter.com" />
                <meta name="Copyright" content="2009 - Pampa Independent School
District" />
                <style type="text/css">
body                                            { padding:0; border:0; margin:0;
color:#000000; font: 10pt verdana, arial, helvetica, Verdana, Arial,
Helvetica,sans-serif; background: #FFFFFF
url(/web/20090205061020cs_/http://www.pampaisd.net/images/backgrounds/1/backgroun
d_280818033_.jpg) left top;}
#header h1                       { display:inline; padding-left:4px; padding-right:4px;
padding-top:0; padding-bottom:0; text-align:left; color:#003399; font-size:16pt;
font-weight:bold;}
a                                       { color:#0000FF; text-decoration:underline;}
a:visited                               { color:#660099; text-decoration:underline;}
a:hover                                 { color:#0000FF; text-decoration:underline;}
a:active                                { color:#CC0033; text-decoration:underline;}
.textbox                                { font-family:verdana, arial, helvetica, Verdana,
Arial, Helvetica,sans-serif; font-size: small; background:#FFFFFF; border:1px
solid #ccc; color:#000000;}
.adminLink                              { color:#000000; font-family:verdana, arial,
helvetica, Verdana, Arial, Helvetica,sans-serif; font-size:12px; text-
```

Appendix 5

# AFFIDAVIT

STATE OF TEXAS
§
§
§

BEFORE ME, the undersigned notary, on November 20, 2013 personally appeared Rebecca Terrell and Chandrashekhar Thanedar, and after being duly sworn by me, stated under oath the following:

"Our names are Rebecca Terrell and Chandrashekhar Thanedar. We are over twenty-one (21) years of age, of sound mind, and are capable of making this affidavit. We are plaintiffs in the cause No. 35621 in the 223[rd] district court in Gray County, Texas against defendant Pampa Independent School District. The facts stated in this affidavit are within our personal knowledge and are true and correct. The facts stated in our Motion for New Trial and Motion to Modify Judgment in the above cause are within our personal knowledge and are true and correct. We affirm that the appendices attached to the Motion for New Trial and Motion to Modify Judgment are true and correct copies of the originals."

_____
Rebecca Terrell

_____
Chandrashekhar Thanedar

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this the 20th day of November, 2013.

MARIA-PURA POLANCO
Notary Public
State of Texas
My Comm. Exp. 09-28-2017

_____
Notary Public in and for
the State of Texas

_____
Maria-Pura Polanco
(Printed Name of Notary)

Appendix 6

# Appendix 2

**Motion for Modify Judgment**

CAUSE NO. 35621

| | | |
|---|---|---|
| REBECCA TERRELL and CHANDRASHEKHAR THANEDAR | § § § | IN THE 223<sup>RD</sup> DISTRICT COURT |
| *Plaintiffs,* | § § | |
| v. | § § | IN AND FOR |
| PAMPA INDEPENDENT SCHOOL DISTRICT, | § § § | |
| *Defendant* | § § § | GRAY COUNTY, TEXAS |

---

## MOTION TO MODIFY JUDGMENT

---

TO THE HONORABLE JUDGE ABE LOPEZ:

Plaintiffs hereby file their motion to modify judgment pursuant to Texas Rules of Civil Procedure 329b, and ask that Court modify judgment signed on 10/25/2013 accordingly, and in support, would respectfully show the Court as follows:

1. Plaintiffs refer to their motion for new trial including all its appendices 1 through 6, timely filed on November 21, 2013 which is adopted and incorporated as if set forth verbatim herein. Plaintiffs have attached their affidavit hereto concerning this motion as appendix 6. Judgment is incorrect in stating that plaintiffs announced ready. Plaintiffs requested continuance of trial only which was denied. The judgment should be corrected in this regard.

2. Court erred and clearly abused its discretion in granting award of attorney fees of $30,000 to PISD and costs. The judgment should be modified and the award of attorney fees and costs should be vacated and denied. Plaintiffs challenge the award of the attorney fees on the grounds that the award is 1) not reasonable, manifestly too large, and 2) neither legally valid, nor proper, nor justified in this case.

The Court clearly erred in granting $30,000 in attorney fees to PISD by taking "judicial notice of the file" as asked by PISD. Texas law regarding attorney fees is clear and well established. Texas law has not allowed recovery of attorney fees unless allowed by statute or contract. "Absent a contract or statute, trial courts do not have inherent authority to require a losing party to pay the prevailing party's fees." *Tony Gullo Motors v. Chapa*, 212 S.W.3d 299, 310-311 (Tex. 2006). Nothing in TOMA or its pertinent case authority authorizes or empowers the Court to take judicial notice of attorney fees and to award them without receiving evidence. See TOMA Sec. 551.142.[1] Plaintiffs challenge the imposition of attorney fees as legally improper and further challenge the reasonableness of attorney fees awarded to PISD. The reasonableness of attorneys' fees is question of fact that must be proven at the trial. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 367 (Tex. 2000). *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). Thus PISD was required to testify concerning its attorney fees and reasonableness of the fees. PISD refused and failed to testify on its attorney fees and refused and failed to prove them. Therefore PISD forfeited and waived any claim to attorney fees. Because PISD refused and failed to prove and testify on its attorney fees, there is no evidence or insufficient evidence in the record for the Court to award attorney fees to PISD. Court's award of $30,000 has no basis in law or evidence because there is no evidence or insufficient evidence of tasks completed, hours worked, timesheets, billing statements, level of

---

[1] TOMA Section 551.142 provides as follows:

(a) An interested person, including a member of the news media, may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body.

(b) The court may assess costs of litigation and reasonable attorney fees incurred by a plaintiff or defendant who substantially prevails in an action under Subsection (a). In exercising its discretion, the court shall consider whether the action was brought in good faith and whether the conduct of the governmental body had a reasonable basis in law.

difficulty, identity of attorneys, reasonable hourly rates of attorneys on the case and other necessary information on which attorney fees must be based on and can be determined.

The Court granted the award of attorney fees under TOMA Sec. 551.152. Thus it is clearly ascertainable that the award of attorney fees in this case does not arise under Texas Civil Practice and Remedies Code (CPRC) Section 38.001, thus this Court does not have power to take judicial notice of attorney fees under Tex. Civ. Prac. & Rem. Code § 38.004. See *Valdez v. Valdez*, 930 S.W.2d 725, 732-33 (Tex. App.--Houston [1st Dist.] 1996, no writ) (holding section 38.004 only applies to claims under section 38.001). Therefore, attorney fees award here is legally improper. Further the attorney fees award is improper here because plaintiffs have undisputedly proven their good faith at the trial as their report of the violation of Sec. 551.056(b) was the only reason said violation was finally corrected by PISD after 5 months of non-compliance with TOMA from 1/2009 to 5/19/2009. PX 8-11. Further this court sitting by assignment has no personal knowledge of all of the proceedings in this case, being the third judge in this case after Judge Waters and Judge Vanderpool. Further plaintiffs do not have the ability to pay attorney fees, thus award is not reasonable. PISD did not plead in its original or the amended answer the required prerequisites to attorney fees as required by TOMA Sec. 551.142. PISD's first amended answer is defective as it does not contain a proper certificate of service under TRCP and PISD failed to answer plaintiffs' second supplemental petition.

This Court has no authority or power under TOMA and no inherent authority or power to impose attorney fees for any proceedings or filing in the appellate courts, with or without evidence being received. Defendant has provided no statutory support or case authority for it. Further there is no evidence or insufficient evidence of filings by plaintiffs in the appellate court on which to base attorney fees award on by this Court. Defendant made no argument at trial

concerning its attorney fees to be based on appellate filings by plaintiffs. There is no evidence or insufficient evidence that PISD made any responses to plaintiffs' appellate filings and that they were accepted by appeals court. In fact, defendant's responses have been rejected by appeals court. In addition, plaintiffs prevailed on appeal in this case and the case was remanded back to trial court. Court's finding that plaintiffs made voluminous filings is legally immaterial, arbitrary, and capricious because plaintiffs prevailed on appeal and defendant's responses were found defective by appeals court. Thus there is no basis in law or fact for an award of attorney fees to PISD because plaintiffs' made filings in appeals court. Further the court failed to segregate appeals court's portion of the attorney fees from trial court portion of the award of attorney fees and attorney fees before remand and after remand. Since, plaintiffs prevailed on appeal and were awarded costs by appeals court, no attorney fees and costs for proceedings before remand can be or should be awarded to PISD.

The attempt by PISD for attorney fees is a bald attempt to intimidate plaintiffs in not filing an appeal of this Court's judgment. Such an attempt is an outrageous affront to the purpose of open government under TOMA and will have chilling effect on citizens and taxpayers who report violations of TOMA and seek redress. Further, issues and violations of TOMA before this Court in this case are novel and there have not been cases involving electronic properties of board meeting notices involving Sec. 551.056(b) and (d), technical problems, and burden of proof. This is clearly a case of first impression in these evolving legal areas. Attorney fee award thus is unjustified here and if not reversed will have chilling effect on citizens and will lead to confusion and lack of development of the areas mentioned above. Further, government bodies will emulate the tactics of PISD to intimidate citizens in to submission which will lead to evisceration of TOMA. PISD refused to testify and prove its attorney fees before this Court (or

appeals court), this Court failed to receive evidence concerning attorney fees, thus PISD waived and forfeited attorney fees.

Further, it is clearly ascertainable that PISD did not respond to plaintiffs' motions or letters in this Court whether or not they were "voluminous," thus there is no evidence that PISD ever incurred attorney fees or insufficient evidence that PISD ever incurred attorney fees and to what extent with respect to PISD's complaints about plaintiffs filings. Further, plaintiffs cannot be penalized or sanctioned for filing lawsuits or for their filings whether or not they were voluminous as they a have constitutional right to seek redress of their grievances. The plain fact is there is no evidence or insufficient evidence of PISD spending any time on plaintiffs' "filings" in this Court or in appeals court.

An attorney fees award based on no evidence of existence and reasonableness of attorney fees viz. identity of attorneys, hours worked, tasks performed, quality and difficulty of work, hourly rate and other factors; or insufficient evidence of existence viz. identity of attorneys, hours worked, tasks performed, quality and difficulty of work, hourly rate and other factors violates plaintiffs' constitutional rights of due process and equal protection under Texas Constitution and 14th Amendment to the Unites States Constitution as such arbitrary and capricious and manifestly too large and unreasonable imposition of attorney fees has no support in law or case authority. Therefore imposition of attorney fees without legal support under TOMA and without receiving evidence is not only a clear abuse of discretion but is abusive to Texas citizens and taxpayers such as plaintiffs. PISD did not offer argument at trial or in its pleadings about whether plaintiffs brought this suit in good faith or being a prevailing party, or whether its actions had a reasonable basis in law on all causes of action brought by plaintiffs. See Sec. 551.142. PISD failed to plead prerequisites to attorney fees in its amended answer.

Sec. 551.142. PISD's first amended answer is defective as it does not have proper certificate of service under TRCP. Plaintiffs adopt and incorporate by reference their response to defendant's first amended answer and plaintiffs' special exceptions and affirmative defense to defendant's request for attorney fees and costs (which are on file) as if set forth verbatim herein.

As explained before, there is clear undisputed evidence of good faith on the part of plaintiffs in this case, thus imposition of costs is improper and unreasonable. See TOMA Sec. 551.142. PX 8-11. C. Plaintiffs challenge imposition of costs on them. Plaintiffs have clearly demonstrated good faith as shown above under TOMA. Thus under TOMA sec. 51.142, costs should not be imposed on plaintiffs. Further even if costs were imposed, costs before remand should be segregated from costs after remand and such costs before remand should be excluded from costs to be awarded to PISD. This is proper because plaintiffs prevailed on appeal before the 7th court of appeal and the appeals court granted costs to plaintiffs. Any costs associated with PISD's misguided summary judgment motion which was erroneously granted by the district court (Judge Waters) should be excluded from costs. PISD offered no evidence of lack of good faith on the part of plaintiffs and did not even offer an argument on it. Thus there is no evidence or insufficient evidence of lack of good faith or bad faith in the record on the part of plaintiffs.

This Court which is sitting by assignment did not hold any proceeding before October 2012 when two other Judges (Judge Vanderpool and Judge Waters) presided over the case. The Court thus cannot take judicial notice of matters it is not knowledgeable about and which did not occur before it. Further, plaintiffs challenge the reasonableness of the attorney fees because the current judge (Judge Lopez) only held one proceeding on 10/9/2013 for one day trial. PISD filed no response to several motions filed by plaintiffs. Thus PISD cannot recover attorney fees for time it did not expend for one year in responding to plaintiffs' motions. Under Judge Vanderpool

only two brief hearings took place and PISD failed to file any responses to plaintiffs' motions. Under Judge Waters only 1 brief hearing occurred. It is thus obvious, that in more than 4 years of this lawsuit, only minimal activity has occurred. Attorney fees in the amount of $30,000 are thus manifestly too large and unreasonable considering the lack of PISD's responses and only 3 hearings and a 1 day trial.

Further, it is clearly ascertainable from the few responses PISD filed that they were unserious, lacked references to record, and failed to cite pertinent applicable case authorities. Some of the responses were found defective by the 7th Court of appeals e.g. lacked proper certificates of service and certificates of compliance and PISD was forced to re-file. The quality of the PISD's filings has been questionable. Thus the $30,000 attorney fees are unreasonable. This Court cannot grant attorney fees for proceedings conducted in appellate court in which plaintiffs were granted costs of appeal on remand. Further plaintiffs prevailed on appeal before the 7th court of appeals, thus attorney fees and costs before remand of the case must be segregated and excluded from any calculations of attorney fees that could possibly be awarded to PISD. Given the lack of evidence, it is not surprising that PISD counsel refused to testify concerning attorney fees at trial. As such, there is no evidence, alternatively insufficient evidence for this Court to base its award of attorney fees. Thus the award of attorney fees and costs is legally improper, manifestly too large, unreasonable, and completely unsupported by evidence and should be vacated and denied. The judgment of the Court should be modified accordingly.

3.      As explained previously, the Court erred in denying plaintiffs' motions to exclude evidence concerning SchoolCenter, BoardBook, and Lee Carter. The record clearly shows that PISD repeatedly refused, misled, obstructed discovery and further refused to supplement its

answers to interrogatories and other discovery requests concerning BoardBook service. See PX 8-11. PISD even obstructed and misled the Attorney General of Texas when it knew that PISD allegedly had made payments to BoardBook and SchoolCenter and others for services. These and other records concerning SchoolCenter and BoardBook and other employees ot vendors such as Lee Carter should have been produced in the discovery process. PISD refused to do so apparently fearing no sanctions for its obstruction. PISD even declared that BoardBook service and PISD's contract with it were irrelevant and outside of the purview of Texas Rules of Civil Procedure. Plaintiffs adopt and incorporate by reference Plaintiffs' Motion for Sanctions which was filed on 9/9/2009 and their Motion for Order to Produce Documents without Objection filed on 6/9/2009, Plaintiffs' Motion for Ruling Post-Remand Discovery, to Exclude, for Inferences, to Compel discovery from defendant, and For Sanctions Filed on 6/5/12, as if set forth verbatim herein. The Court's refusal to exclude set up plaintiffs for trial by ambush and surprise which violates their due process, open courts, and equal protection rights under Texas Constitution and the 14th Amendment to the United States Constitution.

4. PISD's trial evidence in its support was no more than speculation, hearsay, surmise and bare opinions offering no substantiation or documents in support, which is no legal evidence at all. *Kindred v. Con/Chem., Inc.*, 650 S.W. 2d 61, 63 (Tex. 1983). PISD's evidence in its support must be struck and disregarded.

5. As explained before, PISD did not carry its Burden of Proof in the matter of showing good faith under TOMA Sec. 551.056(d). PISD admitted that its website notices did not appear on its website for 11 meetings from 1/15/2009 to 5/19/2009 for 5 long months. PISD fails the average person's due diligence standard here. After "forgetting" to check whether internet notice for its 1/15/2009 meeting actually appeared on its website, PISD continued to

"forget" to check its website for 5 months to see whether it was complying with TOMA. "Opps we forgot" and "Oops we don't care to check" fail average person's good faith standard and certainly fail under TOMA Sec. 551.056(d) good faith standard. Negligence, forgetting is not a technical problem as PISD suggests and is certainly not beyond the control of PISD for 5 months.

The judgment of the Court should be modified as requested below.

### Prayer

FOR THE FOREGOING REASONS, plaintiffs respectfully request that the Court set this motion for hearing, and upon hearing, grant plaintiffs' motion to modify judgment, modify judgment in accordance with this motion, and

Vacate the award of attorney fees in the amount of $30,000 to defendant PISD, vacate the award of costs to PISD, deny defendant's request for attorney fees and costs, and delay the award of attorney fees and costs until appellate process is completed.

Further plaintiffs request judgment be modified so that the judgment for defendant is set aside and judgment for plaintiffs is entered on all causes of action, void all actions taken in violation of TOMA, order reinstatement of Terrell as a teacher with defendant and award damages of back wages and benefits to her, declare plaintiffs the prevailing party in this suit, and grant all other relief requested by plaintiffs in their original petition and two supplemental petitions. Plaintiffs further request that Court grant all other and further relief, at law or in equity, to which they may justly be entitled to receive.

Respectfully submitted,

*Rebecca Terrell*

_____

Rebecca Terrell

_(signature)_

Chandrashekhar Thanedar
Plaintiffs
6503 Dancing Ct.
San Antonio, Texas 78244
(956) 445-3107
(512) 271-6840 Fax
rterrell152@gmail.com

## CERTIFICATE OF SERVICE

The undersigned certify that a true and correct copy of the foregoing document was served upon the following by USPS Priority Mail on November 22, 2013 to

W. Wade Arnold, Andrea Gulley
Underwood Law Firm
P. O. Box 9158
Amarillo, Texas 79105-9158
Phone: 806.376.5613
Fax 806.379-0316
wade.arnold@uwlaw.com
Attorneys for PISD

_(signature)_

Rebecca Terrell
Chandrashekhar Thanedar

# AFFIDAVIT

STATE OF TEXAS                                  §
                                                §
                                                §

BEFORE ME, the undersigned notary, on November 20, 2013 personally appeared Rebecca Terrell and Chandrashekhar Thanedar, and after being duly sworn by me, stated under oath the following:

"Our names are Rebecca Terrell and Chandrashekhar Thanedar. We are over twenty-one (21) years of age, of sound mind, and are capable of making this affidavit. We are plaintiffs in the cause No. 35621 in the 223rd district court in Gray County, Texas against defendant Pampa Independent School District. The facts stated in this affidavit are within our personal knowledge and are true and correct. The facts stated in our Motion for New Trial and Motion to Modify Judgment in the above cause are within our personal knowledge and are true and correct. We affirm that the appendices attached to the Motion for New Trial and Motion to Modify Judgment are true and correct copies of the originals."


_____          _____
Rebecca Terrell                    Chandrashekhar Thanedar

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this the 20th day of November, 2013.

MARIA-PURA POLANCO
Notary Public
State of Texas
My Comm. Exp. 09-28-2017

_____
Notary Public in and for
the State of Texas

Maria-Pura Polanco
_____
(Printed Name of Notary)

Appendix 6

# Appendix 3

## Motion for Reconsideration



CAUSE NO. 35621

| | | |
|---|---|---|
| REBECCA TERRELL and<br>CHANDRASHEKHAR THANEDAR | § | IN THE 223<sup>RD</sup> DISTRICT COURT |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | IN AND FOR |
| | § | |
| PAMPA INDEPENDENT SCHOOL<br>DISTRICT, | § | |
| | § | |
| | § | GRAY COUNTY, TEXAS |
| *Defendant* | § | |

## MOTION FOR RECONSIDERATION

TO THE HONORABLE JUDGE ABE LOPEZ:

We request the court to reconsider its denials of our motion for new trial and our motion to modify judgment. The Motion for New Trial (filed 11/21/13) and the Motion to Modify Judgment (filed 11/22/13) are hereby adopted and incorporated by reference as if set forth verbatim herein. We further request that the court reconsider its refusal to hold hearing on the newly discovered evidence as presented in the motion for new trial. We request that the court grant new trial on all causes of action and issues including imposition of attorney fees and costs. The court's plenary power has not expired and is still in force 30 days after said motions were denied by operation of law. See Tex. R. Civ. Pro. 329b. We further request that the court provide and explain its reasons as to why it denied said motions so its decisions can be fully understood by parties so as to allow a meaningful appeal of this court's decisions and actions before the 7<sup>th</sup> court of appeals.

1. **Violation of Plaintiffs' Federal and Texas Constitutional Rights**: The record shows that this court, without any basis in fact or law, wrongly declared at trial that the appeals court only wanted trial on Sec. 551.056 of Texas Open Meetings Act (TOMA). This court then

denied and failed to hold trial on plaintiffs' other causes of action i.e. TOMA sections 551.041, 551.051, 551.043, 551.045, 551.074, and 551.101. It is abundantly clear that the 7th court of appeals made no such ruling in its opinion on the first appeal in this case. This was pointed out to this court and plaintiffs have objected to the court's arbitrary declaration and refusal to hold trial on the above causes. This improper denial and failure violates plaintiffs' civil rights, fundamental rights, and federal Constitutional due process and equal rights under the 14th Amendment to the U.S. Constitution and violation of our rights under Texas Constitution Article 1 Sections 3, 13, 19, and 27. This court closed it doors to plaintiffs by refusing to hold trial on plaintiffs' complaints under TOMA sections 551.041, 551.051, 551.043, 551.045, 551.074, and 551.101 in violation of our constitutional rights. No objection to such plain blatant error and constitutional violation need be made, nor required. Such refusal and denial lowers the regard of Texas and United States Citizens towards the judges and the justice system. We as citizens and tax payers are greatly troubled that after 5 long years of being gamed, drawn out, punished, and impoverished, we got deprived of our constitutional and fundamental rights. What is the point in filing complaints if courts will ignore the citizens? We request the court to grant new trial on all matters and hear the newly discovered evidence presented in the motion for new trial.

The record of the trial shows that this court refused and failed to rule on plaintiffs' certain trial exhibits during trial (e.g. plaintiffs' trial exhibit 1 concerning internet notices of meetings and their electronic properties) stating that court will rule on them later at some other time. Plaintiffs repeatedly objected and offered proof. This court attempted to rule, deny, and return the trial exhibits to plaintiffs outside of trial, after the trial was over and after the court had rendered judgment. We are greatly troubled by these actions of the court which were highly damaging and prejudicial to plaintiffs. Such actions lower citizens' regard for the judiciary.

Court's refusal to rule on plaintiffs' certain trial exhibits during trial of this case infected the trial with chaos and confusion, greatly harming plaintiffs' case because plaintiffs were prevented from properly and effectively presenting their case. Court's actions above were arbitrary without any basis in law, biased for the defendant and violated our constitutional due process and equal protection rights under Texas Constitution (Art.1, Secs. 3,13,19,27) and the U.S. Constitution.

The court wrongly permitted testimony over our repeated objections on a "third party vendor" which defendant claimed as allegedly causing legal violation of TOMA Sec. 551.056. As we have contended, such new evidence must be excluded because defendant PISD deliberately refused to provide discovery and deliberately refused and failed to supplement discovery with respect to the purported "third party vendor." As explained previously, we are entitled to discovery and supplementation according to the Texas Rules of Civil Procedure. See TRCP Rule 193.5, 193.6. This court should have excluded the testimony and should have granted new trial to obtain discovery concerning the "third party vendor." Court's failure to do so was highly prejudicial and damaging to plaintiffs as we were prevented from effectively examining the witnesses and were prevented from presenting our side effectively. The court's failure to exclude evidence or allow discovery on the new evidence made the trial a trial by surprise and ambush violating our rights of equal rights and due process under Texas Constitution (Art. 1, Secs. 3,13,19,27) and 14th Amend. to U.S. Constitution. This is the reason why the case was remanded in the first place by the 7th Court.

As explained in our motion to modify judgment and motion for new trial above, it is clear that the Texas Open Meetings Act does not authorize this court to take "judicial notice" of defendant's attorney fees without receiving evidence as to the amount or reasonableness and further that court's award of fees is improper under TOMA. TOMA Sec. 551.142. There is

absolutely no evidence in the record as to the reasonableness of the $30,000 the court granted PISD in attorney fees or the hours worked, tasks performed, and rates per hour, and by whom. Court's award of attorney fees of $30,000 under TOMA[1] is arbitrary, capricious, punitive, and legally improper. Court's award violates plaintiffs' due process rights and equal rights under the Texas Constitution Article 1 Sections 3, 13, 19, and 27 and the 14th Amendment to the U.S. Constitution as we are entitled to the due process and equal rights of contesting the reasonableness of attorney fees awarded to defendant by examining and questioning defendant's attorney and any records proving the existence and reasonableness of the $30,000 award. We object to the attorney fee award because it has no basis in law, because it arbitrary, and because it is punitive in nature. Attorney fees are not mandatory, but if awarded under TOMA, TOMA only permits "reasonable" attorney fees and the reasonableness must be proven at trial. See TOMA Sec. 551.142. The language of TOMA is plain and clear that it does not authorize this court to award punitive attorney fees and does not permit a judge to be an advocate for defendant and for defendant's attorney fees. Here, this court granted attorney fees under TOMA, and not under the Texas Civil Practices and Remedies Code (TCPRC), thus TCPRC Sec. 38 does not apply here. Further, defendant waived and forfeited its claim to attorney fees when it expressly declined to testify concerning its request for attorney fees. Defendant's subsequent correspondence with us makes it clear that its only interest was to stop the appeal currently before the 7th COA. This court should grant this motion and reverse its judgment with respect to the award of attorney fees to PISD, and grant new trial on the issue of attorney fees. The record

---

[1] PISD's alleges its claim for attorney fees under TOMA Sec. 551.142. The award of attorneys' fees in this case does not arise under Texas Civil Practice and Remedies Code (CPRC) section 38.001, thus this Court does not have power to take judicial notice of attorney fees under Tex. Civ. Prac. & Rem. Code § 38.004. See *Valdez v. Valdez*, 930 S.W.2d 725, 732-33 (Tex. App.--Houston [1st Dist.] 1996, no writ) (holding section 38.004 only applies to claims under section 38.001).

407

is clear PISD attorneys maintained a very low amount of activity and work in this case and the award of $30,000 is grossly unreasonable. PISD must be required under law, and TOMA requires that PISD prove its attorney fees at trial. Defendant refused to do so. Further judicial efficiency requires that award of attorney fees be delayed until appellate process is concluded.

The court failed to provide detailed reasons as to why it found that we acted in bad faith when defendant presented no evidence or testimony at trial to show whether we brought the suit in bad faith. Court's detailed reasoning in this regard would assist the court of appeals and parties in arguing the reasons in a meaningful way before the 7th court of appeals. Defendant presented no evidence of bad faith or lack of good faith on our part in bringing this suit. The only evidence presented at the trial in this regard by us clearly showed that defendant's 5 month long legal violations of TOMA Sec. 551.056(b) got corrected only because of our report to defendant in that regard on May 15, 2009. How is this lack of good faith? This court held only one day hearing (final trial) in this case and lacks any personal knowledge of prior proceedings. Under TOMA, evidence and testimony at trial on "bad faith" or lack of good faith on our part in bringing suit and reasonableness and existence of the amount of attorney fees was absolutely necessary so plaintiffs would have the chance to examine, question, and challenge such testimony and evidence. This court cannot just assume or advocate for defendant concerning award of attorney fees or a lack of good faith. TOMA Sec. 551.142. Court's finding of bad faith in bringing this suit and award of attorney fees is not only arbitrary, capricious and without basis in law or evidence, but it is biased for defendant and punishes and victimizes plaintiffs by further depriving us of due process and equal rights under the 14th Amendment to the U.S. Constitution and Texas Constitution Article 1 Sections 3, 13, 19, and 27. There is no support in law or evidence for court's finding of "bad faith" in bringing this suit and for the attorney fee award to

PISD and court actions deprive us of our good name and livelihood violating our fundamental and constitutional rights as stated above. Court should grant new trial on the issue of award of attorney fees to defendant and on the issue of its bad faith finding.

How Texas citizens and taxpayers like us are treated by this court will be of interest to Texas citizens and will be watched for years to come. This court's decisions will have chilling effect on Texas citizens' participation in their government if not modified by this court and if new trial is not granted. TOMA should be more than lofty words. We hope and urge the court to uphold the lofty purpose of open and transparent government under Texas Open Meetings Act, and grant this motion and motions for new trial and to modify judgment, grant hearing on the newly discovered evidence presented in motion for new trial, grant new trial on the attorney fees requiring PISD to prove its attorney fees, and on all causes of action as requested.

**Prayer**

FOR THE FOREGOING REASONS, plaintiffs respectfully request that the Court grant this motion for reconsideration, grant our motion for new trial, grant our motion to modify judgment, grant new trial on the issue of imposition of attorney fees, stay imposition and execution of attorney fees and costs until the appellate process is concluded, grant new trial on all causes of action, and modify judgment as requested.

Plaintiffs further request that court grant all other relief requested by plaintiffs in their motion for new trial and motion to modify judgment, and vacate the award of costs and attorney fees in the amount of $30,000 to defendant PISD, deny PISD's request for attorney fees and costs, and make additional or amended findings of fact and conclusions of law as requested. Plaintiffs further request that Court grant all other and further relief, at law or in equity, to which they may justly be entitled to receive.

409

Date: February 5, 2014          Respectfully submitted,

*Rebecca Terrell*

_____

Rebecca Terrell

*C B Thanedar*

_____

Chandrashekhar Thanedar
Plaintiffs
6503 Dancing Ct.
San Antonio, Texas 78244
(956) 445-3107, (512) 271-6840 Fax
rterrell152@gmail.com

## CERTIFICATE OF SERVICE

The undersigned certify that a true and correct copy of the foregoing document was served upon the following by email and fax on February 5, 2014 to

Hon. Judge Abe Lopez          W. Wade Arnold, Andrea Gulley, counsel for PISD
2100 Briarwood Drive          Underwood Law Firm, P. O. Box 9158
Amarillo, Texas 79124          Amarillo, Texas 79105-9158
lopeza@suddenlink.net          Phone: 806.376.5613; Fax 806.379-0316
and via Fax (806) 669-8062          wade.arnold@uwlaw.com

We further certify that on February 5, 2014, electronic courtesy copies of Motion for New Trial, Motion to Modify Judgment, Letter to Judge Lopez dated 11/22/2013, and Request for Additional or Amended Findings of Fact and Conclusions of Law were emailed to Judge Lopez at lopeza@suddenlink.net and to defendant's counsel Mr. Arnold at wade.arnold@uwlaw.com.

*Rebecca Terrell*

_____

Rebecca Terrell
Chandrashekhar Thanedar

# Appendix 4

## Request for Additional or Amended FOF and COL

CAUSE NO. 35621

| | | |
|---|---|---|
| REBECCA TERRELL and CHANDRASHEKHAR THANEDAR | § § § | IN THE 223<sup>RD</sup> DISTRICT COURT |
| *Plaintiffs,* | § § § | |
| v. | § § | IN AND FOR |
| PAMPA INDEPENDENT SCHOOL DISTRICT, | § § § | |
| *Defendant* | § § | GRAY COUNTY, TEXAS |

---

## REQUEST FOR ADDITIONAL OR AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

TO THE HONORABLE JUDGE ABE LOPEZ:

Pursuant to Rule 298 of Texas Rules of Civil Procedure, Plaintiffs in the above styled and numbered cause file this Request for Additional or Amended Findings of Fact and Conclusions of Law, and in support respectfully show the following:

The original findings of fact and conclusions of law made by the Court were filed in this case on November 20, 2013. This request for additional or amended findings of fact and conclusions of law is timely filed per TRCP Rule 298. Pursuant to TRCP Rule 298, plaintiffs now request the following additional or amended findings of fact and conclusions of law be filed.

Plaintiffs affirm that to the extent any Finding of Fact reflects a legal conclusion, it shall be to that extent deemed a Conclusion of Law, and vice versa.

### ADDITIONAL OR AMENDED FINDINGS OF FACT

1. On October 9, 2013, at the trial in this case Court directed defendant Pampa Independent School District's (defendant or PISD) attorneys to testify in the matter of defendant's claim for attorney fees as to the amount and reasonableness of attorney fees.

392

Defendant's attorney Mr. Arnold declined and failed to do so and asked the Court to take judicial notice of the file and award attorney fees to defendant.

2. There is no evidence or insufficient evidence of defendant's claim for attorney fees for $30,000 or for any amount, its appropriateness, or its reasonableness.

3. Plaintiffs' reported defendant's non-compliance with Texas Open Meetings Act (TOMA) Sec. 551.056(b) to defendant on May 15, 2009 and their report was the only reason said non-compliance was corrected after 5 months of non-compliance with TOMA by defendant. Plaintiffs' good faith was not disputed by defendant at trial. Defendant did not offer evidence of lack of good faith. There is no evidence that plaintiffs' brought this action in bad faith. To the contrary, plaintiffs prevailed on appeal in this lawsuit and the appeals court ordered defendant to pay costs in this case to plaintiffs. Plaintiffs' case clearly has merit. As a result of this lawsuit, defendant made several changes and reformed its practices to ensure compliance with TOMA. The record in this case shows that defendant mostly did not file responses to plaintiffs' motions or filings. There is no evidence or insufficient evidence that plaintiffs made voluminous filings or that they were not necessary to prosecute the case. Thus, there is no evidence of time spent by PISD on responding to plaintiffs motions either before trial court or appellate court. The Court finds that appeals court rejected PISD's filings and such filings often lacked compliance with appellate rules e.g. citation to record or legal authorities. There have been three judges who have presided over this case and this Court held no proceedings before the trial on October 9, 2013.

4. Court declined to rule on admissibility of plaintiffs' trial exhibits PX 1 (CD of electronic notices and document properties of 22 meetings at issue in this trial), 19, 20, 23, and 25 during the trial. Court rules that said trial exhibits PX 1, 19, 20, 23, and 25 are now admitted.

Request for Additional or Amended          Cause No. 35621          Page 2 of 9
Findings of Fact and Conclusions of Law
392

393

5. PISD admitted at trial that internet notice for its 1/15/2009 board meeting did not appear on its website. However, there is no evidence or insufficient evidence that defendant employed SchoolCenter to create a new website and or to transfer link to its internet notices to a new website before said meeting on 1/15/2009.

6. Defendant's claim that it employed SchoolCenter to create a new website, to transfer link to notices was made for the first time at trial. Defendant did not disclose this information during discovery process to plaintiffs, nor did it timely correct or supplement its discovery responses in this regard before trial under Texas Rules of Civil Procedure.

7. Defendant maintained and managed its own website and posted website internet notices under TOMA Sec. 551.056(b) through at least January 15, 2009. There is no evidence or insufficient evidence that a link to BoardBook existed on defendant's website on or before January 15, 2009 or that internet notices under Sec. 551.056(b) appeared on defendant's website before defendant employed a third party vendor - SchoolCenter. Because PISD admitted that the internet notice for 1/15/2009 did not appear on its website, Court finds that the link to internet notices did not exist on PISD's website before PISD allegedly employed SchoolCenter to create a new website.

8. There is no evidence or insufficient evidence that defendant had BoardBook service to post internet notices under TOMA sec. 551.056(b) or payments to BoardBook for its service. There is no evidence or insufficient evidence that defendant executed a contract with BoardBook or that such contract was ever renewed, especially before or during the time period for which defendant claims good faith exception under Sec. 551.056(d).

9. Defendant claimed at trial that it contracted a third party vendor SchoolCenter to create a new website and transfer link to internet notices. There is no evidence or insufficient

Request for Additional or Amended                    Cause No. 35621                              Page 3 of 9
Findings of Fact and Conclusions of Law

evidence that defendant contracted a third party vendor SchoolCenter to create a new website for defendant or transfer or maintain a link to internet notices to the new website before the time period for which defendant claims good faith exception under Sec. 551.056(d).

10. Defendant admitted that it did not comply with Sec.551.056(b) for 11 board meetings held from January 15, 2009 through May 19, 2009.

11. Defendant maintained and managed its website through January 15, 2009 board meeting, however it did not comply with Sec.551.056(b) for the January 15, 2009 board meeting. Further, there is no evidence or insufficient evidence that defendant's new website was created 72 hours before defendant's January 15, 2009 board meeting. Further there is no evidence that SchoolCenter was employed to create new website before the January 15, 2009 board meeting.

12. Plaintiffs (plaintiff Thanedar) reported to defendant on May 15, 2009 that defendant's internet board meeting notices did not appear on its website. Defendant fixed its non-compliance with TOMA due to plaintiffs' said report of non-compliance.

13. There is no evidence or insufficient evidence that defendant verified or checked that its internet board meeting notices actually appeared on its website during the period from January 2009 through May 15, 2009.

14. There is no evidence or insufficient evidence that defendant verified that it actually complied with TOMA Sec. 551.056(b) during the 5 month period for which it claims good faith exception under Sec. 551.056(d) until plaintiffs reported non-compliance on 5/15/2009.

15. Lee Carter was PISD's webmaster and managed and maintained defendant's website in the month January 2009 and was responsible for maintaining the link to PISD's internet notices on its website during January 2009 or concerning the internet notice of the 1/15/2009 board meeting.

16. Defendant concealed and failed to disclose the identity and the central role of SchoolCenter to Texas Attorney General and plaintiffs in response to plaintiffs' Open Records Request or Public Information Request per Gov't Code Ch. 552. Defendant further concealed and failed to disclose documents to plaintiffs concerning license fee payments to BoardBook and SchoolCenter for the purpose of their Open records Request or during discovery process.

17. Court finds that there is no material question of fact remaining concerning plaintiffs' causes of action in TOMA Sections 551.041, 551.043, 551.045(d), 551.051, 551.101, and 551.074(b). Court declined to try plaintiffs' said causes of action at the trial of this case and no evidence or insufficient evidence was permitted or presented concerning said causes of action.

18. There is no evidence or insufficient evidence that defendant's internet notices independently appeared on Google or BoardBook. Court finds such information or evidence legally irrelevant, speculative and that it does not comply with TOMA.

19. There is no evidence or insufficient evidence that PISD "released" or checked internet notices in BoardBook during Jan. 2009 through May 19, 2009 regarding any or all its board meetings. Such information even if true is legally irrelevant, speculative and immaterial.

20. There is no evidence or insufficient evidence that defendant ever checked or verified that the link to internet notices was transferred over to its new website during January 2009 to May 15, 2009 or that defendant required the third party vendor SchoolCenter to timely transfer said link to internet notices to its new website.

21. Plaintiff Terrell's employment contract was terminated by defendant in the Board meeting held on 3/26/2009. Voidance of defendant's action terminating Terrell's employment requires reinstatement of Terrell and payment of back wages and benefits until she is legally terminated under the Ed. Code in compliance with TOMA in a legally convened Board meeting.

396

## ADDITIONAL OR AMENDED CONCLUSIONS OF LAW

1. Defendant did not meet the prerequisites for attorney fees and costs award under Texas Open Meetings Act.

2. Defendant's claim for attorney fees does not arise from Sec. 38.001 of the Civil Practice and Remedies Code (CPRC). Further, Ch. 38 of the CPRC does not apply to this case.

3. The Court does not have the power or discretion to take judicial notice of the file in this case under TOMA to award attorney fees without receiving evidence concerning attorney fees and its reasonableness. The Court does not have the power or discretion to award attorney fees incurred or claimed by PISD for appeals in this case.

4. Plaintiffs affirmatively established good faith under TOMA and brought the action in good faith. Defendant did not dispute plaintiffs' good faith assertion nor introduced any evidence to the contrary. There is no evidence of lack of good faith on the part of plaintiffs in bringing this action.

5. PISD's claim for attorney fees is denied due to lack of evidence and because PISD forfeited its claim due to its refusal to testify and because it is legally improper.

6. Defendant had the burden of proof under Texas Open Meetings Act Sec. 551.056(d) to prove good faith as to its admitted non-compliance with Sec. 551.056(b) for defendant's 11 board meetings held during the time period January 2009 to May 19, 2009.

7. There is no evidence or insufficient evidence that defendant's non-compliance with TOMA Sec. 551.056(b) was done in good faith. Defendant failed to meet its burden of proof of good faith under Sec. 551.056(d).

8. Defendant obstructed discovery in this lawsuit by concealing and failing to disclose the identity and role of SchoolCenter and further concealed and failed to disclose other discovery

Request for Additional or Amended          Cause No. 35621          Page 6 of 9
Findings of Fact and Conclusions of Law
396

and license fee payments to BoardBook and SchoolCenter. Defendant's obstruction of justice is sanctionable. All evidence concerning SchoolCenter and BoardBook must be and is excluded from trial of the case and is disregarded. *Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex. 1989).

9. Court rules for plaintiffs on all counts and grants all relief requested. Court orders that plaintiff Terrell is reinstated to her previous position as a teacher at PISD and awards back pay and benefits. Terrell's termination in the 3/26/2009 board meeting is voided.

10. Court concludes that plaintiffs' claims must be decided based on the Exact and Literal compliance standard applied to TOMA cases by the Texas Supreme Court. The Court rules in favor of plaintiffs on all of their causes of action in this case whether or not tried before the court on October 9, 2013.

11. Defendant's claim that its internet notices independently appeared on BoardBook's website or on "Google," whether true or not, does not comply with TOMA Sec. 551.056(b).

12. Defendant's claim that it worked in BoardBook or checked its work in BoardBook is irrelevant and does not comply with TOMA Sec. 551.056(b) and does not meet the burden of good faith because PISD failed to check its own website for compliance with Sec. 551.056(b) during the entire time period of 5 months in 2009 for which it claims good faith.

13. Plaintiffs are interested persons under TOMA. Plaintiffs have a particularized injury caused by defendant by its action taken under TOMA terminating Terrell's contract. Plaintiffs have requested relief of reinstatement of Terrell to her teaching position at defendant and stated that Terrell will resume her teaching position upon reinstatement. Thus plaintiffs have standing to maintain this lawsuit and have had standing for the duration of the lawsuit. This court has jurisdiction through out the duration of this lawsuit. TOMA does not require a plaintiff to be a taxpayer of the government entity sued under TOMA. Further TOMA neither requires a litigant

Request for Additional or Amended                    Cause No. 35621                    Page 7 of 9
Findings of Fact and Conclusions of Law
397

to live within the boundaries of the government body nor does it require for a litigant to prove interest over and above that of general public. Plaintiffs have shown that they are interested in defendant government body and its functioning. Plaintiffs lived in Pampa within the boundaries of defendant when the alleged violations of TOMA occurred and injury of termination to plaintiff Terrell occurred in the school year 2008-2009 by PISD's action taken under TOMA.

14. TOMA is not a scheme for providing individual notice, nor does it have any due process implication. Thus whether or not plaintiffs attended the 3/26/2009 board meeting or had actual notice of it or of Terrell's termination in said meeting is irrelevant under TOMA.

15. Plaintiffs presented sufficient evidence to prove that continuance of the trial was justified and should be granted. Plaintiffs' motions to reset trial date, compel discovery, to exclude evidence, and for post-remand discovery are justified and should be granted.

16. Defendant's failure to competently oversee transfer of link is not a technical problem under TOMA and was not beyond the control of defendant for 5 months from January 2009 to May 19, 2009. A good faith attempt to post internet notice under TOMA 551.056 must involve verification as to whether such notice actually appears on government body's website. PISD did not do so even once in 5 months. PISD fails the reasonable person standard of due diligence. PISD did not attempt to post TOMA internet notices in good faith. Had defendant checked its website for internet notices even once during said 5 months as was its practice in 2008, it would have promptly discovered non-compliance with TOMA Sec. 551.056(b). The Court finds that lack of due care and oversight or negligence or incompetence, as here, is not a technical problem and that it is not beyond PISD's control. The Court finds that PISD exhibited conscious indifference to the required compliance with TOMA Sec.551.056(b) and with respect to other violations of TOMA asserted by plaintiffs. The Court concludes that given the extended long

Request for Additional or Amended          Cause No. 35621          Page 8 of 9
Findings of Fact and Conclusions of Law

time period involved in non-compliance with TOMA i.e. 5 months, any problem in this matter was not technical in nature, nor was it beyond the control of PISD. Court finds that the non-compliance with TOMA for 11 board meetings from 1/2009 thru 5/19/2009 was in bad faith.

Plaintiffs request that Court file the above additional and amended findings of fact and conclusions of law in this case and declare that to the extent any Finding of Fact reflects a legal conclusion, it shall be to that extent deemed a Conclusion of Law, and vice versa.

Respectfully submitted,

_Rebecca Terrell_

Rebecca Terrell

_C B Thanedar_

Chandrashekhar Thanedar, Plaintiffs
6503 Dancing Ct., San Antonio, TX 78244
(956) 445-3107; (512) 271-6840 Fax
rterrell152@gmail.com

## CERTIFICATE OF SERVICE

The undersigned certify that a true and correct copy of the foregoing document was served by USPS first class mail on December 2, 2013 on W. Wade Arnold, Andrea Gulley, Underwood Law Firm, P. O. Box 9158, Amarillo, Texas 79105-9158, Phone: 806.376.5613, Attorneys for PISD.

_Rebecca Terrell_

Rebecca Terrell
Chandrashekhar Thanedar

# Appendix 5

**Plaintiffs' Original Petition**

NO. 35621

ORIG

| | | |
|---|---|---|
| REBECCA TERRELL and<br>CHANDRASHEKHAR THANEDAR | § | IN THE 223 RD DISTRICT COURT |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | IN AND FOR |
| | § | |
| PAMPA INDEPENDENT SCHOOL<br>DISTRICT, | § | |
| | § | |
| *Defendant* | § | GRAY COUNTY, TEXAS |
| | § | |

FILED
GRAY COUNTY, TEXAS
2009 MAY 29 PM 4 07
GAYE HONDERICH
DISTRICT CLERK
BY _____ DEPUTY

## PLAINTIFFS' ORIGINAL PETITION AND APPLICATION FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER WITHOUT NOTICE AND TEMPORARY INJUNCTIONS WITH SUPPORTING DOCUMENTATION AND AFFIDAVIT

TO THE HONORABLE JUDGE OF THE COURT:

NOW COME Rebecca Terrell and Chandrashekhar Thanedar, hereinafter called Plaintiffs, complaining of and about Pampa Independent School District, hereinafter called Defendant, and for cause of action shows unto the court the following:

## DISCOVERY CONTROL PLAN

1. Discovery in this case is intended to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

## PARTIES AND SERVICE

2. Plaintiffs, Rebecca Terrell and Chandrashekhar Thanedar, are individuals whose address is 1000 N. Wells St. Pampa, Texas 79065. See the attached Plaintiffs' Affidavit in Support of Plaintiffs' Application for a Temporary Restraining Order.

3. Defendant Pampa Independent School District is a governmental entity created by the State of Texas located in Pampa, Gray County, Texas and was established for the purpose of

1

providing public schooling and education for the eligible members of the geographical jurisdiction, and may be served with process by serving its Superintendent of said School District, Barry Haenisch, at 321 W. Albert, Pampa, Texas 79065. Service of said Defendant as described above can be effected by personal delivery.

## STANDING

4. Plaintiffs, as members of public, taxpayers, citizens, or individuals resident within Pampa Independent School District are interested persons and have standing to bring forth this action as allowed under Tex. Govt. Code §551.142. Standing under the Texas Open Meetings Act (the Act) is to be interpreted broadly. See *Burks v. Yarbrough*, 157 S.W.3d at 880 (Tex. App.-Houston [14 Dist.] 2005 org. proceeding [man. denied]); *Hays County Water Planning P'ship v. Hays County*, 41 S.W. 3d at 177-78 (quoting *Save Our Springs Alliance, Inc.*, 934 S.W. 2d at 163). A person need not prove an interest different from the general public, "because the interest protected by the Open Meetings Act is the interest of the general public." See *Hays County Water Planning P'ship*, 41 S.W.3d at 177-78 (quoting *Save Our Springs Alliance, Inc.*, 934 S.W. 2d at 163).

## JURISDICTION AND VENUE

5. The subject matter in controversy is within the jurisdictional limits of this court.

6. Plaintiff Rebecca Terrell and Chandrashekhar Thanedar are residents of Pampa, Gray County, Texas.

7. This court has jurisdiction over the parties. Defendant Pampa Independent School District is a political subdivision of the State of Texas located within the geographical confines of Gray County, Texas. The Court has the power to grant relief requested and no administrative

exhaustion is required on the part of plaintiffs under the Texas Open Meetings Act Tex. Govt. Code Chapter 551. See Tex. Govt. Code §551.141 and §551.142.

8. Venue for this suit is proper in Gray County, Texas.

## FACTS

9. Defendant Pampa Independent School District tapes notices of board meetings to the front door of the administration building at "321 W. Albert." The notices do not mention the name of the city in which the meetings are held. The front door as a place to post notices is neither secure, nor convenient, nor appropriate, nor in compliance with the Act. The place of the notice of meeting i.e. taping the notices to the front door is in violation of the Open Meetings Act. The Open Meetings Act expressly states where the notice of a meeting shall be posted and the place varies depending on the governing body posting the notice. The place of posting for a School District is mandated to be a "Bulletin Board."

The Tex. Gov't Code §551.051: **School District: Place of Posting Notice** specifically states:

> "A school district shall post notice of each meeting on a bulletin board at a place convenient to the public in the central administrative office of the district." Tex. Gov't Code §551.051

As Defendant tapes the notices to the front door of its administration building and does not post notices on a bulletin board as mandated by the Act, defendant is in violation of the Act.

10. Further, Defendant is in violation of the time requirement of the Open Meetings Act Tex. Gov't Code §551.043(a). It is not accessible at night and there is no lighting whatsoever for public to read the notices at night time. The place is not convenient and not appropriate as defendant posts other notices on the front door of the administration building e.g. Pest Control Notices, Enrollment in Kindergarten Classes, etc., obscuring a statutory notice of the board

meeting under the Act.   The notices have fallen off from the front glass door at the defendant's administration building at 321 W. Albert in Pampa and are not accessible and not available for public reading for the prescribed continuous 72 hour period.   Notice must be posted for a minimum length of time before each meeting.  Section 551.043(a) states:

> The notice of a meeting of a governmental body must be posted in a place readily accessible to the general public at all times for at least 72 hours before the scheduled time of the meeting, except as provided by Sections 551.044-551.046.

As explained above, defendant is in violation of Tex. Gov't Code Section 551.043(a).

11.  (a) Defendant did not post notices of meetings on its internet website for any of its meetings for the prescribed time period before the meetings specifically including the following meetings of the Board of Trustees of Pampa Independent School District:

**2008-2009 School Year – Pampa Independent School District**

May 19, 2009 Board Meeting
May 7, 2009 Board Meeting
April 23, 2009 Board Meeting
April 21, 2009 Board Meeting
April 16, 2009 Board Meeting
April 2, 2009 Board Meeting
March 26, 2009 Board Meeting
March 12, 2009 Board Meeting
Feb. 19, 2009 Board Meeting
Feb. 5, 2009 Board Meeting
Jan. 15, 2009 Board Meeting
Dec. 18, 2008 Board Meeting
Dec. 4, 2008 Board Meeting
Nov. 20, 2008 Board Meeting
Nov. 6, 2008 Board Meeting
Oct. 23, 2008 Board Meeting
Oct. 9, 2008 Board Meeting
Oct. 2, 2008 Board Meeting
Sept. 18, 2008 Board Meeting
Sept. 4, 2008 Board Meeting
Aug. 21, 2008 Board Meeting
Aug. 13, 2008 Board Meeting

**See Exhibit 1.**

(b) Defendant engaged in conscious attempt to obstruct justice in flagrant disregard of law by posting notices of the above meetings on its website on May 19, 2009, weeks and months after the meetings in question took place, and only after several requests for records were made under the Public Information Act Tex. Gov't Code Ch. 552 by Plaintiffs. This contrivance and manipulation shows conscious guilt and willful conduct to disregard law. See Exhibits 1 -thru 6.

(c) The above website notices were posted on May 19, 2009 on the Defendant's internet website in the "BoardBook" nestled deep in the website so as to be less obvious and less conspicuous to public. On May 19, 2009, Defendant's Board was reorganized after a new board member was elected and sworn in on that date.

(d) Defendant has in fact admitted that it did not post any internet website notices of meetings for the school year 2008-2009 with respect to the meetings referred above as of May 15, 2009. The internet website notices posted for the said meetings on May 19, 2009 do not have the name of the designated person under the Act posting it and/or such person's signature or certificates of compliance with the Act, and dates and times of postings. See Exhibits 1 – 6. Such postings of notices are in violation of the Act, Tex. Gov't Code §551.043(b) and §551.056.

12. Defendant taped a notice of meeting on its building's front door on Friday, May 15, 2009 for a board meeting on May 18, 2009 and removed that taped notice on Monday, May 18, 2009 and re-posted and re-taped a new notice to the front door on Monday, May 18, 2009 for a board meeting on May 19, 2009. Plaintiff Thanedar confirmed this with Defendant's personnel and obtained a copy of the notice of this meeting on May 18, 2009. The May 19, 2009 board meeting was illegally convened in violation of the notice provisions of the Open Meetings Act, Tex. Gov't Code subchapter C, Tex. Gov't Code §551.041, §551.043, and §551.056.

13. On May 26, 2009, two months after the Board Meeting held on March 26, 2009, Defendant Pampa Independent School District's superintendent Mr. Barry Haenisch by certified letter submitted to plaintiff Terrell another "version" of the "original notice." This "second" version of the "original notice" mailed to Terrell is signed by Ms. Karen Linder and falsely dated March 20, 2009. See Exhibit 3. It is undisputed that defendant's central office building (and the entire school district) was closed from March 14, 2009 through March 22, 2009 for "Spring Break." This notice dated March 20, 2009 is false, was never posted, nor distributed to public and was recreated only to obstruct justice and misrepresent compliance with the Act. Such obstruction of justice should not be countenanced by this Court.

14. In fact, the original posting of notice for the March 26, 2009 was taped to Defendant's front office door on March 24, 2009 (after the March 23, 2009 taped notice fell or was removed from the door per defendant's personnel.) This notice dated March 23, 2009 for the March 26, 2009 board meeting was in fact distributed to public and Plaintiffs on March 26, 2009 during the said board meeting. Plaintiffs verified with defendant's personnel that no notice was posted or remain posted on the front door on March 23, 2009 and obtained a copy of the notice of the March 26, 2009 meeting on March 24, 2009. There was no internet website posting done by the Defendant for the March 26, 2009 for the prescribed time period under the Act. The March 26, 2009 meeting was illegally convened and this meeting and all actions taken in it are in violation of the Open Meetings Act Subchapter C, Tex. Gov't Code §551.041; §551.043, and §551.056.

15. Defendant does not maintain or could not locate the signed originals of the notices and/or minutes of the board meetings from November 2008 through April 2009 as inspected pursuant to a Public Information Request by Plaintiff Thanedar. Defendant admitted that the

original signed minutes for the March 12, 2009 meeting did not exist. Upon inspection, several other documents/minutes also appeared to be copies and not originals.

16. Defendant's notices of board meetings taped to the front door of the administrative building are signed by Ms. Karen Linder who is a secretary to Mr. Barry Haenisch, Superintendent of Defendant Pampa Independent School District. These postings are in violation of the Act as follows:

1. The postings of the notices specifically including notice for the March 26, 2009 meeting do not contain certificates of compliance by a "designated or authorized" person that the postings are in compliance with the mandatory requirements of the Open Meetings Act.

2. The Open Meetings Act has several notice provisions which must be complied with and it is self-evident that a designated or an authorized person must provide a certificate that the notice posted is in fact in compliance with the Open Meetings Act. This court should take judicial notice of how governmental bodies and school districts properly post notices on their internet website where designated personnel post and certify compliance with the Open Meetings Act.

3. Defendant's taped front door notices are signed by Ms. Karen Linder who is not designated nor authorized by the Defendant's policies legally approved by its Board of Trustees to post public notices of meetings under the Act. It is undisputed that as a secretary to the Superintendent of Defendant, Ms. Karen Linder has neither the authority under law, district by-laws or approved policies, nor any apparent or implied authority to post statutory notices on

behalf of a government body namely, Defendant. Indeed, Ms. Karen Linder does not even claim to have any authority to post legal notices, nor certify compliance under the Act, nor sign the notices on behalf of the Board of Trustees. In fact, Ms. Linder makes no certifications whatsoever in the notices she signed including the notice posted for the March 26, 2009 board meeting.

4. No notices of board meetings are signed by the President of the Board of Trustees or the Superintendent of Defendant Pampa Independent School District. This is in violation of the Act as the "school district" must post a notice of a meeting in compliance with the Act. Tex. Gov't Code subchapter C, Tex. Gov't Code §551.041, §551.043, and §551.056.

17. Defendant is in violation of the additional posting requirements of the Open Meetings Act Tex. Gov't Code §551.056 which requires that governmental bodies such as defendant must post notices of meetings on their internet websites concurrently for the prescribed minimum 72 hours before meetings. This requirement is in addition to other postings required by the Act. The Open Meetings Act defines "notice" as follows: "A governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body." Defendant is in violation of Tex. Gov't Code §551.041. Further, Defendant is in violation of the time requirement of the Open Meetings Act Tex. Gov't Code §551.043(b).

18. Posting notice is mandatory and actions taken at a meeting for which notice was posted incorrectly will be voidable. *Sierra Club v. Austin Transp. Study Policy Advisory Comm'n*, 746 S.W.2d at 301 (Tex. App. – Austin 1988, writ denied).

8

**PLAINTIFFS' CLAIMS TO DECLARE MEETINGS AND ACTIONS VOID UNDER TEXAS OPEN MEETINGS ACT (TEX. GOV'T CODE, Ch. 551)**

19. Plaintiffs incorporate within this claim all of the allegations set forth in paragraphs 1-18, *Supra*.

20. Defendant is a government body which is subject to the provisions of the Texas Open Meetings Act. Since the Board of Trustees for the Defendant Pampa Independent School district is a body corporate, members cannot perform any valid act except as a body at meetings properly convened and conducted. *See Toyah ISD v. Pecos-Barstow ISD*, 466 S.W. 2d 377 (Tex. Civ. App.-San Antonio 1971), no writ; *see also Buchele v. Woods*, 528 S.W.2d 95 (Tex. Civ. App.-Tyler, 1975, no writ).

21. Pursuant to Tex. Gov't Code §551.141 an action taken by a government body in violation of the Texas Open Meetings Act is voidable. Governmental actions taken in violation of the notice requirements of the Act are voidable. *Swate v. Medina Cmty. Hospital*, 966 S.W.2d 693, 699 (Tex. App.-San Antonio 1998, pet denied); Tex. Gov't Code §551.141. Governmental actions in violation of the Open Meetings Act have been judicially declared to be void. *See e.g. Point Isabel I.S.D. v. Hinojosa*, 797 S.W.2d 176, 179 (Tex. App. –Corpus Christi 1990, writ denied). By Defendant's violation of the notice provisions of the Open Meetings Act as explained above, the respective illegally convened Board Meetings (see paragraph 11 above and Exhibit 1) and all actions taken therein are both illegal and therefore void. Plaintiffs request that all meetings, and thus actions in question, as noted above in paragraph 11 including the meeting held on 3/26/09 be declared void.

22. In this case, the Pampa Independent School District woefully failed to comply with the statutory notice provisions of the Open Meetings Act as shown above and shown conscious guilt in its transparent attempts to misrepresent compliance and grossly obstruct justice.

Defendant has repeatedly demonstrated flagrant disregard for the public's right to know what their government is doing and for public's right to expect honest, voluntary, and full compliance with law. Citizens do not have to file lawsuits to expect and enforce honest compliance with the law from their government.

23. It is plaintiffs' position that the board meeting of March 26, 2009 was not properly convened and was in violation of the notice provisions of the Open Meetings Act as explained above , and therefore, illegal. Plaintiffs request that the said meeting and all actions taken in the meeting specifically the action terminating Rebecca Terrell's probationary contract be declared void by this Court. This court should not countenance the improper conduct and flagrant disregard for law shown by the defendant (e.g. having three different false versions of the notice of the board meeting held on March 26, 2009) and this court should consider such improper conduct in declaring the above referenced actions and meeting void and in further granting injunctive and mandamus relief to plaintiffs, specifically including reinstatement of Rebecca Terrell's employment contract and duties, responsibilities, and privileges appurtenant therein and granting special damages.

24. It is plaintiffs' position that the board meetings outlined in paragraph 11 above were not properly convened and were in violation of the Open Meetings Act's notice provisions. Plaintiffs request that the said meetings and all actions taken in the said meetings be declared void by this Court. This court should not countenance the improper conduct and flagrant disregard for law shown by the defendant and this court should consider such improper conduct in declaring the above referenced actions and meetings void and in further granting injunctive and mandamus relief to plaintiffs.

25. By this action, as provided by the Open Meetings Act, plaintiffs also seeks to recover from Defendant all of their reasonable costs and attorney's fees incurred in bringing this action.

## PLAINTIFFS' CLAIM FOR MANDAMUS

26. Plaintiffs incorporate within this claim all of the allegations set forth in paragraphs 1-25, *supra*.

27. Defendant's violation of the Open Meetings Act caused plaintiffs' substantial injury for which plaintiffs sue for equitable relief of writ of mandamus in the form of voiding all meetings outlined in paragraph 11 above including the meeting of March 26, 2009 and actions taken therein and reinstatement of Rebecca Terrell's employment contract as a classroom teacher and all rights, duties, privileges appurtenant thereto and injunctive relief to prevent further such occurrences and violations of the Act.

## APPLICATION FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER WITHOUT NOTICE AND INJUNCTIVE RELIEF

28. Plaintiffs incorporate within this claim all of the allegations set forth in paragraphs 1-27, *supra*.

29. Plaintiffs are seeking temporary injunctive relief from the actions of Defendant.

30. Plaintiffs request the Court to temporarily restrain Defendant Pampa Independent School District without notice and, after notice is given to Defendant and after hearing is held, to temporarily enjoin Defendant Pampa Independent School District from tampering, deleting, modifying, correcting or changing in any way the Notices, Agendas, Minutes, and/or record of Board Meetings in paper or electronic form or as posted on the defendant's website as "BoardBook" or under any other name or form with respect to the meetings in question and subject matter of this lawsuit.

31. Plaintiffs request the Court to temporarily restrain Defendant Pampa Independent School District without notice and, after notice is given to Defendant and after hearing is held, to temporarily enjoin Defendant Pampa Independent School District from proceeding with the termination of Rebecca Terrell's employment contract and from terminating her duties, rights, and privileges as a classroom teacher.

32. The granting of the temporary injunctive relief requested by Plaintiffs will allow Plaintiffs to preserve the issues at hand until a final determination by the Court regarding the alleged violations of the Texas Open Meetings Act can be made.

33. Additionally, the granting of the temporary injunctive relief requested by Plaintiffs will only require Defendant Pampa Independent School District to comply with and abide by the Open Meetings Act and the employment contract with Rebecca Terrell until a final determination is made by the Court. The Defendant governmental entity Pampa Independent School District incurs no additional cost and bears no additional duty but to comply with law or the existing contractual obligations. Plaintiffs have made sufficient showing of violations and a pattern of obstruction of justice and willful non compliance with the Open Meetings Act on the part of Defendant. Therefore, Plaintiffs pray that the Court, in its discretion, should not require cash bond in this matter on the part of plaintiffs, or alternatively, if the court requires a bond, require the bond of a nominal amount.

34. Furthermore, the granting of temporary injunctive relief will prevent Defendant from taking action that will cause further immediate and irreparable harm to Plaintiffs and all other citizens and taxpayers of the Pampa Independent School District. Defendant's modifying, altering or changing in any way the paper or electronic record and documents, whether posted on the Defendant's website or not, will make it impossible for the Plaintiffs to present their case to

this Court. Given the Defendant's conduct so far, a temporary restraining order without notice is proper.

35. Plaintiffs have exercised and will exercise due diligence in prosecuting their claims. The injury to Plaintiffs and all other citizens and taxpayers of the Pampa Independent School District, if defendant is not temporarily enjoined from the conduct described above, would outweigh any injury that the temporary restraining order and the temporary injunctions might cause Defendant.

36. The issuance of temporary restraining order and temporary injunctions would not be against the public's interests but are sought only to preserve the best interests of the public and sought in the interest of justice.

37. Plaintiffs seek to recover costs and reasonable attorney fees in this proceeding.

## DAMAGES FOR PLAINTIFFS

38. As a direct and proximate result of the occurrences made the basis of this lawsuit, Plaintiffs, Terrell and Thanedar were caused to suffer as interested persons and concerned citizens and taxpayer of the defendant Pampa Independent School District, and have incurred a loss of respect of the integrity of the administrators and elected representatives of the Pampa Independent School District.

39. The Texas Supreme Court has demanded literal compliance with the Open Meetings Act in general and specifically with respect to its notice provisions.

40. The Attorney General of the State of Texas, Greg Abbott, has stated unequivocally that "The Texas Open Meetings Act commits public officials at all levels of government to the principle of government in the sunshine. It is our legal guarantee that the public's business is

conducted openly and without secrecy." See the Attorney General's Letter to Fellow Texans at *www.oag.state.tx.us/newspubs/publications.shtml* (Open Meetings 2008 Handbook).

41. Special damages are appropriate in this case, given the obstruction of justice and gross and willful non compliance with the Open Meetings Act e.g. taping notices to the front door, lack of a bulletin board, lack of a properly designated person posting the notices of meetings on behalf of the Board of Trustees of Defendant, new re-creation of false versions of original documents, and untimely and after-the-fact postings of notices of meetings by Defendant including on its internet website, weeks and months after the meetings were held.

## PRAYER

42. **FOR THESE REASONS**, Plaintiffs Rebecca Terrell and Chandrashekhar Thanedar respectfully pray that Defendant Pampa Independent School District be cited to appear herein and answer, and that upon a final hearing of the cause, judgment be entered for the plaintiffs against Defendant for damages within the jurisdictional limits of the court, costs of the court, fees and expenses, attorney fees, and such other and further relief to which the plaintiffs may be entitled at law or equity.

43. Plaintiffs pray that the Court issue a temporary restraining order without notice given to Defendant Pampa Independent School District that temporarily restrains the Defendant and its board members, officers, agents, servants, and employees from directly or indirectly proceeding to delete, modify, correct, alter records or documents relevant to this case, specifically including internet website postings of notices and minutes of Board Meetings of Defendant, and directly and indirectly proceeding to terminate plaintiff Rebecca Terrell's employment contract with defendant and duties, rights, privileges appurtenant therein to allow plaintiffs the opportunity to challenge the actions of defendants.

44. Plaintiffs pray that the court require defendant to abide by all laws, rules, regulations, and policies that are required of the defendant and its board members, officers, agents, servants, and employees.

45. Plaintiffs request that the court set a date and time for a hearing on plaintiffs' claim to declare the meetings outlined in No. 11 above of this petition and actions taken therein void, Plaintiffs' claim for a mandamus, Plaintiffs' claim for damages and special damages, Plaintiffs' application for temporary and permanent injunctions and issue notice of this hearing to defendant.

46. After holding a hearing, the court should declare the meetings outlined in No. 11 above (specifically including the meeting held on March 26, 2009) void and declare the actions taken in the said meetings (including the termination of Rebecca Terrell's employment contract on March 26, 2009) void and issue a writ of mandamus ordering the reinstatement of Rebecca Terrell's employment contract which would have renewed automatically by operation of law (Texas Education Code Sec. 21.103 (a) and (b)). Further, the Court should issue permanent injunctions against Defendant to prevent future violations of law, specifically the Open Meetings Act.

47. Considering the systematic willful violations of the Open Meeting Law and the scant and perfunctory deliberation on Terrell's employment contract in the open meeting on March 26, 2009 (Terrell had requested that all deliberations be conducted in the open meeting under the authority of Tex. Gov't Code §551.074(b)), it is clear that defendant further deliberated on matters relating to Terrell's employment in the closed meeting in violation of the Act. Plaintiffs pray that the Court order Defendant to produce and disclose to plaintiffs the certified agenda of the closed meeting or the executive session of the board meeting held on March 26, 2009;

alternatively, Plaintiffs pray that the Court conduct an *in camera* inspection of the Certified Agenda to verify whether Defendant complies with relevant provisions relating to Certified Agenda and whether a violation occurred of the said provisions. See Tex. Gov't Code §551.104. The court has power to order Defendant to disclose the certified agenda of the closed meeting or the executive session of any Board Meeting pursuant to Tex. Gov't Code §551.104

48. As allowed under Tex. Gov't Code Ch. 551 Subchapter G, plaintiffs pray that the court assess costs of litigation, any fees and expenses, and any reasonable attorney fees incurred by plaintiffs and grant such relief to Plaintiffs.

49. Further, considering the flagrant and willful violations of the Open Meetings Act, Plaintiffs respectfully request special damages including costs, fees and expenses, and reasonable attorney fees under the Open Meetings Act.

Dated: May 29, 2009                                     Respectfully submitted,


_Rebecca Terrell_
Rebecca Terrell


_CB Thanedar_
Chandrashekhar Thanedar

1000 N. Wells St.
Pampa, TX 79065
(956) 445-3107

Plaintiffs, Self-represented

Terrell v. Pampa ISD                                               Page 16 of 16

16

STATE OF TEXAS                                  §
                                                §
                                                §
                                                §
GRAY COUNTY                                     §

## AFFIDAVIT IN SUPPORT OF PLAINTIFFS' APPLICATION

## FOR A TEMPORARY RESTRAINING ORDER

BEFORE ME, the undersigned authority, on May 28, 2009 personally appeared Rebecca Terrell and Chandrashekhar Thanedar, and after being duly sworn by me, stated under oath the following:

"Our names are Rebecca Terrell and Chandrashekhar Thanedar. We are over the age of majority. We are mentally, physically and otherwise competent to make this sworn declaration. We are not legally disqualified from making this affidavit."

"We have personal knowledge of the facts alleged herein and in the Plaintiffs' Original Petition and Application for Issuance of a Temporary Restraining Order Without Notice and Temporary Injunctions with Supporting Documentation and Affidavit ("Petition") and it is true and correct except where otherwise stated. We affirm that the attached exhibits to the Petition are true and correct copies of the record. We are concerned residents, taxpayers, and citizens of Pampa in the Pampa Independent School District."

_____          _____
Rebecca Terrell                            Chandrashekhar Thanedar

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this the ___28th___ day of ___May___, 2009.

_____
Notary Public in and for
the State of Texas

_____
Ashley N. Nelson
(Printed Name of Notary)

17

 *Revised*



# Notice of Regular Meeting

## The Board of Trustees
## Pampa Independent School District

A Regular Meeting of the Board of Trustees of Pampa Independent School District will be held March 26, 2009, beginning at 6:00 PM in the Carver Center Administration Office, 321 W. Albert.

The subjects to be discussed or considered or upon which any formal action may be taken are as listed below. Items do not have to be taken in the order shown on this meeting notice.

Unless removed from the consent agenda, items identified within the consent agenda will be acted on at one time.

I.    Call to Order / Declaration of a quorum

II.   Public Comments (7:00 p.m.)

III.  CONSENT AGENDA
      A.    Consideration and action to approve monthly financial reports
      B.    Consideration and action to approve board minutes for January 15, February 19, 2009 and March 12, 2009.
      C.    Consideration and action to approve professional development absences for some staff.
      D.    Consideration and possible action to approve the Fall Sports Bids.
      E.    Consideration and action to approve signatures on bank accounts.

IV.   ACTION / DISCUSSION ITEMS
      A.    Consideration and possible action to approve a fund raiser for the PHS Prom Committee
      B.    Cast Votes for Region 16 Board of Directors
      C.    Consideration and possible action to approve a resolution from Pampa ISD School Health Advisory Council for recess for elementary school students.
      D.    Consideration and possible action to approve a Board Resolution in support of a Safe and Drug Free Schools and Communities Act Fund Grant for PISD.
      E.    Consideration and possible action to approve revised employment contracts
      F.    Consideration and possible action to approve a resolution to extend the depository contract.
      G.    Discuss Gun Free Zone Act
      H.    Construction Update:  Pampa Junior High School

EXHIBIT 2

I.      Construction Update: Pampa High School
J.      Identify future agenda items

V.    **REPORTS**
     A.      Buildings, Grounds, and Facilities Report
     B.      Career and technology and college credit opportunities for PISD students.
     C.      Personnel Management Report
     D.      Food Services Report
     E.      Wind Energy Report

VI.   **PERSONNEL**
     A.      Employment of professional employee
     B.      Approval and renewal of term contract employees
     C.      Approval and renewal of probationary contract employees
     D.      Approval of termination of probationary contract employees.
     E.      Approval of non-renewal of term contract employees.

*The Board may close this meeting to consult with its attorney on any item posted on this agenda in order to receive legal advice or to maintain the attorney-client privilege. The Board may also close the meeting to consult with its attorney on any other matter when the attorney's professional and ethical duty to the Board requires a confidential communication. If, during the course of the meeting, discussion of any item on the agenda should be held in a closed meeting, the Board will conduct a closed meeting in accordance with the Texas Open Meetings Act, Texas Government Code, Chapter 551, Subchapters D and E. Before any closed meeting is convened, the presiding officer will publicly identify the section of the Act authorizing the closed meeting. All final votes, actions, or decisions will be taken in open meeting.*

CARVER CENTER IS WHEELCHAIR ACCESSIBLE. HEARING IMPAIRED PERSONS MUST REQUEST AN INTERPRETER 48 HOURS IN ADVANCE OF THE MEETING, PLEASE CALL 669-4700 FOR ASSISTANCE.

AGENDA Posted By 5:00 p.m. on    3/23/9

*Karen Linder*



# Notice of Regular Meeting

## The Board of Trustees
## Pampa Independent School District

---

A Regular Meeting of the Board of Trustees of Pampa Independent School District will be held March 26, 2009, beginning at 6:00 PM in the Carver Center Administration Office, 321 W. Albert.

The subjects to be discussed or considered or upon which any formal action may be taken are as listed below. Items do not have to be taken in the order shown on this meeting notice.

Unless removed from the consent agenda, items identified within the consent agenda will be acted on at one time.

I.      Call to Order / Declaration of a quorum

II.     Public Comments (7:00 p.m.)

III.    CONSENT AGENDA
     A.     Consideration and action to approve monthly financial reports
     B.     Consideration and action to approve board minutes for January 15, February 19, 2009 and March 12, 2009.
     C.     Consideration and action to approve professional development absences for some staff.
     D.     Consideration and possible action to approve the Fall Sports Bids.
     E.     Consideration and action to approve signatures on bank accounts.

IV.     ACTION / DISCUSSION ITEMS
     A.     Consideration and possible action to approve a fund raiser for the PHS Prom Committee
     B.     Cast Votes for Region 16 Board of Directors
     C.     Consideration and possible action to approve a resolution from Pampa ISD School Health Advisory Council for recess for elementary school students.
     D.     Consideration and possible action to approve a Board Resolution in support of a Safe and Drug Free Schools and Communities Act Fund Grant for PISD.
     E.     Consideration and possible action to approve revised employment contracts
     F.     Consideration and possible action to approve a resolution to extend the depository contract.
     G.     Discuss Gun Free Zone Act
     H.     Construction Update:  Pampa Junior High School

**EXHIBIT 3**

20

I.      Construction Update: Pampa High School

J.      Identify future agenda items

## V.    REPORTS

A.      Buildings, Grounds, and Facilities Report

B.      Career and technology and college credit opportunities for PISD students.

C.      Personnel Management Report

D.      Food Services Report

E.      Wind Energy Report

## VI.   PERSONNEL

A.      Employment of professional employee

B.      Approval and renewal of term contract employees

C.      Approval and renewal of probationary contract employees

D.      Approval of termination of probationary contract employees.

E.      Approval of non-renewal of term contract employees.

*The Board may close this meeting to consult with its attorney on any item posted on this agenda in order to receive legal advice or to maintain the attorney-client privilege. The Board may also close the meeting to consult with its attorney on any other matter when the attorney's professional and ethical duty to the Board requires a confidential communication. If, during the course of the meeting, discussion of any item on the agenda should be held in a closed meeting, the Board will conduct a closed meeting in accordance with the Texas Open Meetings Act, Texas Government Code, Chapter 551, Subchapters D and E. Before any closed meeting is convened, the presiding officer will publicly identify the section of the Act authorizing the closed meeting. All final votes, actions, or decisions will be taken in open meeting.*

CARVER CENTER IS WHEELCHAIR ACCESSIBLE. HEARING IMPAIRED PERSONS MUST REQUEST AN INTERPRETER 48 HOURS IN ADVANCE OF THE MEETING. PLEASE CALL 669-4700 FOR ASSISTANCE.

AGENDA Posted By 5:00 p.m. on _3/20/9_

*Karen Linder*



# P At MPA

Mr. Barry Haenisch, Superintendent

May 26, 2009

Rebecca Terrell
1000 N. Wells
Pampa, Texas 79065

**VIA CMRRR** 7004 0550 0013 0670 185
and Regular U.S. Mail

Dear Ms. Terrell:

I have become aware that page two of the March 26, 2009, Pampa ISD School Board Agenda was inadvertently omitted from the material provided to you in your Texas Open Records Request. I am providing a complete agenda of that meeting to you to complete your records.

Sincerely,

Barry Haenisch, Superintendent

Pampa Independent School District • 321 W. Albert Street • Pampa, Texas 79065
806-669-4700 • fax 806-665-0506 • barry.haenisch@pampaisd.net

22

321 W. Albert | Pampa, TX 79065 | Phone: 806-669-4700 | Fax: 806-665-0506



# Pampa Independent School District

Pampa ISD
Pampa ISD Event Calendar
District Contact Directory
Campus Contact Information
▼ Schools
▼ Parent Connection
▼ Weather Information
▼ District Information
▼ Pampa ISD Staff
What's New
Department Information
▼ Department Directory

# Pampa ISD Board Of Trustees

Click here to view the School Board Goals.



### Lance DeFever, Member

- Place 2, Term: 6/2001 - 5/2011, E-Mail
  - Born and raised in Pampa
  - Graduate of Pampa High School
- Graduate of Amarillo College, Associate Degree in Mortuary Science
- Career: Vice-President of Mojave Petroleum Co. Inc. for 17 years; Manager of Fairview Cemetery Association from 1999 to present; Funeral Director for Carmichael-Whatley Funeral Directors
- Family: Wife, Brooke; Three sons, Reed, Spencer, Ethen; Step-son, Will Vice

### Derrell Deloach, Vice President




- Place 1, Term: 5/2005 - 5/2011, E-Mail
- Graduate of West Monroe High School, 1982
- Graduate of Northeast Louisiana University, 1990 (BBA)
- Graduate of Texas Christian University, 1994 (ADN)
- Graduate of West Texas A&M University, 2001 (MSN)
- US Army Veteran
- Career: Family Medicine Center, Nurse Practitioner
- Family: Wife, Andrea (PHS class of '88); Children, Joshua, Emily and Abby
- Community: Member - Trinity Fellowship Church, Pampa Rotary Club

### Joe Martinez, Member



- Place 6, Term: 5/1998 - 5/2010, E-Mail
  - Born in San Antonio, Texas
  - Graduate of Theodore Roosevelt High School
- Graduate of Clarendon Junior College, Associate of Arts Degree
- US Air Force Vietnam Veteran
- Career: Employee of Northern Natural Gas from 1979 to Present
- Family: Wife, Charlene; Children, Danielle, Michael, Quila

### Mark McVay, Member



EXHIBIT 4

- Place 7, Term: 5/2007- 5/2010, E-Mail
  - Lived in Pampa since 1987
  - Graduate of Roswell High School, 1980;
- Graduate of West Texas State University, 1984 - BBA Accounting
- Career: CPA, Chief Financial Officer for Oilwell Operators, Inc.
- Family: Wife, Ginger; Children; Natalie, PHS Class of 2004, Stephanie, PHS Class of 2007, Trevor







- Community/Civic: Member - St. Vincent De Paul Catholic Church, CASA of the High Plains, Pampa Rotary Club, Knights of Columbus, Boy Scouts, and United Way.



## Lee Porter, Member

- Place 5, Term: 5/1997 - 5/2009, E-Mail
- Graduate of Odessa High School - 1964
- Graduate of Odessa Junior College - 1966 (with honors);
- Graduate of University of Texas at Austin, 1969 (BA in Math and BS in Chemistry)
- Career: Independent Oil & Gas Producer
- Family: Wife, Janice; Children, Chris, PHS Class of 1988, Gavin, PHS Class of 1994, Jai Jai PHS Class of 1997



## Charles Smith, President

- Place 4, Term: 5/2003 - 5/2009, E-Mail
- Born in Lubbock but raised in Pampa
- Graduate of Pampa High School
- Career: Business owner, Environmental, Health and Safety Consultant and Trainer
- Family: Wife, Karen; Children, Chris, Matt, Hannah



## Dana Terry, Secretary

- Place 3, Term: 5/2005 - 5/2011, E-Mail
- Attended West Texas University
- Career: Owner of Complete Travel 15 years
- Family: Husband, W.R. "Bebo" Terry; Children, Elizabeth, Emily
- Community: Lifelong member of First Christian Church

Print Page

This is Google's cache of http://www.pampaisd.net/education/components/scdirectory/default.php?
sectiondetailid=2&PHPSESSID=706c5855e7ea40287031c6af6a751989. It is a snapshot of the page as it appeared on May 16,
2009 06:59:06 GMT. The current page could have changed in the meantime. Learn more

These search terms are highlighted: **pampa isd school board** These terms only appear in links pointing to this     Text-only version
page: **website**

321 W. Albert | Pampa, TX 79065 | Phone: 806-669-4700 | Fax: 806-665-0506



**Pampa Independent School District**

**Pampa ISD**
**Pampa ISD** Event Calendar
District Contact Directory
Campus Contact Information
▼ Schools
▼ Parent Connection
▼ Weather Information
▼ District Information
▼ **Pampa ISD** Staff
What's New
Department Information
▼ Department Directory

# Pampa ISD Board Of Trustees

Click here to view the **School Board** Goals.



### Lance DeFever, Member

- Place 2, Term: 6/2001 - 5/2011, E-Mail
  - Born and raised in Pampa
  - Graduate of Pampa High School
- Graduate of Amarillo College, Associate Degree in Mortuary Science
- Career: Vice-President of Mojave Petroleum Co. Inc. for 17 years; Manager of Fairview Cemetery Association from 1999 to present; Funeral Director for Carmichael-Whatley Funeral Directors
- Family: Wife, Brooke; Three sons, Reed, Spencer, Ethen; Step-son, Will Vice

### Derrell Deloach, Vice President

- Place 1, Term: 5/2005 - 5/2011, E-Mail
- Graduate of West Monroe High School, 1982
- Graduate of Northeast Louisiana University, 1990 (BBA)
- Graduate of Texas Christian University, 1994 (ADN)
- Graduate of West Texas A&M University, 2001 (MSN)
  - US Army Veteran
- Career: Family Medicine Center, Nurse Practitioner
- Family: Wife, Andrea (PHS class of '88); Children, Joshua, Emily and Abby
- Community: Member - Trinity Fellowship Church, Pampa Rotary Club

### Joe Martinez, Member

- Place 6, Term: 5/1998 - 5/2010, E-Mail
  - Born in San Antonio, Texas
  - Graduate of Theodore Roosevelt High School
- Graduate of Clarendon Junior College, Associate of Arts Degree
  - US Air Force Vietnam Veteran
- Career: Employee of Northern Natural Gas from 1979 to Present
  - Family: Wife, Charlene; Children, Danielle, Michael, Quila



**EXHIBIT 5**

### Mark McVay, Member





- Place 7, Term: 5/2007- 5/2010, E-Mail
  - Lived in Pampa since 1987
- Graduate of Roswell High School, 1980;
- Graduate of West Texas State University, 1984 - BBA Accounting
  - Career: CPA, Chief Financial Officer for Oilwell Operators, Inc.
- Family: Wife, Ginger; Children; Natalie, PHS Class of 2004, Stephanie, PHS Class of 2007, Trevor
- Community/Civic: Member - St. Vincent De Paul Catholic Church, CASA of the High Plains, Pampa Rotary Club, Knights of Columbus, Boy Scouts, and United Way.

### Lee Porter, Member



- Place 5, Term: 5/1997 - 5/2009, E-Mail
- Graduate of Odessa High School - 1964
- Graduate of Odessa Junior College - 1966 (with honors);
- Graduate of University of Texas at Austin, 1969 (BA in Math and BS in Chemistry)
- Career: Independent Oil & Gas Producer
- Family: Wife, Janice; Children, Chris, PHS Class of 1988, Gavin, PHS Class of 1994, Jai Jai PHS Class of 1997

### Charles Smith, President



- Place 4, Term: 5/2003 - 5/2009, E-Mail
- Born in Lubbock but raised in Pampa
- Graduate of Pampa High School
- Career: Business owner, Environmental, Health and Safety Consultant and Trainer
- Family: Wife, Karen; Children, Chris, Matt, Hannah

### Dana Terry, Secretary



- Place 3, Term: 5/2005 - 5/2011, E-Mail
  - Attended West Texas University
- Career: Owner of Complete Travel 15 years
- Family: Husband, W.R. "Bebo" Terry; Children, Elizabeth, Emily
  - Community: Lifelong member of First Christian Church

Print Page

321 W. Albert | Pampa, TX 79065 | Phone: 806-669-4700 | Fax: 806-665-0506



Pampa Independent School District

Pampa ISD
Pampa ISD Event
Calendar
District Contact
Directory
Campus Contact
Information
▼ Schools
▼ Parent
Connection
▼ Weather
Information
▼ District
Information
▼ Pampa ISD Staff
What's New
Department
Information
▼ Department
Directory

# Pampa ISD Board Of Trustees

Meeting information

School Board Goals



### Lance DeFever, Member

- Place 2, Term: 6/2001 - 5/2011, E-Mail
  - Born and raised in Pampa
  - Graduate of Pampa High School
- Graduate of Amarillo College, Associate Degree in Mortuary Science
- Career: Vice-President of Mojave Petroleum Co. Inc. for 17 years; Manager of Fairview Cemetery Association from 1999 to present; Funeral Director for Carmichael-Whatley Funeral Directors
- Family: Wife, Brooke; Three sons, Reed, Spencer, Ethen; Step-son, Will Vice



### Derrell Deloach, Vice President

- Place 1, Term: 5/2005 - 5/2011, E-Mail
- Graduate of West Monroe High School, 1982
- Graduate of Northeast Louisiana University, 1990 (BBA)
- Graduate of Texas Christian University, 1994 (ADN)
- Graduate of West Texas A&M University, 2001 (MSN)
  - US Army Veteran
- Career: Family Medicine Center, Nurse Practitioner
- Family: Wife, Andrea (PHS class of '88); Children, Joshua, Emily and Abby
- Community: Member - Trinity Fellowship Church, Pampa Rotary Club



### Joe Martinez, Member

- Place 6, Term: 5/1998 - 5/2010, E-Mail
  - Born in San Antonio, Texas
- Graduate of Theodore Roosevelt High School
- Graduate of Clarendon Junior College, Associate of Arts Degree
  - US Air Force Vietnam Veteran
- Career: Employee of Northern Natural Gas from 1979 to Present
  - Family: Wife, Charlene; Children, Danielle, Michael, Quila

### Mark McVay, Member

- Place 7, Term: 5/2007- 5/2010, E-Mail
  - Lived in Pampa since 1987
- Graduate of Roswell High School, 1980;
- Graduate of West Texas State University, 1984 - BBA Accounting
- Career: CPA, Chief Financial Officer for Oilwell Operators, Inc.



EXHIBIT 6





- Family: Wife, Ginger; Children; Natalie, PHS Class of 2004, Stephanie, PHS Class of 2007, Trevor
- Community/Civic: Member - St. Vincent De Paul Catholic Church, CASA of the High Plains, Pampa Rotary Club, Knights of Columbus, Boy Scouts, and United Way.

## Lee Porter, Member



- Place 5, Term: 5/1997 - 5/2009, E-Mail
- Graduate of Odessa High School - 1964
- Graduate of Odessa Junior College - 1966 (with honors);
- Graduate of University of Texas at Austin, 1969 (BA in Math and BS in Chemistry)
- Career: Independent Oil & Gas Producer
- Family: Wife, Janice; Children, Chris, PHS Class of 1988, Gavin, PHS Class of 1994, Jai Jai PHS Class of 1997

## David Teichmann, Member

- Place 4, Term: 5/2009 - 5/2012

## Dana Terry, Secretary



- Place 3, Term: 5/2005 - 5/2011, E-Mail
- Attended West Texas University
- Career: Owner of Complete Travel 15 years
- Family: Husband, W.R. "Bebo" Terry; Children, Elizabeth, Emily
- Community: Lifelong member of First Christian Church

Print Page

SINGLE CD ROM THAT IS LABELED "PAMPA ISD NOTICES – EXHIBIT #1" AND IS AN ATTACHMENT OF THE DOCUMENT:


**PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER WITHOUT NOTICE AND TEMPORARY INJUNCTION WITH SUPPORTING DOCUMENTATION AND AFFIDAVIT**


FILE DATE: MAY 29, 2009


ORIGINAL OF CD ROM IS ON FILE WITH THE DISTRICT CLERK.

# Appendix 6

**Plaintiffs' Second and First
Supplemental Petitions**

CAUSE NO. 35621



| REBECCA TERRELL and CHANDRASHEKHAR THANEDAR | § | IN THE 223RD DISTRICT COURT |
|---|---|---|
| *Plaintiffs,* | § § § § | |
| v. | § § | IN AND FOR |
| PAMPA INDEPENDENT SCHOOL DISTRICT, | § § § § | |
| *Defendant* | § § | GRAY COUNTY, TEXAS |

## PLAINTIFFS' SECOND SUPPLEMENTAL PETITION

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiffs Rebecca Terrell and Chandrashekhar Thanedar hereby file their second supplemental petition pursuant to Rule 80 of the Texas Rules of Civil Procedure (TRCP) and would respectfully show the Court as follows:

1. Plaintiffs' original petition in this case was filed on May 29, 2009 which is adopted and incorporated by reference as if set forth verbatim herein.

2. Plaintiffs have a right to supplement their pleadings per TRCP 80. See *Texas Assoc. of Business v. Texas Air Control Board,* 852 S.W.2d 440,446 (Tex.1993). Plaintiffs have filed their first supplemental petition on June 11, 2012. This case is on remand from 7th Court of Appeals.

3. Plaintiffs rely on the following exhibits which are adopted and incorporated as if set forth verbatim herein.

**Exhibit 1:** Second Supplemental Affidavit of Rebecca Terrell and Chandrashekhar Thanedar (Attached).

**Exhibit 2:** Plaintiff Terrell's employment contract for 2008-2009 with defendant Pampa Independent School District (PISD or Pampa ISD) (Attached).

**Exhibit 3**: Annual Financial Report of Pampa ISD for 2008-2009 is adopted and incorporated as if set forth verbatim herein - Pages 18, 20, 80 of the report providing sources of defendant's funding and expenditures are Attached.

**Exhibit 4**: Texas Fact Book 2008 (the Fact Book) by State of Texas Legislative Budget Board is adopted and incorporated by reference as if set forth verbatim herein - Pages 33, 42, 46, 49, 53 from the Fact Book concerning the Sources of Revenue and Spending on public education in Texas for 2008-2009 are Attached.

**Exhibit 5**: Defendant's salary schedules and information for years 2008-2009, 2009-2010, 2010-2011, 2012-2013; and health insurance premium information for Year 2011-2012 (Attached).

4. Plaintiffs Rebecca Terrell and Chandrashekhar Thanedar (spouse) are currently Texas residents, citizens, and taxpayers and have been so continuously for more than 12 years. Plaintiff Terrell was a first year beginning teacher teaching three subjects at the Pampa High School, Pampa, Texas in 2008-2009 teaching U. S. History, World History, and World Geography. See **Exhibits 1, 2**.

5. PISD receives a substantial amount of state taxpayer funding, more than $13.2 million in 2008-2009, from the State of Texas. See **Exhibit 3** - PISD's Annual Financial Report for 2008-2009 (page 18) posted on Texas Education Agency's public internet website which is adopted and incorporated by reference herein. Further PISD receives substantial funding - $3.48 million from the federal government each year. **Exhibit 3** - PISD's Annual Financial Report for 2008-2009 (pages 18, 80). The State of Texas (e.g. taxpayers such as plaintiffs) provides more than 50% of PISD's General Fund operating expenditures. See **Exhibit 3** (page20).

The State of Texas collects sales and other taxes from Texas citizens and spends a majority of it on public school districts such as Pampa ISD and more than a thousand other school districts in the State of Texas. Thus the sales taxes and other taxes paid by plaintiffs help support defendant Pampa ISD. See **Exhibit 4** - The Texas Fact Book 2008 is published and made publicly available on its website by the Texas Legislative Board which is a permanent joint

committee of the Texas legislature performing its statutory responsibilities. The citizens and taxpayers of Texas, such as plaintiffs, through laws regulate all aspects of operations of public school districts. See Texas Education Code e.g. Chapters 11, 21, and 44. Thus as current Texas and Federal taxpayers and residents of Texas plaintiffs have interest in Pampa ISD and therefore have continuous standing from the beginning of this lawsuit to present.

6. As taxpayers and residents of the State of Texas for more than 12 years, we are concerned about the operations of Pampa Independent School District (PISD), its funding and use of State of Texas taxpayers' money, and about PISD's violations of the Texas Open Meetings Act, (TOMA), Gov't Code Ch. 551. We are interested in and concerned about the openness, integrity, full disclosures, and full and honest compliance with Texas Constitution and with TOMA and other laws by all Texas Government entities and their administrators and employees, and in particular by PISD, its Board of Trustees, its superintendent, and its employees and administrators. Plaintiff Terrell is interested in and intends to resume teaching at PISD upon reinstatement, upon order of the court. Plaintiff Thanedar as spouse is interested in Terrell's reinstatement and resumption of teaching career at PISD. **Exhibit 1**.

7. Plaintiff Terrell's salary as a teacher for the school year 2008-2009 was $34,500 and PISD further provided plaintiff Terrell benefits including health insurance, life insurance, holidays, sick and vacation time, and employer contributions to retirement benefits. **Exhibit 2.** PISD's benefits amount to about 33% of Plaintiff Terrell's salary. Based on PISD's salary schedules plaintiff Terrell's salary would have been at least $37,900 for 2009-2010, $40,100 for 2010-2011, $41,300 for 2011-2012, and $41,400 for 2012-2013. **Exhibit 5**.

8. As a direct and proximate result of defendant's action terminating plaintiff Terrell's teaching contract done in violation of TOMA, Plaintiff Terrell has suffered loss of full time

regular teaching position and employment, and has further suffered damages due to lost back wages and benefits for the years 2009-2010, 2010-2011, 2011-2012, 2012-2013 and continuing, currently estimated at more than $209,000 and continuing.

9. Plaintiffs have spent more than 1,650 hours on prosecuting this case against PISD since the middle of May 2009 up to the filing date of this supplemental petition **(Exhibit 1)** which is relevant in calculating part of special damages in this case – hours spent multiplied by hourly rate. It is plaintiffs' position that special damages are warranted here due to defendant PISD's misconduct, obstruction, and the nature and extent of persistent violations for 2008-2009.

10. It is plaintiffs' position that PISD did not have BoardBook service for the purpose of public viewing of PISD's website internet notices required under TOMA §551.056(b) for the period in question from August 13, 2008 to May 19, 2009. Further it is plaintiffs' position that PISD did not have BoardBook service for the purpose of public viewing of PISD's website internet notices required under TOMA §551.056(b) for the period from January 15, 2009 to May 19, 2009 – a period for which PISD claims good faith exception under TOMA §551.056(d). Defendant PISD has steadfastly refused to produce evidence that the alleged contract with BoardBook was in fact executed and that the alleged contract and service with BoardBook was actually in effect for the period of January 15, 2009 to May 19, 2009 or for any other relevant time period. Defendant PISD has defiantly refused and failed to supplement and or amend discovery in this regard as required under Tex. R. Civ. Pro. 193.5.

Defendant did not pay the first year license fee for BoardBook service for 2007-2008 or for any subsequent years e.g. 2008-2009, as a result did not have BoardBook service for the purpose of public viewing of PISD's website internet notices of Board meetings from 8/13/2008 to 5/19/2009. Defendant has refused and failed to produce any evidence of payment (e.g.

cancelled checks, approved check requests, vouchers, check registers, or general ledger extract, evidencing payment, statement of account with BoardBook, correspondence with BoardBook regarding payment of license fees and renewal of contract, etc.) for BoardBook service either for the purported 2007 BoardBook service agreement or for subsequent years – 2008-2009 and 2009-2010. PISD's good faith defense under TOMA is a fraud on this Court, the 7th Court of Appeals that heard this case, Texas Supreme Court, State of Texas, and its citizens and Texas and Federal taxpayers.

BoardBook service is a software marketed by Texas Association of School Boards, Inc. (a trade organization) to its members such as PISD in assisting PISD to display its website internet notices of Board meetings for public viewing on BoardBook's website in Adobe Systems Inc.'s (Adobe) Portable Document Format or "PDF." Adobe's PDF format shows document properties of PISD's website notices such as when the board meeting notices were created i.e. brought into existence in PDF format for public viewing or modified i.e. changed, thereafter. Document properties of defendant's website notices on BoardBook for 8/13/2008 to 5/19/2009 show to have been untimely created in May 2009 after PISD was informed of the failure to comply with TOMA §551.056(b) by plaintiffs. Said notices did not "appear" on PISD website (or BoardBook's website) timely for prescribed time (instead "appearing" days, weeks or months after the meetings in question were held) after 5/19/2009. PISD failed to provide evidence of timely creation, posting, and appearance of its website internet notices for public viewing for the period in question – 8/13/2008 to 5/19/2009.

PISD's good faith defense of "severance of link to BoardBook" for the period 1/15/2009 to 5/19/2009 is a subterfuge made in bad faith and is a fraud on the public and the court. PISD and its counsel obstructed and delayed proceedings by filing a frivolous motion to dismiss

without any support in fact or law. Similarly, PISD's motion to quash depositions is also wholly meritless designed mainly to delay and obstruct proceedings. PISD deliberately misled the 7th court of appeals concerning its good faith defense and then opposed discovery concerning its good faith defense. PISD and its counsel's deliberate obstructive conduct especially against pro se citizen taxpayers warrants strong sanctions against PISD and its counsel as punishment and to deter such misconduct in the future in TOMA lawsuits. Sanctions on PISD and its counsel are warranted here to preserve the sanctity of TOMA and its purpose – openness, voluntary compliance to laws, and integrity in government.

## Supplemental Prayer

FOR THESE REASONS, plaintiffs respectfully request that plaintiffs' prayer in their original petition and first supplement should be granted in its entirety and further plaintiffs request as supplemental prayer that PISD's action terminating Terrell's employment contract be voided, PISD be ordered to reinstate Terrell, and with reinstatement of Terrell as teacher, PISD be ordered to pay plaintiff Rebecca Terrell damages in the form of back wages and benefits for the school years 2009-2010, 2010-2011, 2011-2012, 2012-2013 and continuing up to and until the time PISD fully reinstates Terrell as classroom teacher (currently, back pay and benefits calculated at about $209,000 and continuing), and that this Court should grant special damages calculated by the number of hours spent by plaintiffs on this case multiplied by a reasonable rate per hour to be fixed by the Court, and that plaintiffs be declared as the substantially prevailing party and be granted costs, expenses, and attorney fees, damages, back pay and benefits for Terrell with reinstatement as teacher, special damages, and fees, and that the Court enter declaratory judgment that PISD's actions in question violated TOMA and void all such actions in violation of TOMA and enter a permanent injunction against PISD to prevent future violations of

TOMA. Plaintiffs further request that the Court impose sanctions on PISD and its counsel due to their obstruction of justice, refusal and failure to supplement or amend discovery in this case. Plaintiffs further request that Court grant all other and further relief, at law or in equity, to which they may justly be entitled to receive.

Respectfully submitted,

_Rebecca Terrell_

Rebecca Terrell

_CB Thanedar_

Chandrashekhar Thanedar
Plaintiffs
6503 Dancing Ct.
San Antonio, Texas 78244
(956) 445-3107
(512) 271-6840 Fax
rterrell152@gmail.com

## CERTIFICATE OF SERVICE

The undersigned certify that a true and correct copy of the foregoing document has been served upon the following by United States certified mail on October 16, 2012 as follows: W. Wade Arnold, Andrea Slater Gulley, Underwood Law Firm, 500 S. Taylor Street, Suite 1200, LB 233, Amarillo, Texas 79101-2446.

_Rebecca Terrell_

Rebecca Terrell
Chandrashekhar Thanedar

STATE OF TEXAS                              §
                                           §
                                           §

## SECOND SUPPLEMENTAL AFFIDAVIT OF REBECCA TERRELL AND CHANDRASHEKHAR THANEDAR

BEFORE ME, the undersigned authority, on October 16, 2012 personally appeared Rebecca Terrell and Chandrashekhar Thanedar, and after being duly sworn by me, stated under oath the following:

"Our names are Rebecca Terrell and Chandrashekhar Thanedar. We are plaintiffs in Cause No. 35621 against defendant Pampa Independent School District (PISD or Pampa ISD) in the 223rd District Court in Gray county Texas. We are over the age of majority. We are mentally, physically and otherwise competent to make this sworn declaration. We are not legally disqualified from making this affidavit."

"We have personal knowledge of the facts stated in Plaintiffs' Second Supplemental Petition and the facts are true and correct. We affirm that the exhibits attached to Plaintiffs' Second Supplemental Petition are true and correct copies of the record, originals, or reports published by government bodies as stated. We have personal knowledge of the facts stated in this affidavit, and they are true and correct."

"We are currently residents, citizens, and taxpayers of Texas and have been so continuously for more than 12 years. I (Terrell) was a first year beginning teacher teaching three subjects at the Pampa High School, Pampa, Texas in 2008-2009 teaching U. S. History, World History, and World Geography. As citizens, taxpayers, and residents of the State of Texas for more than 12 years, we are concerned about the operations of Pampa ISD, its funding and use of State of Texas taxpayers' money and about Pampa ISD's violations of the Texas Open Meetings Act (TOMA). We are interested in and concerned about the openness, integrity, full disclosures, and full, voluntary, and honest compliance with Texas Constitution and with TOMA and other laws by all Texas Government entities and their administrators and employees, and in particular by PISD, its Board of Trustees, its superintendent, and its employees and administrators."

"I (Terrell) affirm that I am interested in and have requested reinstatement, back pay and benefits as part of the remedies in this suit and intend to resume teaching at PISD upon reinstatement, upon order of the court. I (Thanedar) affirm that as spouse I am interested in Terrell's reinstatement and resumption of her full time teaching career at PISD."

"My (Terrell) salary for the school year 2008-2009 was $34,500 and PISD further provided me (Terrell) benefits including holiday pay, sick pay, vacation pay, health insurance, life insurance, and employer contributions to retirement benefits. We have spent more than 1,650 hours on prosecuting the above case against Pampa Independent School District since the middle of May 2009 until present."

# EXHIBIT 1

_Rebecca Terrell_
Rebecca Terrell

_CB Thanedar_
Chandrashekhar Thanedar

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this the __16TH__ day of October, 2012.

LEQUITA ROWENA PRICE
Notary Public
State of Texas
My Comm. Exp. 10-21-2014

_Lequita Rowena Price_
Notary Public in and for
the State of Texas

LEQUITA ROWENA PRICE
(Printed Name of Notary)

2nd Supplemental Affidavit of Rebecca Terrell     Cause No. 35621                2 of 2
and Chandrashekhar Thanedar                       223rd District Court



PROBATIONARY CONTRACT
FOR
CERTIFIED CLASSROOM TEACHER

State of Texas                                           Date given Employee  ⁊·₁₄·₀₃
County of Gray                                           Date returned by Employee  ₈|₄₁₀₈


The Pampa Independent School District (the "District") hereby employs <u>Rebecca Terrell</u> (the "Employee") as a Teacher, and the Employee accepts employment on the following terms and conditions:

1. **Term.** The District agrees to employ the Employee on a <u>10</u> month basis for the 2008-2009 school year, according to the hours and dates set by the District as they exist or may hereafter be amended.

2. **Credentials.** This Contract is conditioned upon the Employee's satisfactorily providing, before the first duty day, the certification, service records, documentation of highly-qualified status, and other records and information required by law, the Texas Education Agency ("TEA"), the State Board for Educator Certification, or the District.

   2.1 **Certification:** The Employee agrees to maintain the required certification throughout the term of this Contract. If the Employee fails to fulfill the requirements necessary to extend a temporary or emergency certificate or permit, or if the Employee's certification expires, is canceled, or is revoked, this Contract is void.

   2.2 **Qualifications:** If the Employee is a classroom teacher, the Employee agrees to become and remain "highly qualified," as that term is defined under the No Child Left Behind Act, 20 U.S.C. § 7801, and by the TEA, to the extent required by law.

3. **Representations.** The Employee makes the following representations:

   3.1 **Criminal History Review.** At the beginning of this Contract, and at any time during this Contract, the Employee specifically agrees to submit to a review of his or her national criminal history record information (NCHRI) if required by the District, TEA, SBEC, or other proper authority.

   3.2 **Beginning of Contract:** The Employee represents that he/she has disclosed to the District, in writing, any conviction, no contest or guilty plea, or other adjudication of the Employee for any felony or any other offense listed at 19 Tex. Admin. Code § 249.16(b). The Employee understands that a criminal history record acceptable to the District, at its sole discretion, is a condition of this Contract.

EXHIBIT 2



**Pampa Independent School District**

3.3 **During Contract:** The Employee also agrees that, during the term of this Contract, the Employee will notify the Superintendent, in writing, of any arrest, indictment, conviction, no contest or guilty plea, or other adjudication of the Employee for any felony or any other offense listed at 19 Tex. Admin. Code § 249.16(b). Employee agrees to provide such notification within three calendar days, or as set forth in District policy.

3.4 **False statements and misrepresentations:** The Employee represents that any required records or information provided in his or her employment application are true and correct. Any false statements, misrepresentations, omissions of requested information, or fraud by the Employee concerning any required records or in the employment application may be grounds for termination or nonrenewal, as applicable.

4. **Duties.** The Employee agrees to perform his or her duties as follows:

4.1 **General standard:** The Employee shall perform the duties of the position assigned, as prescribed by state law and the District, with reasonable care, skill, and diligence.

4.2 **Assignment/Reassignment:** The District shall have the right to assign or reassign the Employee to positions, duties, or additional duties and to make changes in responsibilities, work, or transfers, at any time during the contract term.

4.3 **Supplemental duty:** This Contract does not cover assignments of or payments for supplemental duties. This Contract does not create a property right to continued employment in any supplemental duty.

4.4 **Rules:** The Employee shall comply with all Board, District and administrative directives, state and federal laws and rules, District policy, and regulations as they exist or may hereafter be amended. Employee shall also abide by the Code of Ethics and Standard Practices for Texas Educators.

5. **Compensation.** The District agrees to pay the Employee compensation as follows:

5.1 **Salary:** The District will pay the Employee in twelve installments for an annual salary according to the District's compensation plan. The Employee's salary includes consideration for all assigned duties, responsibilities, and tasks.

5.2 **Annualized Salary.** If the Employee will work on a less-than-12-month basis, the Employee's salary will be paid on an annualized basis. The District will make deductions from each paycheck for income tax withholding and benefits.

5.3 **Incentive and Performance Pay:** If the Employee qualifies, the employee may receive incentive pay or pay for performance under the District's compensation plan, federal law, or state law, including Education Code Chapter 21, subchapters N and O. An incentive payment is not an entitlement as part of the Employee's salary.

Pampa Independent School District • 321 W. Albert Street • Pampa, Texas 79065
806-669-4700 • fax: 806-665-0506 • www.pampaisd.net

199



5.4 **Overpayments:** The Employee agrees that the District may deduct any wage overpayments under this contract from one or more of the Employee's paychecks.

5.5 **Benefits:** The District shall provide benefits to the Employee as provided by state law and Board policy. The District reserves the right to amend its policies at any time during the term of this Contract to reduce or increase these benefits, at the Board's sole discretion.

6. **Other provisions.**

6.1 **Equipment and reports:** The Employee shall satisfactorily submit or account for all grades, reports, school equipment, or other required items upon request from the District.

6.2 **Special funding:** Employment in federally or categorically funded positions is expressly conditioned on the availability of full funding for the position. If full funding becomes unavailable, the Employee is subject to termination or nonrenewal, as applicable.

6.3 **Addenda:** This Contract does (does not) (circle one) include one or more Addenda, as follows:

(1) Addendum A: _____

(2) Addendum B: _____

7. **Suspension.** In accordance with the Texas Education Code, the District may suspend the Employee without pay during the term of this Contract for good cause as determined by the Board.

8. **Termination of Contract:** This Contract will terminate upon a determination by the Board of good cause, financial exigency, or a program change, in accordance with applicable law and Board policy; upon the Employee's resignation at the end of a school year without penalty, pursuant to the Texas Education Code; or upon the Board's determination that termination of the employee at the end of the contract period will serve the best interests of the District.

9. **General provisions.**

9.1 **Amendment:** This Contract may not be amended except by written agreement of the parties.

 **MPA**                    Pampa Independent School District

9.2 **Severability:** If any provision in this Contract is, for any reason, held to be invalid, illegal, or unenforceable, such invalidity, illegality, or unenforceability shall not affect any other provision of the Contract.

9.3 **Entire agreement:** All existing agreements, both verbal and written, between the parties regarding the employment of the Employee are superseded by this Contract. This Contract does not constitute a "unified contract" with any supplemental duties agreement between the parties.

9.4 **Applicable law:** Texas law shall govern construction of this Contract.

10. **Notice to employee.** The Employee agrees to keep a current address on file with the District's human resources office. The Employee agrees that the District may meet any legal obligation it has to give the Employee written notice regarding the Employee's employment by hand-delivering the notice to the Employee or by sending the notice by certified mail, regular mail, and/or express delivery service to the Employee's address of record.

11. **Expiration of offer.** This offer of employment contract shall expire unless the Employee signs and returns this Contract, without changes, to the Superintendent on or before August 10, 2008. If the Employee fails to sign and return this contract by this date, without changes, the Employee shall be deemed to have rejected this offer and to have resigned from employment with the District, if any, at the end of the existing contract term.

*I have read this Contract and agree to abide by its terms and conditions. Failure to comply with or to enforce the policies of the Pampa Independent School District may result in termination or non-renewal, as applicable.*

Employee: _Rebecca Anne Terrell_
(Printed Name)

_Rebecca Anne Terrell_
(Signature)

Date signed: _8/4/08_

Pampa Independent School District

By: _Barry Haenisch_
Superintendent, Barry Haenisch

Date signed: _7/25/08_

Board Approved: 1/17/2008

Pampa Independent School District • 321 W. Albert Street • Pampa, Texas 79065
806-669-4700 • fax: 806-665-0506 • www.pampaisd.net

PAMPA INDEPENDENT SCHOOL DISTRICT

ANNUAL FINANCIAL REPORT

FOR THE YEAR ENDED

JUNE 30, 2009

EXHIBIT 3

EXHIBIT C-3

PAMPA INDEPENDENT SCHOOL DISTRICT
STATEMENT OF REVENUES, EXPENDITURES, AND CHANGES IN FUND BALANCE
GOVERNMENTAL FUNDS
FOR THE YEAR ENDED JUNE 30, 2009

| Data Control Codes | | 10 General Fund | 60 Capital Projects | Other Funds | Total Governmental Funds |
|---|---|---|---|---|---|
| | REVENUES: | | | | |
| 5700 | Total Local and Intermediate Sources | $ 12,380,539 | $ 537,197 | $ 4,569,830 | $ 17,487,566 |
| 5800 | State Program Revenues | 12,566,427 | - | 634,624 | 13,201,051 |
| 5900 | Federal Program Revenues | 161,888 | - | 3,322,080 | 3,483,968 |
| 5020 | Total Revenues | 25,108,854 | 537,197 | 8,526,534 | 34,172,585 |
| | EXPENDITURES: | | | | |
| | Current: | | | | |
| 0011 | Instruction | 13,316,351 | - | 1,634,216 | 14,950,567 |
| 0012 | Instructional Resources and Media Services | 333,126 | - | 16,638 | 349,764 |
| 0013 | Curriculum and Instructional Staff Development | 467,711 | - | 345,061 | 812,772 |
| 0021 | Instructional Leadership | 208,181 | - | 97,444 | 305,625 |
| 0023 | School Leadership | 1,431,156 | - | 22,983 | 1,454,139 |
| 0031 | Guidance, Counseling and Evaluation Services | 868,754 | - | 22,617 | 891,371 |
| 0032 | Social Work Services | 26,343 | - | 31,795 | 58,138 |
| 0033 | Health Services | 247,298 | - | 58,034 | 305,332 |
| 0034 | Student (Pupil) Transportation | 561,188 | - | - | 561,188 |
| 0035 | Food Services | - | - | 1,524,430 | 1,524,430 |
| 0036 | Extracurricular Activities | 1,156,845 | - | 42,274 | 1,199,119 |
| 0041 | General Administration | 1,098,809 | - | 3,967 | 1,102,776 |
| 0051 | Facilities Maintenance and Operations | 2,431,265 | - | 25,223 | 2,456,488 |
| 0052 | Security and Monitoring Services | 105,573 | - | - | 105,573 |
| 0053 | Data Processing Services | 359,654 | - | 81,965 | 441,619 |
| 0061 | Community Services | 94,730 | - | 146,953 | 241,683 |
| | Debt Service: | | | | |
| 0071 | Debt Service - Principal on Long Term Debt | 67,061 | - | 433,704 | 500,765 |
| 0072 | Debt Service - Interest on Long Term Debt | 4,972 | - | 2,595,163 | 2,600,135 |
| 0073 | Debt Service - Bond Issuance Cost and Fees | - | - | 800 | 800 |
| | Capital Outlay: | | | | |
| 0081 | Facilities Acquisition and Construction | 1,063,604 | 17,343,989 | 549,169 | 18,956,762 |
| | Intergovernmental: | | | | |
| 0093 | Payments to Fiscal Agent/Member Districts of SSA | - | - | 666,032 | 666,032 |
| 0099 | Other Intergovernmental Charges | 304,389 | - | - | 304,389 |
| 6030 | Total Expenditures | 24,147,010 | 17,343,989 | 8,298,468 | 49,789,467 |
| 1100 | Excess (Deficiency) of Revenues Over (Under) Expenditures | 961,844 | (16,806,792) | 228,066 | (15,616,882) |
| | OTHER FINANCING SOURCES (USES): | | | | |
| 7912 | Sale of Real and Personal Property | 25,960 | - | - | 25,960 |
| 7913 | Capital Leases | 164,638 | - | - | 164,638 |
| 7915 | Transfers In | - | - | 101,851 | 101,851 |
| 8911 | Transfers Out (Use) | (2,812) | - | (99,039) | (101,851) |
| 7080 | Total Other Financing Sources (Uses) | 187,786 | - | 2,812 | 190,598 |
| 1200 | Net Change in Fund Balances | 1,149,630 | (16,806,792) | 230,878 | (15,426,284) |
| 0100 | Fund Balance - September 1 (Beginning) | 8,586,536 | 41,635,879 | 2,714,786 | 52,937,201 |
| 3000 | Fund Balance - August 31 (Ending) | $ 9,736,166 | $ 24,829,087 | $ 2,945,664 | $ 37,510,917 |

The notes to the financial statements are an integral part of this statement.

18

EXHIBIT C-5

## PAMPA INDEPENDENT SCHOOL DISTRICT
### STATEMENT OF REVENUES, EXPENDITURES, AND CHANGES IN FUND BALANCE
### BUDGET AND ACTUAL - GENERAL FUND
### FOR THE YEAR ENDED JUNE 30, 2009

| Data Control Codes | | Budgeted Amounts Original | Budgeted Amounts Final | Actual Amounts (GAAP BASIS) | Variance With Final Budget Positive or (Negative) |
|---|---|---|---|---|---|
| | REVENUES: | | | | |
| 5700 | Total Local and Intermediate Sources | $ 10,722,600 | $ 12,408,857 | $ 12,380,539 | $ (28,318) |
| 5800 | State Program Revenues | 13,015,358 | 12,543,630 | 12,566,427 | 22,797 |
| 5900 | Federal Program Revenues | 158,000 | 158,000 | 161,888 | 3,888 |
| 5020 | Total Revenues | 23,895,958 | 25,110,487 | 25,108,854 | (1,633) |
| | EXPENDITURES: | | | | |
| | Current: | | | | |
| 0011 | Instruction | 13,732,490 | 13,915,302 | 13,316,351 | 598,951 |
| 0012 | Instructional Resources and Media Services | 343,163 | 344,363 | 333,126 | 11,237 |
| 0013 | Curriculum and Instructional Staff Development | 474,652 | 564,451 | 467,711 | 96,740 |
| 0021 | Instructional Leadership | 234,333 | 214,626 | 208,181 | 6,445 |
| 0023 | School Leadership | 1,467,158 | 1,436,018 | 1,431,156 | 4,862 |
| 0031 | Guidance, Counseling and Evaluation Services | 998,961 | 920,365 | 868,754 | 51,611 |
| 0032 | Social Work Services | 26,910 | 30,710 | 26,343 | 4,367 |
| 0033 | Health Services | 255,642 | 255,642 | 247,298 | 8,344 |
| 0034 | Student (Pupil) Transportation | 692,055 | 778,755 | 561,188 | 217,567 |
| 0036 | Extracurricular Activities | 1,091,911 | 1,182,614 | 1,156,845 | 25,769 |
| 0041 | General Administration | 1,059,979 | 1,140,152 | 1,098,809 | 41,343 |
| 0051 | Facilities Maintenance and Operations | 2,583,513 | 2,689,231 | 2,431,265 | 257,966 |
| 0052 | Security and Monitoring Services | 53,174 | 100,471 | 105,573 | (5,102) |
| 0053 | Data Processing Services | 317,653 | 366,891 | 359,654 | 7,237 |
| 0061 | Community Services | 100,694 | 100,694 | 94,730 | 5,964 |
| | Debt Service: | | | | |
| 0071 | Debt Service - Principal on Long Term Debt | 68,674 | 68,674 | 67,061 | 1,613 |
| 0072 | Debt Service - Interest on Long Term Debt | - | - | 4,972 | (4,972) |
| | Capital Outlay: | | | | |
| 0081 | Facilities Acquisition and Construction | 242,334 | 1,333,609 | 1,063,604 | 270,005 |
| | Intergovernmental: | | | | |
| 0099 | Other Intergovernmental Charges | 313,000 | 304,400 | 304,389 | 11 |
| 6030 | Total Expenditures | 24,056,296 | 25,746,968 | 24,147,010 | 1,599,958 |
| 1100 | Excess (Deficiency) of Revenues Over (Under) Expenditures | (160,338) | (636,481) | 961,844 | 1,598,325 |
| | OTHER FINANCING SOURCES (USES): | | | | |
| 7912 | Sale of Real and Personal Property | - | 25,000 | 25,960 | 960 |
| 7913 | Capital Leases | 164,638 | 164,638 | 164,638 | - |
| 7915 | Transfers In | 500 | 543 | - | (543) |
| 8911 | Transfers Out (Use) | (4,800) | (2,900) | (2,812) | 88 |
| 7080 | Total Other Financing Sources (Uses) | 160,338 | 187,281 | 187,786 | 505 |
| 1200 | Net Change in Fund Balances | - | (449,200) | 1,149,630 | 1,598,830 |
| 0100 | Fund Balance - September 1 (Beginning) | 8,586,536 | 8,586,536 | 8,586,536 | - |
| 3000 | Fund Balance - August 31 (Ending) | $ 8,586,536 | $ 8,137,336 | $ 9,736,166 | $ 1,598,830 |

The notes to the financial statements are an integral part of this statement.

20

PAMPA INDEPENDENT SCHOOL DISTRICT
SCHEDULE OF EXPENDITURES OF FEDERAL AWARDS
FOR THE YEAR ENDED JUNE 30, 2009

| (1)<br>FEDERAL GRANTOR/<br>PASS-THROUGH GRANTOR/<br>PROGRAM or CLUSTER TITLE | (2)<br>Federal<br>CFDA<br>Number | (3)<br>Pass-Through<br>Entity Identifying<br>Number | (4)<br>Federal<br>Expenditures |
|---|---|---|---|
| **U.S. DEPARTMENT OF EDUCATION** | | | |
| Passed Through State Department of Education | | | |
| ESEA, Title I, Part A - Improving Basic Programs | 84.010A | 09-610101090904 | $ 761,590 |
| IDEA - Part B, Formula | 84.027 | 09-6600010909046600 | 587,834 |
| SSA - IDEA - Part B, Formula | 84.027 | 09-6600010909046600 | 634,024 |
| Total CFDA Number 84.027 | | | 1,221,858 |
| Career and Technical - Basic Grant | 84.048 | 09-420006090904 | 40,056 |
| IDEA - Part B, Preschool | 84.173 | 09-6610010909046610 | 31,323 |
| SSA - IDEA - Part B, Preschool | 84.173 | 09-6610010909046610 | 32,008 |
| Total CFDA Number 84.173 | | | 63,331 |
| ESEA Title IV - Safe and Drug-Free Schools | 84.186A | 09-691001090904 | 10,530 |
| ESEA, Title X, Part C -Homeless Children | 84.196 | 09-090904 | 15,651 |
| Title II, Part D -Enhancing Ed. Through Technology | 84.318X | 09-630001090904 | 7,178 |
| Title III, Part A - English Language Acquisition | 84.365A | 09-671001090904 | 34,631 |
| ESEA, Title II, Part A, Teacher/Principal Training | 84.367A | 09-694501090904 | 200,205 |
| ESL Summer School Program | 84.369A | 09-9550502 | 2,206 |
| Total Passed Through State Department of Education | | | $ 2,357,236 |
| **TOTAL DEPARTMENT OF EDUCATION** | | | $ 2,357,236 |
| **U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES** | | | |
| Passed Through State Department of Education | | | |
| Head Start | 93.600 | 09-090904 | $ 106,010 |
| Total Passed Through State Department of Education | | | $ 106,010 |
| **TOTAL DEPARTMENT OF HEALTH AND HUMAN SERVICES** | | | $ 106,010 |
| **U.S. DEPARTMENT OF AGRICULTURE** | | | |
| Passed Through the State Department of Agriculture | | | |
| School Breakfast Program* | 10.553 | 09-090904 | $ 175,115 |
| National School Lunch Program - Cash Assistance* | 10.555 | 09-090904 | 633,118 |
| National School Lunch Prog. - Non-Cash Assistance* | 10.555 | 09-090904 | 50,601 |
| Total CFDA Number 10.555 | | | 683,719 |
| Total Passed Through the State Department of Agriculture | | | $ 858,834 |
| **TOTAL DEPARTMENT OF AGRICULTURE** | | | $ 858,834 |
| **TOTAL EXPENDITURES OF FEDERAL AWARDS** | | | $ 3,322,080 |

*Clustered Programs as required by Compliance Supplement March, 2009

Note A - $36,471 of indirect costs are not considered federal financial assistance for inclusion in the Schedule of Expenditures of Federal Awards. These revenues are reported in the Statement of Revenues, Expenditures, and Changes in Fund Balances - Govenmental Funds in the General Fund column.

Note B - According to the Texas Education Agency's Financial Accountability System Resource Guide, (FASRAG), funds received from the School Health and Related Services (SHARS) programs represent reimbursements to the District for school health based services which are not provided to special education students enrolled in the Medicaid Program, and consequently these revenues in the amount of $125,417 are not to be considered federal financial assistance for inclusion in the Schedule of Expenditures of Federal Awards. These revenues are reported on the Statement of Revenues, Expenditures, and Changes in Fund Balance - Governmental Funds in the General

206

# Texas
# Fact Book



# 2008

## Legislative Budget Board

# REVENUE

## WHERE YOUR STATE TAX DOLLAR COMES FROM
### 2008-09 BIENNIUM



Other Taxes 2.6%

Insurance Taxes 3.3%

Cigarette, Tobacco and Alcoholic Beverages Taxes 5.0%

Corporation Franchise Tax 14.7%

Motor Vehicle Sales and Rental Taxes 8.4%

Motor Fuels Tax 7.7%

Oil and Natural Gas Production Taxes 6.3%

Sales Tax 52.0%

TOTAL = $81,211.2 MILLION

## WHERE YOUR STATE TAX DOLLAR GOES
### 2008-09 BIENNIUM



General Provisions 0.3%

Regulatory 0.3%

The Legislature 0.4%

Business and Economic Development 6.4%

General Government 2.1%

Natural Resources 0.9%

Public Safety and Criminal Justice 8.8%

Health and Human Services 21.8%

The Judiciary 0.5%

Agencies of Education 58.6%

TOTAL = $81,211.2 MILLION

NOTE: Percentages calculated based on constitutionally and statutorily dedicated tax revenues and appropriations in the 2008-09 General Appropriations Act, as modified by other legislation.
SOURCES: Legislative Budget Board; Comptroller of Public Accounts.

# SPENDING

## STATE GOVERNMENT EXPENDITURES PER CAPITA
### 15 MOST POPULOUS STATES

IN MILLIONS

| 50-STATE RANKING | STATE | 2005 STATE EXPENDITURES PER CAPITA |
|---|---|---|
| 4 | New York | $7,082 |
| 9 | Massachusetts | 5,911 |
| 11 | California | 5,802 |
| 14 | New Jersey | 5,657 |
| 19 | Ohio | 5,279 |
| 20 | Washington | 5,254 |
| 23 | Michigan | 5,090 |
| 24 | Pennsylvania | 5,065 |
| 32 | North Carolina | 4,553 |
| 36 | Illinois | 4,361 |
| 37 | Virginia | 4,335 |
| 40 | Indiana | 4,221 |
| 47 | Florida | 3,963 |
| 49 | Georgia | 3,702 |
| **50** | **TEXAS** | **3,549** |
| | **UNITED STATES** | **$4,959** |
| | **TEXAS AS % OF UNITED STATES** | **71.6%** |

Source: U.S. Census Bureau.

## ALL FUNDS APPROPRIATION
### TOP 15 TEXAS AGENCIES

IN MILLIONS

| RANKING | AGENCY | 2008–09 APPROPRIATION |
|---|---|---|
| 1 | Texas Education Agency | $50,257.9 |
| 2 | Health and Human Services Commission | 31,507.7 |
| 3 | Department of Transportation | 16,919.0 |
| 4 | Department of Aging and Disability Services | 11,643.6 |
| 5 | Department of Criminal Justice | 5,887.5 |
| 6 | Department of State Health Services | 5,275.7 |
| 7 | Teacher Retirement System | 3,567.2 |
| 8 | Employees Retirement System | 3,100.1 |
| 9 | Department of Family and Protective Services | 2,560.3 |
| 10 | Texas Workforce Commission | 2,151.6 |
| 11 | Department of Public Safety | 1,642.5 |
| 12 | Department of Assistive and Rehabilitative Services | 1,161.6 |
| 13 | Commission on Environmental Quality | 1,069.9 |
| 14 | Office of the Attorney General | 982.9 |
| 15 | Trusteed Programs within the Office of the Governor | 922.6 |

Note: Institutions of higher education and fiscal programs for the Comptroller of Public Accounts are excluded.
Source: Legislative Budget Board.

# SPENDING

## ALL FUNDS
## 2008-09 BIENNIAL BUDGET



The Legislature 0.2%

General Provisions 0.2%

Regulatory 0.5%

General Government 2.4%

Business and Economic Development 12.2%

Natural Resources 1.9%

Public Safety and Criminal Justice 6.2%

The Judiciary 0.4%

Agencies of Education 44.4%

Health and Human Services 31.6%

TOTAL = $167,787.2 MILLION

| IN MILLIONS FUNCTION | 2006-07 BIENNIUM[1] | 2008-09 BIENNIUM[2] | BIENNIAL CHANGE | % CHANGE |
|---|---|---|---|---|
| General Government | $3,622.1 | $4,021.6 | $399.4 | 11.0 |
| Health and Human Services | 49,116.9 | 52,966.0 | 3,849.0 | 7.8 |
| Agencies of Education | 59,206.5 | 74,536.7 | 15,330.2 | 25.9 |
| Public Education[3] | 40,548.2 | 53,463.7 | 12,915.5 | 31.9 |
| Higher Education | 18,658.3 | 21,073.0 | 2,414.7 | 12.9 |
| The Judiciary | 541.5 | 598.4 | 56.9 | 10.5 |
| Public Safety and Criminal Justice[4] | 9,940.9 | 10,435.9 | 494.9 | 5.0 |
| Natural Resources[4] | 2,320.7 | 3,222.2 | 901.5 | 38.8 |
| Business and Economic Development | 19,412.5 | 20,513.8 | 1,101.3 | 5.7 |
| Regulatory | 562.9 | 762.3 | 199.4 | 35.4 |
| General Provisions | 0.0 | 404.6 | 404.6 | NA |
| The Legislature | 335.3 | 326.0 | (9.3) | (2.8) |
| **TOTAL, ALL FUNCTIONS** | **$145,059.4** | **$167,787.2** | **$22,727.8** | **15.7** |

[1]Reflects provisions in House Bill 15, Eightieth Legislature, 2007, relating to supplemental appropriations.
[2]Reflects provisions in House Bill 15, Eightieth Legislature, 2007, relating to supplemental appropriations; other enacted legislation affecting appropriations; certain appropriation adjustments made in Article IX of the 2008-09 General Appropriations Act (GAA); and/or the Governor's vetoes. In addition to amounts indicated, Article IX, Section 19.62 of the 2008-09 GAA provides for the transfer of appropriations to agencies for a salary increase for certain state employees.
[3]Reflects provisions in House Bill 2, Eightieth Legislature, 2007, relating to appropriations for school district property tax rate reductions.
[4]In addition to amounts indicated, Article IX, Section 19.61 of the 2008-09 GAA provides for Salary Schedule C pay raises for commissioned peace officers.
Notes: Article totals exclude interagency contracts. Biennial change and percentage change have been calculated on actual amounts; table and figure amounts may not add due to rounding.
Source: Legislative Budget Board.

# SPENDING

## FEDERAL FUNDS
### 2008-09 BIENNIAL BUDGET



General Provisions 0.1%
Regulatory <0.1%
General Government 1.4%
Natural Resources 1.7%
Business and Economic Development 17.4%
Public Safety and Criminal Justice 1.1%
Agencies of Education 17.3%
The Judiciary <0.1%
Health and Human Services 61.0%

### TOTAL = $50,963.0 MILLION

| IN MILLIONS FUNCTION | 2006-07 BIENNIUM[1] | 2008-09 BIENNIUM[2] | BIENNIAL CHANGE | % CHANGE |
|---|---|---|---|---|
| General Government | $881.5 | $699.1 | $(182.4) | (20.7) |
| Health and Human Services | 29,197.6 | 31,062.3 | 1,864.8 | 6.4 |
| Agencies of Education | 8,651.0 | 8,831.6 | 180.6 | 2.1 |
| Public Education | 8,318.0 | 8,494.7 | 176.7 | 2.1 |
| Higher Education | 333.1 | 337.0 | 3.9 | 1.2 |
| The Judiciary | 5.4 | 2.9 | (2.5) | (46.6) |
| Public Safety and Criminal Justice[3] | 1,327.4 | 578.7 | (748.7) | (56.4) |
| Natural Resources[3] | 328.0 | 850.8 | 522.8 | 159.4 |
| Business and Economic Development | 8,798.5 | 8,858.7 | 60.2 | 0.7 |
| Regulatory | 5.4 | 4.5 | (0.9) | (17.2) |
| General Provisions | 0.0 | 74.4 | 74.4 | NA |
| The Legislature | 0.0 | 0.0 | 0.0 | NA |
| **TOTAL, ALL FUNCTIONS** | **$49,194.8** | **$50,963.0** | **$1,768.3** | **3.6** |

[1]Reflects provisions in House Bill 15, Eightieth Legislature, 2007, relating to supplemental appropriations.
[2]Reflects provisions in House Bill 15, Eightieth Legislature, 2007, relating to supplemental appropriations; other enacted legislation affecting appropriations; certain appropriation adjustments made in Article IX of the 2008-09 General Appropriations Act (GAA); and/or the Governor's vetoes. In addition to amounts indicated, Article IX, Section 19.62 of the 2008-09 GAA provides for the transfer of appropriations to agencies for a salary increase for certain state employees.
[3]In addition to amounts indicated, Article IX, Section 19.61 of the 2008-09 GAA provides for Salary Schedule C pay raises for commissioned peace officers.
NOTES: Article totals exclude interagency contracts. Biennial change and percentage change have been calculated on actual amounts; table and figure amounts may not add due to rounding.
SOURCE: Legislative Budget Board.

# PUBLIC EDUCATION



**ALL FUNDS 2008–09 APPROPRIATIONS**

IN MILLIONS

Other $10,370.1
Federal $8,494.7
General Revenue $34,502.1
General Revenue–Dedicated $96.8

TOTAL = $53,463.7 MILLION

**FULL-TIME-EQUIVALENT POSITIONS**

2004 2005 2006 2007 2008 2009

■ Actual    ▨ Appropriated    ◆ Cap

## 2008–09 FUNDING HIGHLIGHTS

Public Education appropriations for the 2008–09 biennium increased from the 2006–07 biennium by $12,915.5 million, or 31.9 percent, in All Funds.

Appropriations for the 2008–09 biennium include $12.0 billion in new funding for additional school district property tax relief and $237.5 million in new funding for school facilities.

Appropriations for the 2008–09 biennium also provide $68.3 million to the School for the Blind and Visually Impaired to fund major construction and renovation projects on its 92-year-old Austin campus.

Appropriations for the 2008–09 biennium provide $3.6 billion to the Teacher Retirement System (TRS) to support retirement and insurance benefits for TRS-covered employees. In addition, the Eightieth Legislature authorized a one-time benefit increase ("13th check") for TRS retirees to be paid in January 2008 from the TRS Retirement Fund.

## SELECTED FACTS

Public education funding will support the second largest school-age population in the country, with an estimated 4.6 million students in the public school system. Students are served in 1,037 school districts, 7,729 regular campuses, and 332 charter school campuses across the state.

In the 2001–02 school year, Hispanics surpassed Anglos as the largest ethnic group enrolled in Texas public schools. In the 2006–07 school year, Hispanic students comprised 46 percent of enrollment compared to 36 percent for Anglos. The number of Anglo students enrolled in public schools began declining in the 1998–99 school year and has declined each year since. African American students represented 14 percent of all students, with Asian students and other ethnic groups rounding out the remaining 4 percent.

In the 2008–09 biennium, $14.2 billion in state aid for property tax relief will enable school districts to lower their property tax rates by one-third from the rate adopted in the 2005–06 school year.

PAMPA ISD
PROPOSED TEACHER HIRING SCHEDULE
2008-2009

| YR EXP 08/31/08 | 187 DAY BACHELOR'S DEGREE | MASTER'S DEGREE |
|---|---|---|
| 0 | 34,500 | +750 |
| 1 | 34,800 | +750 |
| 2 | 35,400 | +750 |
| 3 | 35,600 | +750 |
| 4 | 35,800 | +750 |
| 5 | 36,000 | +750 |
| 6 | 36,500 | +750 |
| 7 | 37,100 | +750 |
| 8 | 37,700 | +750 |
| 9 | 38,400 | +750 |
| 10 | 39,100 | +750 |
| 11 | 39,900 | +750 |
| 12 | 40,630 | +750 |
| 13 | 41,350 | +750 |
| 14 | 42,070 | +750 |
| 15 | 42,840 | +750 |
| 16 | 43,560 | +750 |
| 17 | 44,280 | +750 |
| 18 | 44,950 | +750 |
| 19 | 45,690 | +750 |
| 20 | 46,360 | +750 |
| 21 | 46,980 | +750 |
| 22 | 47,410 | +750 |
| 23 | 47,990 | +750 |
| 24 | 48,530 | +750 |
| 25 | 48,890 | +750 |
| 26 | 49,040 | +750 |
| 27 | 49,170 | +750 |
| 28 | 49,320 | +750 |
| 29 | 49,480 | +750 |
| 30 | 49,630 | +750 |

# EXHIBIT 5

Teacher Salary Schedule
Pampa ISD

| Years of Experience 8-31-09 | 2009–10 Continuing Teacher Schedule | Years Exp 8-31-09 | 2009–10 Adopted New Hire Schedule |
|---|---|---|---|
| 0 | $37,800 | 0 | $37,800 |
| 1 | $37,900 | 1 | $37,900 |
| 2 | $38,100 | 2 | $38,100 |
| 3 | $38,300 | 3 | $38,300 |
| 4 | $38,500 | 4 | $38,500 |
| 5 | $38,700 | 5 | $38,700 |
| 6 | $38,900 | 6 | $38,900 |
| 7 | $39,400 | 7 | $39,400 |
| 8 | $40,000 | 8 | $40,000 |
| 9 | $40,600 | 9 | $40,600 |
| 10 | $41,300 | 10 | $41,300 |
| 11 | $41,700 | 11 | $41,700 |
| 12 | $42,500 | 12 | $42,500 |
| 13 | $43,230 | 13 | $43,230 |
| 14 | $43,950 | 14 | $43,950 |
| 15 | $44,670 | 15 | $44,670 |
| 16 | $45,440 | 16 | $45,440 |
| 17 | $46,160 | 17 | $46,160 |
| 18 | $46,880 | 18 | $46,880 |
| 19 | $47,550 | 19 | $47,550 |
| 20 | $48,290 | 20 | $48,290 |
| 21 | $48,710 | 21 | $48,710 |
| 22 | $49,080 | 22 | $49,080 |
| 23 | $49,510 | 23 | $49,510 |
| 24 | $50,090 | 24 | $50,090 |
| 25 | $50,630 | 25 | $50,630 |
| 26 | $50,990 | 26 | $50,990 |
| 27 | $51,140 | 27 | $51,140 |
| 28 | $51,270 | 28 | $51,270 |
| 29 | $51,420 | 29 | $51,420 |
| 30 | $51,580 | 30+ | $51,580 |
| 31 | $51,730 | | |
| 32 | $51,880 | | |
| 33 | $52,040 | | |
| 34 | $52,160 | | |
| 35 | $52,270 | | |
| 36 | $52,340 | | |
| 37 | $52,500 | | |
| 38 | $52,650 | | |
| 39 | $52,800 | | |
| 40 | $52,960 | | |
| 41 | $53,110 | | |
| 42 | $53,260 | | |

PAMPA INDEPENDENT SCHOOL DISTRICT
TEACHER COMPENSATION
FISCAL YEAR 2010-2011

Newly hired teaching professionals will earn between $40,000 and $52,420
depending on their creditible years of experience.

Returning teachers will receive an increase of $1,000 above their 2009-2010 salary.

The average teacher pay will be $44,384.

These salaries represent a 2.13% increase on the midpoint of all teaching positions.
This pay increase represents an increase of $400,000 to the 2010-2011 budget.

Approved 6/30/2010

Teachers with the same years of experience will be paid the same salary, whether
they are returning or new to the district.

## PAMPA ISD CERTIFIED TEACHER PAY SCHEDULE

| YEARS EXPERIENCE | 2012-13 SALARY |
| --- | --- |
| 0 | $41,000 |
| 1 | $41,100 |
| 2 | $41,200 |
| 3 | $41,300 |
| 4 | $41,400 |
| 5 | $41,500 |
| 6 | $41,600 |
| 7 | $41,700 |
| 8 | $41,900 |
| 9 | $42,100 |
| 10 | $42,400 |
| 11 | $42,700 |
| 12 | $43,000 |
| 13 | $43,500 |
| 14 | $43,900 |
| 15 | $44,700 |
| 16 | $45,430 |
| 17 | $46,150 |
| 18 | $46,870 |
| 19 | $47,640 |
| 20 | $48,360 |
| 21 | $49,080 |
| 22 | $49,750 |
| 23 | $50,490 |
| 24 | $50,910 |
| 25 | $51,280 |
| 26 | $51,710 |
| 27 | $52,290 |
| 28 | $52,830 |
| 29 | $53,190 |
| 30 | $53,340 |
| 31 | $53,490 |
| 32 | $53,650 |
| 33 | $53,800 |
| 34 | $53,950 |
| 35 | $54,110 |
| 36 | $54,230 |
| 37 | $54,340 |
| 38 | $54,410 |
| 39 | $54,570 |
| 40 | $54,720 |
| 41 | $54,870 |
| 42 | $55,030 |
| 43 | $55,180 |
| 44 | $55,330 |

## 2011-2012 HEALTH INSURANCE PREMIUMS

| Coverage | ActiveCare 1-HD | | | ActiveCare 1 | | | ActiveCare 2 | | | ActiveCare 3 | | | FirstCare | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Total | Benefit* | Employee | Total | Benefit* | Employee | Total | Benefit* | Employee | Total | Benefit* | Employee | Total | Benefit* | Employee |
| Employee Only | 287.00 | -225.00 | 62.00 | $325.00 | -$225.00 | $100.00 | $434.00 | -$225.00 | $209.00 | $584.00 | -$225.00 | $359.00 | $368.78 | -$225.00 | $143.78 |
| Emp/Spouse | 703.00 | -225.00 | 478.00 | $741.00 | -$225.00 | $516.00 | $987.00 | -$225.00 | $762.00 | $1,328.00 | -$225.00 | $1,103.00 | $927.48 | -$225.00 | $702.48 |
| Emp/Child(ren) | 448.00 | -225.00 | 223.00 | $519.00 | -$225.00 | $294.00 | $690.00 | -$225.00 | $465.00 | $931.00 | -$225.00 | $706.00 | $586.34 | -$225.00 | $361.34 |
| Emp/Family | 920.00 | -225.00 | 695.00 | $817.00 | -$225.00 | $592.00 | $1,085.00 | -$225.00 | $860.00 | $1,461.00 | -$225.00 | $1,236.00 | $936.68 | -$225.00 | $711.68 |

**The amount Pampa ISD pays remains at $225.

CAUSE NO. 35621

| | | |
|---|---|---|
| REBECCA TERRELL and CHANDRASHEKHAR THANEDAR | § § § | IN THE 223<sup>RD</sup> DISTRICT COURT |
| *Plaintiffs,* | § § | |
| v. | § § | IN AND FOR |
| PAMPA INDEPENDENT SCHOOL DISTRICT, | § § § | |
| *Defendant* | § § | GRAY COUNTY, TEXAS |



---

## PLAINTIFFS' FIRST SUPPLEMENTAL PETITION

---

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiffs Rebecca Terrell and Chandrashekhar Thanedar hereby file their first supplemental petition pursuant to Rule 80 of the Texas Rules of Civil Procedure (TRCP) and would respectfully show the Court as follows:

1. Plaintiffs' Motion for Leave to File Plaintiffs' First Supplemental Petition is adopted and incorporated by reference as if set forth verbatim herein.

2. Plaintiffs' original petition in this case was filed on May 29, 2009 which is adopted and incorporated by reference as if set forth verbatim herein.

3. Plaintiffs have a right to supplement their pleadings per TRCP 80. See *Texas Assoc. of Business v. Texas Air Control Board,* 852 S.W.2d 440, 446 (Tex. 1993).

4. Plaintiffs rely on the following exhibits which are adopted and incorporated as if set forth verbatim herein.

> **Exhibit 1**: Supplemental Affidavit of Rebecca Terrell and Chandrashekhar Thanedar (Attached).

**Exhibit 2**: Defendant's salary schedules and information for years 2008-2009, 2009-2010, 2010-2011 and health insurance premium information for Year 2011-2012 (Attached).

**Exhibit 3**: Defendant's purported BoardBook service agreement for 2007 (Attached).

5. Plaintiffs Rebecca Terrell and Chandrashekhar Thanedar (spouse) are currently Texas residents, citizens, and taxpayers and have been so continuously for more than 12 years. Plaintiff Terrell was a first year beginning teacher teaching three subjects at the Pampa High School, Pampa, Texas in 2008-2009 teaching U. S. History, World History, and World Geography. PISD gets a large amount of state taxpayer funding, more than $12.5 million in 2008-2009, from the State of Texas. As citizens, taxpayers, and residents of the State of Texas for more than 12 years, we are concerned about the operations of Pampa Independent School District (PISD), its funding and use of State of Texas taxpayers' money, and about PISD's violations of the Texas Open Meetings Act, (TOMA), Gov't Code Ch. 551. We are interested in and concerned about the openness, integrity, full disclosures, and full and honest compliance with Texas Constitution and with TOMA and other laws by all Texas Government entities and their administrators and employees, and in particular by PISD, its Board of Trustees, its superintendent, and its employees and administrators. Plaintiff Terrell is interested in and intends to resume teaching at PISD upon reinstatement, upon order of the court. Plaintiff Thanedar as spouse is interested in Terrell's reinstatement and resumption of teaching career at PISD.

6. Plaintiff Terrell's salary as a teacher for the school year 2008-2009 was $34,500 and PISD further provided plaintiff Terrell benefits including health insurance, life insurance, holidays, sick and vacation time, and employer contributions to retirement benefits. PISD's benefits amount to about 33% of Plaintiff Terrell's salary. **See Exhibits 1-2**.

7. As a direct and proximate result of defendant's action terminating plaintiff Terrell's teaching contract done in violation of TOMA, plaintiff Terrell has suffered damages due to lost

back wages and benefits for the years 2009-2010, 2010-2011, and 2011-2012 and continuing, currently estimated at more than $155,000 and continuing.

8. Plaintiffs have spent more than 1,500 hours on prosecuting this case against PISD since the middle of May 2009 up to the filing date of this supplemental petition (**Exhibit 1**) which is relevant in calculating part of special damages in this case – hours spent multiplied by hourly rate. It is plaintiffs' position that special damages are warranted here due to defendant PISD's conduct and the nature and extent of persistent violations for 2008-2009.

9. It is plaintiffs' position that PISD did not have BoardBook service for the purpose of public viewing of PISD's website internet notices required under TOMA §551.056(b) for the period in question from August 13, 2008 to May 19, 2009. **Exhibit 3.** Further it is plaintiffs' position that PISD did not have BoardBook service for the purpose of public viewing of PISD's website internet notices required under TOMA §551.056(b) for the period from January 15, 2009 to May 19, 2009 – a period for which PISD claims good faith exception under TOMA §551.056(d). **Exhibit 3.** Upon opinion and order of the Attorney General of Texas, defendant produced a purported BoardBook service agreement dated October 12, 2007 (without evidence that it was executed). **Exhibit 3**. Defendant produced no executed BoardBook agreements and no evidence whatsoever of BoardBook service for subsequent years – 2008-2009 and 2009-2010.

Defendant did not pay the first year license fee for BoardBook service for 2007-2008 or for any subsequent years e.g. 2008-2009 as a result did not have BoardBook service for the purpose of public viewing of PISD's website internet notices of Board meetings from 8/13/2008 to 5/19/2009. Defendant has refused and failed to produce any evidence of payment for BoardBook service either for the purported 2007 BoardBook service agreement or for subsequent years – 2008-2009 and 2009-2010.

BoardBook service is a software marketed by Texas Association of School Boards, Inc. (a trade organization) to its members such as PISD in assisting PISD to display its website internet notices of Board meetings for public viewing on BoardBook's website in Adobe Systems Inc.'s (Adobe) Portable Document Format or "PDF." Adobe's PDF format shows document properties of PISD's website notices such as when the board meeting notices were created i.e. brought into existence in PDF format for public viewing or modified i.e. changed, thereafter. Document properties of defendant's website notices on BoardBook for 8/13/2008 to 5/19/2009 show to have been untimely created in May 2009 after PISD was informed of the failure to comply with TOMA §551.056(b) by plaintiffs. Said notices did not "appear" on PISD website (or BoardBook's website) timely for prescribed time (instead "appearing" days, weeks or months after the meetings in question were held) after 5/19/2009. PISD failed to provide evidence of timely creation, posting, and appearance of its website internet notices for public viewing for the period in question – 8/13/2008 to 5/19/2009. PISD's good faith defense of "severance of link to BoardBook" for the period 1/2009 to 5/19/2009 is a subterfuge and made in bad faith.

## Supplemental Prayer

FOR THESE REASONS, plaintiffs respectfully request that plaintiffs' prayer in their original petition should be granted in its entirety and further plaintiffs request as supplemental prayer that PISD's action terminating Terrell's employment contract be voided, PISD be ordered to reinstate Terrell, and with reinstatement of Terrell as teacher, PISD be ordered to pay plaintiff Rebecca Terrell damages in the form of back wages and benefits for the school years 2009-2010, 2010-2011, 2011-2012, and continuing up to and until the time PISD fully reinstates Terrell as classroom teacher (currently, back pay and benefits calculated at about $155,000 and

continuing), and that this Court should grant special damages calculated by the number of hours spent by plaintiffs on this case multiplied by a reasonable rate per hour to be fixed by the Court, and that plaintiffs be declared as the substantially prevailing party and be granted costs, expenses, and attorney fees, damages, back pay and benefits for Terrell with reinstatement as teacher, special damages, and fees, and that the Court enter a permanent injunction against PISD to prevent future violations of TOMA. Plaintiffs further request that the Court grant all other and further relief, at law or in equity, to which they may justly be entitled to receive.

Respectfully submitted,

_Rebecca Terrell_

Rebecca Terrell

_C 13 Thanedar_

Chandrashekhar Thanedar
Plaintiffs
7618 Citadel Peak
Converse, Texas 78109
(956) 445-3107

## CERTIFICATE OF SERVICE

The undersigned certify that a true and correct copy of the foregoing document has been served upon the following by facsimile and USPS certified mail on the 11th day of June, 2012 as follows: W. Wade Arnold, Andrea Slater Gulley, Underwood Law Firm, 500 S. Taylor Street, Suite 1200, LB 233, Amarillo, Texas 79101-2446. Fax: (806) 349-9474

_Rebecca Terrell_

Rebecca Terrell
Chandrashekhar Thanedar

STATE OF TEXAS                          §
                                        §
                                        §

## SUPPLEMENTAL AFFIDAVIT OF REBECCA TERRELL AND CHANDRASHEKHAR THANEDAR

BEFORE ME, the undersigned authority, on June 8, 2012 personally appeared Rebecca Terrell and Chandrashekhar Thanedar, and after being duly sworn by me, stated under oath the following:

"Our names are Rebecca Terrell and Chandrashekhar Thanedar. We are plaintiffs in Cause No. 35621 against defendant Pampa Independent School District (PISD or Pampa ISD) in the 223rd District Court in Gray county Texas. We are over the age of majority. We are mentally, physically and otherwise competent to make this sworn declaration. We are not legally disqualified from making this affidavit."

"We have personal knowledge of the facts stated in Plaintiffs' First Supplemental Petition and Plaintiffs' Objections and Response to Defendant's Motion to Dismiss for Lack of Standing (Objections and Response) and the facts are true and correct. We affirm that the exhibits attached to Plaintiffs' First Supplemental Petition and Objections and Response are true and correct copies of the record or originals. We have personal knowledge of the facts stated in this affidavit, and they are true and correct."

"We are currently residents, citizens, and taxpayers of Texas and have been so continuously for more than 12 years. I (Terrell) was a first year beginning teacher teaching three subjects at the Pampa High School, Pampa, Texas in 2008-2009 teaching U. S. History, World History, and World Geography. As citizens, taxpayers, and residents of the State of Texas for more than 12 years, we are concerned about the operations of Pampa ISD, its funding and use of State of Texas taxpayers' money and about Pampa ISD's violations of the Texas Open Meetings Act (TOMA). We are interested in and concerned about the openness, integrity, full disclosures, and full and honest compliance with Texas Constitution and with TOMA and other laws by all Texas Government entities and their administrators and employees, and in particular by PISD, its Board of Trustees, its superintendent, and its employees and administrators."

"I (Terrell) affirm that I am interested in and have requested reinstatement, back pay and benefits as part of the remedies in this suit and intend to resume teaching at PISD upon reinstatement, upon order of the court. I (Thanedar) affirm that as spouse I am interested in Terrell's reinstatement and resumption of teaching career at PISD."

"My (Terrell) salary for the school year 2008-2009 was $34,500 and PISD further provided me (Terrell) benefits including holiday pay, sick pay, vacation pay, health insurance, life insurance, and employer contributions to retirement benefits. We have spent more than 1,500 hours on prosecuting the above case against PISD since the middle of May 2009."

# Exhibit 1

_Rebecca Terrell_
_____
Rebecca Terrell

_C B Thanedar_
_____
Chandrashekhar Thanedar

SUBSCRIBED AND SWORN TO before me, the undersigned authority, on this the ___8____ day of June, 2012.

_____
Notary Public in and for
the State of Texas

PETE GARCIA HERNANDEZ JR
My Commission Expires
October 14, 2015

_Pete G Hernandez Sr_
_____
(Printed Name of Notary)

PAMPA ISD
PROPOSED TEACHER HIRING SCHEDULE
2008-2009

| YR EXP 08/31/08 | 187 DAY BACHELOR'S DEGREE | MASTER'S DEGREE |
|---|---|---|
| 0 | 34,500 | +750 |
| 1 | 34,800 | +750 |
| 2 | 35,400 | +750 |
| 3 | 35,600 | +750 |
| 4 | 35,800 | +750 |
| 5 | 36,000 | +750 |
| 6 | 36,500 | +750 |
| 7 | 37,100 | +750 |
| 8 | 37,700 | +750 |
| 9 | 38,400 | +750 |
| 10 | 39,100 | +750 |
| 11 | 39,900 | +750 |
| 12 | 40,630 | +750 |
| 13 | 41,350 | +750 |
| 14 | 42,070 | +750 |
| 15 | 42,840 | +750 |
| 16 | 43,560 | +750 |
| 17 | 44,280 | +750 |
| 18 | 44,950 | +750 |
| 19 | 45,690 | +750 |
| 20 | 46,360 | +750 |
| 21 | 46,980 | +750 |
| 22 | 47,410 | +750 |
| 23 | 47,990 | +750 |
| 24 | 48,530 | +750 |
| 25 | 48,890 | +750 |
| 26 | 49,040 | +750 |
| 27 | 49,170 | +750 |
| 28 | 49,320 | +750 |
| 29 | 49,480 | +750 |
| 30 | 49,630 | +750 |

# Exhibit 2

## Teacher Salary Schedule
## Pampa ISD

| Years of Experience 8-31-09 | 2009–10 Continuing Teacher Schedule | Years Exp 8-31-09 | 2009–10 Adopted New Hire Schedule |
|---|---|---|---|
| 0 | $37,800 | 0 | $37,800 |
| 1 | $37,900 | 1 | $37,900 |
| 2 | $38,100 | 2 | $38,100 |
| 3 | $38,300 | 3 | $38,300 |
| 4 | $38,500 | 4 | $38,500 |
| 5 | $38,700 | 5 | $38,700 |
| 6 | $38,900 | 6 | $38,900 |
| 7 | $39,400 | 7 | $39,400 |
| 8 | $40,000 | 8 | $40,000 |
| 9 | $40,600 | 9 | $40,600 |
| 10 | $41,300 | 10 | $41,300 |
| 11 | $41,700 | 11 | $41,700 |
| 12 | $42,500 | 12 | $42,500 |
| 13 | $43,230 | 13 | $43,230 |
| 14 | $43,950 | 14 | $43,950 |
| 15 | $44,670 | 15 | $44,670 |
| 16 | $45,440 | 16 | $45,440 |
| 17 | $46,160 | 17 | $46,160 |
| 18 | $46,880 | 18 | $46,880 |
| 19 | $47,550 | 19 | $47,550 |
| 20 | $48,290 | 20 | $48,290 |
| 21 | $48,710 | 21 | $48,710 |
| 22 | $49,080 | 22 | $49,080 |
| 23 | $49,510 | 23 | $49,510 |
| 24 | $50,090 | 24 | $50,090 |
| 25 | $50,630 | 25 | $50,630 |
| 26 | $50,990 | 26 | $50,990 |
| 27 | $51,140 | 27 | $51,140 |
| 28 | $51,270 | 28 | $51,270 |
| 29 | $51,420 | 29 | $51,420 |
| 30 | $51,580 | 30+ | $51,580 |
| 31 | $51,730 | | |
| 32 | $51,880 | | |
| 33 | $52,040 | | |
| 34 | $52,160 | | |
| 35 | $52,270 | | |
| 36 | $52,340 | | |
| 37 | $52,500 | | |
| 38 | $52,650 | | |
| 39 | $52,800 | | |
| 40 | $52,960 | | |
| 41 | $53,110 | | |
| 42 | $53,260 | | |

PAMPA INDEPENDENT SCHOOL DISTRICT
TEACHER COMPENSATION
FISCAL YEAR 2010-2011

**Newly hired teaching professionals will earn between $40,000 and $52,420
depending on their creditible years of experience.**

**Returning teachers will receive an increase of $1,000 above their 2009-2010 salary.**

**The average teacher pay will be $44,384.**

**These salaries represent a 2.13% increase on the midpoint of all teaching positions.
This pay increase represents an increase of $400,000 to the 2010-2011 budget.**

**Approved 6/30/2010**

**Teachers with the same years of experience will be paid the same salary, whether
they are returning or new to the district.**

## 2011-2012 HEALTH INSURANCE PREMIUMS

| Coverage | ActiveCare 1-HD | | | ActiveCare 1 | | | ActiveCare 2 | | | ActiveCare 3 | | | FirstCare | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Total | Benefit** | Employee | Total | Benefit** | Employee | Total | Benefit** | Employee | Total | Benefit** | Employee | Total | Benefit** | Employee |
| Employee Only | 287.00 | -225.00 | 62.00 | $325.00 | -$225.00 | $100.00 | $434.00 | -$225.00 | $209.00 | $584.00 | -$225.00 | $359.00 | $368.78 | -$225.00 | $143.78 |
| Emp/Spouse | 703.00 | -225.00 | 478.00 | $741.00 | -$225.00 | $516.00 | $987.00 | -$225.00 | $762.00 | $1,328.00 | -$225.00 | $1,103.00 | $927.48 | -$225.00 | $702.48 |
| Emp/Child(ren) | 448.00 | -225.00 | 223.00 | $519.00 | -$225.00 | $294.00 | $690.00 | -$225.00 | $465.00 | $931.00 | -$225.00 | $706.00 | $586.34 | -$225.00 | $361.34 |
| Emp/Family | 920.00 | -225.00 | 695.00 | $817.00 | -$225.00 | $592.00 | $1,085.00 | -$225.00 | $860.00 | $1,461.00 | -$225.00 | $1,236.00 | $936.68 | -$225.00 | $711.68 |

**The amount Pampa ISD pays remains at $225.





Texas Association of School Boards
BoardBook
P.O. Box 400
Austin, Texas 78767-0400
512.467.0222 • 888.587.2655

## BoardBook®
## Subscription Agreement

This Subscription Agreement (this "Agreement") is entered into as of _10/12_____, 20_02_, by and between the Texas Association of School Boards, Inc. ("TASB") and ____Pampa ISD____ School District (the "District") for the TASB BoardBook brand online meeting facilitation software. ("BoardBook").

**Definition of Service**
BoardBook is an internet-based application available to TASB members that enables the user to create electronic board meeting agendas and then to compile those agendas with supporting documents into complete electronic board meeting packets. Meeting packets can be compiled from a variety of source document formats, including Microsoft Word, HTML, plain text, Rich Text Format, graphical files, and other file formats as specified by TASB. A finished board meeting packet is an Adobe Acrobat PDF file that may be downloaded to the user's computer, from which point the packets may be distributed at the user's discretion in a variety of ways (via e-mail, CD-ROM, floppy disk, the District network, etc.). THE DISTRIBUTION OF THE COMPLETED BOARD PACKET IS NOT A COMPONENT OF THE BOARDBOOK APPLICATION.

**Technical Support**
TASB will provide on-line and telephone technical support to the District for the BoardBook application. Such assistance does not constitute legal advice. In the event that the user requires legal advice on any issue, including but not limited to issues about meeting agendas, the user should consult the District's attorney.

TASB is not responsible for supporting third party software applications installed on the District's computers or network. On-site training for BoardBook will be available to the District for an additional cost above and beyond that set out in this Agreement.

**Fees**
The first-year licensing and maintenance/support fee will be $1,800. TASB will provide the BoardBook service to the District after TASB receives this executed Agreement and either a purchase order or payment of this fee. Maintenance/support fees for subsequent years will be determined and assessed by TASB before the annual renewals. Maintenance/support fees for subsequent years will be established and communicated in writing to the District at least 30 days before the anniversary date of this Agreement.

**Ownership of BoardBook®**
The District acknowledges and agrees that TASB owns BoardBook and all proprietary rights related to BoardBook. The District will not attempt to resell, rent or otherwise distribute any part of BoardBook or TASB's services relating to BoardBook to any other party. TASB's proprietary rights regarding BoardBook include but are not limited to all BoardBook software and programming codes, documentation for the BoardBook system and databases, the end user interface, the BoardBook name and all BoardBook features. Notwithstanding the forgoing, the District has a right to access its information that is stored on the TASB server within the BoardBook application.



EXHIBIT
13



EXHIBIT
H

## Exhibit 3

420

| | |
|---|---|
| **Application Data** | Meeting packets created with BoardBook belong to the District, and the District may use them as it sees fit, subject only to applicable law and local policy. Under no circumstance may any user attempt to modify the programs on the TASB server or to acquire the programming code for BoardBook. Both remain the physical and intellectual property of TASB, Inc. Legal action may be initiated by TASB against any user who violates these conditions. The District may not modify, adapt, translate, distribute, reverse engineer, decompile or disassemble any component or information associated with or accessed through BoardBook. |
| **Application Access** | TASB will provide a Web-based interface for the application, which is hosted on TASB's Web server. Access to the application is restricted to authorized users designated by the District. Authorized users will be able to use the application by means of individualized myTASB accounts. |
| **Contact Data and MyTASB** | The District agrees to provide contact data for all designated users of BoardBook, to include, at a minimum, the names, titles, phone numbers, and e-mail addresses of all authorized users. TASB will use this data exclusively to provide users with individualized myTASB accounts and to support those users as needed. The District agrees to keep all contact information up-to-date in response to changes in employment and board membership. |
| **Responsibility for Account and Password** | The District is responsible for the District's user account(s) and passwords used to access BoardBook. The District is responsible for maintaining the confidentiality of its account(s) and passwords. The District agrees to notify TASB immediately of any unauthorized use of the District's account(s) of which the District becomes aware. |
| **Subscriber's Responsibility** | Obligation to conduct board meetings in accordance with applicable law and local policy resides entirely with the District. The District is solely responsible for all communications performed by means of BoardBook. The District agrees not to use BoardBook to communicate any message or material that is harassing, libelous, threatening, or obscene; that would violate any intellectual property rights of any party or that is otherwise unlawful; that would give rise to civil liability; or that constitutes or encourages conduct that could constitute a criminal offense, under any applicable law or regulation. The District understands that although TASB is not responsible for the District's communications, if TASB becomes aware of any communication that would violate this section, it may suspend the communication and may suspend the District's use of BoardBook or may terminate this Agreement. |
| **Open Meetings and Public Information** | The District agrees that the District is solely responsible for complying with the Texas Open Meetings Act and the Texas Public Information Act. TASB's responsibilities are limited to those specifically set out herein. Because TASB is not subject to the Texas Open Meetings Act and the Texas Public Information Act, TASB cannot be responsible for the District's compliance with these laws. In the event a third party requests information or otherwise submits an inquiry concerning the District's compliance with these acts, TASB will direct the third party to contact the District. TASB is not the custodian of the District's records for any purposes. |
| **Archiving of Records** | The District is responsible for creating its own archive of the board materials created by use of the BoardBook application. However, as long as this Agreement is in effect, TASB will preserve the information that the District places on the BoardBook server for two years. Thirty (30) days after this Agreement terminates, for any reason, TASB will no longer store the District's BoardBook material and information. |

421



| | |
|---|---|
| **Confidentiality** | The District acknowledges that the BoardBook and the supporting documentation and programming for BoardBook is confidential in nature and constitutes a trade secret belonging to TASB. The District agrees to hold all BoardBook information confidential and shall instruct its employees of the District's obligations under this Agreement and ensure that its employees comply with such obligations. TASB agrees to hold private the District's BoardBook archives and files and not to release the District's data unless TASB is legally required to do so or the District gives its written consent to release such data. |
| **No Warranty** | The District understands and agrees that TASB's BoardBook services and the BoardBook itself are provided "as is" and "as available." TASB expressly disclaims all warranties of any kind, express or implied, including without limitation any warranty of merchantability or fitness for a particular purpose. TASB makes no warranty or representation regarding TASB's services, any information, materials, goods or services obtained through TASB or the BoardBook Web site or that TASB's services will meet the District's requirements, or be uninterrupted, timely, secure or error free. Use of TASB's services and the BoardBook Web Site are at the District's sole risk. The District will be solely responsible for any damage to the District resulting from the use of TASB's BoardBook services or Web site. |
| **Limitation of Liability** | TASB's liability under this Agreement is limited to the fees paid by the District to TASB under this Agreement for one year. |
| **Term** | This Agreement will automatically renew on each anniversary of the Effective Date, unless the District notifies TASB in writing of its intent to terminate the Agreement prior to the anniversary date of the Agreement or unless terminated earlier as otherwise set out herein. If TASB has not received payment from the District within one month after the anniversary of the Effective Date of this Agreement, then TASB will terminate this Agreement immediately. |
| **Early Termination** | If the District ceases to be a TASB member, this Agreement will immediately terminate. If the District violates the Subscriber's Responsibility Section of this Agreement, TASB may terminate this Agreement immediately. The District may terminate this Agreement for any reason by giving TASB 30 days' written notice. However, no prorated refunds will be given to the District after any early termination. |
| **Authority** | The District represents that the person signing this Agreement has full authority to enter into the Agreement. |
| **Amendment** | This Agreement may be amended by TASB by providing at least 30 days' written notice to the District. |
| **Attorneys' Fees** | The parties agree that, in the event of a lawsuit relating to this Agreement, the prevailing party is entitled to recover its reasonable and necessary attorney's fees pursuant to Section 271.159 of the Texas Local Government Code. |
| **Effectiveness and Counterparts** | This Agreement is effective upon the District's delivery (by mail or facsimile) of an executed Agreement to TASB ("Effective Date"). The District shall execute and provide one original, manually executed copy to TASB. The District's failure to provide such original, manually executed copy to TASB does not affect the validity, enforceability or binding effect of this Agreement and either party may rely upon a facsimile copy of this Agreement if an original, manually executed copy is not available for production. The effective date of fee changes made under this Agreement will neither alter the Agreement's Effective Date nor alter the Agreement's anniversary date |

3

422

**TASB Bound**     Upon TASB's receipt of this signed Agreement, TASB agrees to be bound by all terms of this Agreement.

Please sign below and return the original signed Agreement to Patricia Horton at the address listed above:

Signature: *Barry Haenisch*

Printed Name: Barry Haenisch

Title: Superintendent

District: Pampa

County District Number: 090-904

# Appendix 7

## Created Dates of PISD's Untimely Posted Internet Notices (PX2)

Cause No. 35621
223<sup>rd</sup> District Court, Gray County
Terrell v. PISD

Summary of Document Properties
of Defendant's Website Notices
for 22 Meetings

FILED GRAY COUNTY, TEXAS
2013 OCT 10 AM 9 54
SANDRA BURKETT
DISTRICT CLERK
BY
DEPUTY

1.  Web notices for Board meetings on 8/13/08, 8/21/08, 9/4/08, 9/18/08, 10/2/08 10/9/08, and 10/23/08 were created on 5/11/09 and posted on PISD's website on 5/19/09; and

2.  Web notice for Board meeting on 11/6/08 was created on 5/5/09 and posted on PISD's website on 5/19/09; and

3.  Web notices for Board meetings on 11/20/08 and 12/4/08 were created on 5/7/09 and posted on PISD's website on 5/19/09; and

4.  Web notices for Board meetings on 12/18/08, 1/15/09, 2/15/09, 2/19/09, 3/12/09, 3/26/09, 4/2/09, 4/16/09, 4/21/09, and 4/23/09 were created on 5/8/09 and posted on PISD's website on 5/19/09; and

5.  Web notice for Board meeting on 5/7/09 was created on 5/12/09 and posted on PISD's website on 5/19/09; and

6.  Web notice for Board meeting for 5/19/09 was created on 5/18/09 and posted on PISD's website on 5/19/09."

"The **Modified** dates for the above notices are identical to the "Created" dates."

Rec'd

PX
2

# Appendix 8


# Defendant's Answers to Plaintiffs' Interrogatories (PX8)

| | | |
|---|---|---|
| REBECCA TERRELL and CHANDRASHEKHAR THANEDAR | § § § | IN THE 223rd DISTRICT COURT |
| Plaintiffs, | § § | |
| V. | § § | IN AND FOR |
| PAMPA INDEPENDENT SCHOOL DISTRICT | § § § § | |
| Defendant | § | GRAY COUNTY, TEXAS |

FILED
GRAY COUNTY, TEXAS
2013 OCT 10 AM 9 54
BY
SANDRA BURKETT
DISTRICT CLERK
DEPUTY

## DEFENDANT'S ANSWERS TO PLAINTIFFS' INTERROGATORIES

TO:   Plaintiffs, Rebecca Terrell and Chandrashekhar Thanedar, 1000 North Wells St., Pampa, Texas 79065.

COMES NOW Defendant, PAMPA INDEPENDENT SCHOOL DISTRICT, (hereinafter "Defendant") in the above-styled and numbered cause, and, pursuant to the Texas Rules of Civil Procedure, makes the following Answers to Plaintiffs' Interrogatories to Defendant.

Respectfully submitted,

W. Wade Arnold
State Bar No. 00783561
Andrea Slater Gulley
State Bar No. 24045994
UNDERWOOD, WILSON, BERRY,
  STEIN & JOHNSON, P.C.
P.O. Box 9158
Amarillo, Texas 79105-9158
806-376-5613 – FAX: 806-349-9471

By: _____
   W. Wade Arnold

ATTORNEYS FOR DEFENDANT

EXHIBIT
A

PX
8

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of February, 2010 a true and correct copy of the above and foregoing document was delivered via certified mail to and properly addressed as follows:

Rebecca Terrell
Chandrashekhar Thanedar
1000 N. Wells Street
Pampa, Texas 79065.

W. Wade Arnold

## INTERROGATORIES

**INTERROGATORY NO. 1:** Identify your Board of Trustees' Meetings and their dates from August 13, 2008 through May 19, 2009 for which you claim that you complied with the internet posting requirement of Sec. 551.056 of the Texas Open Meetings Act (TOMA or the Act), Texas Gov't Code Ch. 551.

**ANSWER:** Defendant complied with the requirements or exceptions thereof of the Texas Open Meetings Act ("TOMA") with respect to all of the Board Meetings inquired about in this Interrogatory.

**INTERROGATORY NO. 2:** Identify your Board of Trustees' Meetings and their dates from August 13, 2008 through May 19, 2009 for which you did not timely post the internet notices of board meetings on your website according to the requirement of TOMA.

**ANSWER:** Defendant complied with the requirements or exceptions thereof of the Texas Open Meetings Act with respect to all of the Board Meetings inquired about in this Interrogatory.

**INTERROGATORY NO. 3:** Identify the names and the positions of all persons involved in posting the internet notices of board meetings on your website.

**ANSWER:** Karen Linder.

**INTERROGATORY NO. 4:** Describe the steps or the process you followed to ensure that the internet notices of board meetings you claim you posted on your website between August 13, 2008 and May 19, 2009 were actually available for public viewing on your website.

**ANSWER:** Defendant objects to this Interrogatory for the reason that it is overly broad and therefore beyond the scope of discovery. Subject to this objection Defendant would state that Karen Linder would periodically check that status of the postings after first posting the Notices on the BoardBook which would in turn send through an internet link the Notices to the District Website. Sometime in January of 2009 the District Technology Services Department updated the website but left off the link between the Boardbook and District Website. This technical problem was not discovered and corrected until approximately May 2009. Karen Linder was responsible for creating the internet board notices through the boardbook program. Once created on the boardbook template the Notices were delivered to the District Website via a link. This link worked properly from October 2007 until approximately January 2009 when the District Website was updated. Unbeknownst to anyone at the District, when the District Website was updated the link with Boardbook was terminated.

**INTERROGATORY NO. 5:** State all technical problems that you believe caused your failure to comply with the legal requirement of posting internet notices of your board meetings on your website per TOMA.

**ANSWER:** See Answer to Interrogatory No. 4.

**INTERROGATORY NO. 6:** State all reasons why you believe the technical problem(s) identified in Interrogatory No. 5 herein above were beyond your control.

**ANSWER:** See Answer to Interrogatory No. 4.

**INTERROGATORY NO. 7:** State when and how you became aware of the technical problem(s) identified in Interrogatory No. 5 herein above.

**ANSWER:** Defendant became aware when it was reported to Defendant by Plaintiffs herein that the notices were not online.

**INTERROGATORY NO. 8:** Identify the names of the persons who were aware of the technical problem(s) identified in Interrogatory No. 5 herein above and of your efforts to resolve them between the time period August 13, 208 [sic] to May 19, 2009.

**ANSWER:** Karen Linder. The problem was resolved when Ms. Linder reported it to Technology Services Department head Suzie Jameson who then determined that the former link between Boardbook and the District website had been severed. She then reestablished the link.

**INTERROGATORY NO. 9:** A. State the efforts you made to resolve the technical problem(s) identified in Interrogatory No. 5, herein above including the names of persons involved in the efforts.

B. State why you believe your efforts to resolve the technical problems identified in Interrogatory No. 5, herein above were in good faith.

**ANSWER:** A. See Answer to Interrogatory No. 8 above.

B. Because the efforts were in good faith.

**INTERROGATORY NO. 10:** State when and how the technical problem(s) identified in Interrogatory No. 5 herein above were resolved.

**ANSWER:** See Answers to Interrogatories 6 through 9.

**INTERROGATORY NO. 11:** State the educational qualifications and work experience of persons involved in posting internet notices on your website

**ANSWER:** Defendant objects to Interrogatory No. 11 for the reason that it is overly broad, unduly burdensome and seeks the production of information which is not relevant and not calculated to lead to the production of any relevant information and is therefore beyond the scope of the Texas Rules of Civil Procedure.

**INTERROGATORY NO. 12:** State when and why the notice of the board meeting on 3/26/2009 was revised and when was the revised notice posted or reposted on front door of your central administrative building including the date and time of such posting or reposting.

**ANSWER:** There were no revisions to the Notice other than the date of reposting. The original notice for the meeting was posted on March 20, 2009. This notice went missing so it was reposted on March 23, 2009. The only "revision" to the original notice was the date of reposting. All other content of the Notice remained the same. The reposting occurred prior to 5 p.m. on March 23, 2009.

**INTERROGATORY NO. 13:** State when, including date and time, and on which page or area of your website was the internet notice of the 3/26/2009 board meeting posted in 72 hours prior to the 3/26/2009 meeting.

**ANSWER:** The notice for the 3/26/09 Board Meeting was properly posted on both March 20, 2009 and again on March 23, 2009 prior to 5 p.m. on the front door of the administrative building. Due to technical problems addressed in Interrogatories Nos. 4-9 the internet notice did not appear on the District Website.

**INTERROGATORY NO. 14:** State how you verified that the internet posting identified in Interrogatory No. 12 herein above was available for public viewing on your website for 72 hours before the beginning time of the 3/26/2009 meeting.

**ANSWER:** See answer to Interrogatory No. 13 above. The internet posting for the 3/26/09 meeting did not appear on the District Website due to the technical problems addressed in answer to Interrogatories Nos. 4-9 above.

# VERIFICATION

STATE OF TEXAS      §
                          §

COUNTY OF _Gray_      §

BEFORE ME, the undersigned authority, on this day personally appeared Karen Linder,  of Pampa Independent School District, known to me personally by presenting her driver's license, who being duly sworn on her oath deposed and said that she is duly qualified and authorized in all respects to make this affidavit, that she has read the above and foregoing Defendant's Answers to Plaintiffs' Interrogatories; and that every statement contained therein is within her knowledge and is true and correct.

_Karen Linder_
Karen Linder

SUBSCRIBED AND SWORN TO BEFORE ME on the 23rd day of February, 2010 to certify which witness my hand and official seal.

TARA HOGANSON
Notary Public, State of Texas
My Commission Expires 6-11-2011

_Tara Hoganson_
Notary Public in and for
The State of Texas

# Appendix 9

## Defendant's Responses to Plaintiffs' Requests for Admissions (PX9)

| | | |
|---|---|---|
| REBECCA TERRELL and CHANDRASHEKHAR THANEDAR | § § § | IN THE 223rd DISTRICT COURT |
| Plaintiffs, | § § § | |
| V. | § § | IN AND FOR |
| PAMPA INDEPENDENT SCHOOL DISTRICT | § § § | |
| Defendant | § § | GRAY COUNTY, TEXAS |

## DEFENDANT'S RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSIONS

TO:   Plaintiffs, Rebecca Terrell and Chandrashekhar Thanedar, 1000 North Wells St., Pampa, Texas 79065.

COMES NOW Defendant, PAMPA INDEPENDENT SCHOOL DISTRICT, (hereinafter "Defendant") in the above-styled and numbered cause, and, pursuant to the Texas Rules of Civil Procedure, makes the following Responses to Plaintiffs' Requests for Admissions to Defendant.

Respectfully submitted,

W. Wade Arnold
State Bar No. 00783561
Andrea Slater Gulley
State Bar No. 24045994
UNDERWOOD, WILSON, BERRY,
  STEIN & JOHNSON, P.C.
P.O. Box 9158
Amarillo, Texas 79105-9158
806-376-5613 – FAX: 806-349-9471

By: _____
  W. Wade Arnold

ATTORNEYS FOR DEFENDANT

PX
9

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of February, 2010 a true and correct copy of the above and foregoing document was delivered via certified mail to and properly addressed as follows:

Rebecca Terrell
Chandrashekhar Thanedar
1000 N. Wells Street
Pampa, Texas 79065.


W. Wade Arnold

# INTERROGATORIES

**REQUEST FOR ADMISSION NO. 1:**    Admit that you have a contract with BoardBook since October 2007 for providing services in connection with posting internet notices of board meetings on your website.

**RESPONSE:** Admit that Defendant has had a contract with BoardBook since 2007. Admit that the contract tangentially involves the posting of internet notices of board meetings. Denied as to anything else.

**REQUEST FOR ADMISSION NO. 2:**    Admit that you had a bulletin board in the lobby of the central administrative building from August 13, 2008 to May 31, 2009.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 3:**    Admit that you removed the bulletin board identified in Request for Admission No. 2, herein above from the central administrative building after the filing of this lawsuit.

**RESPONSE:** Admit that an enclosed bulletin board formerly located within the administrative building was relocated to a spot immediately outside the front door of the building. Denied as to anything else.

**REQUEST FOR ADMISSION NO. 4:**    Admit that you placed a bulletin board outside of your central administrative building to post notices of board meetings after the filing of this lawsuit.

**RESPONSE:** Admit that the bulletin board relocated outside of the front doors of the administrative building was used to post notices of board meetings. Denied as to anything else.

**REQUEST FOR ADMISSION NO. 5:**    Admit that you posted notices of board meetings on the front door of the central administrative building for board meetings from August 13, 2008 to May 19, 2009.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 6:**    Admit that you have never posted notices of board meetings on a bulletin board in your central administrative building.

**RESPONSE:** Defendant objects to this Request to the extent that it implies that board notices must be placed inside of a particular building in order to meet the requirements of TOMA. Otherwise, Admit.

**REQUEST FOR ADMISSION NO. 7:**    Admit that you have used the front door of the central administrative building to post notices of board meetings for the last 8 years.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 8:** Admit that Karen Linder posted the notices of board meetings on the front door of the central administrative building for the last eight years.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 9:** Admit that Karen Linder was not designated nor authorized to post notices of board meetings by your board of trustees.

**RESPONSE:** Defendant objects to Request for Admission No. 9 to the extent that it seems to imply that a school district board of trustees is required to "designate or authorize" a person to post Board Meeting Notices under the TOMA. Subject to this objection, deny.

**REQUEST FOR ADMISSION NO. 10:** Admit that you posted the revised notice of your 3/26/2009 board meeting on the front door your central administrative building on 3/24/2009.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 11:** Admit that you did not post the notice for the 3/26/2009 board meeting on 3/20/2009.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 12:** Admit that 3/26/09 board meeting notice was not on the front door after 5 p.m. on 3/23/2009 and that you reposted it on 3/24/09.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 13:** Admit that you did not verify that the internet notices were actually available for public viewing on your website from January 1, 2009 to May 15, 2009.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 14:** Admit that your board president did not cite the section of the Act under which you closed the board meeting on 3/26/2009.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 15:** Admit that you never identified "Pampa, Texas" as "place" in your board meeting notices before this lawsuit was filed.

**RESPONSE:** Defendant objects to Request for Admission No. 15 to the extent that it incorrectly implies that TOMA requires that the name of the city in which the meeting is to take place is required. Admit that the words "Pampa, Texas" were not included in the Notices.

**REQUEST FOR ADMISSION NO. 16:** Admit that your employee Ramiro Soto admitted to plaintiff Thanedar on 3/23/09 that there was no meeting notice on the front door on 3/223/09 [sic] at 5 p.m. and at 6 p.m.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 17:** Admit that you post the meeting notices of board meetings in Adobe "PDF" format on your website.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 18:** Admit that the Adobe "PDF" format of all notices of board meetings from August 13, 2008 to May 19, 2009 were created and posted in May 2009 as follows:

1. Web notices for 8/13/08, 8/21/08, 9/4/08, 9/18/08, 10/2/08 10/9/08, and 10/23/08 were created on May 5/11/09 [sic] and posted on the website on 5/19/09

2. Web notice 11/6/08 was created on May 5/5/09 [sic] and posted on the website on 5/19/09

3. Web notices 11/20/08 and 12/4/08 were created on May 5/7/09 [sic] and posted on the website on 5/19/09

4. Web notices 12/18/08, 1/15/09, 2/15/09, 2/19/09, 3/12/09, 3/26/09, 4/2/09, 4/16/09, 4/21/09, and 4/23/09 were crated on May 5/8/09 [sic] and posted on the website on 5/19/09

5. Web notice 5/7/09 was created on May 5/12/09 [sic] and posted on the website on 5/19/09

6. Web notice 5/19/09 was created on May 5/18/09 [sic] and posted on the website on 5/19/09

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 19:** Admit that from August 13, 2008 to May 19, 2009 you held the following 22 board meetings on the following dates:

Board Meetings on 8/13/08, 8/21/08, 9/4/08, 9/18/08, 10/2/08 10/9/08, 10/23/08, 11/6/08, 11/20/08, 12/4/08, 12/18/08, 1/15/09, 2/15/09, 2/19/09, 3/12/09, 3/26/09, 4/2/09, 4/16/09, 4/21/09, 4/23/09, 5/7/09, and 5/19/09.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 20:** Admit that you posted the meeting notice for 5/19/2009 on the front door of the central administrative building on 5/18/2009.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 21:** Admit that you did not view your website to verify from August 2008 to May 14, 2009 to check whether the board meeting notices were in fact on your website and available for public viewing.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 22:** Admit that internet website notices of your board meetings were not on your website from Jan. 1, 2009 – May 15, 2009.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 23:** Admit that Karen Linder admitted to plaintiff Thanedar on May 15, 2009 that the internet notices of board meetings were not posted on your website for several months.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 24:** Admit that you did not post the internet notice for 3/26/2009 board meeting on your website prior to May 2009.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 25:** Admit that you did not post internet website notices of board meetings that took place from August 13, 2008 to December 2008 for public viewing until May 2009.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 26:** Admit that internet website notices were not on your website for public viewing 72 hours prior to the board meetings for the period from August 13, 2008 to May 18, 2009.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 27:** Admit that you first became aware of your failure to post notices of board meetings on your website after plaintiff Thanedar submitted Open Records Request to you for notices of board meetings in April 2009.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 28:** Admit that you posted internet notices for the first time on May 19, 2009 for board meetings from October 2007 to May 19, 2009 on your website.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 29:** Admit that there was no technical problem beyond your control that prevented you from posting internet notices on your website from August 13, 2008 to May 19, 2009.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 30:** Admit you were closed from March 16-March 20, 2009 for "Spring Break."

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 31:** Admit that Karen Linder does not have a college degree or work experience in computer technology.

**RESPONSE:** Defendant objects to Request for Admission No. 31 for the reason that it is harassing and seeks the production of information which is not relevant and not calculated to lead to the production of any relevant information and is therefore beyond the scope of the Texas Rules of Civil Procedure.

**REQUEST FOR ADMISSION NO. 32:** Admit that your Information Technology (IT) department creates the Adobe "PDF" formats of the notices of board meetings to be posted on your website.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 33:** Admit that the Adobe "PDF" format of your notices of board meetings are created using the "Activepdf" software.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 34:** Admit that the Adobe "PDF" formats of the internet notices of your board meetings from Aug. 13, 2008 to May 19, 2009 were created and posted on your website in the month of May 2009.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 35:**   Admit that your website was available for public viewing on March 27, 2009 even though you were closed due to inclement weather caused by snow storm.

**RESPONSE:** Admit.

# Appendix 10

Defendant's Answers to Plaintiffs' Second Set of Interrogatories, Requests for Admissions and Request for Production (PX10)

| | | |
|---|---|---|
| REBECCA TERRELL and CHANDRASHEKHAR THANEDAR | § | IN THE 223rd DISTRICT COURT |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | IN AND FOR |
| | § | |
| PAMPA INDEPENDENT SCHOOL DISTRICT | § | |
| | § | |
| Defendant | § | GRAY COUNTY, TEXAS |

FILED GRAY COUNTY, TEXAS
2013 OCT 10 AM 9 55
SANDRA BUCKETT DISTRICT CLERK
BY _____
DEPUTY

## DEFENDANT'S ANSWERS TO PLAINTIFFS' SECOND SET OF INTERROGATORIES, REQUESTS FOR ADMISSIONS AND REQUEST FOR PRODUCTION

TO:   Plaintiffs, Rebecca Terrell and Chandrashekhar Thanedar, 1000 North Wells St., Pampa, Texas 79065.

COMES NOW Defendant, PAMPA INDEPENDENT SCHOOL DISTRICT, (hereinafter "Defendant") in the above-styled and numbered cause, and, pursuant to the Texas Rules of Civil Procedure, makes the following Answers to Plaintiffs' Second Set of Interrogatories, Requests for Admissions and Request for Production to Defendant.

Respectfully submitted,

W. Wade Arnold
State Bar No. 00783561
Andrea Slater Gulley
State Bar No. 24045994
UNDERWOOD, WILSON, BERRY,
  STEIN & JOHNSON, P.C.
P.O. Box 9158
Amarillo, Texas 79105-9158
806-376-5613 – FAX: 806-349-9471

By: _____
    W. Wade Arnold

ATTORNEYS FOR DEFENDANT

PX
10

Defendant's Answers to Plaintiffs' Second Set of Interrogatories,
Requests for Admissions and Request for Production – Page 1
#491701

EXHIBIT
C

## CERTIFICATE OF SERVICE

I hereby certify that on the _5th_ day of April, 2010 a true and correct copy of the above and foregoing document was delivered via certified mail to and properly addressed as follows:

Rebecca Terrell
Chandrashekhar Thanedar
1000 N. Wells Street
Pampa, Texas 79065.

_W. Wade Arnold_
W. Wade Arnold

# SECOND SET OF INTERROGATORIES,
## REQUESTS FOR ADMISSIONS AND REQUEST FOR PRODUCTION

**INTERROGATORY NO. 15:** Identify your Board of Trustees' Meetings and their dates from August 13, 2008 through May 19, 2009 for which the internet notices did not appear on your website and for which you claim good faith exception under Texas Open Meetings Act (TOMA), Texas Gov't Code, Sec. 551.056(d) concerning technical problem beyond your control in posting internet notices.

**ANSWER:** All required internet notices for the period August 13, 2008 through January 15, 2009 properly appeared on the website. Due to website changes on January 15, 2009 the link with Boardbook was severed. From January 15, 2009 through May 19, 2009 Karen Linder continued to create the notices in Boardbook and to send them for posting to the website. However, because of the severance of the link between the website and Boardbook brought on by the website changes on January 15, 2009 the notices were not posted to the website. This technical problem was not discovered until May 2009 at which time it was immediately corrected. Defendant would also make reference to the emails between Karen Linder and Suzie Jameson which are attached to Defendant's responses to Plaintiffs First Requests for Production.

**INTERROGATORY NO. 16:** Identify the date or dates on which the internet notices of your board meetings appeared on your website and were actually available for public viewing for each of the board meetings from August 13, 2008 to May 19, 2009.

**ANSWER:** August 13, 2008 through January 15, 2009.

**INTERROGATORY NO. 17:** Identify the document format of the internet website notices of your board meetings posted on your website and the specific dates on which the internet notices were created for each of the board meetings from August 13, 2008 to May 31, 2009.

**ANSWER:** Defendant objects to Interrogatory No. 17 for the reason that the term "format" is not defined. Therefore, Defendant is unable to properly respond. Subject to this objection Defendant would state that the internet notices are created using a form from Boardbook. Once the notice is created it is "released" to the District's website. There is no particular "format" of the notice. The notices for all of the meetings in question were created by Karen Linder more than 72 hours before each respective meeting. All of the notices were posted more than 72 hours before each respective meeting by Karen Linder except those meetings between January 15, 2009 and May 19, 2009. As explained in answer to Interrogatory No. 15 above these notices were created and thought to have been posted more than 72 hours before the meetings but due to the technical difficulty of having the link between Boardbook and the website severed were not actually posted.

**INTERROGATORY NO. 18:** Explain in detail what specific functions or services BoardBook provides to you concerning posting the internet notices of your board

**Defendant's Answers to Plaintiffs' Second Set of Interrogatories,**
**Requests for Admissions and Request for Production – Page 3**
**#491701**

meetings on your website and the manner in which BoardBook provides the said functions or services to you.

ANSWER: Boardbook serves as a platform for creating and posting the internet notices. The notice is created in a form contained in Boardbook. Upon completion the notice is "released" to the website. There is a link between Boardbook and the website which upon release of the notice sends the notice for posting on the website.

**INTERROGATORY NO. 19:** Explain in detail the process of how the internet website notices of your board meetings are created and posted to your website for public viewing and the roles of persons involved in this process.

ANSWER: Defendant incorporates its answers to Interrogatory Nos. 15-18 above. Additionally, Defendant would respond that the only "person involved" is Karen Linder.

**INTERROGATORY NO. 20:** Identify all persons that you contend authorized or designated Karen Linder to sign the notices of board meetings from August 13, 2008 to May 19, 2009.

ANSWER: Barry Haenisch with the authority of the School Board.

**INTERROGATORY NO. 21:** Explain all reasons in support of your contention that posting notices of board meetings on the front entrance door of your central administrative office building complies with the notice requirement for school districts to post notices on a Bulletin Board in the central administrative office per TOMA Sec. 551.051.

ANSWER: The posting of the Board Meeting Notices on the front door of the central administrative building is proper because it meets the provisions of Section 551.051 of the Texas Open Meetings Act. The notice was inside the building and it was placed in the area for which the District posts many other bulletins and notices.

**INTERROGATORY NO. 22:** Concerning the reposting of the notice for your 3/26/2009 board meeting, describe in detail the date and time and how you became aware (e.g. who told you, and the date and time) that the previous notice dated 3/20/2009 of the said meeting was not on the front door of your central administrative building.

ANSWER: Karen Linder was informed by Plaintiff Thanedar that the notice which she had originally posted on March 20, 2009 for the March 26, 2009 meeting was now missing from the front door of the administrative building. Ms. Linder immediately reposted the notice on the front door. This was done on March 23, 2009 more than 72 hours before the March 26th meeting.

**INTERROGATORY NO. 23:** Concerning your new website, explain how the link to the internet notices of the board meetings was severed or lost and the roles of all persons

Defendant's Answers to Plaintiffs' Second Set of Interrogatories,
Requests for Admissions and Request for Production – Page 4
#491701

responsible or involved in updating the link to the internet notices of board meetings on your website and the identify the date on which you changed over to a new website

**ANSWER:** The link was severed because changes were made to the District website by Information Technology Department head Suzie Jameson in the regular course of business. This technical problem was discovered on or about May 19, 2009 when the problem was brought to the attention of Karen Linder when she was told the notices for the meetings were not appearing on the website as they were supposed to. Ms. Linder contacted Ms. Jameson and asked her to look into the problem. Ms. Jameson quickly discovered the problem and corrected it. The website changes occurred on or about January 15, 2009.

**INTERROGATORY NO. 24:** Authenticate each of the following documents in Exhibit B, specifically identified as B.1, B.3, B.5, B.7, B.9, B.11, B.13, B.15, B.17, B.19, B.21, B.23, B.25, B.27, B.29, B.31, B.33, B.35, B.37, B.39, B.41, B.43, B.45, B.47, B.49, B.51, B.53, B.55, B.57, B.59, B.61, B.63, B.65, B.67, B.69, B.71, B.73, B.75, B.77, B.79, B.81, B.83, B.85, B.87, B.89, and B.91, of Plaintiffs' Motion for Summary Judgment filed and served on you in this case on June 15, 2009 as your internet website notices of your board of trustees' meetings that appear on your website.

**ANSWER:** Defendant objects to this Interrogatory for the reason that it is overly broad and unduly burdensome. Defendant further objects for the reason that this Interrogatory seeks the production of information which is not relevant and not calculated to lead to the discovery of any relevant information and is therefore beyond the scope of the rules. Defendant further objects to the extent that Plaintiffs do not give enough detail as to what they wish to have authenticated and therefore Defendant is unable to properly respond. Subject to the above objections and without waiving the same Defendant would respond as follows: Defendant authenticates that each of the documents identified in this Interrogatory are in fact attached to Plaintiffs' Motion for Summary Judgment. Defendant cannot authenticate anything else because Defendant is unaware of the date(s) that each of these documents was printed out by Plaintiff. However, it would appear that the notices referenced in this Interrogatory are in fact duplicates of the actual notices originally posted and placed on the website.

**INTERROGATORY NO. 25:** Authenticate each of the following documents in Exhibit B, specific identified as B.2, B.4, B.6, B.8, B.10, B.12, B.14, B.16, B.18, B.20, B.22, B.24, B.26, B.28, B.30, B.32, B.34, B.36, B.38, B.40, B.42, B.44, B.46, B.48, B.50, B.52, B.54, B.56, B.58, B.60, B.62, B.64, B.66, B.68, B.70, B.72, B.74, B.76, B.78, B.80, B.82, B.84, B.86, B.88, B.90, and B.92, of Plaintiffs' Motion for Summary Judgment filed and served on you in this case on June 15, 2009 as the document property contained in the respective internet website notices that appear on your website as noted in Interrogatory No. 24 herein above.

**ANSWER:** Defendant objects to this Interrogatory for the reason that it is overly broad and unduly burdensome. Defendant further objects for the reason that this Interrogatory seeks the production of information which is not relevant and not calculated

Defendant's Answers to Plaintiffs' Second Set of Interrogatories,
Requests for Admissions and Request for Production — Page 5
#491701

to lead to the discovery of any relevant information and is therefore beyond the scope of the rules. Defendant further objects to the extent that Plaintiffs do not give enough detail as to what they wish to have authenticated and therefore Defendant is unable to properly respond. Subject to the above objections and without waiving the same Defendant would respond as follows: Defendant authenticates that each of the documents identified in this Interrogatory are in fact attached to Plaintiffs' Motion for Summary Judgment. Defendant cannot authenticate anything else and in particular the "created" or "modified" times on each document as being the actual times that the notices in question were originally created and placed on the website through Boardbook. Whenever a notice is viewed through the "prepare/edit" function of Boardbook, which is the manner in which Ms. Linder often views notices, the create and modify dates and times change whether any actual changes are made. Defendant can authenticate that each of the notices above was originally created and posted through Boardbook at least 72 hours before the respective meeting being noticed.

**INTERROGATORY NO. 26:** Authenticate Exhibits C and D of Plaintiffs' Motion for Summary Judgment filed and served on you in this case on June 15, 2009 as the internet website notice (Exhibit C) and document properties (Exhibit D) of the said notice for your board of trustees' meeting on 3/26/2009.

**ANSWER:** Defendant objects to this Interrogatory for the reason that it is overly broad and unduly burdensome. Defendant further objects for the reason that this Interrogatory seeks the production of information which is not relevant and not calculated to lead to the discovery of any relevant information and is therefore beyond the scope of the rules. Defendant further objects to the extent that Plaintiffs do not give enough detail as to what they wish to have authenticated and therefore Defendant is unable to properly respond. Subject to the above objections and without waiving the same Defendant would respond as follows: Defendant authenticates that each of the documents referenced in the Interrogatory above are in fact attached to Plaintiffs' Motion for Summary Judgment. Defendant would further respond that the March 26 notice attached as Exhibit C appears to be the one originally posted. The document properties attached as Exhibit D is not the original one that was created on Boardbook and released to the website on or about March 20, 2009.

**INTERROGATORY NO. 27:** Authenticate each of the following Exhibits E, F, G, H, I, J, K, and L of Plaintiffs' Motion for Summary Judgment filed and served on you in this case on June 15, 2009.

**ANSWER:** Defendant objects because it is unclear what Plaintiff wishes to have "authenticated". Therefore, Defendant is unable to properly respond. Subject to this objection Defendant would respond that E and F appear to be accurate copies of the original notices. G appears to be a copy of the incomplete notice referenced in the letter dated May 26th and attached to F. H appears to be an accurate copy of the minutes depicted. I, J, and K appear to be an accurate screen grab of the website. It is unclear what L is but it appears to be something that comes from the Boardbook program.

Defendant's Answers to Plaintiffs' Second Set of Interrogatories,
Requests for Admissions and Request for Production – Page 6
#491701

**INTERROGATORY NO. 28:** Authenticate each of the following Exhibits 1, 2, 3, 4, 5, and 6 of Plaintiffs' Original Petition and Application for Issuance of a Temporary Restraining Order without Notice and Temporary Injunctions with Supporting Documentation and Affidavit filed and served on you in this case on May 29, 2009.

**ANSWER:** Defendant objects to this Interrogatory for the reason that it is duplicative of Interrogatory Nos. 24 through 27. Therefore, Defendant would make reference to its answers therein.

**INTERROGATORY NO. 29:** Authenticate each of the following Exhibits 4, 5, 7, 9, 10, and 11 including 11.1, 11.2, and 11.3 of Plaintiffs' Supplement to Their Motion for Summary Judgment filed and served on you in this case on August 14, 2009.

**ANSWER:** Defendant objects to this Interrogatory for the reason that it is overly broad and unduly burdensome. Defendant further objects for the reason that this Interrogatory seeks the production of information which is not relevant and not calculated to lead to the discovery of any relevant information and is therefore beyond the scope of the rules. Defendant further objects to the extent that Plaintiffs do not give enough detail as to what they wish to have authenticated and therefore Defendant is unable to properly respond. Subject to the above objections and without waiving the same Defendant would respond as follows: Defendant authenticates that each of the documents referenced in the Interrogatory above are in fact attached to Plaintiffs' Supplement to Their Motion for Summary Judgment. Otherwise, Defendant would make reference to its Answers to Interrogatory Nos. 24-27. Finally, Defendant cannot authenticate anything else regarding these Exhibits.

**REQUEST FOR ADMISSION NO. 36:** Admit that internet notices of the board meetings from August 13, 2008 to May 19, 2009 currently appear on your website.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 37:** Admit that Karen Linder is your superintendent Barry Haenisch's secretary.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 38:** Admit that Suzie Jameson manages your technology department and her job title is technology director.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 39:** Admit that Suzie Jameson did not establish a link to board meeting notices on the new website until May 2009.

**RESPONSE:** Deny.

Defendant's Answers to Plaintiffs' Second Set of Interrogatories,
Requests for Admissions and Request for Production – Page 7
#491701

**REQUEST FOR ADMISSION NO. 40:**    Admit that Suzie Jameson was responsible for establishing the link to the internet board meeting notices on your website after you updated your website in January 2009.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 41:**    Without referring to your claim of good faith exception under TOMA, admit that internet notices did not appear for public view on your website after you updated your website in January 2009.

**RESPONSE:** Admit that beginning on approximately January 15, 2009 through May 19, 2009 that the BoardBook link with the website had been severed and that although the notices were properly and timely created in Boardbook and sent for posting to the website that such notices did not actually get posted to the website. Otherwise, denied.

**REQUEST FOR ADMISSION NO. 42:**    Without referring to your claim of good faith exception under TOMA, admit that Suzie Jameson and Karen Linder did not know that the link to internet notices for public view did not appear on your new website from January 2009 until May 2009.

**RESPONSE:** Admit that Ms. Linder and Ms. Jameson were unaware that the website update work which was completed on or about January 15, 2009 severed the link with Boardbook which had formerly allowed notices to be posted to the website via Boardbook. Otherwise, denied.

**REQUEST FOR ADMISSION NO. 43:**    Without referring to your claim of good faith exception under TOMA, admit that Suzie Jameson and Karen Linder did not know from January 2009 until May 2009 that internet notices did not appear on your website and were not available for public viewing.

**RESPONSE:** Admit for the period of approximately January 15, 2009 through May 18, 2009. Otherwise, denied.

**REQUEST FOR ADMISSION NO. 44:**    Admit that Karen Linder was neither designated nor authorized to sign notices of board meetings by your board of trustees.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 45:**    Admit that Karen Linder was neither designated nor authorized to sign notices of board meetings by defendant's superintendent.

**RESPONSE:** Deny.

**REQUEST FOR ADMISSION NO. 46:**    Admit that Ramiro Soto was your employee during the school year 2008-2009.

Defendant's Answers to Plaintiffs' Second Set of Interrogatories,
Requests for Admissions and Request for Production – Page 8
#491701

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 47:** Admit that Ramiro Soto's job included custodial functions at your central administrative office building, Carver Center, during school year 2008-2009.

**RESPONSE:** Admit.

**REQUEST FOR ADMISSION NO. 48:** Admit that the board approved school calendar for the year 2008-2009 designated March 16, 2009 through March 20, 2009 as holidays.

**RESPONSE:** Admit..

**REQUEST FOR PRODUCTION NO. 23:** Produce all electronic internet website notices of your board meetings on a Compact Disk ("CD") including notices or documents in Adobe PDF, Microsoft Word, or WordPerfect formats for the board meetings

a. for which the internet notices did not appear on your website for public view at any time during August 13, 2008 to May 19, 2009 and for which you claim good faith exception under TOMA

b. for all other board meetings (other than in "Request for Production No. 23a" herein above) between August 13, 2008 to May 19, 2009.

**RESPONSE:** Defendant objects to Request for Production No. 23 for the reason that Defendant has previously produced to Plaintiffs these same documents.

**REQUEST FOR PRODUCTION NO. 24:** Without referring to your assertion of claim to exception under TOMA Sec. 551.056(d)

a. Produce all documents, including information in electronic form, in support of your contention that you complied with the internet website posting requirement for school districts pursuant to TOMA Sec. 551.056(b);

b. If the documents in "Request for Production No. 24a." herein above are in electronic form, produce such documents on a Compact Disk ("CD").

**RESPONSE:** See the emails between Ms. Linder and Ms. Jameson which were previously produced in response to Plaintiffs' First Interrogatories, Requests for Admission and Requests for Production.

**REQUEST FOR PRODUCTION NO. 25:** Produce all documents in support of your assertion that the non-appearance of the internet notices for public view on your website of any board of trustees' meetings during the time period August 2008 through May 14, 2009 was due to a technical problem beyond your control and that you made a good faith

Defendant's Answers to Plaintiffs' Second Set of Interrogatories,
Requests for Admissions and Request for Production – Page 9
#491701

attempt to comply with TOMA's requirement to post concurrent internet notices on your website.

**RESPONSE:** See the emails between Ms. Linder and Ms. Jameson which were previously produced in response to Plaintiffs' First Interrogatories, Requests for Admission and Requests for Production.

**REQUEST FOR PRODUCTION NO. 26:** Produce all documents in support of your assertion that Karen Linder is authorized to verify defendant's answers to plaintiffs' interrogatories served on you in this lawsuit pursuant to Texas Rules of Civil procedure.

**RESPONSE:** None.

**REQUEST FOR PRODUCTION NO. 27:** Produce all documents in support of your assertion that Karen Linder was authorized or designated to sign notices of board meetings.

**RESPONSE:** None.

**REQUEST FOR PRODUCTION NO. 28:** Produce all documents in support of your assertion that Karen Linder was authorized or designated to post notices of board meetings.

**RESPONSE:** None.

**REQUEST FOR PRODUCTION NO. 29:** Produce job descriptions of Karen Linder, Suzie Jameson, and Ramiro Soto for the years 2007, 2008, and 2009.

**RESPONSE:** Defendant has already produced a job description for Karen Linder. See her Affidavit attached in Response to Plaintiffs Motion for Summary Judgment. Defendant objects to the request to produce job descriptions for Ms. Jameson and Mr. Soto for the reason that they are not relevant and not calculated to lead to the discovery of any relevant information and is therefore beyond the scope of the Texas Rules.

**REQUEST FOR PRODUCTION NO. 30:** Produce your School Calendars approved by your Board of Trustees for the years 2008-2009 and 2009-2010.

**RESPONSE:** Defendant objects to this Request for the reason that it is overly broad and seeks the production of information which is not relevant and not calculated to lead to the production of any relevant information and is therefore beyond the scope of the Texas Rules.

**REQUEST FOR PRODUCTION NO. 31:** Produce all contracts, including BoardBook contracts, that provided you services concerning posting internet notices on your website for your board meetings for the years 2007, 2008, and 2009.

**RESPONSE:** None.

**REQUEST FOR PRODUCTION NO. 32:** Produce all documents evidencing that March 16, 2009 through March 20, 2009 were work days for you.

**RESPONSE:** Defendant objects for the reason that "you" is not defined. Therefore, it is unclear who this Request is directed to.

**REQUEST FOR PRODUCTION NO. 33:** Produce all documents including contracts with web service providers in support of your assertion that you updated your website in January 2009.

**RESPONSE:** None.

Defendant's Answers to Plaintiffs' Second Set of Interrogatories,
Requests for Admissions and Request for Production – Page 11
#491701

## VERIFICATION

STATE OF TEXAS                §
                              §
COUNTY OF GRAY                §


BEFORE ME, the undersigned authority, on this day personally appeared Karen Linder, Secretary/Assistant to the Superintendent of Pampa Independent School District, known to me personally by presenting her driver's license, who being duly sworn on her oath deposed and said that she is duly qualified and authorized in all respects to make this affidavit, that she has read the above and foregoing Defendant's Answers to Plaintiffs' Second Set of Interrogatories, Requests for Admissions and Request for Production; and that every statement contained therein is within her knowledge and is true and correct.

_Karen Linder_
Karen Linder

SUBSCRIBED AND SWORN TO BEFORE ME on the _5th_ day of April, 2010 to certify which witness my hand and official seal.

_Lea Ann Cochran_
Notary Public in and for
The State of Texas

# Appendix 11

**Defendant's Supplemental Answers to Plaintiffs' First Interrogatories, Requests for Production, and Requests for Admission (PX11)**

| REBECCA TERRELL and CHANDRASHEKHAR THANEDAR | § | IN THE 223rd DISTRICT COURT |
|---|---|---|
| Plaintiffs, | § § § | |
| V. | § | IN AND FOR |
| PAMPA INDEPENDENT SCHOOL DISTRICT | § § § | |
| Defendant | § | GRAY COUNTY, TEXAS |

## DEFENDANT'S SUPPLEMENTAL ANSWERS TO PLAINTIFFS' FIRST INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION

TO:   Plaintiffs, Rebecca Terrell and Chandrashekhar Thanedar, 1000 North Wells St., Pampa, Texas 79065.

COMES NOW Defendant, PAMPA INDEPENDENT SCHOOL DISTRICT, (hereinafter "Defendant") in the above-styled and numbered cause, and, pursuant to the Texas Rules of Civil Procedure, makes the following Supplemental Answers to Plaintiffs' First Interrogatories, Requests for Production and Requests for Admission to Defendant.

Respectfully submitted,

W. Wade Arnold
State Bar No. 00783561
Andrea Slater Gulley
State Bar No. 24045994
UNDERWOOD, WILSON, BERRY,
 STEIN & JOHNSON, P.C.
P.O. Box 9158
Amarillo, Texas 79105-9158
806-376-5613 – FAX: 806-349-9471

By: _____
W. Wade Arnold

ATTORNEYS FOR DEFENDANT

Defendant's Supplemental Answers to Plaintiffs'
First Interrogatories, Requests for Production, and
Requests for Admission
#494359

1

EXHIBIT
D



## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of April, 2010 a true and correct copy of the above and foregoing document was delivered via certified mail to and properly addressed as follows:

Rebecca Terrell
Chandrashekhar Thanedar
1000 N. Wells Street
Pampa, Texas 79065.

_____
W. Wade Arnold

Defendant's Supplemental Answers to Plaintiffs'                2
First Interrogatories, Requests for Production, and
Requests for Admission
#494359

# INTERROGATORIES

**INTERROGATORY NO. 3:** Identify the names and the positions of all persons involved in posting the internet notices of board meetings on your website.

**SUPPLEMENTAL ANSWER:** Karen Linder. For clarification, Karen Linder is solely responsible for posting internet notices. Suzie Jameson is the IT coordinator. Ms. Jameson was the one responsible for making changes to the District website in January of 2009 which inadvertently resulted in the severance of the link between Boardbook and the website.

**INTERROGATORY NO. 5:** State all technical problems that you believe caused your failure to comply with the legal requirement of posting internet notices of your board meetings on your website per TOMA.

**SUPPLEMENTAL ANSWER:** See Answer to Interrogatory No. 4. Defendant did comply with all requirements of TOMA. Defendant would further supplement its answer by stating that Suzie Jameson was the IT employee that updated the District website on or about January 15, 2009. This update resulted in the severing of the internet link between Boardbook and the website. This technical issue was not discovered until May of 2009 at which time the link was reestablished. The technical problem was the severance of the link with the updating of the website. Defendant would further supplement by stating that it was a technical problem beyond Defendant's control because the website link with Boardbook was severed during a website maintenance update by Defendant's IT department. This severance of the link with Boardbook was not known by Defendant and was therefore beyond Defendant's control.

**INTERROGATORY NO. 6:** State all reasons why you believe the technical problem(s) identified in Interrogatory No. 5 herein above were beyond your control.

**SUPPLEMENTAL ANSWER:** See Answer to Interrogatory No. 4. Defendant would supplement its answer as stated for Interrogatory No. 5 above and would further state that the technical problem, i.e. the severance of the link between the website and Boardbook, was not known to Defendant or its employees until May 2009. Defendant would further supplement by stating that it was a technical problem beyond Defendant's control because the website link with Boardbook was severed during a website maintenance update by Defendant's IT department. This severance of the link with Boardbook was not known by Defendant and was therefore beyond Defendant's control.

**INTERROGATORY NO. 7:** State when and how you became aware of the technical problem(s) identified in Interrogatory No. 5 herein above.

**SUPPLEMENTAL ANSWER:** Defendant became aware when it was reported to Defendant by Plaintiffs herein that the notices were not online. Defendant would further supplement by stating that it was a technical problem beyond Defendant's control because the website link with Boardbook was severed during a website maintenance

Defendant's Supplemental Answers to Plaintiffs'
First Interrogatories, Requests for Production, and
Requests for Admission
#494359

3

update by Defendant's IT department. This severance of the link with Boardbook was not known by Defendant and was therefore beyond Defendant's control. Defendant will supplement its answer by stating that Plaintiffs brought to the attention of Defendant the non appearance on the notices on the District website. This occurred on or about May 15, 2009. It was brought to the attention of Karen Linder who then checked with Suzie Jameson about the problem. The problem was then immediately corrected.

**INTERROGATORY NO. 8:** Identify the names of the persons who were aware of the technical problem(s) identified in Interrogatory No. 5 herein above and of your efforts to resolve them between the time period August 13, 208 [sic] to May 19, 2009.

**SUPPLEMENTAL ANSWER:** Karen Linder. The problem was resolved when Ms. Linder reported it to Technology Services Department head Suzie Jameson who then determined that the former link between Boardbook and the District website had been severed. She then reestablished the link. Defendant would supplement by making reference to the emails (email string in May 2009 between Linder and Jameson) attached to by Defendant to its original Responses to Plaintiffs' Requests for Production. Defendant would further supplement that the technical problem was discovered in May 2009.

**INTERROGATORY NO. 10:** State when and how the technical problem(s) identified in Interrogatory No. 5 herein above were resolved.

**SUPPLEMENTAL ANSWER:** See Answers to Interrogatories 6 through 9. Defendant would supplement its answer by stating that the technical problem with the website notices was both discovered and fixed on or about May 15th through 19th 2009. See the emails attached to Defendant's discovery responses. Also see the Affidavit of Karen Linder attached to Defendant's Response to Plaintiff's Motion for Summary Judgment as if set forth at length herein.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 6:** Produce all documents concerning communication to and from vendors including BoardBook, of the technical problems in connection with your failure to comply with the internet posting requirement of board meetings per TOMA and the resolution of such technical problems.

**SUPPLEMENTAL RESPONSE:** Object to the extent that no violations of TOMA occurred. Otherwise, Defendant would respond none. Defendant would further make reference to its Interrogatory answers above (Interrogatory Nos. 5-8) concerning the technical problem which caused the internet notices not to be posted (i.e. the severance of the link with Boardbook in January 2009) and would further direct Plaintiffs to the emails previously produced in response to Plaintiffs First Requests for Production which represents an email string between Ms. Linder and Ms. Jameson.

Defendant's Supplemental Answers to Plaintiffs' First Interrogatories, Requests for Production, and Requests for Admission #494359

4

**REQUEST FOR PRODUCTION NO. 15:** Produce all documents concerning your response to Request for Admission No. 1, herein above.

**SUPPLEMENTAL RESPONSE:** None. Defendant would additionally respond that a copy of the "Boardbook Contract" as referenced in the Court's letter ruling of April 12, 2010 was previously produced to Plaintiffs by Defendant by letter dated August 27, 2009 from Defendant Counsel Andrea Slater Gulley to Plaintiff Thanedar. Defendant would make reference to this production as if set forth at length herein.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 6:** Admit that you have never posted notices of board meetings on a bulletin board in your central administrative building.

**SUPPLEMENTAL RESPONSE:** Defendant withdraws its original objection and response to this Request and responds as follows: Denied.

**REQUEST FOR ADMISSION NO. 13:** Admit that Karen Linder does not have a college degree or work experience in computer technology.

**SUPPLEMENTAL RESPONSE:** Defendant objects to Request for Admission No. 31 for the reason that it is harassing and seeks the production of information which is not relevant and not calculated to lead to the production of any relevant information and is therefore beyond the scope of the Texas Rules of Civil Procedure. Subject to the above objection Defendant denies the Request for Admission.

**REQUEST FOR ADMISSION NO. 26:** Admit that internet website notices were not on your website for public viewing 72 hours prior to the board meetings for the period from August 13, 2008 to May 18, 2009.

**SUPPLEMENTAL RESPONSE:** Defendant admits that due to a technical difficulty the notices did not actually appear on the website for the period January 15, 2009 until May 19, 2009. Otherwise, Defendant denies.

Defendant's Supplemental Answers to Plaintiffs'     5
First Interrogatories, Requests for Production, and
Requests for Admission
#494359

## VERIFICATION

STATE OF TEXAS            §
                          §
COUNTY OF GRAY            §


BEFORE ME, the undersigned authority, on this day personally appeared Karen Linder, *Karen Linder* of Pampa Independent School District, known to me personally by presenting her driver's license, who being duly sworn on her oath deposed and said that she is duly qualified and authorized in all respects to make this affidavit, that she has read the above and foregoing Defendant's Answers to Plaintiffs' Interrogatories; and that every statement contained therein is within her knowledge and is true and correct.

*Karen Linder*

Karen Linder


SUBSCRIBED AND SWORN TO BEFORE ME on the 14th day of April, 2010 to certify which witness my hand and official seal.

Notary Public in and for
The State of Texas

Defendant's Supplemental Answers to Plaintiffs'
First Interrogatories, Requests for Production, and
Requests for Admission
#494359

6

# Appendix 12

**Plaintiffs' Second No-Evidence
and Traditional Motion
for Summary Judgment**

CAUSE NO. 35621



| REBECCA TERRELL and | § | IN THE 223 RD DISTRICT COURT |
| CHANDRASHEKHAR THANEDAR | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| v. | § | IN AND FOR |
| | § | |
| PAMPA INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| | § | GRAY COUNTY, TEXAS |
| *Defendant* | § | |

## PLAINTIFFS' SECOND NO-EVIDENCE AND TRADITIONAL MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiffs Rebecca Terrell and Chandrashekhar Thanedar file this their second no-evidence and traditional summary judgment motion (Second Motion), and in support respectfully show the Court the following:

### I. REASON FOR THE SECOND MOTION

1. On remand of this case from the 7th Court of Appeals, plaintiffs have filed two supplemental petitions - first supplemental petition on June 11, 2012 and the second supplemental petition on October 18, 2012. Plaintiffs' amended no-evidence and traditional motion for summary judgment was denied by Judge Vanderpool on August 24, 2012.

2. Plaintiffs filed their motion to recuse the 223rd district court Judge Phil Vanderpool on September 24, 2012 due to partiality towards defendant PISD and violation of plaintiffs' due process rights. On September 26, 2012, the district clerk entered an order of recusal by Judge Vanderpool. On October 15, 2012, senior Judge Abe Lopez was assigned to this case.

3. The only fact question identified by the 7th Court of Appeals in its opinion was PISD's claim of "good faith" regarding the untimely "creation dates" and the "non-appearance" of its internet notices from Jan. 2009 through 5/19/2009 on its website and/or on BoardBook's website. *Terrell vs. Pampa ISD*, 345 S.W.3d 641 (Tex. App.--Amarillo 2011, pet. denied). See TOMA §§551.056(b) and (d).

4. **PISD's alleged "good faith" defense is a fraud on taxpayers of Texas, appeals court, and this Court** and a brazen obstruction of justice for the last 3 ½ years. This defendant governmental entity, a taxpayer funded school district no less, is under the mistaken impression that it can continue to engage in this fraud against pro se Texas citizen taxpayers in this case. Since the beginning of this lawsuit in May 2009, PISD deliberately engaged in obstruction of justice by refusing and failing to produce documents in response to plaintiffs' discovery requests that will show that PISD did not have BoardBook service[1] for the period from January 15, 2009 to May 19, 2009 – period of 5 months for which it claims it had BoardBook service and for which it claims "good faith" exception under §551.056(d) for "non-appearance" of its internet notices. PISD admits the "non-appearance" of notices for said 5 months and blames the "link" to BoardBook service for not working. CR807, CR814-816. CR766-767.[2] It further admits that the untimely notices appeared on BoardBook's website on 5/19/2009 for the previous 5 months. CR816. But PISD refuses to produce documents that show that it paid license fees or renewal fees to BoardBook for 1/2009 to 5/19/2009 or for the relevant years 2008 and 2009 for

---

[1] PISD frivolously refuses and resists discovery for the last 3 1/2 years objecting to such discovery as "not relevant" and "beyond the scope of Texas Rules of Civil Procedure" while brazenly claiming good faith exception based on the same BoardBook service. This is nothing but mockery of TOMA and the justice system. PISD alleges that a link to BoardBook is necessary for public to view TOMA mandated internet notices which reside on BoardBook's website.

[2] The Clerk's Record is cited as "CR[page]," and Supplemental Clerk's Record cited as "SCR[page]."

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment                    Cause No. 35621                    Page 2 of 43
                                                      218

BoardBook service. **Exhibits 20, 21.** PISD refuses to produce requested documents and its personnel for deposition. PISD's motion to quash depositions has been denied.

PISD has further refused to supplement discovery in violation of Tex. R. Civ. Pro 193.5 concerning its alleged contract for service with BoardBook for the period 1/2009 to 5/19/2009. PISD refused and failed to produce documents showing that it ever paid the initial licensing fee of $1,600 or any subsequent renewal fees for service to BoardBook. **Exhibits 14, 20, and 21.**

There is no evidence of an executed contract with BoardBook for the relevant time period in question – 1/2009 to 5/19/2009. Because there is <u>no evidence of consideration</u> moving from PISD to BoardBook for the above period and because PISD refuses to provide such evidence, as a matter of law, the allegation of BoardBook service is legally invalid and at best speculation and not legal evidence. *Kindred v. Con/Chem., Inc.*, 650 S.W. 2d 61, 63 (Tex. 1983). *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W. 3d 21, 24 (Tex.App.-Houston [14th Dist.], 2005 no pet.) (without consideration, there is no contract). PISD could not and did not have an executed contract and service with BoardBook for the period in question for which PISD claims good faith. Notably, PISD does not claim good faith defense for 8/13/2008 through 12/2008 and there is no evidence in the record of consideration from PISD, valid contract or service with BoardBook for that period.

PISD further refused and failed to provide documents in response to discovery requests evidencing it paid license or renewal fees for BoardBook service and has refused to supplement discovery in violation of TRCP 193.5. The draft BoardBook agreement[3] (signed **only** by PISD,

---

[3] The Texas Attorney General's opinion (CR368-371) in favor of plaintiff Thanedar forced PISD to produce this fabricated draft agreement. This draft agreement presumably covers a 12 month period from 10/12/2007 to 10/12/2008. However this draft, even if presumed valid, would cover at the most only about 2 months in question in this case – part of August 2008 to part of October 2008 and does not cover the period Jan. 2009-May 19, 2009 for which PISD claims good faith defense under TOMA.

but not by BoardBook) clearly states that the subscription agreement is not effective until the $1,600 fee or a purchase order in that amount is received by BoardBook. **Exhibit 14** (see "Fees" and "Terms"). Because there is absolutely no evidence in the record that PISD ever paid the original $1,600 (or a purchase order for $1,600) or subsequent renewal fees to BoardBook for 2008 or 2009, PISD cannot as a matter of law prove that it had BoardBook service for the period in question from 8/13/2008 through 5/19/2009. Thus, there is not even a scintilla of evidence that PISD had BoardBook service in effect from January 2009 through 5/19/2009 – a period for which PISD claims good faith defense concerning why internet notices did not "appear" on PISD/BoardBook website.

PISD willfully engaged in subterfuge and obstruction of justice by fabricating a good faith defense of missing "link" to BoardBook service in this lawsuit knowing full well that it did not even have BoardBook service because it did not pay the license fees to BoardBook for the period in question. For this obstruction of justice and subterfuge PISD and its counsel deserve substantial sanctions as punishment for this misconduct. In addition, this case concerns persistent willful pattern of violations of Texas Open Meetings Act, Gov't Code Ch. 551, for 22 Meetings from 8/13/08 through 5/19/09 by defendant PISD.

**5. PISD's misrepresentation** concerning its unsupported assertion that "create dates of BoardBook notices were in actuality print dates" requires sanctions. PISD deliberately misrepresented to the 7th Court of Appeals that the "create dates" of the untimely PDF internet notices in BoardBook were in fact the dates on which website notices were "printed" for plaintiffs. See Appeals Court's Opinion Pgs. 5-6; **Exhibit 3**. PISD has failed to provide supplementation in question in violation of the appeals court's opinion and TRCP 193.5 and further failed to indicate where in the record such evidence exists, if at all.

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment                Cause No. 35621                Page 4 of 43
220

As noted by the appeals court, it does not. Opinion Pgs. 5-6. Thus PISD's argument before the appeals court was a deliberate misrepresentation made to delay this case and obstruct justice. Such misconduct on the part of PISD and counsel deserves substantial sanctions.

## II. PISD'S TOMA VIOLATIONS AND FRAUD

**A. Actions Taken In 22 Board Meetings Are At Issue**: PISD's violations of notice provisions of TOMA concern the **actions taken** in the 22 meetings of the Board of Trustees of PISD between August 13, 2008 to May 19, 2009 ("22 Meetings"). Specifically, the 22 Meetings were held on 8/13/08; 8/21/08; 9/4/08; 9/18/08; 10/2/08; 10/9/08; 10/23/08; 11/6/08; 11/20/08; 12/4/08; 12/18/08; 1/15/09; 2/5/09; 2/19/09; 3/12/09; 3/26/09; 4/2/09; 4/16/09; 4/21/09; 4/23/09; 5/7/09; and 5/19/09. **Exhibit 7, Exhibit 11** (Req. for Admission No. 19).

Thus, PISD's Board of Trustees (Board) held 11 meetings **each** in 2008 and 2009 from 8/13/08 to 5/19/09.

**B. Violations of TOMA provisions[4] at Issue in this motion**:

- **§551.051**: PISD violated §551.051 by failing to post notices of 3/26/09 board meeting and 22 Meetings in a specifically designated place - Bulletin Board in its Central Administrative Office (Central Office) as required by TOMA.

- **§551.056**: PISD violated §551.056 by failing to concurrently post internet notices of 3/26/09 board meeting and 22 Meetings on its website for prescribed time and manner.

- **§551.043**: PISD violated §551.043 by failing to post notices of 3/26/09 board meeting and 22 Meetings at a physical location for prescribed time (72 hours) and manner.

- **§551.041**: PISD violated §551.041 by failing to specify "place" (Pampa, Texas) in its notices (internet and paper notices) of 3/26/09 board meeting and 22 Meetings.

- **§551.101 and §551.074(b)**: PISD violated §551.101 by failing to legally close the 3/26/09 Board meeting and violated §551.074(b) by deliberating on Terrell's termination in closed meeting.

---

[4] References to the Texas Government Code Chapter 551 (TOMA) will be by reference to "§____" or "Sections____," or "TOMA §____."

- **§551.045(d)**: PISD violated §551.045(d) because PISD's notices (website and physical location) of 3/26/09 board meeting and 22 Meetings were signed on behalf of the Board and posted by a person (Karen Linder) not so designated nor authorized by PISD's Board of Trustees (Board).

**C. TOMA Violations Are Distinct**: The statutory language of TOMA is clear that the above notice provisions are distinct, and failure to comply with any one of the notice provisions renders the action(s) in violation of TOMA and thus voidable. §551.141.

### III. LEGAL STANDARD

**A. Post-Remand Proceedings**

**Reason for Remand:** On appeal by plaintiffs, the 7th court of appeals acknowledged that PISD indeed was untimely in posting internet notices in violation of TOMA §551.056(b). However, appeals court reversed and remanded the case on the grounds that there is no evidence in the record concerning PISD's alleged argument that "create" dates of its electronic PDF notices posted on PISD/BoardBook's website were in fact dates on which PISD printed the website notices for plaintiffs for delivery to them. See appeals court's Opinion Pages 5-6, *Terrell vs. Pampa ISD*, 7th District Court of Appeals, 07-10-00212-CV, 345 SW3d 641, 04-29-11. Appeals court has further ordered that post-remand proceedings be consistent with its opinion and reason for remand. See 7th court of appeals mandate dated 1/6/12.

It is well established that trial court lacks the power to deviate from the instructions in the mandate issued by the court of appeals. "The [lower tribunal] on remand is…required to proceed in accordance with the rules and reasoning stated in the appellate court's opinion, as both the letter and the spirit of the mandate is to be implemented." 5 Am. Jur. 2d, Appellate Review (1995), §785 at 454. Therefore, [a lower tribunal] is not free to ignore the mandate and opinion of the remanding appellate court, but instead must proceed in conformity with the views expressed by the appellate court. 5 Am. Jur. 2d, Appellate Review (1995), §786 at 455.

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment        Cause No. 35621        Page 6 of 43
222

As the appeals court has given specific reason for remand and instructions, the mandate controls the framework of post-remand proceedings. The trial court is required to comply exactly with the mandate in effecting the remand. *Hudson v. Wakefield*, 711 S.W.2d 628, 630-631 (1986); *ATSPAC v. Sierra Club*, 843 S.W.2d 683, 690 (1992); *Dallas County v. Sweitzer*, 971 S.W. 2d 629 (Texas. App.--Dallas 1998). Therefore in this case, trial court's jurisdiction extends to conducting proceedings and further discovery regarding the reason for remand and applying law to the record facts concerning all of the violations of TOMA alleged by plaintiffs in this case.

**B. Summary Judgment Standard**

Plaintiffs move for no-evidence and traditional summary judgment under Rule 166a of the Texas Rules of Civil Procedure. A party moving for summary judgment must show that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A party seeking to recover upon a claim may move for a summary judgment in his favor upon all or any part thereof and a summary judgment may be rendered on the issue of liability alone although there is genuine issue as to the amount of damages. Tex. R. Civ. P. 166a(a).

Under the no-evidence summary judgment standard, a court properly grants a no-evidence summary judgment if the non-movant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the non-movant's claim. See Tex. R. Civ. P. 166a(i); *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S. W. 2d 706, 711 (Tex. 1997), cert. denied, 523 U.S. 119 (1998). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment     Cause No. 35621     Page 7 of 43
223

suspicion" of a fact, and legal effect is that there is no evidence. *Kindred v. Con/Chem., Inc.*, 650 S.W. 2d 61, 63 (Tex. 1983). The party with the burden of proof at trial will have the same burden of proof in a summary judgment proceeding. *Esco Oil & Gas, Inc. v. Sooner Pipe & Supply Corp.*, 962 S.W.2d 193, 197 n.3 (Tex. App.-Houston [1st Dist.] 1998, writ denied). Thus plaintiffs without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a defense on which defendant has burden of proof at trial. *See* Tex. R. Civ. Proc. Rule 166a(i). *Weiss v. Mechanical Associated Serv., Inc.*, 989 S.W. 2d 120, 123 (Tex. App.-San Antonio 1999, writ denied).

**C. Texas Open Meetings Act, Government Code Ch. 551 (TOMA)**

**1. Standing under TOMA:** §551.142(a) authorizes any <u>interested person</u> to bring a civil action under TOMA. §551.142(a); see *Cameron Cnty. Good Gov't League v. Ramon*, 619 S.W.2d 224, 230–31 (Tex. App.--Beaumont 1981, writ ref'd n.r.e.). In keeping with the purpose of TOMA, standing under TOMA is interpreted broadly. See *Burks v. Yarbrough*, 157 S.W.3d 876, 880 (Tex. App.--Houston [14th Dist.] 2005, orig. proceeding; *Hays Cnty. Water Planning P'ship*, 41 S.W.3d at 177. Also see *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762,765 (Tex. 1991)(holding that the intended beneficiaries of the Open Meetings Act are "members of the interested public").

Standing conferred by TOMA is broader than taxpayer standing, and a citizen does not need to prove an interest different from the general public, "because 'the interest protected by the Texas Open Meetings Act is the interest of the general public.'" See *Hays Cnty. Water Planning P'ship*, 41 S.W.3d at 177–78 (quoting *Save Our Springs Alliance, Inc. v. Lowry*, 934 S.W.2d 161,163 (Tex. App.--Austin 1996, orig. proceeding). See also *City of Fort Worth v. Groves*, 746

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment        Cause No. 35621        Page 8 of 43
224

S.W.2d 907 (Tex.App.--Fort Worth 1988, no writ)(resident of Arlington had standing to bring suit for declaratory judgment and injunction against City of Fort Worth for violation of TOMA).

Plaintiffs have standing as members of the general public in Texas. **Exhibits 7, 26**. See *Burks, Id.*; *Hays Cnty Water Planning P'ship, Id.* Further plaintiffs have standing because they are interested persons under TOMA. **Exhibit 7**. See §551.142(a); *Cameron Cnty Good Gov't League, Id.* Further plaintiffs Terrell and Thanedar have standing in this case because they are Texas residents, citizens, and taxpayers that fund defendant PISD and all other public school districts, and who are interested in government entities' honest and voluntary compliance with TOMA and open government. **Exhibits 7, 23, 24, 25 and 26**. Further, Terrell and Thanedar are interested persons under TOMA because PISD terminated Terrell's teaching contract (**Exhibit 22**) in PISD's 3/26/2009 Board meeting which was held in violation of TOMA's notice provisions as set forth in plaintiffs' original petition and in this motion. Terrell seeks the relief of reinstatement upon voidance of the unlawful Board action terminating her contract on 3/26/09. As such Terrell is interested in resuming her employment with PISD as a Texas certified teacher upon successful conclusion of this legal action in her favor. §551.142(a). **Exhibits 7, 25, 26**.

**2. Unlawful Actions Judicially Voided:** An action taken by a governmental body in violation of TOMA is voidable. Tex. Gov't Code §551.141. *Swate v. Medina Cmty. Hospital*, 966 S.W.2d 693, 699 (Tex. App.--San Antonio 1998, pet denied). Governmental actions in violation of the Texas Open Meetings Act have been judicially declared void. See *Ferris v. Texas Board of Chiropractic Examiners*, 808 S.W.2d 514, 518-519 (Tex. App.--Austin 1991, writ denied); Also *See Point Isabel I.S.D. v. Hinojosa*, 797 S.W.2d 176, 179 (Tex. App.--Corpus Christi 1990, writ denied). An interested person may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of TOMA. Texas Gov't Code §

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment                    Cause No. 35621                    Page 9 of 43
225

551.142. *Hays County Water Planning P'ship,* 41 S.W.3d at 177-78 (quoting *Save Our Springs Alliance, Inc.,* 934 S.W. 2d at 163).

**3. Texas Supreme Court has demanded Exact and Literal Compliance**: The law with respect to the compliance with the notice provisions of TOMA has been well settled **for more than 20 years**. The Texas Supreme Court has demanded Exact and Literal Compliance with TOMA. *See Acker v. Texas Water Commission,* 790 S.W.2d 299 (Tex. 1990). ("The explicit command of the statute is for openness at every stage of the deliberations. Accordingly, **we have demanded exact and literal compliance with the terms of this statute.**" [citing] *Smith County v. Thornton,* 726 S.W.2d 2, 3 (Tex. 1986); *City of San Antonio v. Fourth Court of Appeals,* 820 S.W.2d 762 (Tex. 1991)). Thus, "substantial compliance" under TOMA, whether done in good faith or not, is no longer sufficient nor valid law in the State of Texas. Nevertheless, the record shows that PISD does not even meet the overruled substantial compliance standard concerning any of the TOMA violations alleged in this case.

Whether defendant's actions comply with TOMA is a matter of law and the controlling material facts in this case are admitted or undisputed. This case is ripe for summary judgment in plaintiffs' favor due to violations of TOMA detailed below. Plaintiffs are entitled to summary judgment on facts and law presented herein.

## IV. SUMMARY JUDGMENT EVIDENCE

Plaintiffs rely on the following summary judgment evidence on file which is adopted and incorporated herein. Citations to the Clerk's Record (CR) are included when available.

**Exhibit 1**   Suzie Jameson's E-mail response to Karen Linder (CR820)

**Exhibit 2**   Information about BoardBook software by Tex. Assn. of Sch. Boards (TASB) and its role in posting PISD's internet notices under §551.056(b) which is on file as Exhibit 2 to the plaintiffs' amended no-evidence and traditional motion for summary judgment filed on 5/18/2012 and referenced herein.

**Exhibit 3**    Plaintiffs' letter dated 2/28/12 requesting supplementation concerning "create dates" of internet notices in BoardBook (which is on file as Exhibit 3 to the plaintiffs' amended no-evidence and traditional motion for summary judgment filed on 5/18/2012 and referenced herein.

**Exhibit 4**    Hardcopy of the website internet notice of the 3/26/09 board meeting. (CR 83-84)

**Exhibit 5**    Hardcopy of PDF document properties of the website internet notice of the 3/26/09 board meeting. (CR85)

**Exhibit 6**    "Revised" Notice of the 3/26/09 board meeting taped to front door of central administrative office (Central Office) (CR18-19)

**Exhibit 7**    Plaintiffs' affidavit dated May 15, 2012 in support of Plaintiffs' Amended No-evidence and Traditional Motion for Summary Judgment which is on file as Exhibit 7 to the plaintiffs' amended no-evidence and traditional motion for summary judgment filed on 5/18/2012 and referenced herein.

**Exhibit 8**    Plaintiffs' receipts for monies paid for paper copies of board meeting notices on 5/15/09 which is on file as Exhibit 8 to the plaintiffs' amended no-evidence and traditional motion for summary judgment filed on 5/18/2012 and referenced herein.

**Exhibit 9**    CD-ROM containing PISD's Internet notices of Board meetings in PDF document format and the electronic document properties of the PDFs posted by PISD to its website at http://www.pampaisd.net, which is on file and referenced herein (2SCR1).

**Exhibit 10**    Hardcopies of the internet notices and document properties on the above CD-ROM, which are on file and referenced herein (CR63-184).

**Exhibit 11**    PISD's answers to plaintiffs' first interrogatories, requests for production and requests for admissions dated 2/23/10, which are on file and referenced herein (CR764-788).

**Exhibit 12**    PISD's answers to plaintiffs' Second set of interrogatories, requests for admissions and requests for production (dated 4/5/10), which are on file and referenced herein (CR800-811).

**Exhibit 13**    PISD's supplemental answers to plaintiffs' first interrogatories, requests for production and requests for admissions (dated 4/14/10), which are on file and referenced herein (CR812-817).

**Exhibit 14**    BoardBook draft subscription agreement dated 10/12/2007 which is on file and referenced herein (CR420-423).

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment    Cause No. 35621    Page 11 of 43
227

**Exhibit 15**     Defendant's Notice of Employment termination to Rebecca Terrell (dated April 7, 2009), which is on file and referenced herein (CR312).

**Exhibit 16**     Audio recording of defendant's Board Meeting of March 26, 2009 – 3 CDs (2SCR3), which is on file and referenced herein.

**Exhibit 17**     Photos of TOMA notices posted on the front door of PISD central administrative office and of central administrative office (CR318-320), which are on file and referenced herein.

**Exhibit 18**     Linder Affidavits (Linder Affidavit 1 at CR338-340; Linder Affidavit 2 at CR726-729) and Haenisch Affidavits (Haenisch Affidavit 1 at CR336-337; Haenisch Affidavit 2 at CR724-725) which are on file and referenced herein.

**Exhibit 19**     PDF Reference, Adobe Portable Document Format (PDF) Version 1.3 on Compact Disk (CD) which is on file as Exhibit 19 to the plaintiffs' amended no-evidence and traditional motion for summary judgment filed on 5/18/2012 and referenced herein.

**Exhibit 20**     Plaintiffs' Third Set of Interrogatories, Requests for Admissions, and Request for Production to Defendant; and Defendant PISD's Response which is on file as Exhibit 20 to the plaintiffs' amended no-evidence and traditional motion for summary judgment filed on 5/18/2012 and referenced herein.

**Exhibit 21**     Defendant's Responses to Plaintiffs' Third Set of Interrogatories, Requests for Admissions, and Request for Production to Defendant; and Defendant PISD's Response which is on file as Exhibit 21 to the plaintiffs' amended no-evidence and traditional motion for summary judgment filed on 5/18/2012 and referenced herein.

**Exhibit 22**     Plaintiff Terrell's employment contract for 2008-2009 with defendant Pampa Independent School District which is on file as Exhibit 2 to the plaintiffs' second supplemental petition filed on 10/18/2012 and referenced herein.

**Exhibit 23**     Annual Financial Report of Pampa ISD for 2008-2009 is adopted and incorporated as if set forth verbatim herein, with Pages 18, 20, 80 of the report attached thereto, detailing sources of defendant's funding and expenditures which is on file as Exhibit 3 to the plaintiffs' second supplemental petition filed on 10/18/2012 and referenced herein.

**Exhibit 24**     Texas Fact Book 2008 (the Fact Book) by State of Texas Legislative Budget Board is adopted and incorporated by reference as if set forth verbatim herein - Pages 33, 42, 46, 49, 53 from the Fact Book concerning the Sources of Revenue and Spending on public education in Texas for 2008-2009 attached thereto, which is on file as Exhibit 4 to the plaintiffs' second supplemental petition filed on 10/18/2012 and referenced herein.

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment                    Cause No. 35621                    Page 12 of 43
                                                        228

**Exhibit 25**   Defendant's salary schedules and information for years 2008-2009, 2009-2010, 2010-2011, 2012-2013; and health insurance premium information for Year 2011-2012 which is on file as Exhibit 5 to the plaintiffs' second supplemental petition filed on 10/18/2012 and referenced herein.

**Exhibit 26**   Second Supplemental Affidavit of Rebecca Terrell and Chandrashekhar Thanedar which is on file as Exhibit 1 to the plaintiffs' second supplemental petition filed on 10/18/2012 and referenced herein.

## V. UNDISPUTED FACTS

**1. Undisputed facts concerning untimeliness of PISD's website internet notices and Good Faith exception under §551.056(b) and (d)**

PISD admits that internet website notices required under TOMA §551.056(b) did not "appear" in the prescribed time on PISD or BoardBook's website for 11 meetings from 1/2009 to 5/19/2009. CR814-816, CR767.

PISD did not pay any consideration to BoardBook for its service for the relevant period from 1/2009 to 5/19/2009 for which PISD claims good faith exception, or for any other period relevant to this lawsuit.

There is no evidence that PISD had BoardBook service from 1/2009 to 5/19/2009. There is no evidence of an executed contract or payment of license fees or renewal fees to BoardBook for 1/2009 to 5/19/2009. PISD has admitted no such documents exist. CR781 (PISD's Response to Request for Production 15).

An alleged draft agreement with BoardBook for 2007 is not signed by BoardBook. **Exhibit 14.** PISD does not claim good faith exception for any period in 2007 or 2008.

The properties of the website internet notices show untimeliness in violation of TOMA from 1/2009 to 5/19/2009 for which PISD claims good faith exception. Opinion Pgs. 5-6.

There is no evidence that the untimely "created" dates of the PDF notices of meetings in question were the dates when "PISD [allegedly] printed the notices for delivery to plaintiffs."

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment                    Cause No. 35621                    Page 13 of 43
229

**2. Undisputed facts concerning notice requirement of posting meeting notices on Bulletin Board - a specifically designated place for school districts under §551.051**

PISD admits and does not dispute that it posted board meeting notices on the front door of its central administrative building for the time period in question from 8/13/2008 to 5/19/2009 (22 Meetings). **Exhibits 7, 17.** See **Exhibit 11**- Req. for Admission nos. 5 and 7.

**3. Undisputed facts concerning "place" requirement under §551.041**

PISD admits that for both paper and internet notices it did not specify or include the name of the city in its notices from the period 8/13/2008 to 5/19/2009 (22 Meetings). **Exhibit 6, Exhibit 11**-Req. for Admission no. 15. In certain cases, defendant's notices merely state "Pampa High School" or "Pampa Junior High School" without stating the address. PISD does not dispute this. **Exhibit 10** - See CR70-71, CR75, CR89-90, CR129-130, CR147-148, CR156, CR167-168, CR170.

**4. Undisputed facts concerning "72 Hour" notice requirement under §551.043 concerning 3/26/2009 and 5/19/2009 board meetings**

Plaintiffs did not see the notice for 3/26/2009 meeting posted on the front door of the central administrative office or in a bulletin board inside the central administrative office at 5 p.m. or 6 p.m. on 3/23/2009. **Exhibit 7.** This is undisputed.

Plaintiffs saw the notice for 5/18/2009 meeting posted on the front door of the central administrative building on Saturday, 5/16/2009. Karen Linder confirmed to plaintiff Thanedar that there was an error in posting this notice because the meeting date changed to 5/19/2009 and that Linder posted a corrected notice for a board meeting on 5/19/09 on the front door of Carver Center -central administrative office- on 5/18/2009 because the change in meeting date to 5/19/09. **Exhibit 7.** No board meeting took place on 5/18/2009.

**5. Undisputed facts concerning requirement to identify section(s) authorizing closed meeting under §551.101**

The presiding officer of the Board did not identify the section or sections under TOMA that authorized closing of the 3/26/2009 board meeting to public. See **Exhibit 11**-Req. for Admission no. 14; **Exhibits 7, 16**.

**6. Undisputed facts concerning requirement to deliberate in open session under §551.074(b)**

The audio recording of the closed meeting on 3/26/2009 shows discussion among PISD Superintendent Haenisch and the PISD board members on Terrell's termination. Terrell had specifically requested the action be deliberated in open meeting per §551.074(b). **Exhibits 15, 16** (Tape 2 at Counter 43:45).

**7. Undisputed facts concerning "designated person" requirement under §551.045(d)**

PISD's Board of Trustees did not designate or authorize Karen Linder to sign meeting notices or post board meeting notices on Board of Trustees' behalf. PISD admits this. **Exhibit 12**-Req. for Production 28. Karen Linder signed and posted board meeting notices on behalf of the Board of Trustees of PISD. See e.g. **Exhibit 6**.

## VI. ARGUMENT

Plaintiffs repeat the preceding paragraphs in their entirety as if set forth verbatim herein.

**A. Declaratory Relief under TOMA**

Plaintiffs are entitled to declaratory relief under TOMA whether or not any other relief is granted and whether or not PISD's actions in violation of TOMA are voided.

**1. Plaintiffs are entitled to declaration that PISD violated TOMA §551.056 specifically concerning the 3/26/09 Board meeting and 22 Meetings.**

**a. PISD refused and failed to produce evidence that it paid the required $1,600 fee and any renewal fees for service to BoardBook to post internet notices for PISD**

PISD admits that from January 15, 2009 through May 19, 2009 internet website notices did not appear on its website (or its agent BoardBook's website) as required by §551.056(b).

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment                Cause No. 35621                Page 15 of 43
                                                231

CR816. PISD alleges that it had BoardBook service[5] to post internet website notices of its Board meetings on BoardBook's website since 2007. CR772. Thus by PISD's admission, BoardBook is an agent of PISD and they were parties in joint enterprise to post PISD's Board meeting notices as required in §551.056(b) on BoardBook website via a **link** on PISD website. See CR206; CR772. PISD claims good faith defense under TOMA §551.056(d) because it claims that the "Link" to internet notices on BoardBook's website was not established in error for 5 months until plaintiff Thanedar pointed out the problem to PISD on 5/15/2009. CR767. PISD has the burden to produce evidence and persuade on its good faith statutory defense under TOMA. See §551.056(d); §§551.043(b)(1) and (b)(3).

Inspite of PISD's bare self-serving claim, PISD has steadfastly refused and failed to produce absolutely any competent evidence that PISD in fact had BoardBook service for the period in question from 1/2009 to 5/19/2009 or from 8/13/08 to 5/19/2009 for 22 Meetings and that PISD paid consideration ($1600 or any renewal fees) to BoardBook to have a valid agreement. **Exhibit 14** (See "Terms" and "Fees"). PISD refuses to produce documents or checks showing payment of license fees and their dates, renewal notices, purchase orders from BoardBook, or any document or communication between BoardBook and PISD showing that BoardBook service was in effect from 1/2009 thru 5/19/2009 – the period for which PISD claims a technical problem with "Link" to BoardBook internet notices. In addition, PISD further refused and failed to produce evidence of BoardBook service from 8/13/08 to 12/2008 - See

---

[5] It is not disputed that BoardBook software is licensed by Texas Association of School Boards, Inc. (TASB) to its members and that TASB is governed by its member school districts according to its public website. **Exhibit 2.** BoardBook is an agent of PISD to post PISD's internet website notices to comply with TOMA §551.056(b) as the internet notices are produced in PDF format by BoardBook and posted and presented for public view on BoardBook website on behalf on PISD. CR205-206. Further, BoardBook is a party in joint enterprise with PISD in posting PISD's TOMA internet notices on BoardBook's website. *Tex. Dept. of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000).

PISD's objections to plaintiffs' subpoena duces tecum at CR356-357. **Incredibly, PISD further stated no such documents exist.** CR781 (PISD's Response to Request for Production 15).

Inspite of PISD's refusal, the Attorney General of Texas ordered PISD to produce "BoardBook agreement" pursuant to plaintiff Thanedar's Texas Public Information Act request. See CR368-371 (Attorney General's Opinion); and CR367 (Thanedar's Open Records Request). It is revealing that the "BoardBook agreement" PISD produced was a "Draft" agreement for 2007 (**Exhibit 14**) which was not executed because there is NO evidence of payment of consideration of $1,600 from PISD to BoardBook in the record. This "draft" or "offer" is not signed by BoardBook and contains no space for BoardBook's signature. Thus the purported agreement (**Exhibit 14**) was not executed, and is invalid because no consideration was paid.

Further the alleged 2007 draft agreement with BoardBook clearly states that unless and until payment of fees (or a purchase order) is received by BoardBook, the <u>BoardBook service will not be in effect</u>. **Exhibit 14** (see "Terms" and "Fees"). Here, PISD produced no evidence whatsoever that it ever paid the license fee for BoardBook service, nor issued a purchase order for the license fees, for the period in question in this lawsuit from August 13, 2008 to May 19, 2009. In fact, PISD refused to produce any evidence that it ever paid license fee for BoardBook service for any year from 2007, 2008, and 2009. See CR356-357. **Exhibits 20, 21**. It further refused and failed to produce renewal notices, payments, any correspondence concerning delivery and execution of agreement, communication between PISD and BoardBook concerning the alleged BoardBook service PISD claims it had for these years (CR356-357) further stating no such documents exist. CR781 (Response to Req. for Prod. 15). **Exhibits 20, 21**. Because PISD refused and failed to show that it paid consideration for BoardBook service, and refused and failed to show that it did delivery and execution of agreement, as a matter of law, there was no

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment          Cause No. 35621          Page 17 of 43
233

agreement between PISD and BoardBook for BoardBook service to post internet notices under TOMA. See **Exhibit 14** ("Terms and "Fees"). *Advantage Physical Therapy, Inc. v. Cruse,* 165 S.W. 3d 21, 24 (Tex.App.-Houston[14th Dis.], 2005 no pet.) (without consideration, there is no contract). Thus as a matter of law, PISD's good faith defense based on the alleged link to BoardBook service [which it did not have] for posting PISD's internet notices must fail.

PISD's bare unsupported assertion that it had BoardBook service from 8/13/2008 through 5/19/2009 is hearsay, mere surmise, speculation which is not legal evidence. *Kindred v. Con/Chem, Inc.* at 63. Because PISD refused and failed to produce evidence of payment of license fees for service posting internet notices to BoardBook, as a matter of law, PISD's good faith defense under §551.056(d) must be rejected and it must be concluded that PISD's good faith defense was subterfuge and obstruction of justice deserving sanctions by this Court.

### b. "Created" Dates of Internet Notices Show Untimeliness:

The 7th Court of Appeals in its opinion on 4/29/2011 ("Opinion") on this matter has found that internet notices of the 22 Meetings in question (including the 3/26/09 meeting) were indeed **untimely** i.e. appeared on PISD/BoardBook's website well after the meetings in question were held. See Opinion at 5-6. Also see **Exhibit 13-CR814-815; Exhibit 12-CR802; Exhibit 7.** The appeals court, however, remanded the case due to PISD's alleged contention that the "created dates" of its internet Adobe PDF notices on BoardBook website were in actuality the dates on which PISD printed the internet notices for delivery to plaintiffs. See Opinion at 5-6. On remand, plaintiffs requested supplementation on this issue **(Exhibit 3)**, but PISD failed to supplement written discovery concerning the above argument it made before the appeals court, nor did it indicate where in the record it produced such pertinent evidence. **Exhibits 20, 21.**

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment                Cause No. 35621                Page 18 of 43
234

As explained above, there is no evidence that PISD even had BoardBook service, thus "created" dates being "print" dates in BoardBook is an issue created to divert court's attention and to mislead it – and is fraud on this Court and the appeals court. Importantly, this is an absurd contention by PISD wholly unsupported in the "PDF Reference version 1.3." See Exhibit 19. Curiously, there is no evidence that "created" [6] dates in the document properties of PISD's internet website notices are in actuality dates on which PISD "printed" notices for plaintiffs. In fact the record shows the opposite – PISD did not print PISD's [untimely] website internet notices for plaintiffs. **Exhibit 7**-pgs 3-6. The copies plaintiffs obtained from Linder were paper copies of signed originals made on PISD's office copier in the presence of plaintiff Thanedar and had nothing to do with printing website notices which are unsigned and undated.[7] **Exhibit 7**-pgs 3-6; **Exhibits 8**, 10. Thus PISD's argument is frivolous.

The "created" date appearing in the "document properties" of PISD's own internet notices posted and appearing on the BoardBook website effective 5/19/2009 means what it states in the document properties - 1) the document is in Adobe PDF format and 2) it was produced ("created") in that format at the stated date and time. See **Exhibit 19**. Similarly, "Modified" means what it states – the date and time on which the said document was "modified" or changed. Created date and Modified date are standard properties in Adobe's PDF format and are automatically generated information in Adobe PDF. **Exhibits 7, 19**. In fact PISD does not

---

[6] Collins English Dictionary-complete and unabridged, Harper Collins publishers, 1991-2003 **defines create**: "to cause to come into existence." Merriam-Webster Dictionary 2012 **defines create**: "to bring into existence."

[7] Plaintiffs filed PISD's internet notices with document properties on CD-ROM and Hardcopies of CD-ROM in the record as they were posted by PISD on PISD's website. Plaintiffs downloaded the internet notices to CD-ROM and printed hard copies for filing in the record of this case as evidence. Neither said CD-ROM nor Hardcopies of CD-ROM were given to plaintiffs by PISD. **Exhibits 4, 5, 9, 10**.

dispute plaintiffs' assertion that plaintiffs printed the internet notices from PISD's public website themselves. **Exhibit 12**-Interrogatory No. 24(CR804).

Further PISD's vague unsupported assertion that viewing PDF notices changes the "created" and "modify" dates and times is mere surmise, incorrect, and speculation and is not evidence. **Exhibit 12**-Interrogatory No. 25; *Kindred, Id at 63*. Also see **Exhibits 7, 19**.

The competent summary judgment facts are indisputable that defendant's postings of its internet notices of board meetings from August 13, 2008 through May 19, 2009 are untimely and they were not posted during the prescribed period under TOMA in violation of Sections 551.056(b); 551.041, 551.043(a). The web notice document properties posted by defendant PISD on its/BoardBook website for 22 Meetings unambiguously show that the web notices were produced or created in May 2009 and then were posted on the website untimely on 5/19/09. **Exhibits 1, 7**; CR807; CR816. The definition of "created" here means to prepare or produce the internet notices in Adobe PDF format for posting to the website for public to view the internet notices. See Exhibit 7; Exhibits 9, 10, 19. PISD admits that internet notices did not appear on its website from 1/2009 until 5/19/2009. **Exhibit 1; Exhibit 13**-CR814-815; **Exhibit 12**-CR802.

The properties of the website notice of the 3/26/09 meeting (**Exhibits 4 and 5**) show that the web notice was created on 5/8/09 and untimely posted on defendant's/BoardBook's website on 5/19/09 in violation of TOMA, Texas Gov't Code §551.056[8], §551.041[9], §551.043(a)[10].

---

[8] The Open Meetings Act requires a school district to post notices of its board meetings on its website concurrently for the prescribed 72 hours before the meetings. Texas Gov't Code §551.056

[9] TOMA requires that "A governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body." Texas Gov't Code §551.041.

[10] The notice of a meeting of a governmental body must be posted in a place readily accessible to the general public at all times for at least 72 hours before the scheduled time of the meeting, except as provided by Sections 551.044-551.046. Tex. Gov't Code §551.043(a).

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment       Cause No. 35621       Page 20 of 43
236

**Exhibit 1; Exhibit 7.** PISD admits that the internet notice for 3/26/09 meeting did not timely "appear" on its website. **Exhibit 11**-Interrogatory 13.

### c. PISD's Good Faith Defense Fails As A Matter Of Law:

Remarkably, notwithstanding the subterfuge and obstruction described above, PISD's "good faith" defense still fails as a matter of law. For the 11 out of 22 Meetings in question concerning the violation of §551.056(b), PISD claims good faith defense under §551.056(d). TOMA §551.056(d) provides that:

> The validity of a posted notice of a meeting or an agenda by a governmental body or economic development corporation subject to this section that made a good faith attempt to comply with the requirements of this section that is due to a technical problem beyond the control of the governmental body or economic development corporation.

The definition of "Good faith" is statutorily defined: A governmental body satisfies good faith under TOMA when it "makes a good faith attempt to continuously post the notice on the internet during the prescribed period..." See TOMA §§551.043(b)(1) and (b)(3).

PISD admits that for 11 meetings from January 15 to May 19, 2009 (including the 3/26/09 Board meeting) for about five months, the internet notices did not appear on its website, but claims that it did not know that the "link" to the notices on BoardBook was not established or was allegedly "severed." The 7th court of appeals <u>did not</u> find that a material fact question remains regarding the above assertion of good faith of the alleged "severance" of the "link" to notices for 5 months. See Opinion 1-6. Thus good faith claim by PISD is ripe for summary judgment in plaintiffs favor for the following reasons.

1. **Failure to Establish Link:** Because PISD failed to show competent evidence that it paid for or had BoardBook service in January 2009, PISD's good faith defense fails. PISD failed to "establish the link" on its new website in 1/2009 to BoardBook because PISD did not have

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment      Cause No. 35621      Page 21 of 43
237

BoardBook service. **Exhibit 1**. As explained before, PISD refused and failed to produce evidence of payment to BoardBook for its service. Thus, the alleged claim of "severance" of link to BoardBook is subterfuge. **Suzie Jameson simply did not think the link to BoardBook notices was necessary because there was no BoardBook service in January 2009 through May 19, 2009. Exhibit 1. There was no "accidental" "problem" here.** PISD admits that it did not "know" of the severance of the link to BoardBook for 5 months until plaintiff Thanedar told PISD (Linder) of the "non-appearance" of internet notices on 5/15/09. CR814-816. Such claim of "ignorance" of the link problem for 5 months flies in the face of common sense and is further proof of subterfuge. **Exhibits 1, 7**.

2. **PISD Failed to Verify "Appearance" of Internet Notices on its website and failed to Verify Compliance with TOMA for 5 Months**: PISD's good faith defense fails because PISD failed to verify compliance with §551.056(b) for 5 months, and even notice or remedy the non-establishment of "link" to notices for 5 months. This is in violation of §551.043(b)(1) and (3) which requires the continuous attempt to comply i.e. verify compliance and fix any problems during the prescribed 72 hours. See §551.043(b)(1) and (b)(3); **Exhibits 1, 7**. The simple truth here is that PISD did not verify "appearance" of its internet notices on BoardBook because it knew that it did not have BoardBook service during 1/2009 thru 5/19/2009 – there was no need to verify what it already knew, that is, it was not posting internet notices on its website and was not complying with §551.056(b).

3. **Failure to Establish Link is not a "Technical" problem and is not "Beyond the Control" of PISD:** PISD's good faith defense fails because the only evidence PISD produces is Jameson's claim that she did not establish the link to internet notices on BoardBook because she did not think it was necessary on PISD's new website. **Exhibit 1**. This belief, or negligence, or

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment          Cause No. 35621          Page 22 of 43
238

mistake by PISD (Jameson) is neither "technical," nor "beyond PISD's control" for 5 months. Due diligence in compliance with TOMA is PISD's obligation under law and is well under the control of PISD. Thus PISD fails the §551.056(d) test.

PISD tries mighty hard to pass its negligence or conscious indifference to TOMA §551.056(b) as a "technical problem" "beyond its control," but produces no evidence in support. PISD produces no authority or evidence to justify why negligence or mistake is a technical problem beyond its control. The truth is PISD (Jameson) very quickly established the link when told that it was "necessary" after 5 months. **Exhibit 1**. The above is merely subterfuge because PISD produces no evidence that it even had BoardBook service from Jan. 2009 to 5/19/2009.

**4. Importantly, there is no evidence that PISD <u>ever</u> Checked its Website <u>Even Once</u>** in 5 long months to verify whether or not its internet notices required under TOMA "appeared" on its website so that public can actually see them. No one at PISD, not Linder, not Jameson, not superintendent Haenisch bothered to check the "appearance" of its internet notices on its website. CR807; CR768. There is no evidence of due diligence during the 5 months of non-appearance of internet notices on PISD's website. CR807. This is "conscious indifference" or admission of guilt and cannot meet the good faith test under §551.056(d). **Exhibit 1**. CR768; CR807.

**5. Plaintiffs objections to PISD's summary judgment evidence - Linder's Affidavits and Haenisch Affidavits and PISD's answers to interrogatories**

Plaintiffs object to Karen Linder Affidavit at CR338-340 ("Linder Affidavit 1") and her supplemental affidavit at CR726-729 ("Linder Affidavit 2") and further object to Barry Haenisch Affidavit at CR336-337 ("Haenisch Affidavit 1") and his supplemental affidavit at CR724-725 ("Haenisch Affidavit 2") and PISD's answers to interrogatories.

**A. Objections to Linder Affidavits (Exhibit 18):** The Texas Supreme Court has held that affidavits must be based exclusively on personal knowledge and a composite or hybrid

affidavit must be disregarded. See *Humphreys v. Caldwell*, 888 S.W.2d 469, 470-71 (Tex. 1994). Linder Affidavit 1 and Linder Affidavit 2 are both defective substantively and in form as they are not made exclusively from personal knowledge, make impermissible factual and legal conclusions, are based on hearsay, vague, contradictory conflicting information, and are irrelevant in part to the issues. Further, Linder is not competent to testify about any technology issues, or TOMA and its provisions, as she purports to do in Linder Affidavits 1 and 2 which are thus made in bad faith and must be disregarded. TRCP 166a(h); Also see *Humphreys, id., Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex.1996). Tex. R. Civ. Proc. 166a(c); *Casso v Brand*, 776 S.W.2d 551, 558 (Tex. 1989). *Larson v. Family Violence & Sexual Assault Prevention Ctr. Of S. Tex.*, 64 S.W.3d 506, 514 n.6 (Tex. App.—Corpus Christi 2001, pet. denied)(Affidavits must set forth facts, not legal conclusions.) These case authorities apply to all objections below. Objections to Linder Affidavit 2 cover same issues in Linder Affidavit 1.

1) <u>Assertions regarding authorization to post notices (Linder Affidavit 2, ¶3, ¶4)</u>: must be disregarded as they are vague i.e. do not state who (Board or otherwise) authorized/designated Linder, make legal conclusions and opinions concerning compliance with TOMA which Linder is not competent to make. Further, Linder's sworn statements are conclusively false and contradict defendant's polices and bylaws viz. BE (Local) at CR821-823, BDAA (Local) at CR832, and BJA (Local) at CR834-836 show that the Board retained the authority to call, sign, and post board meeting notices to <u>itself</u> and did not delegate it to anyone.

2) <u>Linder Affidavit 2, ¶5, ¶6, and ¶7</u> must be disregarded as they are composite and hybrid, not exclusively made from personal knowledge, are hearsay, irrelevant in part, and make impermissible legal and factual conclusions. Specifically:

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment      Cause No. 35621      Page 24 of 43
240

¶5 – "Accessibility" of front door posting: is hearsay, vague, irrelevant to the issues, and makes impermissible legal and factual conclusions and subjective opinions. Linder's assertion that "[each notice] was posted on the front door at least 72 hours before each respective meeting" is vague i.e. does not state the date and time and does not dispute that the notices of 3/26/09 and 5/19/09 board meetings were not <u>continuously</u> posted for the entirety of 72 hours before the meetings, and thus her assertions must be disregarded as they do not raise a fact issue regarding said meetings.

¶6 and ¶7 – Assertions about public complaints: are hearsay, vague, speculative, and irrelevant to the issues in this case, and make factual and legal conclusions and subjective opinions and must be disregarded. Linder is not competent, nor can make and express legal opinions in her affidavit regarding compliance with TOMA.

3) <u>Assertions about 3/26/09 notice (Linder Affidavit 2, ¶8):</u> Linder's statement - "On or before March 23, 2009, I became aware that the notice had been taken or lost from the front door" is vague, composite, hybrid including collected "second hand" information, speculative and must be disregarded. Linder's statement that she posted notice "still more than 72 hours" is vague and irrelevant to TOMA issues herein as Linder does not specifically dispute that 3/26/09 meeting notice was <u>not</u> on the front door <u>continuously</u> for 72 hours without revisions before the start time of 3/26/09 meeting. Linder does not specify the <u>time</u> and the <u>date</u> on which she taped or re-taped the notices to the front door. Further 3/20/09 was a Board approved holiday-week of "Spring Break", and Linder fails to assert that she worked during "Spring Break" holiday.

4) <u>Linder's assertions about website changes by Jameson and BoardBook problems:</u>

Linder Affidavit 2, ¶9 lacks personal knowledge, is second hand information gathered from others, composite in nature and not exclusively from Linder's personal knowledge. As

secretary to Haenisch, Linder is not competent to testify about BoardBook software or any alleged technical problems at issue here e.g. Jameson not establishing "link" to BoardBook website concerning missing Board notices. Linder's statement - "Once the notice was created I would release it to the District website and the BoardBook software would send and automatically place the notice on the district website" must be disregarded as this is grossly vague, speculative, contradictory, and draws factual conclusions and is not competent summary judgment evidence as Linder is not competent to testify about the technology problems and software technical matters between BoardBook software and PISD website. For example, indisputable evidence shows that BoardBook software **does not** send internet notice to "district website." To the contrary, BoardBook displays an internet meeting notice on BoardBook's website after a notice is released. See CR205-206 showing notices on www. boardbook.org.

Further, Linder fails to even aver whether she had personal knowledge that PISD did or did not have BoardBook service at all during 1/2009 through 5/19/2009 for which PISD claims good faith exception. Further, Linder's statement "On or about January 15, 2009 Suzie Jameson of the Information Technology Department made some changes to the District website. In the course of making these changes the link between BoardBook and the website was severed" is hearsay, lacks personal knowledge, is second hand collected information, and is based on vague speculation. Linder's hearsay testimony on behalf of Jameson is not competent summary judgment evidence and thus, must be disregarded. Linder's hearsay about "some changes" being made and the link being "severed" is vague, misrepresent facts and are in contradiction with Suzie Jameson's email to Linder. See Exhibit 1. Linder's repetitive impermissible hearsay statements about how BoardBook software worked are irrelevant to the issues in this case as there is no competent evidence that PISD even had BoardBook software from 8/13/2008 through

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment          Cause No. 35621                    Page 26 of 43
                                          242

5/19/2009, and Linder is not competent to testify about technical workings of BoardBook software. Linder's statement "However, I was unaware that the link between BoardBook and the website had been severed and BoardBook did not indicate that the link had been severed. Instead, it appeared that the notices were still being posted to the website just as before. It was not until May of 2009 that I was informed that the notices were not appearing on the website" must be disregarded as it is grossly vague, speculative, composite and hybrid in nature, lacking personal knowledge of the facts. Thus the entire ¶9 must be disregarded. *Humphreys, id.*

5) Assertions of appearance of Notices on website (Linder Affidavit 2, ¶10): Linder's assertions are bare conclusions, vague, and speculative, thus are not admissible as evidence because Linder <u>does not</u> affirmatively state that she verified appearance of each of PISD's internet website notices on PISD's website or BoardBook website for the public to view for the prescribed period for Board meetings from August 13, 2008 to January 15, 2009. Linder further fails to state how she "knows it for a fact" that postings were properly made to the website and how many times and whether she checked the appearance of notices on PISD website or BoardBook website during the said time. <u>This is pertinent because there is absolutely no competent evidence that PISD even had BoardBook service until May 19, 2009</u> and further PISD has admitted that TOMA notices did not "appear" on PISD website or BoardBook website for 11 Meetings from January 2009 to May 19, 2009. Further defendant's own website postings conclusively show that the electronic TOMA notices posted on BoardBook's website were untimely created in May, 2009, weeks or months after the board meetings in question took place. CR814-815. Thus the entire ¶10 must be disregarded. *Humphreys, id.*

6) Linder's assertions about TOMA compliance (Affidavit 2, ¶ 11) must be disregarded as Linder makes impermissible legal conclusions and Linder is not competent to make them.

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment                    Cause No. 35621                    Page 27 of 43
                                                        243

Thus, Linder's statement "All of the notices for the meetings of the District's Board held between August 13, 2008 and May 19, 2009 meet the requirements or an exception set forth in the Act" must be disregarded.

Plaintiffs object to the entirety of Linder Affidavit 2 and Linder Affidavit 1 as they are egregiously defective substantively and in form as explained above. PISD introduced Linder Affidavits in bad faith. Linder Affidavits are not in compliance with TRCP 166a(f). Linder Affidavits must be disregarded in this summary judgment proceeding.

**B. Objections to Haenisch Affidavits (Exhibit 18):** The Texas Supreme Court has held that affidavits must be based exclusively on personal knowledge and a composite or hybrid affidavit must be disregarded. *Humphreys v. Caldwell*, 888 S.W.2d 469, 470-71(Tex. 1994). Haenisch Affidavit 1 and Haenisch Affidavit 2 both are not made exclusively from personal knowledge, are based on hearsay, vague, conclusory, and are irrelevant to the issues, thus must be struck and disregarded. Objections to Haenisch Affidavit 2 cover same issues in Haenisch Affidavit 1. See **Exhibit 18.**

1) Assertion concerning Linder's authorization to post notices for 8 years (Haenisch Affidavit 2, ¶3): is hearsay, vague and conclusory as Haenisch does not state who exactly authorized Linder and how, lacks personal knowledge as Haenisch was not employed for 8 years. Further, Haenisch's sworn affidavit is conclusively false and contradict PISD's polices and bylaws viz. BE (Local) at CR821-823, BDAA (Local) at CR832, and BJA (Local) at CR834-836 show that Board retained the authority to sign and post board meeting notices to itself and did not delegate it. The entire ¶3 must be disregarded as vague, hearsay, composite, and lacking personal knowledge.

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment          Cause No. 35621          Page 28 of 43
                                          244

2) Legal conclusions about "accessible," "convenient", "visible," and "place" (Haenisch Affidavit 2, ¶4, ¶7): must be disregarded as they are vague, hearsay, and make impermissible factual and legal conclusions concerning TOMA about - what is "accessible," what is "visible" for 24/7, the convenience of posting notices on the front door, what affords most access to general public, and legal requirements of "place." Haenisch's opinions are hearsay as they make assumptions on behalf of the general public and Haenisch is not a competent authority to make these legal conclusions or opinions. Further, Haenisch has not been employed by defendant for 8 years. This paragraph must be disregarded in entirety. *Humphreys, id; Larson v. Family Violence & Sexual Assault Prevention Ctr. Of S. Tex.,* 64 S.W.3d 506, 514 n.6 (Tex.App.-Corpus Christi 2001, pet. denied) (Affidavits must set forth facts, not legal conclusions.)

3) Discussion of Terrell contract in closed meeting (Haenisch Affidavit 2, ¶5) must be disregarded as it is false and is conclusively contradicted by the audio tapes of the 3/26/09 meeting (2SCR3- Exhibit 8.3 at **Counter 43:45** onwards, and Exhibit 8.2 at **Counter 19.44** which is the undisputed competent evidence in this case that show that Haenisch and the Board members discussed Terrell's employment status and contract in the closed session of the Board meeting on 3/26/09. ¶5 must be disregarded as it is in bad faith and contradicted by undisputed evidence. *Humphreys, id.* Haenisch affidavits are not in compliance with TRCP 166a(f).

**C. Objections to PISD's answers to interrogatories:** PISD did not attach verification to its answers and supplemental answers to Terrell's interrogatories in compliance with TRCP Rules 197.2(d) and 193.5(b). See CR764-769; CR685-690; CR708-711; CR800-811; CR812-817. TRCP 197.2(d) requires that "A responding party – not an agent or attorney as otherwise permitted by Rule 14 – must sign the answers under oath..." The "Responding Party" here is Pampa Independent School District. PISD has attached Karen Linder's affidavit or PISD

attorney's signature to its answers to plaintiffs' interrogatories; however, her affidavit or counsel's signature is not sufficient to comply with TRCP 197.2(d).

Linder performs clerical duties at PISD as secretary to Haenisch. Linder neither has real, express, implied, nor apparent authority to represent PISD, a government body, to make legal representations on behalf of PISD. It is obvious here that Linder is being put up by PISD as a shield. As Linder Affidavits above must be struck, it is proper that answers to interrogatories verified by Linder and PISD counsel must also be struck. It is well established PISD can only act through its Board as a whole and did not grant any kind of authority to Linder in this matter. PISD's above answers and supplemental answers to plaintiffs' interrogatories should be struck and disregarded for failure to comply with TRCP 197.2(d) and 193.5(b).

Further, Linder's affidavits and PISD's assertions concerning BoardBook (CR800-811) are not legal evidence because Linder does not claim expertise, nor assert knowledge or experience in technical matters relating to PISD's website or the alleged "link" issues, or BoardBook software. PISD's claims concerning how "created" dates in document properties of Adobe PDFs in BoardBook changed due to printing (refer to appeals court's opinion at 5-6) are frivolous, vague, mere surmise and are not legal evidence. *Kindred, Id at 63*. Further, there is no evidence that Linder has any knowledge, responsibility, or experience concerning document properties of internet notices or BoardBook software's technical or security functions.

Plaintiffs note that PISD has deleted the internet notice for 5/19/09 meeting and replaced it with a notice for meeting on 5/18/09. It is not disputed that no meeting ever took place on 5/18/2009. Plaintiffs object to this tampering with evidence. The original correct internet notice for 5/19/09 is in the record on CD-ROM and in Hardcopy formats. **Exhibits 9, 10.**

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment                Cause No. 35621                Page 30 of 43
246

PISD's good faith defense under §551.056(d) is a fraud on the Court, a subterfuge and must be rejected. Plaintiffs are entitled to summary judgment in their favor in this regard.

## 2. Plaintiffs are entitled to declaration that PISD violated TOMA §551.051 specifically concerning the 3/26/09 Board meeting and 22 Meetings.

TOMA §551.051: **School District: Place of Posting Notice** specifically states:

A school district shall post notice of each meeting on a bulletin board at a place convenient to the public in the central administrative office of the district.

Tex. Gov't Code §551.051.

No material fact question remains here. It is undisputed that PISD taped TOMA notices to front door of its central administrative office (Central Office) for Board meetings for 3/26/09 and 22 Meetings e.g. See **Exhibits 7, 17.** See **Exhibit 11**-Req. for Admission nos. 5 and 7.

TOMA mandates a physical location i.e. Bulletin Board in central administrative office, where PISD must post TOMA notices. §551.051. This is further emphasized by §§551.043(b)(2) and (b)(3).

The statutory language of "Bulletin Board" is clear and unambiguous. Therefore, the court lacks the power to interpret or change it and must apply the most obvious and common meaning of the words. See the *Tex. Dept. of Transp. v. City of Sunset Valley*, 146 S.W. 3d 637, 642 (Tex. 2004) (If a statute is clear and unambiguous, courts should afford it its common meaning). The meaning of words "Bulletin Board" [11] has been well established for **more than 150 years** as a board for posting notices at a school.

---

[11] Merriam-Webster's Collegiate Dictionary, Eleventh Edition defining **bulletin board** (1831): "a board for posting notices (as at a school)." Merriam-Webster, http://www.merriam-webster.com/dictionary (last visited 3/16/2012) defining bulletin board (1831): "**a board for posting notices (as at a school).**"

The meaning of front door[12] has been well established **for more than 250 years**. It is obvious to a reasonable person that the predominant purpose of a "door" is to "enter or leave a structure" or create a "barrier" to close or open an entry and the predominant purpose of a "Bulletin Board" is to "post notices." Thus as a matter of law front door is not bulletin board and does not meet the requirement of §551.051.

PISD violated §551.051 by failing to post notices of the 3/26/09 meeting and the 22 Meetings on a bulletin board <u>in</u> the Central Office. Further it is undisputed that PISD had a glass enclosed bulletin board inside the central administrative building that PISD did not use for TOMA notices. PISD taped notices on the front door of its Central Office building so that the general public is forced to stand <u>outside</u> of the building to read notices of meetings. **Exhibits 7, 17**. After this lawsuit was filed, defendant knowingly removed the bulletin board in the Central Office lobby and placed it <u>outside</u> the front door of the Central Office building on or about 6/5/09. See **Exhibit 11**-Req. for Admission 3 and 4; **Exhibit 7**. Thus it is obvious that PISD knows the difference between front door and bulletin board.

Front door is not bulletin board under TOMA. Even assuming arguendo, "Front Door" is bulletin board, front door of a central administrative office building as place to post TOMA

---

[12] Cambridge Dictionary of American English, http://dictionaries.cambridge.org (last visited 10/21/2010) **defining** 'the "**front door**" of a building, esp. a house, is the door on the side of the building that faces the street, or the main entrance door.'

Dictionary.com, http://dictionary.reference.com (last visited 10/21/2010) **defining "front door** (1740-1750): "the main entrance to a house or other building, usually facing a street."

Merriam-Webster (thesaurus), http://www.merriam-webster.com/dictionary (last visited 3/16/2012) **defining door:** 1) "a barrier by which an entry is closed and opened"; 2) "the opening through which one can enter or leave a structure" <a steady stream of visitors through the front door>.

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment     Cause No. 35621     Page 32 of 43
248

249

notices is not "convenient"[13] and further is not "accessible"[14] under TOMA as a matter of law. Forcing general public, citizens, and taxpayers to stand outside the administrative building braving snow, rain, heat, cold, traffic in and out of the building is neither safe, accessible, easy, comfortable, advantageous, nor suited to read notices, thus not convenient under TOMA §551.051.

Further forcing taxpaying public to stand outside of the building they paid for is offensive to the purpose of TOMA. Being forced to stand outside of a building is not proper, suitable, or safe as it exposes readers to harm coming from the street's unsafe conditions including crime.

PISD's front door posting of notices of 3/26/09 and 22 Meetings does not comply with the "in" the Central Administrative Office requirement of §551.051 because PISD's notice **cannot physically be read** from inside PISD's central administrative office. **Exhibits 7, 17.** To read PISD's meeting notice posted on its Central Office front door, one must stand outside the Central Office building to read the notice. The clear language and intent of §551.051 is that a reader must be able to enter the Central Office and read a notice "in" the central administrative office. Because PISD's front door posting of notices of 3/26/09 and 22 Meetings fail this requirement, PISD is in violation of §551.051.

Based on above, posting TOMA notices on front door does not meet "convenient" test of §551.051 and further fails the "readily accessible" test under §551.043.

As explained above, PISD fails even the overruled "substantial compliance" standard here – posting notices on front door does not meet reasonable standard of suitability for reading

[13] The American Heritage Dictionary **defining convenient**: "Suited or favorable to one's comfort, purpose, or needs." Merriam-Webster Dictionary **defining convenient**: "Suited to personal comfort or to easy performance; suited to a particular situation; affording accommodation or advantage."

[14] Merriam-Webster Dictionary **defining accessible:** "capable of being used or seen." Collins English Dictionary **defining accessible**: "easy to approach, enter, or use."

notices and because it is an **"unwelcome mat"** to "keep out" or to discourage, frustrate taxpayers and public from entering the central administrative office to participate and observe their school district. PISD fails the Texas Supreme Court law of the Exact and Literal compliance standard because PISD failed to post notices of the 3/26/09 and 22 Meetings in question in the place specifically mandated for school districts by law - "Bulletin Board." See §551.051; *Acker, Id.*

If this court were to permit PISD to make its own law and not comply with the specifically designated place in TOMA, it would be an invitation to government entities throughout the State of Texas to post TOMA notices on back doors, side doors, front/back/side windows, on plants in central office, on restroom doors, office doors, and so on. This is not only offensive, but will eviscerate TOMA.

Plaintiffs are thus entitled to declaratory relief that PISD violated TOMA §551.051 for the 3/26/09 Board meeting and 22 Meetings in question.

### 3. Plaintiffs are entitled to declaration by the court that PISD violated §551.043 concerning the 3/26/09 Board meeting and 5/19/09 Board Meetings

Plaintiffs' sworn testimony is undisputed that the notice of 3/26/09 Board meeting was not witnessed or seen posted in the bulletin board in PISD's Central Office nor on its front door at 5 P.M. and after 6 P.M. on 3/23/09 i.e. notice was posted less than the prescribed 72 hours in violation of §551.043. Exhibit 7. PISD's (Linder) vague claims and surmise that it posted all notices on the front door more than 72 hours ahead of time are not competent summary judgment evidence or legal evidence and must be disregarded. *Kindred, Supra,* Further such conclusory assertions do not specifically dispute 1) Thanedar and Terrell's conversation with PISD's employee Ramiro Soto that there was no board meeting notice posted at or immediately after 6 P.M. on 3/23/09 and 2) that plaintiffs noticed that Linder was not at work at central office at PISD at 5 P.M. or at or after 6 P.M. on 3/23/09 and that 3) the notice appeared on the front door

the next day on 3/24/09 i.e. less than prescribed 72 hours (a "revised" notice was taped to the front door of central office building on 3/24/09). **Exhibit 7.**

Similarly, plaintiff Thanedar's sworn testimony about his conversation with Linder regarding PISD's 5/19/09 Board meeting is undisputed i.e. Linder mentioned to Thanedar that the notice for 5/19/09 meeting was posted on 5/18/09 because the date of the meeting had changed. This caused the notice to be posted for less than the prescribed 72 hours in violation of §551.043 and the Exact and Literal Standard of compliance with TOMA promulgated by the Supreme Court in *Acker*. **Exhibit 7.** Because PISD posted (paper) notices of 3/26/09 and 5/19/09 Board meetings at a physical location for less than the prescribed 72 hours, PISD violated §551.043.

**4. Plaintiffs are entitled to declaration by the court that PISD violated §551.041 when PISD failed to give notice of "place" of its 3/26/09 Board meeting and 22 Meetings**

There is no evidence and it is undisputed that PISD's notices of 3/26/09 board meeting and 22 Meetings refer to "321 W. Albert" and do not specify a city where the meeting will be held. See e.g. **Exhibit 6, Exhibit 11**-Req. for Admission no.15. In certain cases, defendant's notices merely state "Pampa High School" or "Pampa Junior High School" without stating the address. PISD does not dispute this. **Exhibit 10** - See CR70-71, CR75, CR89-90, CR129-130, CR147-148, CR156, CR167-168, CR170. Such truncations require the general public to "**fill in the blanks**" which is in violation of TOMA. TOMA §551.041 specifically requires that the general public or a "reader" be notified of the "place," but PISD failed to do so. The Texas Supreme Court has "demanded exact and literal compliance" with the Open Meetings Act. *See Acker v. Texas Water Commission*, 790 S.W.2d 299 (Tex. 1990). Here defendant's truncations mentioned above violate the plain language of TOMA. Further it is public record and is undisputed that PISD encompasses two counties – Gray county and parts of Roberts county,

where meetings could be held in different cities.[15] Thus plaintiffs are entitled to declaration that PISD violated §551.041's "place" requirement in regards to 3/26/09 Board meeting and 22 Meetings in question.

**5. Plaintiffs are entitled to declaration by the court that PISD violated §551.045(d) concerning the notices of 3/26/09 Board meeting and 22 Meetings**

It is undisputed that Karen Linder, secretary to Superintendent, signed notices of 3/26/09 board meeting and 22 Meetings on behalf of the Board of Trustees.[16] See e.g. **Exhibit 6**. There is no evidence that PISD Board of Trustees ever designated or authorized Linder to sign on its behalf or post notices of its meetings. PISD admits that Board never authorized nor designated Karen Linder under TOMA to sign notices of meetings on behalf of the Board. **Exhibit 12**-Req. for Production 28. §551.045(d) requires an authorized or designated person to post notices of meetings. The language of the section in this regard is clear - it applies to all notices – not just emergency meetings.[17] See §551.045(d). Thus plaintiffs are entitled to declaration that PISD failed to comply with §551.045(d) because Linder was neither authorized nor designated by Board to post meeting notices when she did so for 3/26/09 meeting and 22 Meetings. *Acker*.

**6. Plaintiffs are entitled to declaration that PISD violated TOMA §551.101 by improperly closing its March 26, 2009 meeting and further violated §551.074(b)**

It is not disputed that defendant's president, Mr. Charles Smith did not identify the section or sections of TOMA that authorized closing the 3/26/09 board meeting to the public

---

[15] While it may seem possible to guess that "321 W. Albert" is in Pampa, Texas, there are over 1,030 school districts whose names do not necessarily lend to guessing names of the cities where the meetings may be located e.g. Pharr-San Juan-Alamo (PSJA) ISD; Spring Branch ISD, etc.

[16] The internet notices required under §551.056(b) posted untimely by PISD were not signed by anyone.

[17] Tex. Gov't Code §551.045(d) requires: "A person who is designated or authorized to post notice of a meeting by a governmental body **under this subchapter**" to post notice for the governmental body. The "subchapter" referenced above is unambiguously the "**Subchapter C: Notice of Meetings**" and the requirement of an authorized or a designated person posting notices of meetings applies to all postings of notices under TOMA and not just the emergency meetings.

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment                    Cause No. 35621                    Page 36 of 43
252

under TOMA before closing the 3/26/09 meeting. See **Exhibit 11**-Req. for Admission no.14; **Exhibits 7, 16.** PISD thus did not comply with the Tex. Gov't Code §551.101(2). Therefore, plaintiffs are entitled to declaration that PISD unlawfully closed meeting on March 26, 2009 in violation of Tex. Gov't Code §551.101. *Acker, Supra.* Plaintiffs are entitled to all legal and equitable relief and that 3/26/09 closed meeting and actions taken in it be declared unlawful and contents of the closed meeting be made public and allowed to be freely copied and distributed.

PISD further violated §551.074(b) by deliberating on Terrell's contract termination in the closed meeting on 3/26/09 when Terrell had specifically requested the action be deliberated in open meeting per §551.074(b). **Exhibits 15, 16** (Tape 2 at Counter 43:45.). Plaintiffs are entitled to the declaration that PISD violated §551.074(b). *Acker, Supra.*

**B. Voidance of PISD's unlawful actions is proper due to subterfuge, persistent conscious and defiant violations of TOMA committed over numerous months**

The action taken in 3/26/09 Board meeting terminating Terrell's contract violated TOMA's notice provisions as shown before, thus it is voidable and should be voided. §551.141; *Ferris, Infra; Acker, Supra.*

The 22 Meetings including the 3/26/09 meeting were unlawfully convened as shown before. Since all the actions taken in the 3/26/09, 5/19/09 and 22 Meetings violate TOMA's notice provisions as demonstrated before, said actions in 22 Meetings are voidable and should be voided. §551.141; *Ferris, Infra; Acker, Supra.* See other additional case authorities below.

Therefore, upon voidance of the action terminating Terrell's employment contract (**Exhibit 15**), this Court should issue mandamus ordering PISD to reinstate Terrell and pay her damages for back pay and benefits, currently estimated at $209,000 to date and continuing (**Exhibits 25, 26**). *Ferris v. Texas Board of Chiropractic Examiners,* 808 S.W.2d 514, 518-519

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment      Cause No. 35621      Page 37 of 43
253

(Tex. App.--Austin 1991, writ denied) (Employee terminated in violation of TOMA is entitled to back pay and reinstatement).

Even if PISD's Board attempts a second time to terminate Terrell, such termination cannot be retroactive to 3/26/09. *Ferris, Id.* Further, Terrell's termination cannot be retroactive under Texas Education Code. Pursuant to Texas Education Code, Terrell's teacher contract cannot be terminated without providing 45 days notice (for 2012-13 school year – 10 days) before the last day of instruction in a school year. Failure to provide 45 days notice and termination in a lawfully convened meeting in compliance with TOMA automatically renews Terrell's teaching contract for another year. See Texas Education Code §21.103.

This court should further issue injunction against PISD to stop and prevent further violations of TOMA's notice provisions. Plaintiffs should be granted litigation costs and attorney fees as plaintiffs have substantially prevailed in this litigation having established TOMA violations and prosecuting this case in good faith and for public good and to augment public interest. §551.142(b).

**Authority For Voidance Is Overwhelming**: There is overwhelming authority for voidance of PISD's actions taken in violation of TOMA's notice provisions in unlawfully convened Board meetings and for other relief requested in this suit. Courts have repeatedly voided actions of governmental bodies taken in violation of TOMA. *Ferris v. Texas Board of Chiropractic Examiners, Supra; City of Bells v. Greater Texoma Util. Auth.*, 744 S.W.2d 636,640 (Tex. App.-Dallas 1987, no writ); *Point Isabel ISD v. Hinojosa*, 797 S.W.2d 176 (Tex.App-Corpus Christ 1990, writ denied).

There is not a <u>single case in TOMA jurisprudence</u> where a court did not void unlawful actions under TOMA faced with subterfuge, a defiant willful persistent pattern of violations of

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment      Cause No. 35621      Page 38 of 43
254

TOMA and obstruction of justice as here. Further PISD has refused and failed to ratify its unlawful actions in meetings held in compliance with TOMA.[18]

Courts have also imposed special damages, as requested here, for conscious indifference and failure to comply with the Open Meetings Act, as here. *See Wells v. Hutchinson*, 499 F.Supp. 174, 198 (E.D. Tex. 1980). As demonstrated in the record and in this motion, PISD has engaged in frivolous arguments, subterfuge, and obstruction of justice: 1) claiming good faith defense concerning BoardBook service while refusing to produce evidence that PISD **ever** paid consideration to BoardBook i.e. license fees, maintenance/support fees as required by BoardBook (**Exhibit 14**) for the period it claims good faith defense. For lack of proof of consideration, the alleged 2007 contract (**Exhibit 14**) with BoardBook is invalid. There is simply **no evidence whatsoever** that PISD even had BoardBook service from 8/13/2008 through 5/19/2009; 2) arguing before appeals court that printing notices for plaintiffs "changed" the create dates of its internet website notices, and then refusing and failing to provide evidence of it. Making this worse, PISD even admitted that plaintiffs printed the internet notices themselves from PISD's public website. CR804.

PISD's defiant willful longstanding violations of TOMA require voidance to demonstrate to government entities that TOMA will be upheld and honored by Texas courts. Special damages in the amount to be determined by the court should be granted to plaintiffs for prosecuting this unduly protracted litigation pro se expending substantial money, energy, effort,

---

[18] In *Austin Transportation Study Policy Advisor Committee v. Sierra Club*, 843 S.W.2d 683,686-87 (Tex. App.--Austin 1992, writ denied), the court did not void the unlawful actions because the governmental entity acknowledged its violations of TOMA on 33 occasions and **ratified** the actions in **subsequent meetings convened in compliance** with TOMA upon admitting its violations. Sierra Club was granted in excess of $146,000 in costs and attorney fees plus additional attorney fees for each stage of appeals, because Sierra Club was found to have substantially prevailed.

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment        Cause No. 35621        Page 39 of 43
255

and time (over 1,650 hours over 3 ½ years). **Exhibit 26**. Plaintiffs will produce details of hours and money spent by plaintiffs for Court's review at the direction of the Court.

## C. Special damages and Sanctions on PISD and counsel are appropriate in this case:

Special damages are warranted here due to the subterfuge and obstruction of justice by defendant and counsel in this case. Plaintiffs rely on the facts and arguments in the preceding paragraphs in this regard. PISD which is entirely funded by taxes from Texas citizens continues to flaunt its defiance against TOMA and the will of Texas citizens, legislature, taxpayers, and the Texas Supreme Court. Plaintiffs' urge sanctions on PISD.

This case isn't only about plaintiffs - it's about the Texas citizens who expect honesty and voluntary compliance to openness, transparency, and integrity from their government. The failure to void PISD's egregious and defiant violations of TOMA will eviscerate protections granted to Texas citizens under TOMA, undermining and abrogating concepts of honest voluntary compliance with the promise of open government and transparency, and further lowering Texans' regard for democratic processes, judiciary, and the rule of law.

## VII. CONCLUSION

The appeals court identified only one fact question - PISD's good faith claim under §551.056(d). However, as shown above, PISD's good faith claim is brazenly fraudulent and is constructed to obstruct justice against pro se plaintiffs and Texas citizens and taxpayers. PISD and its counsel deliberately misrepresented its good faith claim to the 7th Court of Appeals to improperly obtain remand of this case. After achieving its purpose of delay and obstruction, PISD now has defiantly refused to supplement the discovery concerning its claim of good faith.

This Court should not countenance PISD's misconduct and perversion of TOMA's purpose to foster openness and integrity in government.

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment      Cause No. 35621      Page 40 of 43
256

For these reasons, plaintiffs ask for summary judgment on all their claims as set forth above in their favor.

## VIII. PRAYER

FOR THE FOREGOING REASONS, plaintiffs Terrell and Thanedar pray that the Court grant their second no-evidence and traditional motion for summary judgment, and

1) Declare that defendant violated TOMA Sections 551.051, 551.056, 551.043, 551.041, 551.045(d), 551.101, and 551.074(b) in regards to its actions in the 3/26/09 Board meeting; and

2) Declare the March 26, 2009 board meeting unlawfully convened; and

3) Declare the termination of plaintiff Terrell's employment contract (adverse action taken by defendant in March 26, 2009 meeting) unlawful, and void, and issue an injunction to reverse, stop, and prevent illegal termination and removal of Terrell from her job as a teacher, and further violations of TOMA; and

4) Issue mandamus to reinstate Terrell as a teacher and pay her all back wages and benefits (currently calculated at $209,000 from said adverse action from 2009-2010 school year through 2012-2013 school year) accrued to her, and set this matter for subsequent hearing to determine the amount of back wages and benefits accrued and payable to Terrell; and prohibit PISD from preventing Terrell from resuming her duties as teacher at PISD; and

5) Declare the closed meeting of Board of Trustees on March 26, 2009 unlawfully convened in violation of TOMA and grant legal and or equitable relief of making the certified agenda, transcript, and/or audio recording of this meeting fully available to public inspection and copying and make its contents public; and

6) award plaintiffs costs, fees, expenses, attorney fees, special damages (plaintiffs have currently incurred 1,650 hours of their time prosecuting this case as of the filing of this motion

multiplied by hourly rate to be fixed by the Court), and damages accrued to date and continuing; and set this matter for subsequent hearing to determine the amount of special damages; and

7) Declare that PISD violated TOMA Sections 551.051, 551.056, 551.043, 551.041, and 551.045(d) in regards to all actions taken in 22 Meetings and 551.101 and 551.074(b) in regards to the 3/26/09 meeting; and

8) Declare 22 Meetings held during the period August 13, 2008 to May 19, 2009 unlawfully convened; and

9) Declare all actions taken in the 22 Meetings unlawful, and void; and

10) Issue a permanent injunction to prevent future and further violations of TOMA and impose appropriate sanctions on defendant PISD and its counsel due to its subterfuge and obstruction of justice in this case now for more than 3 ½ years and continuing;

Alternatively, plaintiffs Terrell and Thanedar pray that the court grant partial summary judgment in their favor; further declare that plaintiffs have substantially prevailed in their lawsuit, grant them costs, damages, special damages, and fees in this case, and that plaintiffs have all other and further relief to which they may justly be entitled to receive.

Date: October 29, 2012

Respectfully submitted,

_Rebecca Terrell_

Rebecca Terrell

_CBThanedar_

Chandrashekhar Thanedar
Plaintiffs

6503 Dancing Ct.
San Antonio, Texas 78244
(956) 445-3107
(512) 271-6840 Fax
rterrell152@gmail.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing Plaintiffs' Second

No-evidence and Traditional Motion for Summary Judgment has been served upon the following

by United States priority mail on October 29, 2012 as follows:

W. Wade Arnold
Andrea Slater Gulley
Underwood Law Firm
500 S. Taylor Street, Suite 1200
Amarillo, Texas 79101-2446

_Rebecca Terrell_

Rebecca Terrell
Chandrashekhar Thanedar

Plaintiff's Second No-evidence and Traditional
Motion for Summary Judgment          Cause No. 35621          Page 43 of 43
259

# Appendix 13


# Notices for 3/26/09 Meeting - Physical and Internet Notices (PX3, PX5)



# Notice of Regular Meeting

## The Board of Trustees
## Pampa Independent School District

FILED
GRAY COUNTY, TEXAS
2013 OCT 10 AM 9 54
SANDRA BURKETT
DISTRICT CLERK
BY
DEPUTY

A Regular Meeting of the Board of Trustees of Pampa Independent School District will be held March 26, 2009, beginning at 6:00 PM in the Carver Center Administration Office, 321 W. Albert.

The subjects to be discussed or considered or upon which any formal action may be taken are as listed below. Items do not have to be taken in the order shown on this meeting notice.

Unless removed from the consent agenda, items identified within the consent agenda will be acted on at one time.

I.      Call to Order / Declaration of a quorum

II.     Public Comments (7:00 p.m.)

III.    CONSENT AGENDA
 A. Consideration and action to approve monthly financial reports
 B. Consideration and action to approve board minutes for January 15, February 19, 2009 and March 12, 2009.
 C. Consideration and action to approve professional development absences for some staff.
 D. Consideration and possible action to approve the Fall Sports Bids.
 E. Consideration and action to approve signatures on bank accounts.

IV.     ACTION / DISCUSSION ITEMS
 A. Consideration and possible action to approve a fund raiser for the PHS Prom Committee
 B. Cast Votes for Region 16 Board of Directors
 C. Consideration and possible action to approve a resolution from Pampa ISD School Health Advisory Council for recess for elementary school students.
 D. Consideration and possible action to approve a Board Resolution in support of a Safe and Drug Free Schools and Communities Act Fund Grant for PISD.
 E. Consideration and possible action to approve revised employment contracts
 F. Consideration and possible action to approve a resolution to extend the depository contract.
 G. Discuss Gun Free Zone Act
 H. Construction Update: Pampa Junior High School

PX
3

EXHIBIT 2

I.       Construction Update: Pampa High School
J.       Identify future agenda items

V.     REPORTS
     A.       Buildings, Grounds, and Facilities Report
     B.       Career and technology and college credit opportunities for PISD students.
     C.       Personnel Management Report
     D.       Food Services Report
     E.       Wind Energy Report

VI.     PERSONNEL
     A.       Employment of professional employee
     B.       Approval and renewal of term contract employees
     C.       Approval and renewal of probationary contract employees
     D.       Approval of termination of probationary contract employees.
     E.       Approval of non-renewal of term contract employees.

*The Board may close this meeting to consult with its attorney on any item posted on this agenda in order to receive legal advice or to maintain the attorney-client privilege. The Board may also close the meeting to consult with its attorney on any other matter when the attorney's professional and ethical duty to the Board requires a confidential communication If, during the course of the meeting, discussion of any item on the agenda should be held in a closed meeting, the Board will conduct a closed meeting in accordance with the Texas Open Meetings Act, Texas Government Code, Chapter 551, Subchapters D and E. Before any closed meeting is convened, the presiding officer will publicly identify the section of the Act authorizing the closed meeting. All final votes, actions, or decisions will be taken in open meeting.*

CARVER CENTER IS WHEELCHAIR ACCESSIBLE. HEARING IMPAIRED PERSONS MUST REQUEST AN INTERPRETER 48 HOURS IN ADVANCE OF THE MEETING. PLEASE CALL 669-4700 FOR ASSISTANCE.

AGENDA Posted By 5:00 p.m. on    3/23/9

*Karen Linder*



# Notice of Regular Meeting

## The Board of Trustees
## Pampa Independent School District



FILED
GRAY COUNTY, TEXAS
2013 OCT 10 AM 9 54
SANDRA BURKETT
DISTRICT CLERK
BY _____
DEPUTY

A Regular Meeting of the Board of Trustees of Pampa Independent School District will be held March 26, 2009, beginning at 6:00 PM in the Carver Center Administration Office, 321 W. Albert.

The subjects to be discussed or considered or upon which any formal action may be taken are as listed below. Items do not have to be taken in the order shown on this meeting notice.

Unless removed from the consent agenda, items identified within the consent agenda will be acted on at one time.

I.      Call to Order / Declaration of a quorum

II.     Public Comments (7:00 p.m.)

III.    CONSENT AGENDA
    A.      Consideration and action to approve monthly financial reports
    B.      Consideration and action to approve board minutes for January 15, February 19, 2009 and March 12, 2009.
    C.      Consideration and action to approve professional development absences for some staff.
    D.      Consideration and possible action to approve the Fall Sports Bids.
    E.      Consideration and action to approve signatures on bank accounts.

IV.     ACTION / DISCUSSION ITEMS
    A.      Consideration and possible action to approve a fund raiser for the PHS Prom Committee
    B.      Cast Votes for Region 16 Board of Directors
    C.      Consideration and possible action to approve a resolution from Pampa ISD School Health Advisory Council for recess for elementary school students.
    D.      Consideration and possible action to approve a Board Resolution in support of a Safe and Drug Free Schools and Communities Act Fund Grant for PISD.
    E.      Consideration and possible action to approve revised employment contracts
    F.      Consideration and possible action to approve a resolution to extend the depository contract.
    G.      Discuss Gun Free Zone Act
    H.      Construction Update: Pampa Junior High School



EXHIBIT

C

PX
5

I.       Construction Update: Pampa High School
J.      Identify future agenda items

V.      **REPORTS**
A.      Buildings, Grounds, and Facilities Report
B.      Career and technology and college credit opportunities for PISD students.
C.      Personnel Management Report
D.      Food Services Report
E.      Wind Energy Report

VI.      **PERSONNEL**
A.      Employment of professional employee
B.      Approval and renewal of term contract employees
C.      Approval and renewal of probationary contract employees
D.      Approval of termination of probationary contract employees.
E.      Approval of non-renewal of term contract employees.

*The Board may close this meeting to consult with its attorney on any item posted on this agenda in order to receive legal advice or to maintain the attorney-client privilege. The Board may also close the meeting to consult with its attorney on any other matter when the attorney's professional and ethical duty to the Board requires a confidential communication If, during the course of the meeting, discussion of any item on the agenda should be held in a closed meeting, the Board will conduct a closed meeting in accordance with the Texas Open Meetings Act, Texas Government Code, Chapter 551, Subchapters D and E. Before any closed meeting is convened, the presiding officer will publicly identify the section of the Act authorizing the closed meeting. All final votes, actions, or decisions will be taken in open meeting.*

CARVER CENTER IS WHEELCHAIR ACCESSIBLE. HEARING IMPAIRED PERSONS MUST REQUEST AN INTERPRETER 48 HOURS IN ADVANCE OF THE MEETING, PLEASE CALL 669-4700 FOR ASSISTANCE.

AGENDA Posted By 5:00 p.m. on _____

# Appendix 14


# Notices for 3/26/09 Meeting-Document Properties of the Internet Notice (PX4)

FILED
GRAY COUNTY, TEXAS

2013 OCT 10 AM 9 54

SANDRA BURKETT
DISTRICT CLERK

_____ DEPUTY

## Notice of Regular Meeting

### The Board of Trustees
### Pampa Independent School District

A Regular Meeting of the Board of Trustees of Pampa Independent School District will be held March 26, 2009, beginning at 6:00 PM in the Curver Center Administration Office, 321 W. Albert.

**Document Properties**

Description | Security | Fonts | Advanced

Description

File: Notice_2009_03_26

Title: Microsoft Word - $ASQnotice_1241746767255_20028051.rtf

Author: APDC_GANDALF

Subject:

Keywords:

Rec'd

Created: 5/8/2009 1:39:29 AM

Modified: 5/8/2009 1:39:29 AM

Application: Server http://www.activepdf.com

Advanced

PDF Producer: activePDF Server

PDF Version: 1.3 (Acrobat 4.x)

Location: E:\Pampa ISD_Notices and Properties\

File Size: 58.58 KB (59,990 Bytes)

Page Size: 8.50 x 11.00 in     Number of Pages: 2

Tagged PDF: No     Fast Web View: No

PX
4

EXHIBIT

D

# Appendix 15

**Suzie Jameson Testimony - Excerpts**

Q. Oh. You talked to them over the phone?

A. Yes, sir.

Q. How many -- was it like a conference call with them?

A. I don't remember exactly. I -- most of my conversations were with Angela.

Q. But she's not a technology person. Correct?

A. She's not a programmer.

Q. Now, for SchoolCenter -- correct me if I'm wrong, was interested with the responsibility of changing the website of PISD. Correct?

A. Yes.

Q. Did you submit to them specifications of data, how to change the system from old to new, that type of technical details as the technology director? Did you pass on that information to them?

A. They specialize in websites for school districts all over the country, so we provided them with the content from our previous website, the articles that we had already posted, the -- all of the data, and they went through that information and created the new site.

Q. They never came to PISD to have meetings with you?

A. No, they did not.

Q. So you submitted them information over -- over

e-mails?

A. Yes, sir.

Q. Okay. How many links does PISD have with respect to the variety of different websites that are accessed through the Pampa ISD's website?

A. Thousands.

Q. Did you give them a list?

A. Did I give them a list?

Q. Yes.

A. No. They had access to the previous website.

Q. So they downloaded -- apparently, they -- they worked with the access to your system, collected the information and created a new website. Right?

A. Yes.

Q. Okay. Did you -- you said they created a new website in January of 2009?

A. Yes.

Q. What time -- do you recall any date in particular?

A. I don't recall the date.

Q. And this was a brand new website. Right?

A. Yes, sir.

Q. Was -- was the website -- was cleared -- was there an automated process of validating data conversion?

A. I'm sorry. What?

not realize needed to go on the new one. Why did you think that there was no need for this particular link to go onto the new one?

A. I didn't specifically think there wasn't a need for the link. I did not realize it was one of the things that had gotten left off.

Q. Well, I was just asking you, if you recall. Why did you think it was not needed on the new website, by your own e-mail here? Had -- was -- if you -- if you have a reason for it?

MR. ARNOLD: Objection, Your Honor. She just testified that's not what she meant by that. She meant that these things were left off, not that they were not needed. That was her testimony.

Q. (BY MR. THANEDAR) Well, I'm not sure -- well, you can -- you can testify exactly what you mean by, I did not realize needed to go on the new one. And how did you come to that understanding?

A. I'm sorry. I don't understand your question.

Q. My question is: On what basis did you think that the link to the school district's meeting notices was not needed?

A. I didn't think that the link to the meeting notices was not needed. I did not realize that it was not there and was needed on the new site.

Honor.

THE COURT: Sustained.

MR. THANEDAR: Well, the relevance, Your Honor, is the fact that Carol Fields was the director of finance, and she would have to pay SchoolCenter, and that was -- you know, if you know. That was the basis for asking the question.

THE COURT: You don't have to answer the question. I've sustained the objection.

MR. THANEDAR: All right.

Q. (BY MR. THANEDAR) Ms. Jameson, has this problem occurred again at PISD?

A. What problem would that be?

Q. The link being severed.

A. No, sir.

Q. Would you call this problem, a link being severed or not -- what -- what kind of description would you give this problem?

A. It was a missing link.

Q. A missing link. And this is a problem with the vendor not transferring that link. Correct?

A. That's correct.

Q. Was it your understanding that this was a -- this was a problem that was -- was it your understanding that this was a problem of just negligence? What type of

problem would you call it, as a technology person?

A. It was an oversight.

Q. It was an oversight, plain and simple oversight. Correct?

A. Pardon me?

Q. It was a plain and simple oversight. Correct?

A. That's correct.

Q. As a technology person you would call that.

Now, the fact of putting the old link on the new one, what kind of technical difficulty is that?

A. When they put the link --

Q. Well, no. I mean, in terms of just copying the old link onto the new website, from a scale from one to ten, how would you rate it? If you're a technology expert or a knowledgeable person, how would you rate the difficulty level?

A. It's not difficult.

Q. It's -- it's just simple negligence, you would say?

A. It was an oversight.

Q. Would negligence be a good word for it?

MR. ARNOLD: Asked and answered, Your Honor. Objection.

THE COURT: Sustained.

Q. (BY MR. THANEDAR) Did you ever write an

# Appendix 16

**Suzie Jameson E-mail (PX32)**

## Linder Karen

**Subject:**  FW: webpage stuff

**From:** Jameson Suzie
**Sent:** Tuesday, May 19, 2009 10:10 AM
**To:** Linder Karen
**Subject:** RE: webpage stuff

Karen,

I finally got this done. Charles is off, but who is president?

 Also, I apologize for not having that link on the site. I have added it on the School Board page. There were lots of things that were on the old site that I didn't realize needed to go on the new one. ☺

Thanks,
Suzie

**From:** Linder Karen
**Sent:** Friday, May 15, 2009 2:57 PM
**To:** Jameson Suzie
**Subject:** webpage stuff

Suzie,

When you have a chance, would you take Charles Smith's picture and info off the board webpage. You can list David Teichmann as Place 4. I will work on getting his picture and information.

Also, I can't seem to find the link on the new website to click on that lists all the notices and minutes for board meetings. I may just be overlooking it?? It use to be linked to the BoardBook program that I use...so that when I release the documents, they would show up on this link.

Call me if you need to, and I'll explain better.

Thanks!

*Karen Linder, Superintendent's Secretary*
*Carver Administration Building*
*321 W. Albert*
*Pampa, TX 79065*
*Phone: (806) 669-4700*
*Fax: (806) 665-0506*

PX
32

1

# Appendix 17

## Letter Returning Evidence on Judge Lopez's Order

SANDRA L. BOYD
COURT REPORTER
P.O. BOX 900
DUMAS, TX 79029


September 30, 2014


MR. CHANDRASHEKHAR THANEDAR
MS. REBECCA TERRELL
6503 DANCING COURT
SAN ANTONIO, TX 78244

Dear Mr. Thanedar and Ms. Terrell,

Enclosed please find your Exhibit 1, Verification; Exhibits 2, 3, 4, and 5, various pages from transcripts of prior hearing; Exhibit 6, Exhibit list from previous hearing; Exhibit 7, First Supplemental Clerk's Record ( 8 pages); Exhibit 8, Affidavit & letter to Mr. Arnold; and Exhibit 9, letter from Pampa ISD to Ms. Terrell.

These exhibits were talked about during the hearing in Gray County on September 26, 2014 but were not admitted and are being returned to you per instructions by Judge Lopez.

Sincerely,

*Sandra Boyd*

Sandra L. Boyd

# Appendix 18

## Amended Notice of Appeal

CAUSE NO. 35621

| | | |
|---|---|---|
| REBECCA TERRELL and | § | IN THE 223<sup>RD</sup> DISTRICT COURT |
| CHANDRASHEKHAR THANEDAR | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | IN AND FOR |
| | § | |
| PAMPA INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | GRAY COUNTY, TEXAS |
| *Defendant* | § | |

## AMENDED NOTICE OF APPEAL

Notice is hereby given that Rebecca Terrell and Chandrashekhar Thanedar, Plaintiffs in the above styled and numbered cause hereby appeal to the Seventh Court of Appeals, Amarillo, Texas from the final judgment entered in this case on October 25, 2013, and from the following:

District court's denial of motion for new trial filed by plaintiffs on November 21, 2013 and district court's failure to hold hearing on the newly discovered evidence; and its

Failure to grant plaintiffs' motion to modify judgment filed on 11/22/2013; and its

Failure to grant additional and amended findings of fact and conclusions of law requested by plaintiffs on or about December 2, 2013; and its

Denial of plaintiffs' second no-evidence and traditional motion for summary judgment filed on or about October 29, 2012; and its

Denial of plaintiffs' motions to exclude evidence, for continuance of trial, for post remand discovery, failure to rule on or denial of plaintiffs' trial exhibits, and refusal to deny and vacate the award of attorney fees in the amount of $30,000 and costs to defendant; and its

Denial and refusal by trial court to hold trial and rule on mandamus, injunctive and declaratory relief on plaintiffs' causes of action under Texas Gov't Code Sections 551.041, 551.043, 551.045(d), 551.051, 551.074(b), 551.101, 551.142(a) ; and that

Assigned trial court judge Abe Lopez was disqualified from sitting in this case and was disqualified from conducting final trial in this case on October 9, 2013; and district court's

Failure by the district court to grant plaintiffs' Motion for Reconsideration filed on or about February 5, 2014.

On January 17, 2014, plaintiff filed a Notice of Appeal prior to the district court's disposition of plaintiffs' Motion for Reconsideration. The district court failed to rule on it. This Amended Notice of Appeal is filed pursuant to Texas Rules of Appellate Procedure 25.1(g).

Date: March 24, 2015

Respectfully submitted,

_____

Rebecca Terrell

_____

Chandrashekhar Thanedar

6503 Dancing Ct.
San Antonio, Texas 78244
(956) 445-3107
rterrell152@gmail.com
Appellants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Amended Notice of Appeal has been served on March 24, 2015 as follows:

W. Wade Arnold, Underwood Law firm, P.O. Box 9158, Amarillo, TX 79105-9158, Telephone: (806) 376-5613, Fax: (806) 379-0316, E-mail: wade.arnold@uwlaw.com, lead counsel for Pampa ISD, defendant appellee. *Via regular mail and e-service through EFSP*.

District Clerk, 223rd District Court, Gray County, P.O. Box 1139, Pampa, TX 79066, for filing in this case, *Via fax to (806) 669-8053 and regular mail*.

_____

Rebecca Terrell

# Appendix 19

# 7<sup>th</sup> Court of Appeals Opinion in the First Appeal

NO. 07-10-00212-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

APRIL 29, 2011

_____

REBECCA TERRELL AND
CHANDRASHEKHAR THANEDAR, APPELLANTS

v.

PAMPA INDEPENDENT SCHOOL DISTRICT, APPELLANT

_____

FROM THE 223RD DISTRICT COURT OF GRAY COUNTY;

NO. 35621; HONORABLE LEE WATERS, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellants, Rebecca Terrell and Chandrashekhar Thanedar,[1] are appealing the granting of a summary judgment in favor of PISD, Pampa Independent School District, regarding appellants' action alleging violations of the Texas Open Meetings Act (TOMA)[2] and a request to void all actions of PISD taken as a result of alleged illegal meetings. We will reverse and remand.

_____

[1] Appellants are husband and wife.

[2] See TEX. GOV'T. CODE ANN. §§ 551.001-.146 (West 2004 & Supp. 2010).

Factual and Procedural Background

Appellant Terrell was a first-year teacher in the PISD whose probationary contract of employment was terminated by action of the PISD School Board on March 26, 2009. On May 29, 2009, appellants filed their original petition alleging numerous violations of TOMA and requesting that the trial court issue a temporary restraining order against PISD, issue a temporary and permanent injunction against PISD, and enter an order declaring that all meetings of the School Board held between certain specified dates to be void and that all actions taken by the School Board at those meetings to be void, specifically identifying the termination of Terrell's employment. Further, appellants requested that the trial court enter a writ of mandamus ordering the School Board to reinstate Terrell. Appellants requested an unspecified amount of damages, costs of court, and attorneys fees. PISD duly filed an answer to the allegations contained in appellants' original petition.

Appellants obtained a setting for a hearing on the application for a temporary injunction and, in connection with the setting, caused to be issued a *subpoena duces tecum* for PISD employee, Karen Linder. PISD filed an objection to the *subpoena duces tecum* and to certain of the documents requested. Appellants subsequently filed a motion to "show cause and strike defendant's original answer." The trial court granted PISD's objections to the *subpoena duces tecum* and denied appellants' motion to show cause and strike PISD's original answer by order dated June 10, 2009. After the trial court refused to enter a temporary restraining order, appellants requested the trial court to vacate a setting on the temporary injunction.

On June 15, 2009, appellants filed a traditional motion for summary judgment and a no-evidence motion for summary judgment. See TEX. R. CIV. P. 166a; 166a(i). After PISD had filed a response to the motions, appellants subsequently filed objections to PISD's summary judgment evidence. The trial court denied appellants' motion for summary judgment by order dated October 12, 2009. Appellants then filed a motion requesting the trial court to reconsider its ruling on the summary judgment and to enter a ruling on appellants' objections to PISD's summary judgment evidence. The trial court denied both the motion to reconsider and the objections to PISD's summary judgment evidence by order dated December 23, 2009. On that same day, PISD filed a traditional and no-evidence motion for summary judgment. On May 14, 2010, the trial court granted PISD's motion for summary judgment without specifying upon which ground the motion was granted.

Appellants appeal the order of the trial court, asserting an extensive number of reasons why the trial court's judgment was in error. The issues presented may be broken down into allegations that the trial court erred in not finding that PISD violated the provisions of TOMA regarding: 1) posting of notice of meetings, 2) requirements for specificity in the notice of meetings and the place of the meetings, 3) internet posting provisions, 4) requirement that all deliberations of the type involved be held in a public meeting, 5) allegations that the notices posted were not posted by a person with authority to post notices of meetings. In addition to the alleged violations of TOMA, appellants allege that the trial court erred in: 6) ruling on various objections to some of PISD's summary judgment evidence, 7) in granting PISD's motion for summary judgment, and 8) in denying appellants' motion for summary judgment. Because one of

3

the issues appellants raise regarding violations of TOMA is dispositive of this matter, we will address it first.

## Standard of Review

We review the granting or denial of a motion for summary judgment *de novo*. See Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). When both parties file a motion for summary judgment, as in this case, and one is granted and one is denied then we, as the reviewing court, must determine all questions presented and render the judgment that should have been rendered by the trial court. See HCBeck, Ltd. v. Rice, 284 S.W.3d 349, 352 (Tex. 2009).

## Internet Posting of Notices

TOMA requires a school district, among other governmental bodies, to concurrently post notice of a School Board meeting on the school district's internet website. TEX. GOV'T CODE ANN. § 551.056(b) (West 2010).[3] Section 551.056 provides that a good faith attempt to comply with the requirements is not affected when the failure to comply with the requirement is due to a technical problem beyond the control of the school district. § 551.056(d).

The record before us clearly demonstrates that, for the period of time between January 15, 2009, and May 19, 2009, the notices of the School Board meetings could not have been posted on the PISD website. Further, summary judgment evidence proves that the failure to post was due to a cutting of the link between the software

---

[3] Further references to the Texas Government Code Annotated will be by reference to "section ___", "Section ___" or "§ ____."

program used to post the notices, BoardBook, and the website. PISD contends, through Linder's affidavit, that, although the link was cut to the website, the notices continued to be posted as required. They simply did not appear on the website.

According to PISD's theory, the failure to post was due to a technical problem beyond its control and, therefore, PISD's failure to post is excused under the good faith exception of the statute. Appellants, however, contend that the missing notices, when produced by PISD, reflect that they were "created" not around the time of the original meeting, but after PISD was notified of the failure of the connection between the software and the website. Under appellants' theory, this summary judgment evidence establishes a material fact issue regarding the good faith attempt of PISD to post the notices on its website as required by the statute. See § 551.056(d).

A review of the summary judgment evidence does, indeed, reflect that the notices in question show to have been "created" after PISD was notified of the failure to post the required website notices. Neither party offered any summary judgment evidence as to what the term "created," as it appears under the properties tab of the notice, means. Both parties have opined as to what it means. Appellants contend it means the notices were not prepared and entered until after the notification that PISD had failed to post notices of the School Board meetings as required. PISD contends "created" means the date the particular notice was printed for delivery to appellants. We, however, have no evidence to support either interpretation.

In our analysis of the summary judgment under the *de novo* standard of review, evidence favorable to appellants must be taken as true and every reasonable inference

5

must be indulged in favor of appellants.  See Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 846 (Tex. 2005).  Accordingly, we find that there is a material fact issue about whether PISD actually attempted to post the notices and, therefore, met the good faith exception to the requirement to concurrently post notices of the School Board meetings on its website.

PISD argues that this case is similar to the allegations in Argyle Indep. Sch. Dist. v. Wolf in which the Fort Worth court determined that there was no evidence of bad faith on the part of the school district.  See  234 S.W.3d 229, 248-49 (Tex.App.—Fort Worth 2007, no pet.).  However, in Argyle the parties had a stipulation of evidence that the webmaster had, in fact, received the notice of the meeting in question and attempted to post the same on the school district's website.  See id. at 248.  Further, the parties stipulated that the failure of the notice to appear was beyond the control of the school district and the problem was corrected a few hours before the meeting.  See id.  The evidence in Argyle is factually distinguishable from the summary judgment evidence in this case and does not control our disposition of this matter.

## Conclusion

Because the issue of concurrently posting notices on the PISD's website involves a genuine issue of material fact not established as a matter of law, we reverse the judgment of the trial court.  We remand this matter for further proceedings consistent with this opinion.

<div align="right">

Mackey K. Hancock
Justice

</div>

# Appendix 20

**Judge Lopez – 223rd Court
Final Judgment**

324

No. 35,621

| | | |
|---|---|---|
| REBECCA TERRELL and CHANDRASHEKHAR THANEDAR | § § § | IN THE 223<sup>rd</sup> DISTRICT COURT |
| Plaintiffs, | § § | |
| V. | § § | IN AND FOR |
| PAMPA INDEPENDENT SCHOOL DISTRICT | § § § | |
| Defendant | § § | GRAY COUNTY, TEXAS |



## FINAL JUDGMENT

On the 9<sup>th</sup> day of October, 2013, after due and proper notice to all parties, this case was called to trial. Plaintiffs REBECCA TERRELL and CHANDRASHKHAR THANEDAR appeared in person representing themselves and announced ready for trial. Defendant PAMPA INDEPENDENT SCHOOL DISTRICT appeared in person through its authorized representative and through their attorneys and announced ready for trial.

The case was tried to the bench in a non-jury trial. The Court received the testimony and evidence submitted by the parties and heard the arguments of counsel. After hearing the testimony, evidence, and arguments of Plaintiffs and Defendant the Court hereby renders judgment for Defendant.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

1. That Plaintiffs' take nothing by their suit against Defendant; and

2. That court costs be taxed against Plaintiffs; and

3. That Defendant recover from Plaintiffs, jointly and severally, the sum of

$ _30,000_ in attorney fees pursuant to Section 551.142 of the Texas Government Code.

Final Judgment
Thanedar v Pampa I.S.D.
Page | 1

324

SIGNED on the 25th day of _October_, 2013

_[signature]_ by assignment

<u>JUDGE PRESIDING</u>

# Appendix 21

# Judge Lopez – Findings of Fact and Conclusions of Law

No. 35,621



| | | |
|---|---|---|
| REBECCA TERRELL and | § | IN THE 223rd DISTRICT COURT |
| CHANDRASHEKHAR THANEDAR | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | IN AND FOR |
| | § | |
| PAMPA INDEPENDENT SCHOOL | § | |
| DISTRICT | § | |
| | § | |
| Defendant | § | GRAY COUNTY, TEXAS |

FILED GRAY COUNTY, TEXAS 2013 NOV 20 AM 10 35 SANDRA BURKETT DISTRICT CLERK BY AS ___ DEPUTY

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On this day came on to be considered the Plaintiff's Request for Findings of Fact and Conclusions of law which was filed in this Cause on behalf of Plaintiffs Rebecca Terrell and Chandrashekhar Thanedar on or about October 24, 2013. In accordance with Rules 296 and 297 of the Texas Rules of Civil Procedure, the Court makes the following findings of fact and conclusions of law.

### A. Findings of Fact

1.     Rebecca Terrell ("Terrell") and Chandrashekhar Thanedar (collectively "Plaintiffs") are residents of Bexar County, Texas and were so at the beginning of the trial of this cause on October 9, 2013.

2.     Plaintiffs represented themselves *pro se* and were not represented by counsel at trial or at any time during this litigation.

3.     Pampa Independent School District ("PISD") is a School District with its Administrative offices located in Pampa, Gray County, Texas.

4.     At the commencement of trial on October 9, 2013, Plaintiffs did not reside within the PISD district boundaries but instead resided in Bexar County, Texas.

5. Terrell was employed by PISD in 2008 under a probationary teaching contract whose term was 10 months which expired by its own terms at the end of the 2008-2009 school year.

6. In March of 2009 Terrell was given actual notice that PISD intended to terminate her probationary contract as required by the Texas Education Code. Thereafter, the termination of Terrell's probationary contract was placed on the School Board agenda for the regularly scheduled meeting to take place on March 26, 2009. The written notice for the March 26, 2009 school board meeting was properly placed on the front door of the PISD administration building located in Pampa, Gray County, Texas more than 72 hours prior to the start of the meeting.

7. Plaintiffs had actual notice of March 26, 2009 board meeting and each Plaintiff personally attended the meeting. Further, Terrell spoke to the board during the public comment section of the board meeting regarding the termination of her probationary contract.

8. At the March 26, 2009 board meeting the School Board voted unanimously to terminate Terrell's probationary contract.

9. In 2007 PISD purchased a computer program called Boardbook which PISD used to create its school board meeting notices and to post these notices on its district website (the "internet postings"). PISD has used Boardbook for this purpose continuously since 2007 and has paid for the Boardbook program each year since 2007.

10. Karen Linder, a PISD employee, was tasked with using the Boardbook program to create each school board meeting notice and to then place a copy of the notice on the district website in conformance with the requirements of Section 551.056 of the Texas Government Code for internet postings.

11.    Once Ms. Linder created the notice in Boardbook she then utilized the Boardbook program to "release" the notice to the public for viewing. The public was able to review the notice on the district website through a hyperlink on the website which directed the public to Boardbook where the notice had been created and was available for viewing. This was the manner in which internet postings were accomplished from the time PISD purchased the Boardbook program.

12.    In January of 2009 PISD transitioned its website to a new format. The new website was built and maintained by an outside independent third party contractor hired by PISD for this purpose. PISD instructed the contractor to make sure the new website had all of the same hyperlinks as the old website, including the hyperlink to Boardbook which allowed the public to view the school board meeting notices on the internet. The contractor failed to carry the Boardbook hyperlink from the old website to the new one and as a result the school board meeting notices which formerly appeared on the internet through the PISD website were unavailable from the time the website switch occurred in January 2009 through May 19, 2009 which was the date that PISD was informed of the problem.

13.    The Boardbook school board meeting notices for PISD which were created by Karen Linder using the Boardbook program were available for viewing by the public from January 2009 through May 19, 2009 on the Boardbook website even though they were not on available on the PISD website during this time.

14.    Karen Linder and PISD were unaware that the Boardbook hyperlink was no longer available on the PISD website as they had directed the contractor to carry forward to the new website all such hyperlinks. Karen Linder continued to create the school board meeting

notices in Boardbook and "releasing" them to the public when completed, all the while thinking they were still available on the website through the Boardbook hyperlink on the website.

15. The actions of Karen Linder and PISD in attempting to post the internet notices required by Section 551.056 of the Texas Government Code from January 2009 through May 19, 2009 were all in good faith and any failure to comply with the statute was due to a technical problem beyond the control of PISD.

16. PISD was unaware that that the Boardbook hyperlink was not carried over to the new website and the independent contractor hired by PISD for the website conversion was at fault for failing to carry over the hyperlink.

17. Plaintiffs' claims in this suit included a claim under Section 551.142(a) of the Texas Government Code.

18. PISD was the substantially prevailing party at trial in regards to any claims under Chapter 551 of the Texas Government Code and in regards to any claims brought under Section 551.142(a).

19. PISD is entitled to an award of litigation costs and reasonable attorney fees incurred in defending the claims of Plaintiffs which were brought in bad faith.

20. In awarding $30,000.00 in attorney fees the Court took judicial notice of the file and has considered that the actions of the Plaintiffs in bringing this suit were in bad faith and that the actions of PISD in defending Plaintiffs claims were reasonable under the law and in particular under Chapter 551 of the Texas Government Code. This award of attorney fees and costs is both reasonable and just considering the time involved in defending this suit, the voluminous number of pleadings and motions filed by Plaintiffs, both in the District Court and in

the Appellate Court, and in consideration of the bad faith exercised by Plaintiffs in bringing this action.

21. Plaintiffs first filed their suit against PISD on May 29, 2009.

22. PISD complied with all provisions of Chapter 551 of the Texas Government Code concerning the posting of notice of PISD's school board meetings and in particular the meeting of March 26, 2009 which were the subject of trial.

## B. Conclusions of Law

1. PISD complied with all provisions of Chapter 551 of the Texas Government Code concerning the posting of notice of PISD's school board meetings, both physical posting and internet posting, and in particular the meeting of March 26, 2009 which were the subject of trial.

2. Any failure on the part of PISD to post an internet notice of an upcoming school board meeting on its website from January 2009 through May 19, 2009 as required by Section 551.056 of the Texas Government Code was due to a technical problem beyond the control of PISD and PISD exercised good faith efforts to comply with the requirements of Chapter 551 concerning internet posting notices.

3. PISD was the substantially prevailing party at trial in the Section 551.142(a) action brought by Plaintiffs under the Texas Government Code and is entitled to an award of litigation costs and reasonable attorney fees incurred in defending the claims of Plaintiffs which were brought in bad faith.

4. The award of $30,000.00 in attorney fees is both reasonable and just taking into consideration the file, the time involved in defending this suit, the voluminous number of pleadings and motions filed by Plaintiffs, both in the District Court and in the Appellate Court, and in consideration of the bad faith exercised by Plaintiffs in bringing this action.

SIGNED ON THIS _14_ DAY OF NOVEMBER, 2013.

_____
JUDGE PRESIDING _by assignment_

# Appendix 22

## BoardBook Draft Agreement (PX31)

APgs-Release-552022@Li

FILED
GRAY COUNTY, TEXAS
2013 OCT 10 AM 9 58
BY
SANDRA BURKETT
DISTRICT CLERK
DEPUTY



Texas Association of School Boards
BoardBook
P.O. Box 400
Austin, Texas 78767-0400
512.467.0222 • 888.587.2665

# BoardBook®
## Subscription Agreement

This Subscription Agreement (this "Agreement") is entered into as of __10/12__, 20_07_, by and between the Texas Association of School Boards, Inc. ("TASB") and ___Pampa ISD___ School District (the "District") for the TASB BoardBook brand online meeting facilitation software. ("BoardBook").

**Definition of Service**

BoardBook is an Internet-based application available to TASB members that enables the user to create electronic board meeting agendas and then to compile those agendas with supporting documents into complete electronic board meeting packets. Meeting packets can be compiled from a variety of source document formats, including Microsoft Word, HTML, plain text, Rich Text Format, graphical files, and other file formats as specified by TASB. A finished board meeting packet is an Adobe Acrobat PDF file that may be downloaded to the user's computer, from which point the packets may be distributed at the user's discretion in a variety of ways (via e-mail, CD-ROM, floppy disk, the District network, etc.). THE DISTRIBUTION OF THE COMPLETED BOARD PACKET IS NOT A COMPONENT OF THE BOARDBOOK APPLICATION.

**Technical Support**

TASB will provide on-line and telephone technical support to the District for the BoardBook application. Such assistance does not constitute legal advice. In the event that the user requires legal advice on any issue, including but not limited to issues about meeting agendas, the user should consult the District's attorney.

TASB is not responsible for supporting third party software applications installed on the District's computers or network. On-site training for BoardBook will be available to the District for an additional cost above and beyond that set out in this Agreement.

**Fees**

The first-year licensing and maintenance/support fee will be $1,600. TASB will provide the BoardBook service to the District after TASB receives this executed Agreement and either a purchase order or payment of this fee. Maintenance/support fees for subsequent years will be determined and assessed by TASB before the annual renewals. Maintenance/support fees for subsequent years will be established and communicated in writing to the District at least 30 days before the anniversary date of this Agreement.

**Ownership of BoardBook®**

The District acknowledges and agrees that TASB owns BoardBook and all proprietary rights related to BoardBook. The District will not attempt to resell, rent or otherwise distribute any part of BoardBook or TASB's services relating to BoardBook to any other party. TASB's proprietary rights regarding BoardBook include but are not limited to all BoardBook software and programming codes, documentation for the BoardBook system and databases, the end user interface, the BoardBook name and all BoardBook features. Notwithstanding the forgoing, the District has a right to access its information that is stored on the TASB server within the BoardBook application.

8/06

PX
28



EXHIBIT
13



EXHIBIT
H

| | |
|---|---|
| **Application Data** | Meeting packets created with BoardBook belong to the District, and the District may use them as it sees fit, subject only to applicable law and local policy. Under no circumstance may any user attempt to modify the programs on the TASB server or to acquire the programming code for BoardBook. Both remain the physical and intellectual property of TASB, Inc. Legal action may be initiated by TASB against any user who violates these conditions. The District may not modify, adapt, translate, distribute, reverse engineer, decompile or disassemble any component or information associated with or accessed through BoardBook. |
| **Application Access** | TASB will provide a Web-based interface for the application, which is hosted on TASB's Web server. Access to the application is restricted to authorized users designated by the District. Authorized users will be able to use the application by means of individualized myTASB accounts. |
| **Contact Data and MyTASB** | The District agrees to provide contact data for all designated users of BoardBook, to include, at a minimum, the names, titles, phone numbers, and e-mail addresses of all authorized users. TASB will use this data exclusively to provide users with individualized myTASB accounts and to support those users as needed. The District agrees to keep all contact information up-to-date in response to changes in employment and board membership. |
| **Responsibility for Account and Password** | The District is responsible for the District's user account(s) and passwords used to access BoardBook. The District is responsible for maintaining the confidentiality of its account(s) and passwords. The District agrees to notify TASB immediately of any unauthorized use of the District's account(s) of which the District becomes aware. |
| **Subscriber's Responsibility** | Obligation to conduct board meetings in accordance with applicable law and local policy resides entirely with the District. The District is solely responsible for all communications performed by means of BoardBook. The District agrees not to use BoardBook to communicate any message or material that is harassing, libelous, threatening, or obscene; that would violate any intellectual property rights of any party or that is otherwise unlawful; that would give rise to civil liability; or that constitutes or encourages conduct that could constitute a criminal offense, under any applicable law or regulation. The District understands that although TASB is not responsible for the District's communications, if TASB becomes aware of any communication that would violate this section, it may suspend the communication and may suspend the District's use of BoardBook or may terminate this Agreement. |
| **Open Meetings and Public Information** | The District agrees that the District is solely responsible for complying with the Texas Open Meetings Act and the Texas Public Information Act. TASB's responsibilities are limited to those specifically set out herein. Because TASB is not subject to the Texas Open Meetings Act and the Texas Public Information Act, TASB cannot be responsible for the District's compliance with these laws. In the event a third party requests information or otherwise submits an inquiry concerning the District's compliance with these acts, TASB will direct the third party to contact the District. TASB is not the custodian of the District's records for any purposes. |
| **Archiving of Records** | The District is responsible for creating its own archive of the board materials created by use of the BoardBook application. However, as long as this Agreement is in effect, TASB will preserve the information that the District places on the BoardBook server for two years. Thirty (30) days after this Agreement terminates, for any reason, TASB will no longer store the District's BoardBook material and information. |

| | |
|---|---|
| **Confidentiality** | The District acknowledges that the BoardBook and the supporting documentation and programming for BoardBook is confidential in nature and constitutes a trade secret belonging to TASB. The District agrees to hold all BoardBook information confidential and shall instruct its employees of the District's obligations under this Agreement and ensure that its employees comply with such obligations. TASB agrees to hold private the District's BoardBook archives and files and not to release the District's data unless TASB is legally required to do so or the District gives its written consent to release such data. |
| **No Warranty** | The District understands and agrees that TASB's BoardBook services and the BoardBook itself are provided "as is" and "as available." TASB expressly disclaims all warranties of any kind, express or implied, including without limitation any warranty of merchantability or fitness for a particular purpose. TASB makes no warranty or representation regarding TASB's services, any information, materials, goods or services obtained through TASB or the BoardBook Web site or that TASB's services will meet the District's requirements, or be uninterrupted, timely, secure or error free. Use of TASB's services and the BoardBook Web Site are at the District's sole risk. The District will be solely responsible for any damage to the District resulting from the use of TASB's BoardBook services or Web site. |
| **Limitation of Liability** | TASB's liability under this Agreement is limited to the fees paid by the District to TASB under this Agreement for one year. |
| **Term** | This Agreement will automatically renew on each anniversary of the Effective Date, unless the District notifies TASB in writing of its intent to terminate the Agreement prior to the anniversary date of the Agreement or unless terminated earlier as otherwise set out herein. If TASB has not received payment from the District within one month after the anniversary of the Effective Date of this Agreement, then TASB will terminate this Agreement immediately. |
| **Early Termination** | If the District ceases to be a TASB member, this Agreement will immediately terminate. If the District violates the Subscriber's Responsibility Section of this Agreement, TASB may terminate this Agreement immediately. The District may terminate this Agreement for any reason by giving TASB 30 days' written notice. However, no prorated refunds will be given to the District after any early termination. |
| **Authority** | The District represents that the person signing this Agreement has full authority to enter into the Agreement. |
| **Amendment** | This Agreement may be amended by TASB by providing at least 30 days' written notice to the District. |
| **Attorneys' Fees** | The parties agree that, in the event of a lawsuit relating to this Agreement, the prevailing party is entitled to recover its reasonable and necessary attorney's fees pursuant to Section 271.159 of the Texas Local Government Code. |
| **Effectiveness and Counterparts** | This Agreement is effective upon the District's delivery (by mail or facsimile) of an executed Agreement to TASB ("Effective Date"). The District shall execute and provide one original, manually executed copy to TASB. The District's failure to provide such original, manually executed copy to TASB does not affect the validity, enforceability or binding effect of this Agreement and either party may rely upon a facsimile copy of this Agreement if an original, manually executed copy is not available for production. The effective date of fee changes made under this Agreement will neither alter the Agreement's Effective Date nor alter the Agreement's anniversary date |

**TASB Bound**    Upon TASB's receipt of this signed Agreement, TASB agrees to be bound by all terms of this Agreement.

---

Please sign below and return the original signed Agreement to Patricia Horton at the address listed above:

Signature: _Barry Haenisch_

Printed Name: _Barry Haenisch_

Title: _Superintendent_

District: _Pampa_

County District Number: _090-904_

# Appendix 23

## Texas Open Meetings Act, Gov't Code Ch. 551 Selected Provisions

GOVERNMENT CODE
TITLE 5. OPEN GOVERNMENT; ETHICS
SUBTITLE A. OPEN GOVERNMENT
CHAPTER 551. OPEN MEETINGS

**SUBCHAPTER C. NOTICE OF MEETINGS**

**Sec. 551.041. NOTICE OF MEETING REQUIRED**.

A governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.

**Sec. 551.043. TIME AND ACCESSIBILITY OF NOTICE; GENERAL RULE.**

(a) The notice of a meeting of a governmental body must be posted in a place readily accessible to the general public at all times for at least 72 hours before the scheduled time of the meeting, except as provided by Sections 551.044-551.046.

(b) If this chapter specifically requires or allows a governmental body to post notice of a meeting on the Internet:

(1) the governmental body satisfies the requirement that the notice must be posted in a place readily accessible to the general public at all times by making a good-faith attempt to continuously post the notice on the Internet during the prescribed period;

(2) the governmental body must still comply with any duty imposed by this chapter to physically post the notice at a particular location; and

(3) if the governmental body makes a good-faith attempt to continuously post the notice on the Internet during the prescribed period, the notice physically posted at the location prescribed by this chapter must be readily

accessible to the general public during normal business hours.
Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993. Amended by: Acts 2005, 79th Leg., Ch. 624 (H.B. 2381), Sec. 1, eff. September 1, 2005.

**Sec. 551.051**. **SCHOOL DISTRICT: PLACE OF POSTING NOTICE**.

A school district shall post notice of each meeting on a bulletin board at a place convenient to the public in the central administrative office of the district.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.

**Sec. 551.056. ADDITIONAL POSTING REQUIREMENTS FOR CERTAIN MUNICIPALITIES, COUNTIES, SCHOOL DISTRICTS, JUNIOR COLLEGE DISTRICTS, AND DEVELOPMENT CORPORATIONS.**

(a) This section applies only to a governmental body or economic development corporation that maintains an Internet website or for which an Internet website is maintained. This section does not apply to a governmental body described by Section 551.001(3)(D).

(b) In addition to the other place at which notice is required to be posted by this subchapter, the following governmental bodies and economic development corporations must also concurrently post notice of a meeting on the Internet website of the governmental body or economic development corporation:

(1) a municipality;
(2) a county;
(3) a school district;
…

(d) The validity of a posted notice of a meeting or an agenda by a governmental body or economic development corporation subject to this section that made a good faith attempt to comply with the requirements of this section is not affected by a failure to comply with a requirement of this section that is due to a technical problem beyond the

control of the governmental body or economic development corporation.

Added by Acts 2005, 79th Leg., Ch. 340 (S.B. 1133), Sec. 1, eff.January 1, 2006.

Amended by:
Acts 2007, 80th Leg., R.S., Ch. 814 (S.B. 1548), Sec. 1, eff.September 1, 2007. Acts 2007, 80th Leg., R.S., Ch. 885 (H.B. 2278), Sec. 3.10,
eff. April 1, 2009.

## SUBCHAPTER D. EXCEPTIONS TO REQUIREMENT THAT MEETINGS BE OPEN

### Sec. 551.074. PERSONNEL MATTERS; CLOSED MEETING.

(a) This chapter does not require a governmental body to conduct an open meeting:

(1) to deliberate the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of a public officer or employee; or
(2) to hear a complaint or charge against an officer or employee.

(b) Subsection (a) does not apply if the officer or employee who is the subject of the deliberation or hearing requests a public hearing.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.

## SUBCHAPTER E. PROCEDURES RELATING TO CLOSED MEETING

### Sec. 551.101. REQUIREMENT TO FIRST CONVENE IN OPEN MEETING.

If a closed meeting is allowed under this chapter, a governmental body may not conduct the closed meeting unless a quorum of the governmental body first convenes in an open meeting for which notice has been given as provided by this chapter and during which the presiding officer publicly:

(1) announces that a closed meeting will be held; and

(2) identifies the section or sections of this chapter under which the closed meeting is held.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.

**Sec. 551.102. REQUIREMENT TO VOTE OR TAKE FINAL ACTION IN OPEN MEETING.**

A final action, decision, or vote on a matter deliberated in a closed meeting under this chapter may only be made in an open meeting that is held in compliance with the notice provisions of this chapter.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.
Sec. 551.103. CERTIFIED AGENDA OR RECORDING REQUIRED.

a) A governmental body shall either keep a certified agenda or make a recording of the proceedings of each closed meeting, except for a private consultation permitted under Section 551.071.
(b) The presiding officer shall certify that an agenda kept under Subsection (a) is a true and correct record of the proceedings.
(c) The certified agenda must include:
(1) a statement of the subject matter of each deliberation;
(2) a record of any further action taken; and
(3) an announcement by the presiding officer at the beginning and the end of the meeting indicating the date and time.
(d) A recording made under Subsection (a) must include announcements by the presiding officer at the beginning and the end of the meeting indicating the date and time.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.

Amended by:
Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 8, eff. May 18, 2013. Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B.471), Sec. 9, eff. May 18, 2013.

**Sec. 551.104. CERTIFIED AGENDA OR RECORDING; PRESERVATION; DISCLOSURE.**

a) A governmental body shall preserve the certified agenda or recording of a closed meeting for at least two years after the date of the meeting. If an action involving the meeting is brought within that period, the governmental body shall preserve the certified agenda or recording while the action is pending.

(b) In litigation in a district court involving an alleged violation of this chapter, the court:
(1) is entitled to make an in camera inspection of the certified agenda or recording;
(2) may admit all or part of the certified agenda or recording as evidence, on entry of a final judgment; and
(3) may grant legal or equitable relief it considers appropriate, including an order that the governmental body make available to the public the certified agenda or recording of any part of a meeting that was required to be open under this chapter.
(c) The certified agenda or recording of a closed meeting is available for public inspection and copying only under a court order issued under Subsection (b)(3).

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.
Amended by: Acts 2013, 83rd Leg., R.S., Ch. 87 (S.B. 471), Sec. 10, eff. May 18, 2013.

**SUBCHAPTER G. ENFORCEMENT AND REMEDIES; CRIMINAL VIOLATIONS**

**Sec. 551.141. ACTION VOIDABLE.**

An action taken by a governmental body in violation of this chapter is voidable.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.

**Sec. 551.142. MANDAMUS; INJUNCTION.**

a) An interested person, including a member of the news media, may bring an action by mandamus or injunction to

stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body.

(b) The court may assess costs of litigation and reasonable attorney fees incurred by a plaintiff or defendant who substantially prevails in an action under Subsection (a). In exercising its discretion, the court shall consider whether the action was brought in good faith and whether the conduct of the governmental body had a reasonable basis in law.

Added by Acts 1993, 73rd Leg., ch. 268, Sec. 1, eff. Sept. 1, 1993.